**Michelle Barton Smigel, P.C.**, OSB No. 045530
michelle.smigel@millernash.com
**Michael Porter, P.C.**, OSB No. 003560
mike.porter@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  503.224.5858
Fax:  503.224.0155

          Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **BRANDON AUSTIN**, | Case No. 6:15-cv-02257-MC |
| Plaintiff, | DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT |
| v. | (Pursuant to Fed R Civ P 12(b)(6)) |
| **UNIVERSITY OF OREGON; SANDY WEINTRAUB; CHICORA MARTIN; ROBIN HOLMES**; and **MICHAEL R. GOTTFREDSON**, all in their individual capacities only, | **REQUEST FOR ORAL ARGUMENT** |
| Defendants. | |

Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................... 1

II. FACTUAL ALLEGATIONS FOR PURPOSES OF THIS MOTION ........................... 2

III. ARGUMENT ....................................................................................................... 4

    A. Plaintiff's Due Process Claim Should Be Dismissed Because the Individual Defendants Did Not Deprive Plaintiff of a Constitutionally Protected Interest ..................................................................................... 6

        1. Defendants' alleged actions did not implicate a constitutionally protected property or liberty interest ............................................. 6

            a. Plaintiff did not have a property or liberty interest in attending the University ................................................ 8

            b. Plaintiff did not have a property or liberty interest in playing basketball for the University ............................ 10

            c. Plaintiff did not have a property or liberty interest in the renewal of his fixed-term athletic scholarship ............ 11

            d. Oregon's Administrative Procedures Act did not confer a constitutionally protected interest on plaintiff ............ 12

        2. Defendants are entitled to qualified immunity because they did not violate a clearly established constitutional right ...................... 13

        3. Plaintiff's administrative hearing was not constitutionally deficient ....... 16

            a. Plaintiff, who was represented by counsel, waived the procedures that he now claims not to have received .................. 16

            b. Plaintiff received notice and had an opportunity to be heard before his suspension from the University .................................. 19

        4. Plaintiff was not deprived of any substantive due process rights ............ 19

    B. Plaintiff Is Precluded From Re-litigating the Validity of His Administrative Order And From Asserting His State Law Claims ..................... 21

        1. Plaintiff is precluded from re-litigating the validity of his administrative order, under the doctrine of issue preclusion .................. 21

        2. Plaintiff is precluded from asserting his state law claims because he did not challenge his suspension through a direct appeal, as is required under Oregon law ................................................................... 23

    C. Defendants Are Entitled To Discretionary Immunity From Plaintiff's Tort Claims Under ORS 30.265 ................................................................... 24

70075060.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# TABLE OF CONTENTS
## (continued)

Page

D.     Plaintiff's Negligence Claim Should Be Dismissed Because Plaintiff Does Not Allege Physical Injury or Property Damage And, as a Matter of Law, Defendants' Conduct Did Not Create a Foreseeable Risk of Harm to Plaintiff ....................................................................................................... 25

     1.     Plaintiff failed to allege damages cognizable in negligence where no special relationship exists .................................................................. 26

     2.     As a matter of law, Defendants' alleged conduct did not create a foreseeable risk of harm to plaintiff ........................................................ 28

E.     Plaintiff's IIED Claim Should Be Dismissed Because, as a Matter of Law, Defendants' Alleged Conduct Did Not Transgress the Bounds of Socially Tolerable Conduct ................................................................................................ 29

F.     Plaintiff Cannot State a Claim for Tortious Interference With Prospective Economic Advantage Because He Fails to Allege a Relationship With the NBA and Failed to Provide the Required Notice of This Claim to the University.............................................................................................................. 32

     1.     Plaintiff does not allege an existing business relationship with an NBA team, which is necessary to recover for the intentional interference with a prospective economic advantage .............................. 33

     2.     Plaintiff does not allege a sufficiently likely prospective business relationship with any NBA team to recover in tort.................................. 34

     3.     Plaintiff's allegations fail to support his conclusory statements that Defendants acted intentionally and with an improper purpose or by improper means.......................................................................................... 35

     4.     Plaintiff failed to provide adequate notice of his claim, as required under the OTCA.................................................................................... 37

G.     Plaintiff's Claims for Economic Damages in Tort Should Be Dismissed Because, as a Matter of Law, His Allegations Are Too Speculative to State a Claim ................................................................................................................... 38

H.     Plaintiff Fails to State a Claim for Breach of Contract and Plaintiff Alleges No Cognizable Damages.................................................................................. 40

IV.     CONCLUSION.................................................................................................. 42

70075060.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

**Cases**

*Albright v. Oliver,*
 510 US 266, 114 S Ct 807, 127 L Ed 2d 114 (1994) ............................................................20

*Allen v. Hall,*
 328 Or 276, 974 P2d 199 (1999) ...........................................................................32

*Anderson v. Creighton,*
 483 US 635, 107 S Ct 3034, 97 L Ed 2d 523 (1987) ...........................................................13

*Ashcroft v. al-Kidd,*
 563 US 731, 131 S Ct 2074, 179 L Ed 2d 1149 (2011) .......................................................13

*Ashcroft v. Iqbal,*
 556 US 662, 129 S Ct 1937, 173 L Ed 2d 868 (2009) ...........................................................4

*Bateson v. Geisse,*
 857 F2d 1300 (9th Cir 1988) ...........................................................................20

*Bd. of Curators of Univ. of Mo. v. Horowitz,*
 435 US 78, 98 S Ct 948, 55 L Ed 2d 124 (1978) ...........................................................8

*Bd. of Regents of State Colls. v. Roth,*
 408 US 564, 92 S Ct 2701, 33 L Ed 2d 548 (1972) ................................6, 7, 8, 10, 11, 12, 14

*Bell Atl. Corp. v. Twombly,*
 550 US 544, 127 S Ct 1955, 167 L Ed 2d 929 (2007) ...........................................................4

*Bell v. PERB,*
 239 Or App 239, 247 P3d 319 (2010) ...........................................................................27

*Brands v. Sheldon Cmty. Sch.,*
 671 F Supp 627 (ND Iowa 1987) ...........................................................................11

*Brown v. Zimbrick Logging,*
 273 Or 463, 541 P2d 1388 (1975) ...........................................................................38

*Chapman v. Mayfield,*
 358 Or 196, 361 P3d 566 (2015) ...........................................................................28

*Chavez v. Boise Cascade Corp.,*
 307 Or 632, 772 P2d 409 (1989) ...........................................................................22, 23

*Colo. Seminary (Univ. of Denver) v. NCAA,*
 417 F Supp 885 (D Colo 1976), *aff'd,* 570 F2d 320 (10th Cir 1978) .......................................11

*Cont. Plants v. Measured Mkt. Services, Inc.*,
  274 Or 621, 547 P2d 1368 (1976) ......................................................41

*Conway v. Pacific University*,
  324 Or 231, 924 P2d 818 (1996) .......................................................40

*Cron v. Zimmer*,
  255 Or App 114, 296 P3d 567 (2013)........................................33, 34, 35

*D. H. Overmyer Co. v. Frick Co.*,
  405 US 174, 92 S Ct 775, 31 L Ed 2d 124 (1972)..................................18

*Dauven v. George Fox Univ.*,
  No. CV. 09-305-PK, 2010 WL 6089077 (D Or Dec. 3, 2010)................28

*Davies v. Grossmont Union High Sch. Dist.*,
  930 F2d 1390 (9th Cir), *cert denied*, 501 US 1252 (1991)...................18

*Delaney v. Clifton*,
  180 Or App 119, 41 P3d 1099 (2002)........................................30, 31, 32

*Doyle v. Oregon Bank*,
  94 Or App 230, 764 P2d 1379 (1988)..................................................42

*Drews v. EBI Companies*,
  310 Or 134, 795 P2d 531 (1990) ........................................................22

*Dunn v. Castro*,
  621 F3d 1196 (9th Cir 2010) ............................................................14

*Erlandson v. Pullen*,
  45 Or App 467, 608 P2d 1169 (1980)............................................33, 36

*Fernandez v. Rosenzwieg*,
  No. CIV. 95-241-FR, 1996 WL 453046 (D Or Aug. 8, 1996) .......8, 11, 14

*Flug v. Univ. of Oregon*,
  335 Or 540, 73 P3d 971 (2003) ........................................................37

*Freeman v. Busch*,
  349 F3d 582 (8th Cir 2003) ............................................................26

*Georgetown Realty v. The Home Ins. Co.*,
  313 Or 97, 831 P2d 7 (1992) ............................................................27

70075060.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Goldberg v. Kelly*,
    397 US 254, 90 S Ct 1011, 25 L Ed 2d 287 (1970)......................................................7

*Goss v. Lopez*,
    419 US 565, 95 S Ct 729, 42 L Ed 2d 725 (1975)................................................8, 9

*Grossman v. City of Portland*,
    33 F3d 1200 (9th Cir 1994) ...............................................................................14, 15

*Halverson v. Skagit Cty.*,
    42 F3d 1257 (9th Cir 1994) ..........................................................................................20

*Harrell v. S. Or. Univ.*,
    No. CV 08-3037-CL, 2010 WL 2326576 (D Or Mar. 24, 2010)................................8

*Hawkins v. NCAA*,
    652 F Supp 602 (CD Ill 1987) .....................................................................................35

*House v. Hicks*,
    218 Or App 348, 179 P3d 730 (2008)..........................................................................30

*Hunter v. Bryant*,
    502 US 224, 112 S Ct 534, 116 L Ed 2d 589 (1991)...................................................14

*Justice v. Nat'l Collegiate Athletic Ass'n*,
    577 F Supp 356 (D Ariz 1983) ....................................................................................11

*Kahn v. Pony Express Courier Corp.*,
    173 Or App 127, 20 P3d 837 (2001)......................................................................38, 39

*Klein v. Grynberg*,
    44 F3d 1497 (10th Cir 1995) ........................................................................................35

*L.W. v. Grubbs*,
    974 F2d 119 (9th Cir 1992) ..........................................................................................20

*Lake County v. State of Oregon*,
    142 Or App 162, 920 P2d 1115 (1996).........................................................................24

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*,
    431 F3d 353 (9th Cir 2005) ..........................................................................................38

*Ludwig v. Astrue*,
    681 F3d 1047 (9th Cir 2012) ........................................................................................19

70075060.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Lumbreras v. Roberts*,
  319 F Supp 2d 1191 (D Or 2004) ..................................................................20

*MacLean & Associates v. American Guaranty Life*,
  85 Or App 284, 736 P2d 586 (1987)...............................................................41

*Marquez v. Harper Sch. Dist. No. 66*,
  No. CV-09-1254-SU, 2011 WL 2462035 (D Or Mar. 24, 2011) ...........................30

*McAdoo v. Univ. of N.C. at Chapel Hill*,
  736 SE2d 811 (NC Ct App 2013)................................................................35, 39

*McGanty v. Staudenraus*,
  321 Or 532, 901 P2d 841 (1995) ...............................................30, 32, 33, 34

*McManus v. Auchincloss*,
  271 Or App 765, 353 P3d 17 (2015)...........................................................27, 30

*Miller v. County of Santa Cruz*,
  39 F3d 1030 (1994).....................................................................................22

*Mitchell v. Forsyth*,
  472 US 511, 105 S Ct 2806, 86 L Ed 2d 411 (1985)..........................................15

*Nelson v. Emerald People's Utility Dist.*,
  318 Or 99, 862 P2d 1293 (1993)....................................................................22

*Orr v. City of Eugene*,
  151 Or App 541, 950 P2d 397 (1997)...............................................................37

*Padilla v. Yoo*,
  678 F3d 748 (9th Cir 2012) .........................................................................14

*Parish v. NCAA*,
  506 F2d 1028 (5th Cir 1975) .......................................................................35

*Paul v. Davis*,
  424 US 693, 96 S Ct 1155, 47 L Ed 2d 405 (1976)........................................7, 10

*Paul v. Providence Health Sys.-Oregon*,
  351 Or 587, 273 P3d 106 (2012) ...............................................................26, 27

*Ramirez v. Hawaii T & S Enterprises, Inc.*,
  179 Or App 416, 39 P3d 931 (2002)..............................................................25

