# MARIANNE DUGAN
Attorney at Law

email mdugan@mdugan.com  　　259 E. 5th Ave., Ste 200-D　　Telephone 541-338-7072
website www.mdugan.com  　　　Eugene OR 97401-2677　　　　Facsimile 866-650-5213

*NOTICE: This and any transmitted documents are intended only for the use of the individual or entity to whom this is addressed and may contain information that is privileged, confidential, or work product and exempt from disclosure under applicable law. If you are not the intended recipient or agent thereof, any use, dissemination, distribution, or copying of this communication is strictly prohibited, and you are hereby requested to telephone the sender immediately of the error and to return by mail to the sender the transmitted documents. Thank you.*

If there is a problem with transmission or if all pages are not received, please call 541-338-7072 for retransmission.

DATE: October 7, 2014

**TO:** Director, Oregon Dept of Admin. Services
State Services Division
Risk Management
To fax no. 1-503-373-7337

Douglas YS Park
University of Oregon
To fax no. 541-346-6110

**FROM:** Marianne Dugan

**RE:** Austin v. University of Oregon

Number of pages including this cover page: 5

**Comments:**



RECEIVED OCT 07 2014 UO GENERAL COUNSEL

EXHIBIT F - Page 1 of 5
Declaration of Lisa Thornton in Support
of Defendants' Motion to Dismiss

# MARIANNE DUGAN
### Attorney at Law

email mdugan@mdugan.com  
website www.mdugan.com

259 E. 5th Ave., Ste 200-D  
Eugene OR 97401-2677

Telephone 541-338-7072  
Facsimile 866-650-5213

October 7, 2014

Director, Oregon Dept of Admin. Services  
State Services Division  
Risk Management  
Executive Building  
155 Cottage St. NE, U20  
Salem, OR 97301  
    and via fax to 1-503-373-7337  
    and via email to risk.management@state.or.us

Douglas YS Park, Assistant General Counsel  
University of Oregon  
219 Johnson Hall  
1226 University of Oregon  
Eugene, OR 97403  
    and via fax to 541-346-6110  
    and via email to dougpark@uoregon.edu

RE:    Notice of Claim of Brandon Austin

Dear ODAS and Mr. Park:

I have been reviewing potential civil claims on behalf of Brandon Austin. In compliance with ORS 30.275, formal notice is hereby given that claims for damages on his behalf will be made against University of Oregon and its departments, officers, employees, and/or agents, resulting from the University's April 10, 2014, "emergency" suspension of Mr. Austin; April 30, 2014, second "emergency" suspension upon reading the police reports; and June 17, 2014, final University hearing and issuance of suspension for up to ten years.

The state law claims against the University and its departments, officers, employees, and/or agents, arise out of negligence, negligent hiring, negligent supervision, breach of contract, defamation, intentional infliction of emotional distress, racial discrimination, and vicarious liability for those wrongs.

The federal law claims against University and its departments, officers, employees, and/or agents, arise out of the violation of my client's civil rights under 42 U.S.C. 1981 and 1983, the First, Fifth, and Fourteenth Amendments to the U.S. Constitution, and Monell v. Dept. of Social Services and Adickes v. Kress, due to deprivation of due process, deprivation of the right to freedom of association, deprivation of the right to freedom of speech, deprivation of the right to refuse to testify against oneself, racial discrimination, deliberate indifference to my clients' rights; and policies, customs, or practices that allowed such violations to occur.

EXHIBIT F - Page 2 of 5
Declaration of Lisa Thornton in Support
of Defendants' Motion to Dismiss

Doug Park and ODAS
October 7, 2014
Page 2

So far as is known to the claimant, the time, place, and circumstances giving rise to the claim are as follows.

On March 9, 2014, Brandon Austin was at a basketball player party with his friends and teammates **Redacted** and **Redacted**. **Redacted** approached Brandon Austin and **Redacted**, "twerked" for them, and followed them into a bathroom where they had sexual contact. They left the bathroom and rejoined the party. She returned a second time to the bathroom with all three of the men and more sexual contact ensued.