Page iv -    Table of Authorities

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Robinson v. Shipley*,
    64 Or App 794, 669 P2d 1169 (1983)...................................................................37

*Rosenthal v. Erven*,
    172 Or App 20, 17 P3d 558 (2001)..................................................................27

*Ross v. Creighton Univ.*,
    957 F2d 410 (7th Cir 1992) ............................................................................41

*Ryan v. Harlan*,
    No. CV-10-626-ST, 2011 WL 711110 (D Or Feb. 22, 2011) .................................8

*Shanks v. Dressel*,
    540 F3d 1082 (9th Cir 2008) ....................................................................6, 7, 12

*Shin v. Sunriver Preparatory School, Inc.*,
    199 Or App 352, 111 P3d 762 (2005)..............................................................27

*Sinaloa Lake Owners Ass'n v. City of Simi Valley*,
    882 F2d 1398 (9th Cir 1989) ..........................................................................20

*Slochower v. Bd. of Higher Ed.*,
    350 US 551, 76 S Ct 637, 100 L Ed 692 (1956).....................................................7

*Sole Energy Co. v. Petrominerals Corp.*,
    26 Cal Rptr 3d 798 (Ct App 2005)....................................................................33

*Straube v. Larson*,
    287 Or 357, 600 P2d 371 (1979) ..........................................................34, 35, 36

*Tenold v. Weyerhaeuser Co.*,
    127 Or App 511, 873 P2d 413 (1994), *rev. dismissed*, 321 Or 561...................30, 31

*U.S. National Bank v. Boge*,
    311 Or 550, 814 P2d 1082 (1991) ....................................................................40

*United States v. Ritchie*,
    342 F3d 903 (9th Cir 2003) ...............................................................................3

*Westfall v. State ex rel. Oregon Dept. of Corrections*,
    355 Or 144, 324 P3d 440 (2014) .....................................................................25

*Wisconsin v. Constantineau*,
    400 US 433, 91 S Ct 507, 27 L Ed 2d 515 (1971)...............................................10

70075060.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Zehr v. Haugen,*
    318 Or 647, 871 P2d 1006 (1994) ........................................................41

**Statutes**

28 USC § 1738 ...........................................................................................22

42 USC § 1983 .........................................................................................1, 4

Oregon Administrative Procedures Act ...........................................12, 13, 24

Oregon Tort Claims Act ........................................................5, 32, 37, 38

ORS 30.260(6) ...........................................................................................37

ORS 30.265 ................................................................................................25

ORS 30.275 ...........................................................................................37, 38

ORS 31.710(2)(a) .......................................................................................38

ORS 183.413-.497 ............................................................................12, 13, 16

ORS 183.480(2) .....................................................................................23, 24

ORS 183.482 .........................................................................................23, 25

ORS 183.484 ....................................................................................21, 23, 25

ORS 183.502 ..............................................................................................12

ORS 351.088 ....................................................................................12, 16, 25

ORS 831.310(6) .....................................................................................22, 23

**Other Authorities**

Fed R Civ P 12(b)(6) ...............................................................................1, 2, 4

LR 7-1 .........................................................................................................1

LR 7-2 .........................................................................................................1

NCAA Rule 15.3.5 ....................................................................................41

OAR 571-021-0105(30) ......................................................................4, 10, 36

70075060.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

OAR 571-021-0130 ...................................................................................................21

OAR 571-021-0205 ..............................................................3, 13, 16, 18, 19, 31

OAR 571-021-0210 ...................................................................................................13

OAR 571-021-0250(5)...........................................................................................25

*The Oregonian* ........................................................................................................2, 15

United States Constitution, Fourteenth Amendment ..............................................7, 19

Page vii -    Table of Authorities

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

## LR 7-1 CERTIFICATE

Counsel for defendants, University of Oregon (the "University"), Sandy Weintraub, Chicora Martin, Robin Holmes, and Michael R. Gottfredson (collectively, the "Individual Defendants," and together with the University, "Defendants"), conferred with counsel for plaintiff about the dispute through a telephone conference, but the parties have been unable to resolve the dispute.

## LOCAL RULE 7-2 CERTIFICATION

This memorandum complies with LR 7-2(b) because the court granted Defendants request to file a brief of this length.

## MOTION

In accordance with Fed R Civ P 12(b)(6), Defendants move to dismiss the complaint because it fails to state a claim on which relief can be granted.

## MEMORANDUM

## I.    INTRODUCTION

Plaintiff's First Amended Complaint ("Complaint") asserts invalid legal theories arising out of the University's finding that he violated its Student Conduct Code by engaging in sexual misconduct.  The allegations and claims in the Complaint show that this case can and should be decided now as a matter of law.  Plaintiff asserts that Defendants are liable for the following: (1) the University's investigation of a report that plaintiff raped a fellow student, (2) the manner in which Defendants conducted plaintiff's administrative hearing, and (3) the nonrenewal of plaintiff's athletic scholarship.  Neither 42 USC § 1983 nor Oregon law prevent a public university from applying its student conduct code by suspending a student found to have engaged in an act of sexual misconduct, as defined by that code.  In fact, our public universities are authorized by state law to issue such educational sanctions to their students.  According to plaintiff, when a student-athlete is suspended for sexual misconduct, a public university should be held liable for theoretically diminishing the student-athlete's chances of a speculative

Page 1 -    Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

professional sports career.  But the allegations in plaintiff's Complaint do not give rise to any

viable legal claims and do not meet the standards to survive dismissal under

Fed R Civ P 12(b)(6).

## II.    FACTUAL ALLEGATIONS FOR PURPOSES OF THIS MOTION

For purposes of this motion to dismiss, Defendants move against the allegations

contained in plaintiff's Complaint as they are obligated to do.  But the Defendants also submit a

few additional documents that were incorporated by reference into plaintiff's Complaint,[1] the

contents of which cannot be disputed in good faith by plaintiff, and therefore their submission

creates no factual dispute:  (1) plaintiff's scholarship, (2) the redacted police report published by

*The Oregonian*, (3) Gottfredson's public statement, (4) documentation of plaintiff's waiver of a

panel hearing, and (5) the University's decision letter finding that plaintiff "engaged in sexual

acts with a fellow student without obtaining explicit consent."  Defendants also submit plaintiff's

October 7, 2014, letter to the University titled "Notice of Claim of Brandon Austin." (Documents

are attached as exhibits to the Declarations of Michelle Barton Smigel ("Smigel Decl.") and Lisa

Thornton ("Thornton Decl.").)

Plaintiff is a former University of Oregon student.  He transferred to the

University and joined its basketball team in January 2014.  (First Am. Compl. ¶ 12-13.)  The

University offered plaintiff a scholarship for winter and spring quarters of the 2013-14 academic

year, though he was not permitted to compete in games that year because he had transferred

schools. (Scholarship attached as Exhibit A to Thornton Decl., ¶ 4.)

On March 13, 2014, a University of Oregon undergraduate student filed a report

with the Eugene Police Department, accusing plaintiff, and others, of raping her.  (First Am.

Compl. ¶ 30.)  On or about May 5, 2014, *The Oregonian* published the March 13 police report.

---

[1] *See United States v. Ritchie*, 342 F3d 903, 907-08 (9th Cir 2003) (court may properly consider
documents incorporated by reference in a complaint on a Fed R Civ P 12(b)(6) motion "without
converting the motion to dismiss into a motion for summary judgment").

Page 2 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

(Police report attached as Exhibit A to Smigel Decl., ¶ 2.) (First Am. Compl. ¶ 35.)  In response, Gottfredson, who was the University's president at the time, held a press conference on May 9, 2014, to address public concerns regarding the police report and sexual violence in the surrounding community.  (Gottfredson's statement attached as Exhibit B to Thornton Decl., ¶ 5.) (First Am. Compl. ¶ 37.)

Immediately after reviewing the police report, the University temporarily suspended plaintiff from school on an emergency basis (First Am. Compl. ¶ 38).  On May 1, 2014, plaintiff was dismissed from the basketball team, but the University did not cancel his existing scholarship, nor does plaintiff allege that it did.  Rather, the University merely did not renew his scholarship for the next academic year.  (First Am. Compl. ¶ 83.)

As plaintiff's administrative hearing approached, plaintiff's then-attorney, Laura Fine Moro, and the University's general counsel, Douglas Park, discussed the terms of plaintiff's administrative hearing.  On May 28, 2014, Moro agreed in writing on behalf of plaintiff that his hearing would be conducted in accordance with the procedures of an administrative conference, as defined by OAR 571-021-0205.[2]  In return, the University agreed that suspension from school was the maximum sanction that plaintiff faced.[3]  (E-mail correspondence between Moro and Park attached as Exhibit C to Thornton Decl., ¶ 6.)  Plaintiff signed his agreement to the administrative conference procedures on or about June 5, 2014, in the presence of Moro. (Plaintiff's signed waiver attached as Exhibit D to Thornton Decl., ¶ 7.)

---

[2]  At the time of the events relevant to the complaint, the University's Student Conduct Code was subject to the 2014 edition of the Oregon Administrative Rules.  The Student Conduct Code has since been amended and renamed as a University policy.

[3]  Though not relevant to this motion, pursuant to the agreement, the University removed expulsion as a possible sanction if plaintiff were found responsible, in part because by agreeing to waive a panel hearing, plaintiff agreed to forgo aspects of a panel hearing that can be grueling for alleged victims, such as forcing the alleged victim to be present and subjecting the alleged victim to cross-examination.

Page 3 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Plaintiff's hearing was conducted by Sandy Weintraub, Director of Student Conduct & Community Standards at the University. Plaintiff was represented by counsel at the hearing, which was held on June 17, 2014. Based on the evidence presented at the hearing, Weintraub determined that plaintiff had violated the University's Student Conduct Code by engaging in an act of sexual misconduct, specifically, penetration without "first obtain[ing] Explicit Consent." OAR 571-021-0105(30)(b)(A). Plaintiff was accordingly suspended for four to ten years. (The University's administrative hearing decision final letter is attached as Exhibit E to Thornton Decl., ¶ 8.)

Plaintiff did not appeal his suspension (an administrative order) to state court, nor does plaintiff allege that he did. On October 7, 2014, the University received a letter from plaintiff's attorney informing the University of plaintiff's intent to sue for alleged damages. (Plaintiff's "Tort Claims Notice" is attached as Exhibit F to Thornton Decl., ¶ 9.)

## III.    ARGUMENT

Under Fed R Civ P 12(b)(6), a claim does not survive unless the plaintiff "'state[s] a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 US 662, 663, 129 S Ct 1937, 173 L Ed 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 US 544, 570, 127 S Ct 1955, 167 L Ed 2d 929 (2007)). The plaintiff must plead sufficient "[f]actual allegations * * * to raise a right to relief above the speculative level." *Twombly*, 550 US at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235-36 (3d ed 2004)). Courts rely on "judicial experience and common sense" to determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 556 US at 679. Claims based "merely [on] legal conclusions" must be dismissed. *Twombly*, 550 US at 565.

Plaintiff pleads five causes of action, all of which should be dismissed for, at least, the following procedural and substantive reasons:

- Plaintiff's First Claim for Relief (42 USC § 1983; Due Process): Plaintiff's due process claim should be dismissed for at least three separate reasons: (a) the alleged

Page 4 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

conduct of the Individual Defendants did not implicate a constitutionally protected interest, (b) even if it did, the Individual Defendants are entitled to qualified immunity because the interest was not clearly established, and (c) in any event, as the Complaint shows, plaintiff received notice and had an opportunity to be heard before he was suspended (consistent with all the process he could have been due) and the Individual Defendants' alleged actions did not shock the conscience. In addition, the doctrine of issue preclusion bars plaintiff from challenging the validity of plaintiff's suspension, which was a valid administrative order under Oregon law.

- Plaintiff's tort claims (Second, Third, and Fourth Claims) should be dismissed because plaintiff failed to challenge his suspension from the University in accordance with state law and because Defendants are entitled to discretionary immunity.

- Plaintiff's Second Claim for Relief (Negligence): Plaintiff's negligence claim fails to state a claim because, as a matter of law, plaintiff has not pleaded cognizable damages and Defendants' alleged conduct did not create a foreseeable risk of harm to an interest that the law protects.