They left the bathroom and shortly after that the party broke up. Outside on the street there was mingling of guests as folks figured out who was riding home with whom. **Redacted** wanted to leave with the boys. Her friends told her not to go with them, stating "you know how you get" and "they only want to use you for sex." She insisted on going with them. At their apartment she changed into some of their clothes and they had group sex. At one point, she teared up and the boys immediately quit. **Redacted** comforted her, she fell asleep in his lap on the couch and then spent the night in his bed with him. She had sex with him the next morning, went home and texted him "thanks for getting me home" (he had called her a cab).

She reported her conduct to her roommate, who was aghast at the story. At that point, **Redacted** **Redacted** realized her conduct wasn't universally admired.

Suddenly her story changed to rape -- she stated was dragged into the bathroom twice and assaulted, she was wrestled into the car and forced to drink alcohol; taken to the player's home and repeatedly raped. Later, she reluctantly admitted to police that she had slept over and had sex the next morning.

Police investigated. The prosecutor (Patty Perlow) declined to prosecute, due to inconsistencies in **Redacted** story. Police reports reveal interviews with **Redacted** own friends and witnesses at the party stating that she went with the boys voluntarily and never expressed any concern or emotional upset at the party. She was seen dancing suggestively with them by her roommate. She was not drinking and did not appear drunk.

The University began investigating, but immediately made public statements against the boys, and issued emergency suspensions on April 10. The University then reinstated the boys; but then did a second emergency suspension April 30 after reading the police report.

The University eventually reinstated **Redacted** and **Redacted** but not Brandon Austin.

The University denied Mr. Austin's requests (through his lawyer) for:

    a.    contested case hearing

    b.    issuance of subpoenas

EXHIBIT F - Page 3 of 5
Declaration of Lisa Thornton in Support
of Defendants' Motion to Dismiss

Doug Park and ODAS
October 7, 2014
Page 3

    c.    names and contact info of witnesses the UO interviewed and relied upon

    d.    copies of the Title IX investigator's report - (his attorneys were told they could view the document blacked out but could not have a copy nor review an un-redacted copy).

June 17, 2014, the University had the final hearing and issued a suspension of Mr. Austin for up to ten years.

**Legal Issues**

1. **Denial of due process in UO administrative hearing**

    a.    Panel hearing option (which Mr. Austin requested):

        i.    UO refused to issue subpoenas, and indicates that it never allows subpoenas for these hearings

        ii.    UO refused to allow depositions

        iii.    UO refused to reveal names/contact information of its witnesses

        iv.    The Title IX report was blacked out and Mr. Austin's attorneys were not allowed to take it from the room with them

        v.    Mr. Austin was required to conduct his own cross-examination. His attorney was not allowed to ask questions, and the questions had to be pre-approved by the University

    b.    Administrative hearing option

        i.    No subpoenas

        ii.    No names/contact of witnesses

        iii.    Title IX report blacked out in places and not given a copy.

EXHIBIT F - Page 4 of 5
Declaration of Lisa Thornton in Support
of Defendants' Motion to Dismiss

Doug Park and ODAS
October 7, 2014
Page 4

    c.    Denial of request for Contested Case hearing

The options provided by the University do not comport with the OAPA.

**2.**    **Denial of the presumption of innocence**

    a.    The University president gave a speech to the media condemning the conduct of the three players, despite the fact the investigation was still underway, and no charges had been filed (nor were they ever filed).

    b.    The University (via Professor Freyd) led marches demanding the expulsion of the students prior to adjudication.

**3.**    **Punishment for exercising civil rights**

When the University read the police reports and saw that Mr. Austin had asserted his Miranda rights through his counsel, they immediately placed him on emergency suspension for that reason. Sources indicate that this is the routine practice of the University.

The other two, who had not asserted their Miranda rights, were allowed to remain at the University. Mr. Austin's criminal attorney was told by Sandy Weintraub that Mr. Austin was treated differently "because he refused to talk."

**4.**    **Misconduct by the Title IX investigator**

The Title IX investigator issued findings of fact upholding the allegations, which completely ignored the eyewitnesses ([Redacted] friends and the cab driver) who contradicted the complainant.

Brandon Austin has been damaged by these actions. Correspondence concerning this claim may be sent to me.

                        Very truly yours,

                        Marianne Dugan

cc:    client; Laura Fine Moro

EXHIBIT F - Page 5 of 5
Declaration of Lisa Thornton in Support
of Defendants' Motion to Dismiss