- Plaintiff's Third Claim for Relief (intentional infliction of emotional distress ("IIED")): Plaintiff's claim for IIED fails to state a claim because plaintiff cannot plausibly allege that Defendants intended to inflict severe emotional distress, that their alleged actions transgressed the bounds of socially tolerable conduct, or that plaintiff and Defendants had a special relationship.

- Plaintiff's Fourth Claim for Relief (Tortious Interference): Plaintiff's claim for tortious interference with his hypothetical professional basketball career fails to state a claim because plaintiff cannot plausibly allege that he had an actual or contemplated business relationship with any National Basketball Association ("NBA") team and because plaintiff failed to provide Defendants with the requisite notice under the Oregon Tort Claims Act ("OTCA").

Page 5 -    Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

- Plaintiff's Fifth Claim (Breach of Contract): Plaintiff's breach-of-contract claim should be dismissed because the allegations confirm that the University fulfilled its obligations under the terms of plaintiff's scholarship, which were the only contractual obligations to which plaintiff was entitled.

## A.  Plaintiff's Due Process Claim Should Be Dismissed Because the Individual Defendants Did Not Deprive Plaintiff of a Constitutionally Protected Interest

### 1.  Defendants' alleged actions did not implicate a constitutionally protected property or liberty interest

Plaintiff asserts that the Individual Defendants violated his due process rights guaranteed by the United States Constitution based on the manner in which the University conducted its investigation and the outcome and process of his administrative hearing.  To prevail on a due process claim, plaintiff must first "establish the existence of ' * * * a liberty or property interest,'" which he does not have.  *Shanks v. Dressel*, 540 F3d 1082, 1090 (9th Cir 2008) (quoting *Portman v. Cty. of Santa Clara*, 995 F2d 898, 904 (9th Cir 1993)).

Neither the University's investigation nor the administrative hearing implicated plaintiff's constitutional rights because plaintiff did not have a constitutionally protected property or liberty interest in attending the University, playing for its basketball team, or having his scholarship renewed.  Consequently, the Individual Defendants' conduct during the investigation and hearing cannot constitute a due process violation, no matter what procedure plaintiff was provided (which, nevertheless, was constitutionally adequate).  In addition, the sanction did not implicate plaintiff's liberty interests because he received notice and the opportunity to be heard before being suspended.

Protected interests in property "are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law * * * that support claims of entitlement to those benefits."  *Bd. of Regents of State Colls. v. Roth*, 408 US 564, 577, 92 S Ct 2701, 33 L Ed 2d 548

Page 6 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

(1972).  "Not every procedural requirement ordained by state law, however, creates a substantive property interest entitled to constitutional protection.  Rather, only those rules or understandings that support legitimate claims of entitlement give rise to protected property interests."  *Shanks*, 540 F3d at 1091 (internal quotation marks and citations omitted).  To be entitled to constitutional due process, "a person clearly must have more than an abstract need or desire * * * [or] unilateral expectation of" a benefit.  *Roth*, 408 US at 577.  Examples of legitimate entitlements are the continued receipt of welfare benefits issued in accordance with statutory or administrative standards defining eligibility, *Goldberg v. Kelly*, 397 US 254, 90 S Ct 1011, 25 L Ed 2d 287 (1970), and the continued employment of a tenured professor at a public university, *Slochower v. Bd. of Higher Ed.*, 350 US 551, 76 S Ct 637, 100 L Ed 692 (1956).

Liberty interests are "'those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.'"  *Roth*, 408 US at 572 (quoting *Meyer v. Nebraska*, 262 US 390, 399, 43 S Ct 625, 67 L Ed 1042 (1923)).  Liberty interests are reserved for the most fundamental of our rights, and "attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law."  *Paul v. Davis*, 424 US 693, 710-11, 96 S Ct 1155, 47 L Ed 2d 405 (1976).  The Supreme Court has "repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply [only when] the State seeks to remove or significantly alter that protected status."  *Id.*  The Court has, for example, refused to find liberty interests in the nonrenewal of a fixed-term employment contract, *Roth*, 408 US 564, and damage to one's personal reputation, without additional injury, *Davis*, 424 US 693.

Plaintiff had no property interest in enrollment at the University, his position on its basketball team, or the renewal of his athletic scholarship.  The Constitution therefore did not guarantee plaintiff any due process rights with regard to the University's investigation or his administrative hearing.  And plaintiff cannot plausibly contend that his liberty interests were implicated by the alleged conduct of the Individual Defendants because his suspension (after a finding that he violated the Student Conduct Code), his dismissal from the basketball team, and

Page 7 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

the nonrenewal of his fixed-term athletic scholarship did not implicate any interest "'essential to the orderly pursuit of happiness.'" *Roth*, 408 US at 572 (quoting *Meyer*, 262 US at 399).

        a.      <u>Plaintiff did not have a property or liberty interest in attending the University</u>

Students do not have a constitutionally protected property or liberty interest in public postsecondary education in Oregon. *See Ryan v. Harlan*, No. CV-10-626-ST, 2011 WL 711110, at *7 (D Or Feb. 22, 2011) (holding that a former university student had "no recognized due process interest in graduate level education. There is an established and significant property interest in universal elementary and high school education *due to mandated attendance by state laws*. However, post-high school, when attendance is not mandated, the property interest is less and less protected.") (emphasis added) (citation omitted); *Harrell v. S. Or. Univ.*, No. CV 08-3037-CL, 2010 WL 2326576, at *8 (D Or Mar. 24, 2010) ("Plaintiff cannot argue an entitlement to post-secondary education. Plaintiff cites no Oregon statutes to support his contention of a property or liberty interest, and, further, the Supreme Court has explicitly stated that 'education. . . is not among the rights afforded explicit protection under our Federal Constitution.'") (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 US 1, 35, 93 S Ct 1278, 36 L Ed 2d 16 (1972)); *Fernandez v. Rosenzwieg*, No. CIV. 95-241-FR, 1996 WL 453046, at *3 (D Or Aug. 8, 1996) ("There is no case holding that a student has a federally-protected due process, property or liberty interest in continued enrollment in or graduation from a state university. This court will not so hold.").

        The Supreme Court has explained that public university students have a legitimate claim of entitlement to their education *only if* state law confers this interest. *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 US 78, 82, 98 S Ct 948, 55 L Ed 2d 124 (1978) ("Because property interests are creatures of state law, respondent would have been required to show at trial that her seat at the Medical School was a 'property' interest recognized by Missouri state law.") (citation omitted). The rationale outlined in *Goss v. Lopez*, 419 US 565, 95 S Ct 729, 42 L Ed 2d

70075060.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

725 (1975), which confirmed the existence of a constitutionally protected property interest in mandatory K-12 education in Ohio, applies here to demonstrate the lack of any property interest. The Court found that "*on the basis of state law,* appellees plainly had legitimate claims of entitlement to a public education.  [Ohio laws] direct local authorities to provide a free [K-12] education to all residents between five and 21 years of age, and a compulsory-attendance law requires attendance * * *."  419 US at 573 (emphasis added).  Here, in stark contrast to laws for K-12 education in Ohio (and in Oregon), Oregon does not mandate that college-age residents (let alone non-residents such as plaintiff) attend college, nor does it provide free education at its public universities to all college-age residents.  Oregon law does not establish an entitlement to public postsecondary education.  The Constitution therefore does not afford due process protections to students suspended from Oregon's public universities.

Plaintiff's claim also incorrectly implies that his liberty interests were impinged because he has "suffered the opprobrium associated with a[] suspension from a university, and the opprobrium associated with committing a sexual assault (when in fact he committed no sexual assault)."[4]  (First Am. Compl. ¶ 53.)

There is no constitutional protection for the "opprobrium" of being suspended from school for a finding of "sexual misconduct."  Even if the University's finding of "sexual misconduct" was erroneous, in *Davis*, the Supreme Court explained that it "has never held that the mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient to invoke the guarantees of procedural due process" unless "a right or status previously recognized by state law was [simultaneously and] distinctly altered or extinguished."  424 US at 706, 711.  The Court's ruling clarified that, properly interpreted, *Wisconsin v. Constantineau,*

---

[4]  The University did not suspend plaintiff for "committing sexual assault," as plaintiff alleges. Plaintiff was suspended for "sexual misconduct," a term defined by the Student Conduct Code, in relevant part, as "penetration of another person, * * * when one * * * [d]oes not first obtain Explicit Consent from that person.  OAR 571-021-0105(30)(b)(A).

Page 9 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

400 US 433, 437, 91 S Ct 507, 27 L Ed 2d 515 (1971)—which reasoned that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential"—and the Court's subsequent rulings "establish[] no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause." *Davis*, 424 US at 702.

   To the extent that plaintiff alleges the violation of a liberty interest, that alleged interest fails for at least three reasons. First, plaintiff's suspension did not alter or extinguish a right previously recognized by state law. *See Davis*, 424 US at 711. As discussed above, there is no right to public postsecondary education in Oregon. Plaintiff's suspension from the University therefore could not have altered his cognizable educational rights, because he had none. Second, plaintiff was not sanctioned until *after* he received notice and had the opportunity to be heard at an administrative hearing (First Am. Compl. ¶ 46-47.), and furthermore, the Individual Defendants did not notify the public of plaintiff's suspension. *See Davis*, 424 US at 711. Finally, the Individual Defendants have not sought to prevent plaintiff from pursuing his education elsewhere. In the absence of efforts to deprive plaintiff of future opportunity, plaintiff cannot assert that the alleged actions of the Individual Defendants impaired his liberty interests. *See, e.g.*, *Roth*, 408 US at 573-74 ("The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. Had it done so, this * * * would be a different case.").

   Plaintiff did not have a constitutionally protected property or liberty interest in his education, and his suspension from the University did not impinge his liberty interests. Plaintiff's suspension therefore cannot give rise to a due process claim.

   b. <u>Plaintiff did not have a property or liberty interest in playing basketball for the University</u>

   Plaintiff also has no constitutional interest in his position on the University's varsity basketball team. In Oregon, because students do not have a constitutional right to attend

70075060.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

a public university, *see, e.g.*, *Fernandez*, 1996 WL 453046, at *3, they cannot have a constitutional right to participate in voluntary activities sponsored by the university.

The majority of jurisdictions recognize that "participation in intercollegiate athletics is not a constitutionally protected interest." *Justice v. Nat'l Collegiate Athletic Ass'n*, 577 F Supp 356, 366 (D Ariz 1983); *see e.g., Colo. Seminary (Univ. of Denver) v. NCAA*, 417 F Supp 885, 896 (D Colo 1976), *aff'd*, 570 F2d 320 (10th Cir 1978) ("[T]he plaintiff student-athletes have no constitutionally protected property or liberty interest in participation in intercollegiate athletics."); *Brands v. Sheldon Cmty. Sch.*, 671 F Supp 627, 631 (ND Iowa 1987) ("A clear majority of courts addressing this question in the context of interscholastic or intercollegiate athletics has found that athletes have no legitimate entitlement to participate.").

In accordance with *Roth*, unless "existing rules or understandings * * * such as state law" establish that college athletes are entitled to compete in intercollegiate athletics, dismissing a student-athlete from a college team does not disturb his or her civil rights. *See* 408 US at 577. Plaintiff cannot establish a property interest in playing basketball for the University because no rule or Oregon law creates an entitlement to participate in intercollegiate athletics. Plaintiff's dismissal from the team cannot therefore give rise to a due process claim.

      c.     <u>Plaintiff did not have a property or liberty interest in the renewal of his fixed-term athletic scholarship</u>

Plaintiff's two-quarter fixed-term athletic scholarship did not confer to him a property interest, and under the express terms of the contract plaintiff was not entitled to have his scholarship renewed for the 2014-15 academic year. (Thornton Decl., Exhibit B.) Plaintiff does not allege that his scholarship was revoked before the end of spring quarter 2014 or that the University failed to provide him with any benefit due under the terms of his scholarship. This is significant. Because the University fulfilled its obligations under the terms of the scholarship, plaintiff's claim can succeed only if he establishes a property interest in the renewal of his scholarship. To do so, plaintiff must show that state law, or some binding rule, entitled him to a

Page 11 -   Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

scholarship renewal.  But no rule or Oregon law required that the University renew plaintiff's scholarship.  Furthermore, such a contention contradicts the terms of plaintiff's scholarship, which was offered only "for two (2) quarters, commencing with the first day of classes Winter quarter of the 2013-14 academic year" and expiring at the end of spring quarter 2014.

In *Roth*, the Supreme Court held that a fixed-term employment contract, which does not guarantee an extension or renewal, "secure[s] absolutely no interest in re-employment" after the contract expires on its own terms.  408 US at 578.  This is because any property interest in an employment contract is "created and defined by the terms of [the] appointment."  *Id.*  In this case, plaintiff's scholarship secured an interest less significant than employment and one that did not rise to the level of a property interest.  But similar to Roth's contract, plaintiff's athletic scholarship was offered for a fixed term, without the promise of renewal.  Under the terms of the scholarship, the University had no obligation to renew plaintiff's scholarship for the subsequent academic year.  Plaintiff's "unilateral expectation" that his scholarship would be renewed did not create an entitlement to the scholarship.  Consequently, as a matter of law, plaintiff had no constitutionally protected interest in the renewal of his athletic scholarship.

        d.      <u>Oregon's Administrative Procedures Act did not confer a constitutionally protected interest on plaintiff</u>

Plaintiff pleads that the Individual Defendants conducted his administrative hearing in a manner that violated the Oregon Administrative Procedures Act (the "APA"), and in doing so violated his federal due process rights.  Plaintiff's claims allege violations of ORS 351.088, ORS 183.413-.497, and ORS 183.502.  These statutes, however, do not confer a property or liberty interest on plaintiff (instead they grant the University rulemaking authority and provide procedure for contested hearings), which is a prerequisite for establishing a due process violation.  *See Shanks*, 540 F3d at 1090-91.

Moreover, the University was not bound to the administrative procedures provided by ORS 183.413-.497 because ORS 351.088 grants the University the authority to

Page 12 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

"establish adjudicative procedures that are consistent with federal and state constitutional requirements and other provisions of law."  In accordance with this authority, the University established the procedures for administrative conferences, OAR 571-021-0205, and panel hearings, OAR 571-021-0210, as the exclusive procedures for adjudicating alleged violations of the Student Conduct Code.  In consequence, plaintiff's complaint alleges violations of administrative procedures that, as a matter of law, plaintiff was not entitled to receive. And, in any event, the discussion later in this section explains that plaintiff voluntarily, knowingly, and intelligently agreed to administrative conference procedures, expressly waving his right to a panel hearing or any other procedure he now alleges he was due.

Accordingly, plaintiff cannot establish that his constitutional rights were violated by the alleged failure of the Individual Defendants to comply with the cited provisions of the APA because these laws conferred no rights on plaintiff and the University was not obligated to follow the hearing procedures described in ORS 183.413-.497.

2.    Defendants are entitled to qualified immunity because they did not violate a clearly established constitutional right

No clearly established constitutional rights were implicated by the alleged actions of the Individual Defendants, and they are therefore entitled to qualified immunity and dismissal of plaintiff's due process claim.  "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 US 731, 131 S Ct 2074, 2080, 179 L Ed 2d 1149 (2011) (quoting *Harlow v. Fitzgerald*, 457 US 800, 818, 102 S Ct 2727, 73 L Ed 2d 396 (1982)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 US 635, 639, 107 S Ct 3034, 97 L Ed 2d 523 (1987) (internal

Page 13 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

quotation marks and citation omitted). Put differently, a public official's claim of qualified immunity is defeated only if "'in the light of pre-existing law' the unlawfulness of his conduct was 'apparent.'" *Grossman v. City of Portland*, 33 F3d 1200, 1208 (9th Cir 1994) (quoting *Anderson*, 483 US at 640).

The Ninth Circuit has explained that it is appropriate to rule on qualified immunity on a motion to dismiss. *See e.g.*, *Dunn v. Castro*, 621 F3d 1196, 1198-99 (9th Cir 2010) (reversing district court's denial of qualified immunity at motion to dismiss stage); *Padilla v. Yoo*, 678 F3d 748, 757 (9th Cir 2012) (same); *see also Hunter v. Bryant*, 502 US 224, 227, 112 S Ct 534, 116 L Ed 2d 589 (1991) ("[B]ecause [t]he entitlement is an immunity from suit rather than a mere defense to liability, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.") (internal quotations and citations omitted). According to the *Dunn* court, qualified immunity should be granted on a motion to dismiss if the law is not clearly established as applied to the facts taken as plaintiff has pleaded:

> "On review of a denial of a motion to dismiss based on qualified immunity, we review de novo whether governing law was clearly established at the time of the alleged violation. * * * We find it particularly appropriate to resolve Dunn's case at this stage because the Supreme Court has repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation." 621 F3d at 1198-99 (internal quotation marks and citations omitted).

Plaintiff did not have an entitlement to attend the University, play for its basketball team, or have his athletic scholarship renewed. But even if the court finds that interfering with any of these "unilateral expectation[s]," *Roth*, 408 US at 577, implicated a constitutionally protected right, such a right was not clearly established at the time of plaintiff's administrative hearing because no court in Oregon or the Ninth Circuit has ever found such a right to exist under similar circumstances. Moreover, a number of Oregon district court decisions have expressly rejected a constitutional right to public higher education. *See e.g.*, *Fernandez*, 1996 WL 453046, at *3. If anything, it is clearly established that there is no

Page 14 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

constitutionally protected interest in university education, intercollegiate athletics, or scholarship renewals.  In light of preexisting law, it could not have been apparent to the Individual Defendants that their alleged actions implicated plaintiff's constitutionally protected interests. *See Grossman*, 33 F3d at 1208 (quoting *Anderson*, 483 US at 640).  In accordance with the doctrine of qualified immunity, none of the Individual Defendants should be subject to any aspect of litigation concerning plaintiff's due process claim and the claim should be dismissed. *See Mitchell v. Forsyth*, 472 US 511, 526, 105 S Ct 2806, 86 L Ed 2d 411 (1985) (qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation").

        In addition, plaintiff's claims against Martin, Gottfredson, and Holmes ask the court to create additional constitutional protections that have never been recognized in this jurisdiction or elsewhere.  Plaintiff pleads that Martin, the University's former Assistant Dean of Students, suspended plaintiff on a temporary, emergency basis after the University received a report accusing plaintiff of sexual misconduct.  But plaintiff cannot demonstrate that at the time it was clearly established that a university official violates the Constitution by temporarily suspending a student from school while the university investigates serious allegations of sexual misconduct by the student.  Plaintiff pleads that Gottfredson, the University's former President, "in effect imposed discipline upon Mr. Austin * * * by making a public statement condemning Mr. Austin" soon after *The Oregonian* published a police report in which plaintiff was accused of rape.  (First Am. Compl. ¶ 37.)  But at the time of these remarks, it was not clearly established that a university president violates the Constitution by making a public statement (on a topic of public interest that concerns the university) that doesn't actually impose any school-based discipline on a student.  Plaintiff's claims against Holmes similarly fail to overcome qualified immunity.  Plaintiff pleads that Holmes "refused to respond to Mr. Austin's request for an appeal and did not return multiple phone calls from Mr. Austin's counsel, in violation of Mr. Austin's

Page 15 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

right to procedural and substantive due process."[5]  (First Am. Compl. ¶ 49.)  But plaintiff had no right to an appeal under the rules for University administrative conferences, *see* OAR 571-021-0205, and he expressly waived any appeal right he may have had in his signed June 5 waiver. Consequently, Holmes' alleged conduct could not have violated any clearly established constitutional right to an appeal, because no such right existed.

Because it could not have been apparent to Martin, Gottfredson, and Holmes that their alleged conduct violated the Constitution, the court should grant these defendants qualified immunity and dismiss plaintiff's due process claim.

3.    Plaintiff's administrative hearing was not constitutionally deficient

Plaintiff's due process claim fails to state a claim not only because no constitutionally protected rights were implicated by the alleged conduct of the Individual Defendants, and because the Individual Defendants are entitled to qualified immunity, but also because plaintiff's administrative hearing provided sufficient process.

a.    Plaintiff, who was represented by counsel, waived the procedures that he now claims not to have received

Plaintiff pleads that he requested a hearing that complied with ORS 351.088 (authorizing the University to establish procedures for administrative hearings) and ORS 183.413-.497 (establishing procedures for contested cases), but that he (1) did not receive a contested hearing, (2) was not allowed to subpoena witnesses, (3) was not provided with unredacted reports, and (4) was not permitted to cross-examine witnesses.  (First Am. Compl. ¶ 44.)  As previously discussed in this section, plaintiff had no legal right to any allegedly omitted procedure.  He therefore fails to plead facts that plausibly give rise to a constitutional violation.

---

[5]  The University disputes this allegation, though that dispute is not relevant to this motion.

Page 16 -    Defendants' Motion to Dismiss and Memorandum in Support

70075060.1    **MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Additionally, plaintiff leaves out of his complaint the fact that he waived—through counsel and in writing—any rights he may have had to these procedures. The procedures used in plaintiff's administrative hearing were agreed to by Laura Fine Moro, who was plaintiff's attorney during the administrative hearing process. Through a series of e-mails, Ms. Moro and Douglas Park, the University's general counsel, reached agreement on the procedures that would be followed; Ms. Moro accepted a proposal that plaintiff's hearing be conducted as an administrative conference, not as a panel hearing. This proposal also reduced the severity of the sanctions that plaintiff faced if the allegations against him were substantiated. On May 28, 2014, Ms. Moro e-mailed Mr. Park and Weintraub (who conducted plaintiff's hearing) to notify them that plaintiff agreed to the proposed procedures. That e-mail states, in relevant part:

> "I am writing to inform you that Brandon Austin opts to take the Special Administrative Hearing offer which he understands to be as follows:

> "1.    We may elect to appear in person at an actual meeting or provide information on paper to Sandy [Weintraub];

> "2.    We will set the date for the hearing or deadline to supplement materials out in the future * * *.

> "3.    If the allegation is founded, the maximum sanction allowable is suspension. Expulsion is off the table.

> "4.    If the allegation is founded, the notation on his transcript will read 'A student conduct code violation was founded.' There will be no mention of the subject of the allegation on his transcript.

> "5.    If the allegation is founded, the transcript will contain no mention of the imposed sanction."

Mr. Park replied to Ms. Moro that afternoon by e-mail, which stated, in relevant part: "This is just a quick note to confirm that I have received confirmation * * * that your client[ is] waiving the panel hearing and proceeding via administrative conference."

Page 17 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

On or about June 5, 2014, plaintiff confirmed his agreement to the administrative conference procedures in writing.  Among other agreements, plaintiff waived his right (a) to a panel hearing, (b) to have his accuser present at his administrative conference, and (c) to an appeal.  Plaintiff's waiver attested that Ms. Moro was present with him when he signed the document.  (Decl. of Lisa Thornton Exhibit D.)

By the terms of the May 28 e-mail exchange and plaintiff's June 5 waiver, plaintiff agreed that his hearing would be conducted in accordance with the rules applicable to administrative conferences, *see* OAR 571-021-0205, in exchange for not being expelled or having his transcript describe his misconduct.  OAR 571-021-0205 does not require the procedures plaintiff now asserts he was not provided.  Instead, what OAR 571-021-0205(1) required was, in relevant part:

> "(a)  Reasonable access to the case file prior to and during the conference, except to the extent access to such material is prohibited by law.  The case file may contain materials that are considered 'education records' pursuant to the Family Education Rights and Privacy Act (FERPA) of 1974, as amended and personal notes of University staff members and complainants.  Access to these materials may be prohibited by law.  Otherwise, to the extent allowed by law, copies of the case file will be provided upon request.

> "(b)  An opportunity to respond to all information provided and to ask the Director or designee hearing the case to contact relevant and necessary witnesses.

> "(c)  The right to be accompanied and assisted by an adviser."

Plaintiff does not plead that the Individual Defendants did not provide these procedures.

"[D]ue process rights * * * are subject to waiver."  *D. H. Overmyer Co. v. Frick Co.*, 405 US 174, 185, 92 S Ct 775, 31 L Ed 2d 124 (1972).  "The Supreme Court has recognized that constitutional rights may ordinarily be waived if it can be established by clear and convincing evidence that the waiver is voluntary, knowing and intelligent."  *Davies v. Grossmont Union High Sch. Dist.*, 930 F2d 1390, 1394-95 (9th Cir), *cert denied*, 501 US 1252 (1991) (citing *Overmyer*, 405 US at 185).

Page 18 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Plaintiff's waiver was made while he was represented by counsel.  Therefore, as a matter of law, he cannot establish that his waiver was anything other than voluntarily, knowing, and intelligent.  Because plaintiff agreed to an administrative conference, he cannot plead that his due process rights were violated because he did not receive other procedures.  Plaintiff waived a panel hearing and agreed to an administrative conference (plaintiff's only options under the University's administrative rules).  Accordingly, because the rules for administrative conferences did not allow plaintiff to subpoena witnesses, receive unredacted reports, or cross-examine witnesses, he had no right to these procedures at his hearing.  His procedural rights, under Oregon law, were limited to those rights included in OAR 571-021-0205, as listed above—procedures that the Individual Defendants followed.

      b.    <u>Plaintiff received notice and had an opportunity to be heard before his suspension from the University</u>

Setting aside plaintiff's waiver and lack of right to the procedures allegedly omitted from his administrative conference, plaintiff's Fourteenth Amendment rights were not violated because he received constitutionally sufficient due process.  Plaintiff does not allege that the University failed to provide him notice of his hearing or an opportunity to be heard *before* any alleged deprivation of supposed educational, athletic, or scholarship rights.  "Notice and a meaningful opportunity to be heard are the hallmarks of procedural due process." *Ludwig v. Astrue*, 681 F3d 1047, 1053 (9th Cir 2012) (internal punctuation and citation omitted).  Regardless of whether plaintiff had a right to due process, he received it and therefore his claim fails.  Additionally, the court should dismiss plaintiff's procedural due process claim with respect to Martin, Holmes, and Gottfredson for the additional reason that plaintiff does not assert that these defendants participated in the allegedly negligent investigation or administrative hearing.

    4.    <u>Plaintiff was not deprived of any substantive due process rights</u>

In addition to plaintiff's claim that the Individual Defendants violated his procedural due process rights, plaintiff alleges violations of his substantive due process rights.

Page 19 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

But those rights were not implicated by the Individual Defendants' alleged conduct because that conduct did not deprive plaintiff of a fundamental right or "shock[] the conscience." *Nunez*, 147 F3d at 871 (internal quotation marks and citation omitted).

"[T]he due process clause includes a substantive component which guards against arbitrary and capricious government action," *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F2d 1398, 1407 (9th Cir 1989), but this substantive component generally affords protection only to fundamental rights, *see Albright v. Oliver*, 510 US 266, 272, 114 S Ct 807, 127 L Ed 2d 114 (1994) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.").  Substantive due process guards against governmental "interference with property rights [that is] irrational or arbitrary," *Bateson v. Geisse*, 857 F2d 1300, 1303 (9th Cir 1988), and conduct that "shocks the conscience or interferes with rights implicit in the concept of ordered liberty," *Nunez*, 147 F3d at 871 (internal quotation marks and citation omitted).  It "is not 'a guarantee against incorrect or ill-advised' decisions." *Lumbreras v. Roberts*, 319 F Supp 2d 1191, 1211 (D Or 2004) (quoting *Collins v. City of Harker Heights*, 503 US 115, 129, 112 S Ct 1061, 117 L Ed 2d 261 (1992)).  For claims not affecting a fundamental right, the court "merely look[s] to see whether the government *could* have had a legitimate reason for acting as it did." *Halverson v. Skagit Cty.*, 42 F3d 1257, 1262 (9th Cir 1994) (internal quotation marks and citation omitted).

As a threshold issue, plaintiff was not deprived of a fundamental right and therefore cannot raise a substantive due process claim.  *See L.W. v. Grubbs*, 974 F2d 119, 120 (9th Cir 1992).  Plaintiff nevertheless also fails to plead factual allegations establishing that the conduct of the Individual Defendants was plausibly "irrational or arbitrary," *Bateson*, 857 F2d at 1303, or "shock[ed] the conscience or interfere[d] with rights implicit in the concept of ordered liberty," *Nunez*, 147 F3d at 871 (internal quotation marks and citation omitted).  Furthermore, plaintiff's claim does not implicate a fundamental right, such as the right to bodily integrity.  The court, therefore, need find only that the Individual Defendants *could* have had a

Page 20 -   Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

legitimate reason for their actions to dismiss this claim on this separate, additional basis.

Plaintiff alleges that Weintraub, the University's Director of Student Conduct and Community Standards, violated plaintiff's substantive due process rights through the manner in which he conducted plaintiff's administrative hearing. But it cannot be considered irrational or arbitrary for Weintraub to follow procedures that plaintiff agreed to, and plaintiff does not plead that Weintraub failed to follow the procedures prescribed in the May 28, 2014, e-mail exchange and plaintiff's June 5, 2014, waiver.

As previously discussed, Holmes' purported refusal to respond to plaintiff's alleged request for an appeal did not shock the conscience. Plaintiff had no right to appeal the outcome of this administrative hearing to the University (his appeal rights were exclusively through ORS 183.484 or 183.482, as discussed below in Section B). Thus, as a matter of law, it cannot shock the conscience that the University's Vice President for Student Life "refused to respond to Mr. Austin's request for an appeal" and did not "return multiple phone calls from Mr. Austin's counsel" (First Am. Compl. ¶ 49.) when (a) plaintiff's counsel was in communication with the University's general counsel and (b) plaintiff had no appeal right.

Martin's and Gottfredson's alleged conduct (issuing a suspension and making a public statement, respectively) did not shock the conscience. It cannot shock the conscience that the Assistant Dean of Students temporarily suspended a student while the University investigated a report that the student committed sexual misconduct, a severe violation of the Student Conduct Code. *See* OAR 571-021-0130. It also cannot shock the conscience that the University President issued a public statement regarding the conduct depicted in the public police report.

**B.      Plaintiff Is Precluded From Re-litigating the Validity of His Administrative Order And From Asserting His State Law Claims**

    1.      Plaintiff is precluded from re-litigating the validity of his administrative order, under the doctrine of issue preclusion

Plaintiff's suspension from the University was a final administrative order,

Page 21 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

ORS 831.310(6), the validity of which cannot be re-litigated by this court.  The full faith and credit statute, 28 USC § 1738, "requires that [federal courts] give the same preclusive effect to state court judgements as they would be given in the state in which they were rendered."  *Miller v. County of Santa Cruz*, 39 F3d 1030, 1032-33 (1994) (citing *Marrese v. American Acad. of Orthopedic Surgeons*, 470 US 373, 380, 105 S Ct 1327, 84 L Ed 2d 274 (1985)).  And the Ninth Circuit has explained that "the federal common law rules of preclusion * * * extend to state administrative adjudications of legal as well as factual issues, *even if unreviewed*."  *Miller*, 39 F3d 1030 (emphasis added) (internal quotation marks and citation omitted); *see also Chavez v. Boise Cascade Corp.*, 307 Or 632, 634, 772 P2d 409 (1989) (finding that issue preclusion applies to issues litigated in administrative determinations).  Accordingly, if Oregon law would preclude plaintiff from re-litigating an issue in Oregon state courts, plaintiff is also precluded here.

Under Oregon law, issue preclusion "arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding."  *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103, 862 P2d 1293 (1993).  "If a claim is litigated to final judgment, the decision on a particular issue or determinative fact is conclusive in a later or different action between the same parties if the determination was essential to the judgment."  *Drews v. EBI Companies*, 310 Or 134, 139-40, 795 P2d 531 (1990) (internal quotation marks and citations omitted).  Issue preclusion applies if five criteria are satisfied: (a) the issue litigated in the two proceedings is identical, (b) the issue was essential to the final decision in the prior proceeding, (c) the party against whom preclusion is sought had a full and fair opportunity to be heard on the issue, (d) the party against whom preclusion is sought was a party in the prior proceeding, and (e) the prior proceeding was the type of proceeding to which the state court gives preclusive effect.  *Nelson*, 318 Or at 104 (internal citations omitted).

Plaintiff's administrative conference meets the criteria for issue preclusion under Oregon law.  The facts and issues litigated in his administrative hearing (which concerned whether plaintiff violated the University's Student Conduct Code) are identical to facts and issues

Page 22 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

plaintiff will have to raise in this action and were essential to the final decision in his hearing, which satisfy the first and second criteria of issue preclusion. As explained previously, plaintiff does not allege (a) that he had no opportunity to submit evidence in his defense or (b) that he was denied the process due in accordance with the regulations for administrative conferences, which was the only process he was entitled to receive. Plaintiff, therefore, has not adequately pleaded that he was denied a full and fair opportunity to be heard—based on the only procedural rights that plaintiff could have been due. Finally, there can be no dispute that the fourth and fifth issue preclusion criteria are met in this case: this lawsuit involves the same parties as the prior proceeding and plaintiff's administrative hearing is a type of proceeding to which Oregon law gives preclusive effect. *See Chavez*, 307 Or at 634.

   The doctrine of issue preclusion prevents plaintiff from re-litigating his hearing. Plaintiff raises a due process challenge to his hearing, but the underlying contention (in his due process and state law claims) is that the outcome of his hearing was incorrect. He is precluded from asserting any claim or seeking any remedy that is contingent on such a contention because this court is obligated to accept the University's decision as correct.

  2. <u>Plaintiff is precluded from asserting his state law claims because he did not challenge his suspension through a direct appeal, as is required under Oregon law</u>

   As previously explained, plaintiff's suspension was an administrative order. ORS 831.310(6). In Oregon, the validity of an administrative order cannot be challenged unless the plaintiff appeals the decision through ORS 183.482 or 183.484. Plaintiff's claims are an impermissible attempt to circumvent Oregon statutory law and should be dismissed. In accordance with both ORS 183.482 (jurisdiction for review of contested cases) and ORS 183.484 (jurisdiction for review of orders other than contested cases), a petition for review of an agency order "shall be filed within 60 days only following the date the order" is served. This is the exclusive means for challenging an administrative order. *See* ORS 183.480(2) ("Judicial review of final orders of agencies shall be solely as provided by ORS 183.482 [and] 183.484 * * *.");

Page 23 - Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Lake County v. State of Oregon*, 142 Or App 162, 165, 920 P2d 1115 (1996) (collecting cases and explaining that "ORS 183.480(2) and numerous decisions of this court make clear that judicial review of final agency orders shall be solely as provided in the APA").  Here, plaintiff asserts state law violations based on Defendants' alleged conduct in connection with an adverse administrative order—his suspension—that plaintiff did not appeal to state court.[6]  He is foreclosed from raising his state law claims.

## C.    Defendants Are Entitled To Discretionary Immunity From Plaintiff's Tort Claims Under ORS 30.265

Defendants are immune from plaintiff's tort claims in accordance with ORS 30.265(6)(c) and (f); these claims should be dismissed.  ORS 30.265(6)(c) protects public bodies and their employees from liability for "[a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."  Under this provision, "discretionary immunity" applies when an official's conduct was "the result of a choice, that is, the exercise of judgment; that choice [] involve[d] public policy, as opposed to the routine day-to-day activities of public officials; and the public policy *choice* [was] exercised by a * * * person that has * * * the responsibility or authority to make it." *Ramirez v. Hawaii T & S Enterprises, Inc.*, 179 Or App 416, 419, 39 P3d 931 (2002).  Immunity also extends to claims "arising out of an act done or omitted under the apparent authority of law, * * * rule or regulation that is unconstitutional, invalid or inapplicable * * * unless such act was done or omitted in bad faith or with malice."  ORS 30.265(6)(f).  Therefore, in Oregon, a public defendant (whether a public body or employee) cannot be liable in tort for a decision made under

---

[6]  As explained in Section A, in accordance with the University's rulemaking authority granted in ORS 351.088, plaintiff was not entitled to the procedures for contested cases (including the procedures for judicial review of contested cases provided in ORS 183.482) and instead was limited to bringing an appeal through ORS 183.484.  *See* OAR 571-021-0250(5) ("The University Appeals Board Decision may be appealed to the extent provided in ORS Chapter 183.").  But the court need not reach this issue because plaintiff did not appeal his administrative order through either ORS 183.482 or 183.484.

Page 24 -    Defendants' Motion to Dismiss and Memorandum in Support

70075060.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

the actual or apparent authority of law, unless that decision was made in bad faith or with malice.

The University is a public body and all Individual Defendants were, at the time of their alleged actions, employees of the University. Any decision or action of Defendants made under the apparent authority of law was therefore immune from tort liability. ORS 30.265(6)(f). Plaintiff pleads (in each of his tort claims) that, at all relevant times, all Individual Defendants were "acting within the scope of their agency and employment" (First Am. Compl. ¶ 68, 72, 78). Put differently, their decisions and actions were made under the apparent authority of law, and were consequently immune from liability.

Moreover, plaintiff alleges that, at all relevant times, the Individual Defendants "were acting in accordance with their employer[']s[] official policy." (First Am. Compl. ¶ 59). Public employees who implement public policy are immune from tort liability under ORS 30.265(6)(c). *See Westfall v. State ex rel. Oregon Dept. of Corrections*, 355 Or 144, 161, 324 P3d 440 (2014) ("Once a discretionary choice has been made, the immunity follows the choice. It protects not only the officials who made the decision, but also the employees or agents who effectuate or implement that choice in particular cases."). According to plaintiff's pleadings, Defendants, acting within the course and scope of their employment, effectuated University policy by (a) investigating a complaint that plaintiff violated the University's Student Conduct Code, (b) conducting plaintiff's conduct hearing, and (c) suspending him from school. Defendants are therefore immune from liability because their decisions involved public policy and were made under the apparent authority of law. *See* ORS 30.265(6)(c) and (f).

**D.    Plaintiff's Negligence Claim Should Be Dismissed Because Plaintiff Does Not Allege Physical Injury or Property Damage And, as a Matter of Law, Defendants' Conduct Did Not Create a Foreseeable Risk of Harm to Plaintiff**

Plaintiff rewraps his procedural due process claims in tort, pleading that Defendants negligently investigated the report of sexual misconduct and negligently conducted plaintiff's administrative hearing. However, plaintiff cannot state a claim for negligence because it is a basic premise of Oregon law that there is generally no claim for negligent infliction of

Page 25 -    Defendants' Motion to Dismiss and Memorandum in Support

70075060.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

emotional distress.  And, in any event, plaintiff's Complaint does not plausibly allege that defendant's conduct caused a foreseeable risk of harm  In addition, the court should dismiss plaintiff's claim with respect to Martin, Holmes, and Gottfredson because plaintiff does not assert that they participated in the allegedly negligent investigation or the hearing.

1.    <u>Plaintiff failed to allege damages cognizable in negligence where no special relationship exists</u>

Plaintiff's alleged damages are not cognizable under Oregon negligence law. Plaintiff does not allege physical injury or property damage.  His negligence claim is effectively a claim for negligent infliction of emotional distress, which is not recognized in Oregon unless a special relationship exists between the parties.  *See Paul v. Providence Health Sys.-Oregon*, 351 Or 587, 597, 273 P3d 106 (2012) ("This court consistently has rejected claims for emotional distress damages caused by a defendant's negligence, in the absence of any physical injury[ except] * * * (1) where the defendant intended to inflict severe emotional distress, (2) where the defendant intended to do the painful act with knowledge that it will cause grave distress, *when the defendant's position in relation to the plaintiff involves some responsibility aside from the tort itself*, and (3) where the defendant's conduct infringed on some legally protected interest apart from causing the claimed distress.") (emphasis added) (internal quotation marks and citations omitted).

A special relationship exists when:

> "(1) One party relinquishes control over matters, usually financial, and entrusts them to the other party; (2) [t]he party with control is authorized to exercise independent judgment; (3) in order to further the other party's interests; and (4) [t]he relationship either is, or resembles, other relationships in which the law imposes a duty on parties to conduct themselves reasonably, so as to protect the other parties to the relationship."  *Bell v. PERB*, 239 Or App 239, 249-50, 247 P3d 319 (2010) (internal quotation marks and citations omitted).

No special relationship exists between a university and its students.  *See Freeman v. Busch*, 349 F3d 582, 587 (8th Cir 2003) (collecting cases and explaining that "since the late

Page 26 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1970s, the general rule is that no special relationship exists between a college and its own students because a college is not an insurer of the safety of its students") (emphasis omitted). Examples of special relationships are "that of physician-patient, counselor-client, or common carrier-passenger," *Rosenthal v. Erven*, 172 Or App 20, 23, 17 P3d 558 (2001), insurer-insured, *Georgetown Realty v. The Home Ins. Co.*, 313 Or 97, 831 P2d 7 (1992), and employer-employee, *McManus v. Auchincloss*, 271 Or App 765, 781, 353 P3d 17 (2015) (citing *Babick v. Oregon Arena Corp.*, 333 Or 401, 413-14, 40 P3d 1059 (2002)).  The relationship between a university and its students does not resemble these relationships, and should not be recognized as a special relationship because a university is not authorized by its students to exercise independent judgment on its students' behalf.  *See Bell*, 239 Or App at 249-50; *Shin v. Sunriver Preparatory School, Inc.*, 199 Or App 352, 367, 111 P3d 762 (2005) (A special relationship exists if a ""party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests.  In doing so, the party who is owed the duty is placed in a position of reliance upon the party who owes the duty * * *.""") (quoting *Curtis v. MRI Imaging Services II*, 148 Or App 607, 619, 941 P2d 602 (1997) (quoting *Conway v. Pacific University*, 324 Or 231, 240, 924 P2d 818 (1996))).  Plaintiff therefore did not have a special relationship with the University or any Individual Defendants, all of whom were University employees.  Because plaintiff does not, and cannot plausibly, assert a special relationship with Defendants, his negligence claim fails to state a claim.

Furthermore, plaintiff does not allege that Defendants infringed on a legally protected interest.  As explained in Section A, plaintiff's Complaint alleges that he was deprived of specific procedures that, as a matter of law, he lacked any protected interest in receiving.

Plaintiff's negligence claims should be dismissed because Oregon law does not recognize a negligence claim based on alleged negligent infliction of emotional distress absent special circumstances not present here.  *See Paul*, 351 Or at 597.

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

2.      As a matter of law, Defendants' alleged conduct did not create a foreseeable risk of harm to plaintiff

Even if the court considers plaintiff's negligence claim despite the lack of the requisite physical injury, plaintiff's negligence claim fails for the separate and additional reason that, as a matter of law, Defendants' alleged conduct did not create a foreseeable risk that plaintiff's administrative hearing would be negligently conducted or erroneously decided.  In the absence of a foreseeable risk of harm, Defendants cannot be found negligent.  *Chapman v. Mayfield*, 358 Or 196, 361 P3d 566 (2015).  To prove negligence where, as here, there is no special relationship, a plaintiff must establish five elements:

> "(1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent."  *Solberg v. Johnson*, 306 Or 484, 490-91, 760 P2d 867 (1988) (citing *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987)).

A defendant is not liable for negligence if the defendant's conduct did not "'unreasonably create[] a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff.'"  *Dauven v. George Fox Univ.*, No. CV. 09-305-PK, 2010 WL 6089077, at *22 (D Or Dec. 3, 2010) (quoting *Fazzolari*, 303 Or at 17).  A foreseeable risk "'is one which could have been anticipated because there was a reasonable likelihood that it could happen.'"  *Chapman*, 358 Or at 206 (quoting *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 609, 469 P2d 783 (1970)).  "[T]he question is whether a reasonable person considering the potential harms that might result from his or her conduct would 'have reasonably expected the injury to occur.'"  *Id.*  The potential harm must be of the type "that the defendant knew or should have known" about; the plaintiff's allegations cannot "describe[e] the type of harm at risk too generally."  *Chapman*, 358 Or at 211.

Plaintiff fails to plead facts sufficient to show that Defendants' alleged conduct created a foreseeable risk that his administrative hearing would be negligently conducted or that

Page 28 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

such a risk, if foreseeable, was unreasonable given the circumstances. Plaintiff brings his negligence claim against all Defendants, but pleads that only Weintraub participated in his administrative hearing. Consequently, for plaintiff to establish the first element of his claim, he would need to plead facts indicating that Weintraub knew or should have known that the hearing procedures were likely to result in an erroneous decision.

As explained previously, plaintiff agreed to the procedures for his administrative hearing in his attorney's May 28 e-mail and his June 5 waiver. It is inconsistent for plaintiff to voluntarily agree to a set of procedures and now complain that these procedures created an unreasonable and foreseeable risk of harm. (See Am. Compl. ¶ 68.) It is not plausible to conclude that Weintraub acted unreasonably in conducting the hearing in the manner consistent with the procedures that plaintiff elected to receive. Plaintiff's claim of negligent conduct during his administrative hearing should be dismissed because he fails to, and cannot plausibly, plead that Defendants' conduct created a foreseeable risk of harm.

Plaintiff also asserts that Defendants had a duty "to conduct a campus investigation in a competent manner and in accordance with societal standards." (First Am. Compl. ¶ 67.) Plaintiff, however, does not plead factual allegations concerning the investigation, other than mentioning that a University student (who, according to plaintiff's own complaint, was not present for all the events in question) allegedly gave an investigator information that contradicted parts of the police report. (First Am. Compl. ¶ 40.) Plaintiff has therefore failed to plead facts sufficient to show that it was plausible that the University's investigation was negligently conducted. Plaintiff's claim of negligent investigation should be dismissed.

**E.      Plaintiff's IIED Claim Should Be Dismissed Because, as a Matter of Law, Defendants' Alleged Conduct Did Not Transgress the Bounds of Socially Tolerable Conduct**

The court should dismiss plaintiff's IIED claim for essentially the same reason that plaintiff's substantive due process claim fails. Defendants' alleged conduct did not, as a

70075060.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

matter of law, transgress the bounds of socially tolerable behavior, and plaintiff did not have a special relationship with Defendants, which is typically necessary to find liability for IIED.  *See McGanty v. Staudenraus*, 321 Or 532, 543, 901 P2d 841 (1995) (elements of IIED); *Delaney v. Clifton*, 180 Or App 119, 130, 41 P3d 1099 (2002) (necessity of special relationship).

To prove IIED, a plaintiff must establish that "'(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.'"  *McGanty*, 321 Or at 543 (quoting *Sheets v. Knight*, 308 Or 220, 236, 779 P2d 1000 (1989)).

Whether the defendant's alleged conduct "amounts to an actionable outrageous transgression of social norms is a fact-specific, case-by-case determination," *McManus*, 271 Or App at 781 (citing *Lathrope-Olson v. Dept. of Transportation*, 128 Or App 405, 408, 876 P2d 345 (1994), that is "based on the totality of the circumstances," *House v. Hicks*, 218 Or App 348, 358, 179 P3d 730 (2008).  But "[i]t is a question of law whether[] * * * defendants' conduct constitutes 'extraordinary conduct which a reasonable jury could find beyond the farthest reaches of socially tolerable behavior.'"  *Tenold v. Weyerhaeuser Co.*, 127 Or App 511, 517, 873 P2d 413 (1994), *rev. dismissed*, 321 Or 561 (quoting *Hall v. The May Dep't Stores*, 292 Or 131, 137, 637 P2d 126 (1981)), *overruled on other grounds by Patrick v. State of Oregon*, 178 Or App 97 (2001).  Only conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community'" establishes a sufficiently outrageous transgression.  *House*, 218 Or App at 358 (quoting Restatement (Second) of Torts § 46 cmt d (1965)).

In analyzing whether the allegedly distressing conduct is sufficiently outrageous, "the most important [factor] is whether the parties are in a special relationship."  *Marquez v. Harper Sch. Dist. No. 66*, No. CV-09-1254-SU, 2011 WL 2462035 at *19 (D Or Mar. 24, 2011)

Page 30 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

(citing *McGanty*, 321 Or at 547-48).  "In fact, the lack of such a relationship generally defeats a conclusion that the conduct is actionable through an IIED claim."  *Delaney*, 180 Or App at 130.

In light of these standards, the court can evaluate Defendants' alleged conduct as a matter of law.  *Tenold*, 127 Or App at 517 (quoting *Hall*, 292 Or at 137).  As pleaded, Defendants' actions did not constitute an extraordinary transgression of the bounds of socially tolerable conduct, exceed the farthest reaches of socially tolerable behavior, or go beyond all possible bounds of decency.

Plaintiff alleges that Weintraub is liable for conducting plaintiff's administrative hearing in accordance with the mutually agreed-upon process.  As discussed previously, plaintiff's May 28 e-mail and June 5 waiver provided his consent to an administrative conference (and waived any right he may have had to other procedures).  Accordingly, it was not "an extraordinary transgression of the bounds of socially tolerable conduct" for Weintraub to conduct plaintiff's hearing in accordance with the administrative conference procedures provided at OAR 571-021-0205.  Plaintiff has not pleaded that Weintraub failed to follow any of these procedures.

Plaintiff's claims against Martin, Gottfredson, and Holmes should also be dismissed because it did not exceed the farthest reaches of socially tolerable behavior (a) for Martin to place plaintiff on an emergency suspension while the University conducted an investigation into plaintiff's then-alleged misconduct, (b) for Gottfredson to comment publicly in response to serious (and already public) allegations of criminal misconduct involving several University students, or (c) for Holmes allegedly not to respond to plaintiff's request for an appeal, when plaintiff had no right to an appeal.

Defendants' conduct was not offensive by any objectively reasonable measure.  Moreover, as explained above in the discussion of negligence liability, plaintiff did not have a

70075060.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

special relationship with Defendants. *See Delaney*, 180 Or App at 130. Accordingly, plaintiff's claim should be dismissed with regard to all Defendants.

**F.      Plaintiff Cannot State a Claim for Tortious Interference With Prospective Economic Advantage Because He Fails to Allege a Relationship With the NBA and Failed to Provide the Required Notice of This Claim to the University**

Plaintiff's fourth claim is for "tortious interference with prospective economic relations." Oregon courts do not recognize a tort by that name. Oregon courts do, however, recognize the tort of "intentional interference with economic relations," *McGanty*, 321 Or at 535, which incorporates a claim for "intentional interference with prospective economic advantage," *Allen v. Hall*, 328 Or 276, 281, 974 P2d 199 (1999). This distinction is not semantic. It is a substantive distinction affecting what types of relationships are protected from interference by third parties under this tort. Accordingly, a plaintiff may recover for losses stemming from interference with an existing business relationship, but not from alleged losses stemming from interference with a nonexistent business relationship, as plaintiff seeks to do here.

Plaintiff alleges that Defendants "intentionally, recklessly, and tortiously interfered with Mr. Austin's prospective relationship with NBA teams" through "improper means" and with an "improper purpose." (First Am. Compl. ¶ 78.) To prevail on this claim, plaintiff must prove six elements:

> "(1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages." *McGanty*, 321 Or at 535.

Plaintiff's claim should be dismissed because, based on his allegations, plaintiff cannot plausibly establish any element of the tort. Also, this claim should be dismissed for the separate and additional ground that he failed to provide adequate notice of his claim to the University, as required by the OTCA.

70075060.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1. <u>Plaintiff does not allege an existing business relationship with an NBA team, which is necessary to recover for the intentional interference with a prospective economic advantage</u>

Plaintiff fails to allege facts that plausibly meet the substantive elements of this claim. To satisfy the first element, plaintiff must show the existence of "a *voluntary relationship with another party that would have very likely resulted in a pecuniary benefit for the plaintiff but for the defendant's interference.*" *Cron v. Zimmer*, 255 Or App 114, 127, 296 P3d 567 (2013) (emphasis added). This is because the tort "protects the expectation [that a] relationship will produce the desired benefit, not '"the more speculative expectation that a potentially beneficial relationship will arise."'" *Sole Energy Co. v. Petrominerals Corp.*, 26 Cal Rptr 3d 798, 821 (Ct App 2005) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P3d 937, 957 (Cal 2003)(quoting *Westside Ctr. Assocs. V. Safeway Stores 23, Inc.*, 49 Cal Rptr 2d 793, 804 (Ct App 1996))). A plaintiff must also allege that the defendant had knowledge of the plaintiff's claimed business relationship. *See Erlandson v. Pullen*, 45 Or App 467, 472, 608 P2d 1169 (1980) ("plaintiff's complaint states the necessary elements" because he pleads that defendant "had knowledge of []his developing relationship").

Moreover, Oregon courts do not permit tort recovery for alleged interference with a hypothetical business relationship. Though a plaintiff need not have a contractual relationship with a third party to recover for interference with economic relations, the plaintiff and the third party must have—at the least—a preexisting relationship in which a third party has more than an abstract intention to provide the plaintiff with a pecuniary benefit. In *McGanty*, the Oregon Supreme Court explained that the tort of intentional interference with economic relations "serves as a means of protecting contracting parties against interference with their contracts from outside parties." 321 Or at 536 (emphasis omitted). For example, in *Cron*, the plaintiffs and the defendant were siblings. Their mother died intestate, and her widower inherited her mineral rights to a piece of real property. The widower then sold this land to the defendant for one

Page 33 -   Defendants' Motion to Dismiss and Memorandum in Support

70075060.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

dollar, allegedly with the intent that the defendant would create a family trust to distribute proceeds from the mineral rights to all the siblings. The defendant failed to do this, and her siblings sued. Relying on evidence of the plaintiffs' and the widower's prior discussions (which confirmed the widower's intent to distribute the proceeds to the plaintiffs), the court concluded that the plaintiffs and the widower had established a "voluntary relationship" that "would have very likely resulted in pecuniary benefit for the plaintiff but for the defendant's interference," thereby meeting the requirement of the "existence of an economic relationship." 255 Or App at 127; *see also, Straube v. Larson*, 287 Or 357, 360, 600 P2d 371 (1979) (finding that a preexisting relationship between a hospital and physicians who contract with the hospital is a business relationship within the scope of intentional interference with economic relations).

In contrast to the plaintiffs in *Cron*, *McGanty*, and *Straube*, plaintiff here does not allege and cannot allege the existence of a voluntary, preexisting relationship with any NBA team. Plaintiff's pleadings allege his desire to play in the NBA and his potential to do so, but plaintiff does not assert that he had a business relationship with any NBA team at the time of his alleged injury[7] or that, even if he did, Defendants were aware of this relationship, as he is required to allege. Plaintiff's claim for intentional interference with economic relations should be dismissed because he has failed to plead that he that he had a business relationship with the NBA or that Defendants had knowledge of such a relationship.

    2.    <u>Plaintiff does not allege a sufficiently likely prospective business relationship with any NBA team to recover in tort</u>

Even if the court rules that plaintiff may assert his claim based on his contention that he was going to play professional basketball (without requiring plaintiff to allege an existing business relationship or that Defendants knew of this relationship), plaintiff cannot recover

---

[7] Plaintiff's allegation is akin to a highly academically successful high school senior alleging that Harvard interfered with her business relationship with Yale Law School (or a specific law firm) by denying her admission as an undergraduate.

Page 34 -    Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

because he cannot plausibly allege that it was "very likely" that he would receive an NBA contract. *See Cron*, 255 Or App at 127 (the pecuniary advantage must be "very likely"); *see also Klein v. Grynberg*, 44 F3d 1497, 1506 (10th Cir 1995) ("a protected relationship exists only if there is a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope").

Plaintiff cannot establish that his prospect of entering a business relationship with an NBA team is "very likely" to occur merely by asserting his hope of playing professional basketball or by concluding that he was "widely projected to be selected in the first round of the NBA draft." (First Am. Compl. ¶ 52.) As a matter of law, plaintiff's claim that he will have a career as an NBA player is "far too speculative" to establish a prospective business relationship. *Parish v. NCAA*, 506 F2d 1028, 1034 n.17 (5th Cir 1975); *see also Hawkins v. NCAA*, 652 F Supp 602, 611 (CD Ill 1987) ("future professional [sports] careers are mere expectations"); *McAdoo v. Univ. of N.C. at Chapel Hill*, 736 SE2d 811, 822 (NC Ct App 2013) (rejecting plaintiff's claims of damages for diminished "subsequent earnings as an NFL football player" and explaining that "when disappointed student-athletes have presented similar arguments to courts, both in this state and elsewhere, these claims for damages have been rejected as speculative"). Plaintiff's claimed relationship with NBA teams is purely speculative at this point and does not rise to the level of factual plausibility.

3.   <u>Plaintiff's allegations fail to support his conclusory statements that Defendants acted intentionally and with an improper purpose or by improper means</u>

Plaintiff cannot plausibly allege that defendants intentionally caused injury to plaintiff, or that Defendants acted with improper means or for an improper purpose. "The burden of proof rests with a plaintiff to show both that a defendant intentionally interfered with the plaintiff's economic relationship and that the defendant had no privilege to do so." *Northwest Natural Gas Cov. Chase Gardens* (citing *North Pacific v. Moore*, 275 Or 359, 369, 551 P2d 431 (1976); *see also Straube*, 287 Or at 361 ("[P]laintiff must not only prove that defendant

Page 35 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

intentionally interfered with his business relationship but also that defendant * * * interfered for an improper purpose rather than for a legitimate one, or that defendant used improper means which resulted in injury * * *.").  "[I]f liability in tort is to be based on an actor's purpose, then the purpose must be to inflict injury on the plaintiff as such.  And, if liability in tort is based on an actor's means, then the means must violate some objective, identifiable standard * * *."  *Northwest Natural*, 328 Or 487 at 498 (internal quotation marks and citation omitted).

Plaintiff pleads that Defendants "intentionally" interfered with his alleged relationship with NBA teams (First Am. Compl. ¶ 78).  Yet plaintiff does not plead any facts that make such a conclusion plausible.  And no such facts exist.  Plaintiff does not contend that Defendants were even aware of plaintiff's alleged business relationship with the NBA; it would is impossible for Defendants to intentionally interfere with a relationship they did not know existed.  *See Erlandson*, 45 Or App at 472.  Further, the facts alleged confirm that the only plausible interpretation of Defendants' actions is that they were motivated by the intention (a) to determine whether plaintiff violated the University's Student Conduct Code by committing an act of sexual misconduct, as defined by OAR 571-021-0105(30) and (b) if the allegations against plaintiff were substantiated, to determine an appropriate and lawful educational sanction.

Plaintiff also pleads that Defendants "engineered an unconstitutional 'kangaroo court' hearing with the purpose of finding that Mr. Austin committed sexual assault."  (First Am. Compl. ¶ 68.)  But plaintiff's labeling his administrative hearing a "kangaroo court" does not establish that Defendants acted with improper means.  Again, following the agreed-upon procedures, Weintraub evaluated the evidence presented at plaintiff's hearing and determined that plaintiff had violated the Student Conduct Code.  Weintraub cannot be said to have acted with "improper means" by conducting a hearing according to the agreed-upon procedures just because he reached a decision that was adverse to plaintiff (a decision this court is precluded from reviewing).  *See Straube,* 287 Or at 361 ("[A] case is made out which entitles plaintiff to go to a

Page 36 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

jury only 'when interference resulting in injury to another is wrongful by some measure beyond the fact of the [alleged] interference itself'.") (quoting *Top Service Body Shop v. Allstate Ins. Co.*, 283 Or 201, 209, 582 P2d 1365 (1978)).

    4.    <u>Plaintiff failed to provide adequate notice of his claim, as required under the OTCA</u>

        Because the University is a public body and the Individual Defendants were public employees, the OTCA requires that plaintiff provide notice of his claim within 180 days of his alleged injury. ORS 30.260(6). Specifically, plaintiff must allege that, within 180 days after his alleged injury, he placed the University on "actual notice" of the time, place, and circumstances giving rise to that claim. *Id.* While the plaintiff need not identify the precise legal claim (e.g. "IIED") that the plaintiff intends to assert, the plaintiff must provide notice of the factual basis (time, place, circumstances) that gives rise to the ultimate claim asserted. *Flug v. Univ. of Oregon*, 335 Or 540, 554, 73 P3d 971 (2003). The notice required by ORS 30.275 is a substantive condition precedent to recovery in tort against a public body. *Orr v. City of Eugene*, 151 Or App 541, 543, 950 P2d 397 (1997).

        On October 7, 2014, the University received a Tort Claims Notice from plaintiff's attorney. The Tort Claims Notice did not allege the time, place, and circumstances that give rise to his claim for tortious interference with prospective economic advantage. Plaintiff cannot prevail on this claim unless he can establish the existence of a professional or business relationship with the NBA, but plaintiff's notice did not mention this alleged business relationship let alone the time and place of its creation, duration, or the circumstances of the relationship. Consequently, plaintiff failed to notify the University of the factual basis giving rise to his claim. Nothing in plaintiff's October 2014 letter put the University on notice that it should have collected evidence relevant to its defense of plaintiff's claimed relationship with the NBA. One of the purposes of the OTCA's notice requirement is to provide public bodies with the opportunity to promptly collect such evidence. *See e.g.*, *Robinson v. Shipley*, 64 Or App 794,

70075060.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

798, 669 P2d 1169 (1983).  Plaintiff's claim should be dismissed because plaintiff did not provide actual notice of his intent to assert this claim, as is required under ORS 30.275.

Plaintiff's claims for intentional interference with prospective economic advantage should be dismissed.  He failed to plead facts that could plausibly establish that (a) plaintiff had an existing relationship with an NBA team, (b) Defendants were aware of plaintiff's alleged relationship with the NBA and acted with the intent of causing injury to this relationship and by an improper means or motive, and (c) plaintiff give adequate notice of his claim in accordance with the OTCA.  Furthermore, plaintiff cannot plausibly allege that Defendants' conduct was the "but for" cause of plaintiff's alleged injuries or that he has sustained any monetary damages, which are both required to prove his claim.

## G.    Plaintiff's Claims for Economic Damages in Tort Should Be Dismissed Because, as a Matter of Law, His Allegations Are Too Speculative to State a Claim

With respect to plaintiff's tort claims (negligence, IIED, and tortious interference), plaintiff has not yet incurred any of the economic damages he asserts, and he will not plausibly be able to prove that he is likely to sustain such damages as a result of Defendants' alleged conduct.  Oregon law permits economic damages for the impairment of future income, but only when a plaintiff has sustained "objectively verifiable monetary losses."  ORS 31.710(2)(a).  Oregon courts have interpreted the term "objectively verifiable losses" to mean losses that are "capable of confirmation by reference to empirical facts."  *Kahn v. Pony Express Courier Corp.*, 173 Or App 127, 160, 20 P3d 837 (2001) (emphasis omitted) (internal quotation marks and citation omitted).  A plaintiff need not prove with mathematical precision the amount of economic damages sustained, *see Brown v. Zimbrick Logging*, 273 Or 463, 468, 541 P2d 1388 (1975), but a plaintiff must prove that damages were in fact sustained or are reasonably certain to be sustained, *see Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F3d 353, 366 (9th Cir 2005) ([U]ncertainty which prevents a recovery is uncertainty as to the fact of damage and not as to its amount.") (emphasis omitted) (internal quotation marks and citation omitted); *see*

Page 38 -    Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*also McAdoo*, 736 SE2d at 822 (alleged damages to student-athletes' prospective professional sports careers are not recoverable because they are not reasonably certain).

Plaintiff pleads, in each of his tort claims, that he "is likely to sustain economic damages in the form of lost income." (First Am. Compl. ¶¶ 70, 76, 80.)  These claimed damages arise out of plaintiff's assertion that as a result of Defendants' allegedly wrongful actions, he has "diminished chances of playing in the NBA." (First Am. Compl. ¶ 53.)  His claims do not, therefore, rise to the level of "objectively verifiable losses" that are "capable of confirmation by reference to empirical facts." *Kahn*, 173 Or App at 160 (emphasis omitted) (internal quotation marks and citation omitted).  As an initial matter, plaintiff does not plead facts supporting his conclusory statement that his chances of an NBA career have been diminished.  More fundamentally, however, the concept of "diminished chances" of a prospective professional sports career is not amenable to tort liability.  The facts of plaintiff's case prove the point.  At the time of his complaint, plaintiff was only 21 years old. (First Am. Compl. ¶ 2.)  He does not claim that Defendants' allegedly wrongful conduct made him ineligible to enter the NBA draft or to sign with an NBA team as a free agent.  If plaintiff is selected in a future NBA draft or otherwise earns a spot on an NBA roster, he will not suffer any economic damages as the result of his allegedly diminished chance of playing professional basketball.  If plaintiff is permitted to recover economic damages based on his "diminished chances" of an NBA career and later becomes an NBA player, he will in essence be paid twice.

To prove his damages, plaintiff would also have to show that he would have had an NBA career but for Defendants' conduct.  The court should refrain from making this evaluation, as other jurisdictions have done. *See McAdoo*, 736 SE2d at 822.  Again, the facts of plaintiff's case prove the point.  Plaintiff alleges that he was highly recruited out of high school (First Am. Compl. ¶ 10), but because of his suspension from Providence College (First Am. Compl. ¶ 11) and his transfer to the University, at the time of his alleged injury plaintiff had yet to play in a regular-season college basketball game.  A court of law cannot, with any reasonable

Page 39 -    Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

degree of certainty, evaluate plaintiff's prospects of having a professional basketball career, under these circumstances. Nor could it evaluate whether Defendants' actions—not other relevant factors, for example, the national news media's coverage of the police report filed against plaintiff—may hypothetically keep plaintiff out of the NBA?

Plaintiff has not yet suffered economic damages, and he cannot plausibly allege that he is reasonably certain to sustain them as a result of Defendants' allegedly wrongful conduct. His claims for economic damages in tort should be dismissed.

## H.    Plaintiff Fails to State a Claim for Breach of Contract and Plaintiff Alleges No Cognizable Damages

Plaintiff alleges that the University breached the express terms of its contract with plaintiff and the implied covenant of good faith and fair dealing by not renewing plaintiff's athletic scholarship beyond spring quarter 2014. It is undisputed, however, that the University fulfilled its obligations under plaintiff's scholarship and had no additional contractual obligations to him. The express terms of a contract detail "the specific obligations that each party owes the other." *Conway*, 324 Or at 237. In addition to these terms, "[t]he law imposes a duty of good faith and fair dealing to facilitate performance and enforcement of the contract where it is consistent with and in furtherance of the agreed-upon terms of the contract or where it effectuates the reasonable contractual expectations of the parties." *U.S. National Bank v. Boge*, 311 Or 550, 567, 814 P2d 1082 (1991) (internal quotation marks and citations omitted). This duty, however, "does not vary the substantive terms of the bargain * * *, nor does it provide a remedy for an unpleasantly motivated act that is expressly permitted by contract or statute." *Id.*

Plaintiff claims that he "had the objectively reasonable expectation, based upon the express terms of the contractual relationship governing the athletic scholarship, that the University of Oregon would renew his scholarship." (First Am. Compl. ¶ 83.) But this contradicts the terms of the agreement. The express terms of plaintiff's contract provide that plaintiff would receive his scholarship for two academic quarters. Nowhere in plaintiff's

Page 40 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

scholarship did it provide for renewal of the scholarship when it expired, of its own terms, in June 2014.  In fact, the only references to renewal of plaintiff's scholarship were that (1) plaintiff's scholarship "assistance [would] be considered for renewal as long as" he met specified eligibility requirements and (2) under NCAA rule 15.3.5, plaintiff's scholarship could be nonrenewed if plaintiff was "promptly notif[ied]" that his scholarship was not being renewed.

The University fulfilled its contractual obligations by providing plaintiff with all benefits due through the expiration of his fixed-term scholarship.  Plaintiff does not plead that the University revoked his scholarship or failed to provide him with any contractual benefit due during the six-month duration of his scholarship.  He pleads only the conclusory statement that the University breached its contract, but does not plead any facts identifying how the University allegedly breached this agreement, and his claim should therefore be dismissed.  *See Ross v. Creighton Univ.*, 957 F2d 410, 416-17 (7th Cir 1992) (explaining that for a student-athlete to allege a breach of contract based on a scholarship, the plaintiff "must point to an identifiable contractual promise that the defendant failed to honor").

Even if plaintiff demonstrates a breach of contract (which he cannot), his complaint overstates what damages are available to him.  Damages for breach of contract are limited to plaintiff's "expectation interest."  *Zehr v. Haugen*, 318 Or 647, 658, 871 P2d 1006 (1994) (citing *Nelson Equip. Co. v. Harner*, 191 Or 359, 369, 230 P2d 188 (1951)).  Here, plaintiff's expectation interest is the value of his athletic scholarship, not a hypothetical NBA contract.  Plaintiff, however, alleges damages for losses he "expects to sustain," but has yet to incur.  (First Am. Compl. ¶ 86.)  But "loss of future income" (First Am. Compl. ¶ 85) based on a breach of contract is recoverable only if the alleged future profits are probable, *see MacLean & Associates v. American Guaranty Life*, 85 Or App 284, 296, 736 P2d 586 (1987), and "'ordinarily follows the breach of such a contract in the usual course of events, or that reasonable men in the position of the parties would have foreseen as a probable result of breach,'" *Cont. Plants v.*

Page 41 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Measured Mkt. Services, Inc.*, 274 Or 621, 626, 547 P2d 1368 (1976) (quoting 5 Corbin on Contracts 79, s 1010 (1964)).  As discussed previously in Section F, plaintiff's hypothetical NBA contract (and thus his alleged future loss of income) is speculative, not probable.  Furthermore, plaintiff must allege that his claimed losses were in fact foreseeable.  *Doyle v. Oregon Bank*, 94 Or App 230, 234, 764 P2d 1379 (1988).  Plaintiff did not, and cannot plausibly, allege that his losses were foreseeable.  His claim should therefore be dismissed for this additional reason.

## IV.    CONCLUSION

Whether or not plaintiff's chances of playing professional basketball were diminished by his suspension, the University and its employees are not liable for suspending plaintiff after he was found to have violated the Student Conduct Code by committing an act of sexual misconduct.  Plaintiff's claims seek remedy in constitutional law for an alleged injury to constitutional rights that do not exist (and review of an administrative order that is precluded from judicial review), remedy in tort for alleged relationships that did not exist, remedy in contract law for a contract that was not breached, and his claims are premised on damages that have not been incurred.  In addition, Defendants are entitled to discretionary immunity.  Defendants ask the court to dismiss the Complaint.

DATED this 25th day of January, 2016.

MILLER NASH GRAHAM & DUNN LLP

s/ Michelle Barton Smigel

Michelle Barton Smigel, P.C., OSB No. 045530
michelle.smigel@millernash.com
Michael Porter, P.C., OSB No. 003560
mike.porter@millernash.com
Telephone:  503.224.5858 / Fax:  503.224.0155
*Attorneys for Defendants*

Page 42 -    Defendants' Motion to Dismiss and Memorandum in Support

70075060.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

I hereby certify that I served the foregoing Defendants' Motion to Dismiss and

Memorandum in Support on:

Ms. Marianne Dugan
259 East 5th Avenue, Suite 200-D
Eugene, Oregon  97401
Fax:  (866) 650-5213
E-mail:  mdugan@mdugan.com

*Attorneys for Plaintiff Brandon Austin*

Mr. Alan C. Milstein
Sherman Silverstein Kohl Rose & Podolsky
308 Harper Drive, Suite 200
Moorestown, New Jersey  08057
Fax:  (856) 488-4744
E-mail:  amilstein@shermansilverstein.com

*Attorneys for Plaintiff Brandon Austin*

by the following indicated method or methods on the date set forth below:

☒ **CM/ECF system transmission.**

☐ **E-mail.**  (Courtesy copy.)

☐ **Facsimile communication device.**

☐ **First-class mail, postage prepaid.**

☐ **Hand-delivery.**

☐ **Overnight courier, delivery prepaid.**

DATED this 25th day of January, 2016.

s/  Michelle Barton Smigel
Michelle Barton Smigel, OSB No. 045530

*Of Attorneys for Defendants University of
Oregon, Sandy Weintraub, Chicora Martin,
Robin Holmes, and Michael R. Gottfredson*

70075060.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699