**Michelle Barton Smigel, P.C.**, OSB No. 045530
michelle.smigel@millernash.com
**Michael Porter, P.C.**, OSB No. 003560
mike.porter@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  503.224.5858
Fax:  503.224.0155

     Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **BRANDON AUSTIN**, | Case No.:  6:15-cv-02257-MC |
| Plaintiff, | DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT (Pursuant to Fed R Civ P 12(b)(6)) |
| v. | |
| **UNIVERSITY OF OREGON; SANDY WEINTRAUB; CHICORA MARTIN; ROBIN HOLMES**; and **MICHAEL R. GOTTFREDSON**, all in their individual capacities only, | **REQUEST FOR ORAL ARGUMENT** |
| Defendants. | |

Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL ALLEGATIONS FOR PURPOSES OF THIS MOTION ............................ 2

III.    ARGUMENT ....................................................................................................... 4

        A.      Plaintiff's Due Process Claim Should Be Dismissed Because the
                Individual Defendants Did Not Deprive Plaintiff of a Constitutionally
                Protected Interest ................................................................................ 7

                1.      Defendants' alleged actions did not implicate a constitutionally
                        protected property or liberty interest ......................................... 7

                        a.      Plaintiff did not have a property or liberty interest in
                                attending the University ................................................ 9

                        b.      Plaintiff did not have a property interest in playing
                                basketball for the University ........................................ 12

                        c.      Plaintiff did not have a property interest in the renewal of
                                his fixed-term athletic scholarship or the receipt of an
                                athletic scholarship from another school .................... 12

                        d.      Plaintiff did not have a property interest in "a future
                                contract with an NBA team" ....................................... 14

                        e.      Oregon's Administrative Procedures Act did not confer a
                                constitutionally protected interest on plaintiff ............. 14

                2.      Defendants are entitled to qualified immunity because they did not
                        violate a clearly established constitutional right ...................... 15

                3.      Plaintiff's allegations cannot support an inference that his
                        administrative hearing was constitutionally deficient .............. 18

                        a.      Plaintiff agreed to participate in an administrative
                                conference and waived his right to additional procedure .......... 18

                        b.      Plaintiff failed to plead factual allegations that support an
                                inference that his administrative conference was deficient
                                and waived the procedures that he now claims not to have
                                received ................................................................... 20

                        c.      Plaintiff received notice and had an opportunity to be heard
                                before his suspension from the University ................... 21

                4.      Plaintiff was not deprived of any substantive due process rights ........... 21

Page i -    Table of Contents

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# TABLE OF CONTENTS
## (continued)

Page

B.    Plaintiff's Title IX Claim Should Be Dismissed Because He Cannot Plausibly Allege That Defendants' Conduct Was Motivated By Plaintiff's Gender or Sex ................................................................................. 23

    1.    Plaintiff did not allege facts from which one could plausibly infer that the University selectively enforced its Student Conduct Code or sanctioned plaintiff because of his gender or sex ............................... 25

    2.    Plaintiff's allegations do not offer factual support for his erroneous outcome theory........................................................................................ 29

    3.    Plaintiff's factual allegations do not suggest that the University was deliberately indifferent to his rights under Title IX ................................. 31

C.    Plaintiff Is Precluded From Re-litigating the Validity of His Administrative Order And From Asserting His State Law Claims .................... 32

    1.    Plaintiff is precluded from re-litigating the validity of his administrative order under the doctrine of issue preclusion ................... 32

    2.    Plaintiff is precluded from asserting his state law claims because he did not challenge his suspension through a direct appeal, as is required under Oregon law .................................................................... 34

D.    Defendants Are Entitled To Discretionary Immunity From Plaintiff's Tort Claims Under ORS 30.265 .................................................................. 35

E.    Plaintiff's Negligence Claim Should Be Dismissed Because He Does Not Allege Physical Injury or Property Damage And, as a Matter of Law, Defendants' Alleged Conduct Did Not Create a Foreseeable Risk of Harm to Plaintiff .......................................................................................... 36

    1.    Plaintiff failed to allege damages cognizable in negligence where no special relationship exists ................................................................. 36

    2.    As a matter of law, Defendants' alleged conduct did not create a foreseeable risk of harm to plaintiff........................................................ 38

F.    Plaintiff's IIED Claim Should Be Dismissed Because, as a Matter of Law, Defendants' Alleged Conduct Did Not Transgress the Bounds of Socially Tolerable Conduct........................................................................... 40

G.    Plaintiff Cannot State a Claim for Tortious Interference With Prospective Economic Advantage Because He Fails to Allege a Relationship With the NBA and Failed to Provide the Required Notice of This Claim to the University........................................................................................... 42

70081103.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# TABLE OF CONTENTS
## (continued)

Page

    1.    Plaintiff does not allege an existing business relationship with an NBA team, which is necessary to recover for the intentional interference with a prospective economic advantage ............................. 43

    2.    Plaintiff does not allege a sufficiently likely prospective business relationship with any NBA team to recover in tort................................. 45

    3.    Plaintiff's allegations fail to support his conclusory statements that Defendants acted intentionally and with an improper purpose or by improper means........................................................................................ 46

    4.    Plaintiff failed to provide adequate notice of his claim, as required under the OTCA.................................................................................... 48

H.    Plaintiff's Claims for Economic Damages in Tort Should Be Dismissed Because, as a Matter of Law, His Allegations Are Too Speculative to State a Claim........................................................................................................... 49

I.    Plaintiff Fails to State a Claim for Breach of Contract and Plaintiff Alleges No Cognizable Damages.................................................................................... 51

IV.    CONCLUSION.................................................................................................... 53

70081103.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# TABLE OF AUTHORITIES

**Cases**

*Aetna Cas. & Sur. Co. v. Gosdin*,
   803 F2d 1153 (11th Cir 1986) ........................................................................28

*Albright v. Oliver*,
   510 US 266, 114 S Ct 807, 127 L Ed 2d 114 (1994)........................................22

*Allen v. Hall*,
   328 Or 276, 974 P2d 199 (1999) ....................................................................43

*Anderson v. Creighton*,
   483 US 635, 107 S Ct 3034, 97 L Ed 2d 523 (1987)........................................16

*Ashcroft v. al-Kidd*,
   563 US 731, 131 S Ct 2074, 179 L Ed 2d 1149 (2011)......................................15

*Ashcroft v. Iqbal*,
   556 US 662 (2009)..........................................................4, 5, 21, 26, 27, 29, 35

*Bateson v. Geisse*,
   857 F2d 1300 (9th Cir 1988) ..........................................................................22

*Bd. of Curators of Univ. of Mo. v. Horowitz*,
   435 US 78, 98 S Ct 948, 55 L Ed 2d 124 (1978)..............................................9

*Bd. of Regents of State Colls. v. Roth*,
   408 US 564, 92 S Ct 2701, 33 L Ed 2d 548 (1972)................................7, 8, 11, 12, 13, 14, 17

*Bell Atl. Corp. v. Twombly*,
   550 US 544 (2007)..........................................................................4, 5, 26, 27

*Bell v. PERB*,
   239 Or App 239, 247 P3d 319 (2010)...............................................................38

*Brands v. Sheldon Cmty. Sch.*,
   671 F Supp 627 (ND Iowa 1987)......................................................................12

*Brown v. Zimbrick Logging*,
   273 Or 463, 541 P2d 1388 (1975) ....................................................................49

*Chapman v. Mayfield*,
   358 Or 196, 361 P3d 566 (2015) .....................................................................39

*Chavez v. Boise Cascade Corp.*,
   307 Or 632, 772 P2d 409 (1989) ...............................................................32, 34

# TABLE OF AUTHORITIES
(continued)

*Colo. Seminary (Univ. of Denver) v. NCAA*,
  417 F Supp 885 (D Colo 1976), *aff'd*, 570 F2d 320 (10th Cir 1978).......................................12

*Cont. Plants v. Measured Mkt. Services, Inc.*,
  274 Or 621, 547 P2d 1368 (1976) .......................................................................................52

*Conway v. Pacific University*,
  324 Or 231, 924 P2d 818 (1996) .........................................................................................51

*Cron v. Zimmer*,
  255 Or App 114, 296 P3d 567 (2013).......................................................................43, 44, 45

*D. H. Overmyer Co. v. Frick Co.*,
  405 US 174, 92 S Ct 775, 31 L Ed 2d 124 (1972)................................................................18

*Dauven v. George Fox Univ.*,
  No. CV. 09-305-PK, 2010 WL 6089077 (D Or Dec. 3, 2010)...............................................39

*Davies v. Grossmont Union High Sch. Dist.*,
  930 F2d 1390 (9th Cir), *cert denied*, 501 US 1252 (1991).....................................................19

*Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*,
  526 US 629, 119 S Ct 1661, 143 L Ed 2d 839 (1999)...........................................................24

*Delaney v. Clifton*,
  180 Or App 119, 41 P3d 1099 (2002).......................................................................40, 41, 42

*Doe v. Columbia Univ.*,
  101 F Supp 3d 356 (SDNY April 21, 2015) ................................................25, 26, 27, 31

*Doe v. Univ. of Mass.-Amherst*,
  2015 WL 4306521, No. 14-301430MGM, at *9 (D Mass July 14, 2015)..................26, 27, 31

*Doe v. Univ. of the South*,
  687 F Supp 2d 744 (ED Tenn 2009).......................................................................25, 30, 31

*Doyle v. Oregon Bank*,
  94 Or App 230, 764 P2d 1379 (1988).....................................................................................53

*Drews v. EBI Companies*,
  310 Or 134, 795 P2d 531 (1990) ...........................................................................................33

*Dunn v. Castro*,
  621 F3d 1196 (9th Cir 2010) ................................................................................................16

70081103.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## TABLE OF AUTHORITIES
(continued)

*Erlandson v. Pullen*,
   45 Or App 467, 608 P2d 1169 (1980)................................................................44, 47

*Fernandez v. Rosenzwieg*,
   No. CIV. 95-241-FR, 1996 WL 453046 (D Or Aug. 8, 1996) ......................9, 12, 17

*Flug v. Univ. of Oregon*,
   335 Or 540, 73 P3d 971 (2003) ......................................................................48

*Freeman v. Busch*,
   349 F3d 582 (8th Cir 2003) ...........................................................................37

*G.C. v. North Clackamas School Dist.*,
   654 F Supp 2d 1226 (D Or 2009) ...................................................................23

*Galbraith v. Hartford Fire Ins. Co.*,
   464 F2d 225 (3d Cir 1972)..............................................................................28

*Georgetown Realty v. The Home Ins. Co.*,
   313 Or 97, 831 P2d 7 (1992) ..........................................................................37

*Goffstein v. State Farm Fire & Cas. Co.*,
   764 F2d 522 (8th Cir 1985) ............................................................................28

*Goldberg v. Kelly*,
   397 US 254, 90 S Ct 1011, 25 L Ed 2d 287 (1970)............................................8

*Goss v. Lopez*,
   419 US 565, 95 S Ct 729, 42 L Ed 2d 725 (1975)........................................9, 10

*Grossman v. City of Portland*,
   33 F3d 1200 (9th Cir 1994) .......................................................................16, 17

*Halverson v. Skagit Cty.*,
   42 F3d 1257 (9th Cir 1994) ............................................................................22

*Hammond v. Central Lane Communications Center*,
   312 Or 17, 816 P2d 593 (1991) .......................................................................37

*Harrell v. S. Or. Univ.*,
   No. CV 08-3037-CL, 2010 WL 2326576 (D Or Mar. 24, 2010)............................9

*Hawkins v. NCAA*,
   652 F Supp 602 (CD Ill 1987) ........................................................................46

70081103.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# TABLE OF AUTHORITIES
### (continued)

*House v. Hicks,*
  218 Or App 348, 179 P3d 730 (2008) ................................................................ 41

*Hunter v. Bryant,*
  502 US 224, 112 S Ct 534, 116 L Ed 2d 589 (1991) .......................................... 16

*Hussey v. Milwaukee Cnty.,*
  740 F3d 1139 (7th Cir 2014) .............................................................................. 14

*Justice v. Nat'l Collegiate Athletic Ass'n,*
  577 F Supp 356 (D Ariz 1983) ........................................................................... 12

*Kahn v. Pony Express Courier Corp.,*
  173 Or App 127, 20 P3d 837 (2001) ............................................................ 49, 50

*Kelly's Auto Parts No. 1, Inc. v. Boughton,*
  809 F2d 1247 (6th Cir 1987) .............................................................................. 28

*Klein v. Grynberg,*
  44 F3d 1497 (10th Cir 1995) .............................................................................. 45

*L.W. v. Grubbs,*
  974 F2d 119 (9th Cir 1992) ................................................................................ 22

*Lake County v. State of Oregon,*
  142 Or App 162, 920 P2d 1115 (1996) .............................................................. 34

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.,*
  431 F3d 353 (9th Cir 2005) ................................................................................ 49

*Ludwig v. Astrue,*
  681 F3d 1047 (9th Cir 2012) .............................................................................. 21

*Lumbreras v. Roberts,*
  319 F Supp 2d 1191 (D Or 2004) ....................................................................... 22

*Marquez v. Harper Sch. Dist. No. 66,*
  No. CV-09-1254-SU, 2011 WL 2462035 (D Or Mar. 24, 2011) ........................ 41

*McAdoo v. Univ. of N.C. at Chapel Hill,*
  736 SE2d 811 (NC Ct App 2013) .......................................................... 46, 49, 50

*McGanty v. Staudenraus,*
  321 Or 532, 901 P2d 841 (1995) ......................................... 40, 41, 44, 45

70081103.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

# TABLE OF AUTHORITIES
(continued)

*McManus v. Auchincloss,*
  271 Or App 765, 353 P3d 17 (2015)............................................37, 41

*Miller v. County of Santa Cruz,*
  39 F3d 1030 (9th Cir 1994) ............................................................32

*Mitchell v. Forsyth,*
  472 US 511, 105 S Ct 2806, 86 L Ed 2d 411 (1985)......................17

*Nelson v. Emerald People's Utility Dist.,*
  318 Or 99, 862 P2d 1293 (1993) ....................................................33

*Orr v. City of Eugene,*
  151 Or App 541, 950 P2d 397 (1997)..............................................48

*Padilla v. Yoo,*
  678 F3d 748 (9th Cir 2012) ............................................................16

*Parish v. NCAA,*
  506 F2d 1028 (5th Cir 1975) ..........................................................46

*Parrino v. FHP, Inc.,*
  146 F3d 699 (9th Cir 1998) ..............................................................2

*Patterson v. Hudson Area Sch.,*
  551 F3d 438 (6th Cir 2009) ............................................................32

*Paul v. Davis,*
  424 US 693, 96 S Ct 1155, 47 L Ed 2d 405 (1976).................8, 10, 11

*Paul v. Providence Health Sys.-Oregon,*
  351 Or 587, 273 P3d 106 (2012) ......................................36, 37, 38

*Rabon v. Great Southwest Fire Ins. Co.,*
  818 F2d 306 (4th Cir 1987) ............................................................28

*Ramirez v. Hawaii T & S Enterprises, Inc.,*
  179 Or App 416, 39 P3d 931 (2002)................................................35

*Robinson v. Shipley,*
  64 Or App 794, 669 P2d 1169 (1983)..............................................48

*Rosenthal v. Erven,*
  172 Or App 20, 17 P3d 558 (2001)..................................................37

70081103.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

# TABLE OF AUTHORITIES
(continued)

*Ross v. Creighton Univ.*,
  957 F2d 410 (7th Cir 1992) ........................................................................52

*Rowinsky v. Bryan Indep. Sch. Dist.*,
  80 F3d 1006 (5th Cir), *cert. denied*, 519 US 861,
  117 S Ct 165, 136 L Ed 2d 108 (1996) ........................................................24

*Ryan v. Harlan*,
  No. CV-10-626-ST, 2011 WL 711110 (D Or Feb. 22, 2011) ..................................9

*Sahm v. Miami Univ.*,
  110 F Supp 3d 774 (SD Ohio 2015) ..............................................................29

*Shanks v. Dressel*,
  540 F3d 1082 (9th Cir 2008) ..................................................................7, 15

*Shin v. Sunriver Preparatory School, Inc.*,
  199 Or App 352, 111 P3d 762 (2005).............................................................38

*Sinaloa Lake Owners Ass'n v. City of Simi Valley*,
  882 F2d 1398 (9th Cir 1989) ......................................................................22

*Slochower v. Bd. of Higher Ed.*,
  350 US 551, 76 S Ct 637, 100 L Ed 692 (1956).................................................8

*Sole Energy Co. v. Petrominerals Corp.*,
  26 Cal Rptr 3d 798 (Ct App 2005)...............................................................44

*Stanley v. Trustees of California State Univ.*,
  433 F3d 1129 (9th Cir 2006) .................................................................24, 25

*Straube v. Larson*,
  287 Or 357, 600 P2d 371 (1979) ...............................................44, 45, 46, 47

*Tenold v. Weyerhaeuser Co.*,
  127 Or App 511, 873 P2d 413 (1994), *rev. dismissed*, 321 Or 561........................41

*U.S. National Bank v. Boge*,
  311 Or 550, 814 P2d 1082 (1991) ...............................................................51

*United States v. Ritchie*,
  342 F3d 903 (9th Cir 2003) .......................................................................2

*Westfall v. State ex rel. Oregon Dept. of Corrections*,
  355 Or 144, 324 P3d 440 (2014) ................................................................36

70081103.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## TABLE OF AUTHORITIES
(continued)

*Williams v. Bd. of Regents of Univ. Sys. Of Georgia*,
    477 F3d 1282 (11th Cir 2007) ..................................................24

*Wilson v. Garcia*,
    471 US 261, 105 S Ct 1938, 85 L Ed 2d 254 (1985).........................................24, 25

*Wisconsin v. Constantineau*,
    400 US 433, 91 S Ct 507, 27 L Ed 2d 515 (1971) ................................11

*Yusuf v. Vassar College*,
    35 F3d 709 (2nd Cir 1994)...........................................26, 27, 30

*Zehr v. Haugen*,
    318 Or 647, 871 P2d 1006 (1994) ......................................52

**Statutes**

Oregon Administrative Procedures Act ...........................................14, 15, 34

Oregon Tort Claims Act...........................................6, 43, 48, 49

ORS 30.260(6) ...........................................48

ORS 30.265...........................................35, 36

ORS 30.275...........................................48

ORS 31.710(2)(a)...........................................49

ORS 183.310(6)(b) ...........................................32, 34

ORS 183.413-.497 ...........................................14, 15

ORS 183.480(2) ...........................................34

ORS 183.482...........................................34

ORS 183.484...........................................23, 34

ORS 183.502...........................................14

ORS 351.088...........................................14, 15

ORS 659...........................................25

ORS 659A.030...........................................25

70081103.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

## TABLE OF AUTHORITIES

(continued)

20 USC § 1681 ...................................................................................................5, 25

28 USC § 1738 ........................................................................................................32

42 USC § 1983 ....................................................................................................5, 24, 25

**Other Authorities**

Fed R Civ P 12(b)(6) ..........................................................................................1, 2, 4

LR 7-1 .......................................................................................................................1

LR 7-2 .......................................................................................................................1

OAR 571-003-0125 .................................................................................................3

OAR 571-021-0105(30)(b)(A) ...........................................................................4, 10

OAR 571-021-0130 ...............................................................................................23

OAR 571-021-0205 ..................................................................3, 15, 18, 19, 20, 42

OAR 571-021-0205(1) ...........................................................................................20

OAR 571-021-0210 ...............................................................................................15

NCAA Bylaw 15.3.5 .........................................................................................13, 52

*The Oregonian* .................................................................................................2, 17, 23

United States Constitution, Fourteenth Amendment .....................................7, 8, 19, 21

70081103.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## LR 7-1 CERTIFICATE

Counsel for defendants, University of Oregon (the "University"), Sandy Weintraub, Chicora Martin, Robin Holmes, and Michael R. Gottfredson (collectively, the "Individual Defendants," and together with the University, "Defendants"), conferred with counsel for plaintiff about the dispute through a telephone conference, but the parties have been unable to resolve the dispute.

## LOCAL RULE 7-2 CERTIFICATION

This memorandum complies with LR 7-2(b) because the court granted Defendants request to file a brief of this length.

## MOTION

In accordance with Fed R Civ P 12(b)(6), Defendants move to dismiss the complaint because it fails to state a claim on which relief can be granted.

## MEMORANDUM

## I.    INTRODUCTION

Plaintiff's Second Amended Complaint ("Complaint") asserts invalid legal theories arising out of the University's finding that plaintiff violated its Student Conduct Code by engaging in sexual misconduct.  The allegations and claims in the Complaint show that this case can and should be decided now as a matter of law.  Plaintiff asserts that Defendants are liable for the following: (a) the University's investigation of a report that plaintiff raped a fellow student, (b) the manner in which Defendants conducted plaintiff's administrative hearing, and (c) the nonrenewal of plaintiff's athletic scholarship.  But neither federal law nor Oregon law prevent a public university from applying its student conduct code by suspending a student found to have engaged in an act of sexual misconduct, as defined by that code.  In fact, our public universities are authorized by state law to issue such educational sanctions.  According to plaintiff, when a student-athlete is suspended by a public university for violating the student conduct code, the university should be held liable for theoretically diminishing the student's chance of a

Page 1 -    Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

professional sports career.  Plaintiff's theory, however, has no basis in law.  The allegations in plaintiff's Complaint do not give rise to any viable legal claims and do not meet the standards to survive dismissal under Fed R Civ P 12(b)(6).

## II.     FACTUAL ALLEGATIONS FOR PURPOSES OF THIS MOTION

For purposes of this motion to dismiss, Defendants move against the allegations contained in plaintiff's Complaint, as they are obligated to do.  Defendants also submit a few additional documents that were incorporated by reference into plaintiff's Complaint,[1] the contents of which cannot be disputed in good faith by plaintiff, and therefore their submission creates no factual dispute:  (1) plaintiff's scholarship, (2) the redacted police report published by *The Oregonian*, (3) Gottfredson's public statement, (4) documentation of plaintiff's waiver of a panel hearing, (5) the University's decision letter finding that plaintiff "engaged in sexual acts with a fellow student without obtaining explicit consent," and (6) plaintiff's October 7, 2014, letter to the University titled "Notice of Claim of Brandon Austin." (Documents are attached as exhibits to the Declarations of Michelle Barton Smigel ("Smigel Decl.") and Lisa Thornton ("Thornton Decl.").)

Plaintiff is a former University of Oregon student.  He transferred to the University and joined its basketball team in January 2014.  (Second Am. Compl. ¶¶ 13-14.)  The University offered plaintiff a scholarship for winter and spring quarters of the 2013-14 academic year, though in accordance with National Collegiate Athletic Association ("NCAA") transfer rules, plaintiff was not permitted to compete in games that year. (Scholarship attached as Exhibit A to Thornton Decl., ¶ 4.) (Second Am. Compl. ¶¶ 13-14 FN 2.)

---

[1]  *See United States v. Ritchie*, 342 F3d 903, 907-08 (9th Cir 2003) (a court may properly consider documents incorporated by reference in a complaint on a Fed R Civ P 12(b)(6) motion "without converting the motion to dismiss into a motion for summary judgment"); *see also Parrino v. FHP, Inc.*, 146 F3d 699, 706 (9th Cir 1998) (a court may properly consider documents outside the pleadings that are "crucial to the plaintiff's claims, but not explicitly incorporated into the complaint" because plaintiffs cannot survive a Fed R Civ P 12(b)(6) motion by "deliberately omitting references to documents upon which their claims are based").

70081103.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

On March 13, 2014, a University of Oregon undergraduate filed a report with the Eugene Police Department, accusing plaintiff, and others, of raping her. (Second Am. Compl. ¶¶ 33-34.) After receiving a copy of this report, the University temporarily suspended plaintiff from school on an emergency basis (Second Am. Compl. ¶ 35).

On May 1, 2014, plaintiff was dismissed from the basketball team. He continued to receive his athletic scholarship through the end of the academic year, consistent with the scholarship's terms. The University, however, elected not to renew plaintiff's scholarship for the following year. (Second Am. Compl. ¶ 132.) Plaintiff could have appealed the nonrenewal of this scholarship under OAR 571-003-0125.[2] But he did not, and plaintiff does not allege that he did.

On or about May 5, 2014, *The Oregonian* published the March 13 police report, which referenced plaintiff by name. (Police report attached as Exhibit A to Smigel Decl., ¶ 2.) (Second Am. Compl. ¶ 38.) In response, Gottfredson, who was the University's president at the time, held a press conference on May 9, 2014, to address public concerns regarding the police report and sexual violence in the surrounding community. (Second Am. Compl. ¶ 40.) His statement did not reference plaintiff by name. (Gottfredson's statement attached as Exhibit B to Thornton Decl., ¶ 5.)

In accordance with the University's Student Conduct Code, the University began the process of scheduling plaintiff's administrative hearing. As plaintiff's administrative hearing approached, plaintiff's then-attorney, Laura Fine Moro, and the University's general counsel, Douglas Park, discussed the terms of the hearing. As a result of these discussions, Moro agreed on behalf of plaintiff that the hearing would be conducted according to the procedures of an administrative conference, as defined by OAR 571-021-0205. (Second Am. Compl. ¶ 54.) In

---

[2] At the time of the events relevant to the Complaint, the University's Student Conduct Code was subject to the 2014 edition of the Oregon Administrative Rules. The Student Conduct Code has since been amended and renamed as a University policy.

Page 3 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

return, the University agreed that suspension from school was the maximum sanction that plaintiff faced. Plaintiff signed his agreement to the administrative conference procedures on or about June 5, 2014, in the presence of Moro. (Plaintiff's signed waiver and testament to Moro's presence attached as Exhibit C to Thornton Decl., ¶ 6.)

Plaintiff's hearing was conducted by Sandy Weintraub, Director of Student Conduct & Community Standards at the University, (Second Am. Compl. ¶ 57.), on June 17, 2014. Plaintiff was represented by counsel (Moro). Based on the evidence presented at the hearing, Weintraub determined that plaintiff had violated the University's Student Conduct Code by engaging in sexual misconduct, specifically, penetration without "first obtain[ing] Explicit Consent." OAR 571-021-0105(30)(b)(A). Plaintiff was accordingly suspended from the University for four to ten years. (The University's administrative hearing decision final letter is attached as Exhibit D to Thornton Decl., ¶ 7.)

Plaintiff did not appeal his suspension to state court, nor does plaintiff allege that he did. Rather, on October 7, 2014, the University received a letter from Moro informing the University of plaintiff's intent to sue. (Plaintiff's "Tort Claims Notice" is attached as Exhibit E to Thornton Decl., ¶ 8.) (Second Am. Compl. ¶ 70.)

## III.   ARGUMENT

A Fed R Civ P 12(b)(6) motion should be granted if the plaintiff fails to allege the "grounds" of his or her "entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 US 544, 555 (2007) (internal punctuation and citation omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 US 662, 663 (2009) (internal quotation marks and citation omitted). When evaluating whether a complaint states a claim for relief, a court should not accept nonfactual matters or conclusory statements set forth in the complaint as true. *Id.* Instead, a court must follow a two-step approach in assessing the sufficiency of each claim. *Iqbal*, 556 US at 680-81. First, the court must distinguish between facts, on the one hand, and "mere conclusory

Page 4 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

statements" or legal conclusions, on the other hand; the latter are not entitled to the presumption of truth and must be disregarded. *Iqbal*, 556 US at 678-79. Second, the court must "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 556 US at 681. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 US at 570.

Plaintiff pleads six causes of action, all of which should be dismissed for the following procedural and substantive reasons, in addition to the other reasons raised in this memorandum:

- Plaintiff's 42 USC § 1983 ("due process") claim: Plaintiff's due process claim should be dismissed because: (a) the alleged conduct of the Individual Defendants did not implicate a constitutionally protected interest, (b) even if it did, this interest was not clearly established and the Individual Defendants are entitled to qualified immunity, and (c) in any event, as the Complaint shows, plaintiff received notice and had an opportunity to be heard before he was suspended (in a hearing that provided all the process plaintiff was due under the law) and the Individual Defendants' alleged conduct did not shock the conscience. In addition, the doctrine of issue preclusion bars plaintiff from using this action to challenge his suspension, which was a valid administrative order under Oregon law.

- Plaintiff's 20 USC § 1681 ("Title IX") claim: Plaintiff's Title IX claim should be dismissed because plaintiff does not plead factual allegations supporting his theories that: (a) the University selectively enforced Title IX by suspending plaintiff for sexual misconduct because of his gender or sex, (b) the University's investigation or plaintiff's administrative conference were flawed or that any purported flaw was motivated by plaintiff's gender or sex, or (c) the University was deliberately indifferent to plaintiff's rights under Title IX.

Page 5 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

- Plaintiff's tort claims (Third, Fourth, and Fifth Claims) should be dismissed because plaintiff failed to challenge his suspension from the University in accordance with state law and because Defendants are entitled to discretionary immunity.

- Plaintiff's  negligence claim: Plaintiff's negligence claim should be dismissed as a matter of law because plaintiff has not pleaded cognizable damages and Defendants' alleged conduct did not create a foreseeable risk of harm to an interest that Oregon law protects.

- Plaintiff's intentional infliction of emotional distress ("IIED") claim: Plaintiff's claim for IIED fails to state a claim because plaintiff cannot plausibly allege that Defendants intended to inflict severe emotional distress, that their alleged actions transgressed the bounds of socially tolerable conduct, or that plaintiff had a special relationship with Defendants.

- Plaintiff's tortious interference claim:  Plaintiff's claim for tortious interference with his hypothetical professional basketball career fails to state a claim because plaintiff cannot plausibly allege that he had an actual or contemplated business relationship with any National Basketball Association ("NBA") team and because plaintiff failed to provide Defendants with the requisite notice under the Oregon Tort Claims Act ("OTCA").

- Plaintiff's breach of contract claim: Plaintiff's breach-of-contract claim should be dismissed because the allegations confirm that the University fulfilled its obligations under the terms of plaintiff's scholarship, which were the only contractual obligations to which plaintiff was entitled.

70081103.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

A.    **Plaintiff's Due Process Claim Should Be Dismissed Because the Individual Defendants Did Not Deprive Plaintiff of a Constitutionally Protected Interest**

    1.    Defendants' alleged actions did not implicate a constitutionally protected property or liberty interest

Plaintiff asserts that the Individual Defendants violated his due process rights guaranteed by the United States Constitution based on the manner in which the University conducted its investigation and the outcome and process of his administrative hearing. To prevail on a due process claim, plaintiff must first "establish the existence of '* * * a liberty or property interest.'" *Shanks v. Dressel*, 540 F3d 1082, 1090 (9th Cir 2008) (quoting *Portman v. Cty. of Santa Clara*, 995 F2d 898, 904 (9th Cir 1993)). Plaintiff cannot establish such interest.

Neither the University's investigation nor the administrative hearing implicated plaintiff's constitutional rights because plaintiff did not have a constitutionally protected property or liberty interest in attending the University, playing for its basketball team, having his scholarship renewed by the University or receiving a scholarship from another Division I university, receiving an NBA contract, or "being free from the stigma associated with being suspended for disciplinary reasons." (Second Am. Compl. ¶¶ 46-47.) Consequently, the Individual Defendants' conduct during the investigation and hearing cannot constitute a due process violation, no matter what procedure plaintiff was provided (which, nevertheless, was constitutionally adequate). In addition, the sanction did not implicate plaintiff's liberty interests because he received notice and the opportunity to be heard before being suspended.

Protected interests in property "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law * * * that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 US 564, 577, 92 S Ct 2701, 33 L Ed 2d 548 (1972). "Not every procedural requirement ordained by state law, however, creates a substantive property interest entitled to constitutional protection. Rather, only those rules or understandings that support legitimate claims of entitlement give rise to protected property interests." *Shanks*,

Page 7 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

540 F3d at 1091 (internal quotation marks and citations omitted).  To be entitled to constitutional due process, "a person clearly must have more than an abstract need or desire * * * [or] unilateral expectation of" a benefit.  *Roth*, 408 US at 577.  Examples of legitimate entitlements are the continued receipt of welfare benefits issued in accordance with statutory or administrative standards defining eligibility, *Goldberg v. Kelly*, 397 US 254, 90 S Ct 1011, 25 L Ed 2d 287 (1970), and the continued employment of a tenured professor at a public university, *Slochower v. Bd. of Higher Ed.*, 350 US 551, 76 S Ct 637, 100 L Ed 692 (1956).

Liberty interests are "'those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.'"  *Roth*, 408 US at 572 (quoting *Meyer v. Nebraska*, 262 US 390, 399, 43 S Ct 625, 67 L Ed 1042 (1923)).  Liberty interests are reserved for the most fundamental of our rights, and "attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law."  *Paul v. Davis*, 424 US 693, 710-11, 96 S Ct 1155, 47 L Ed 2d 405 (1976).  The Supreme Court has "repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply [only when] the State seeks to remove or significantly alter that protected status."  *Id.*  The Court has, for example, refused to find liberty interests in the nonrenewal of a fixed-term employment contract, *Roth*, 408 US 564, or damage to one's personal reputation, without additional injury, *Davis*, 424 US 693.

Plaintiff had no property interest in enrollment at the University, his position on its basketball team, his receipt of future athletic scholarships, or a prospective NBA contract. The Constitution therefore did not guarantee plaintiff any due process rights with regard to the University's investigation or his administrative hearing.  And plaintiff cannot plausibly contend that his liberty interests were implicated by the alleged conduct of the Individual Defendants because his suspension (after a finding that he violated the Student Conduct Code) did not implicate any interest "'essential to the orderly pursuit of happiness.'"  *Roth*, 408 US at 572 (quoting *Meyer*, 262 US at 399).

70081103.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

a.    Plaintiff did not have a property or liberty interest in attending the University

Students do not have a constitutionally protected property or liberty interest in public postsecondary education in Oregon. *See Ryan v. Harlan*, No. CV-10-626-ST, 2011 WL 711110, at *7 (D Or Feb. 22, 2011) (holding that a former university student had "no recognized due process interest in graduate level education. There is an established and significant property interest in universal elementary and high school education *due to mandated attendance by state laws*. However, post-high school, when attendance is not mandated, the property interest is less and less protected.") (emphasis added) (citation omitted); *Harrell v. S. Or. Univ.*, No. CV 08-3037-CL, 2010 WL 2326576, at *8 (D Or Mar. 24, 2010) ("Plaintiff cannot argue an entitlement to post-secondary education. Plaintiff cites no Oregon statutes to support his contention of a property or liberty interest, and, further, the Supreme Court has explicitly stated that 'education. . . is not among the rights afforded explicit protection under our Federal Constitution.'") (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 US 1, 35, 93 S Ct 1278, 36 L Ed 2d 16 (1972)); *Fernandez v. Rosenzwieg*, No. CIV. 95-241-FR, 1996 WL 453046, at *3 (D Or Aug. 8, 1996) ("There is no case holding that a student has a federally-protected due process, property or liberty interest in continued enrollment in or graduation from a state university. This court will not so hold.").

The Supreme Court has explained that public university students have a legitimate claim of entitlement to their education *only if* state law confers this interest. *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 US 78, 82, 98 S Ct 948, 55 L Ed 2d 124 (1978) ("Because property interests are creatures of state law, respondent would have been required to show at trial that her seat at the Medical School was a 'property' interest recognized by Missouri state law.") (citation omitted). The rationale outlined in *Goss v. Lopez*, 419 US 565, 95 S Ct 729, 42 L Ed 2d 725 (1975), which confirmed the existence of a constitutionally protected property interest in mandatory K-12 education in Ohio, applies here to demonstrate the lack of any property interest.

Page 9 -    Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

The Court found that "*on the basis of state law,* appellees plainly had legitimate claims of entitlement to a public education.  [Ohio laws] direct local authorities to provide a free [K-12] education to all residents between five and 21 years of age, and a compulsory-attendance law requires attendance * * *."  419 US at 573 (emphasis added).  Here, in stark contrast to laws for K-12 education in Ohio (and in Oregon), Oregon does not mandate that college-age residents (let alone non-residents such as plaintiff) attend college, nor does it provide free education at its public universities to all college-age residents.  Oregon law does not establish an entitlement to public postsecondary education.  The Constitution therefore does not afford due process protections to students suspended from Oregon's public universities.

Plaintiff's claim also incorrectly implies that he had a liberty interest in his "good standing at the University" and that his liberty interests were impinged because he has "been made to suffer the opprobrium associated with a[] suspension from a university, and the opprobrium associated with committing a sexual assault (when in fact he committed no sexual assault)."[3]  (Second Am. Compl. ¶¶ 47, 69.)

The Constitution does not protect a student's "good standing" after an administrative finding that the student engaged in sexual misconduct.  Likewise there is no constitutional protection for the "opprobrium" of being suspended from school for sexual misconduct.  Even if the University's finding was erroneous, in *Davis*, the Supreme Court explained that it "has never held that the mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient to invoke the guarantees of procedural due process" unless "a right or status previously recognized by state law was [also] distinctly altered or extinguished."  424 US at 706, 711.  The Court's ruling clarified that, properly interpreted,

---

[3]  The University did not suspend plaintiff for "committing sexual assault," as plaintiff alleges. Plaintiff was suspended for "sexual misconduct," a term defined by the Student Conduct Code as, in relevant part, "penetration of another person, * * * when one * * * [d]oes not first obtain Explicit Consent from that person."  OAR 571-021-0105(30)(b)(A).

Page 10 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Wisconsin v. Constantineau*, 400 US 433, 437, 91 S Ct 507, 27 L Ed 2d 515 (1971)—which reasoned that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential"—and the Court's subsequent jurisprudence "establish[] no constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause." *Davis*, 424 US at 702.

      To the extent that plaintiff alleges the violation of a liberty interest, his assertion fails for at least three reasons. First, plaintiff's suspension did not alter or extinguish a right previously recognized by state law. *See Davis*, 424 US at 711. As discussed above, there is no right to public postsecondary education in Oregon, and consequently no right to being a student in good standing. Plaintiff's suspension from the University therefore could not have altered his cognizable educational rights, because he had none. Second, plaintiff was not sanctioned until *after* he received notice and had the opportunity to be heard at an administrative hearing. (Second Am. Compl. ¶¶ 56-57.) Moreover, plaintiff does not allege that the Individual Defendants notified the public of plaintiff's suspension, thus the Individual Defendants cannot be held liable for any "opprobrium" plaintiff claims. *See Davis*, 424 US at 711. Finally, plaintiff has not alleged that the Individual Defendants sought to prevent plaintiff from pursuing his education elsewhere or from pursuing a professional basketball career. In the absence of efforts to deprive plaintiff of future opportunity, plaintiff cannot assert that the Individual Defendants impaired his liberty interests. *See, e.g.*, *Roth*, 408 US at 573-74 ("The State, for example, did not invoke any regulations to bar the respondent from all other public employment in state universities. Had it done so, this * * * would be a different case.").

      Plaintiff did not have a constitutionally protected property or liberty interest in his education and his suspension from the University did not impinge his constitutional interests. Plaintiff's suspension therefore cannot give rise to a due process claim.

Page 11 -   Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

       b.    <u>Plaintiff did not have a property interest in playing basketball for the University</u>

Plaintiff also has no constitutional interest in his position on the University's varsity basketball team.  In Oregon, because students do not have a constitutional right to attend a public university, *see, e.g.*, *Fernandez*, 1996 WL 453046, at *3, they cannot have a constitutional right to participate in intercollegiate athletics sponsored by the University.

The majority of jurisdictions recognize that "participation in intercollegiate athletics is not a constitutionally protected interest." *Justice v. Nat'l Collegiate Athletic Ass'n*, 577 F Supp 356, 366 (D Ariz 1983); *see e.g., Colo. Seminary (Univ. of Denver) v. NCAA*, 417 F Supp 885, 896 (D Colo 1976), *aff'd*, 570 F2d 320 (10th Cir 1978) ("[T]he plaintiff student-athletes have no constitutionally protected property or liberty interest in participation in intercollegiate athletics."); *Brands v. Sheldon Cmty. Sch.*, 671 F Supp 627, 631 (ND Iowa 1987) ("A clear majority of courts addressing this question in the context of interscholastic or intercollegiate athletics has found that athletes have no legitimate entitlement to participate.").

In accordance with *Roth*, unless "existing rules or understandings * * * such as state law" establish that college athletes are entitled to compete in intercollegiate athletics, dismissing a student-athlete from a college team does not disturb his or her civil rights.  *See* 408 US at 577.  Plaintiff cannot establish a property interest in playing basketball for the University because no rule or Oregon law creates an entitlement to participate in intercollegiate athletics.  Plaintiff's dismissal from the team therefore cannot give rise to a due process claim.

       c.    <u>Plaintiff did not have a property interest in the renewal of his fixed-term athletic scholarship or the receipt of an athletic scholarship from another school</u>

Plaintiff's two-quarter fixed-term athletic scholarship did not confer a property interest, and under the express terms of the contract plaintiff was not entitled to have his scholarship renewed for the 2014-15 academic year.  (Thornton Decl., Exhibit B.)  Plaintiff does not allege that his scholarship was revoked before the end of spring quarter 2014 or that the

Page 12 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

University failed to provide him with any benefit due under the terms of his scholarship.  This is significant.  Because the University fulfilled its obligations under the terms of the scholarship, plaintiff's claim can succeed only if he establishes a property interest in the renewal of his scholarship.  To do so, plaintiff must show that state law, or some binding rule, entitled him to receive another scholarship.  But no rule or Oregon law required that the University renew plaintiff's scholarship.  Furthermore, such a claim contradicts the terms of plaintiff's scholarship, which was offered only "for two (2) quarters, commencing with the first day of classes Winter quarter of the 2013-14 academic year" and expiring at the end of spring quarter 2014.

In *Roth*, the Supreme Court held that a fixed-term employment contract that does not guarantee an extension or renewal "secure[s] absolutely no interest in re-employment" after the contract expires on its own terms.  408 US at 578.  This is because any property interest in an employment contract is "created and defined by the terms of [the] appointment." *Id.*  In this case, plaintiff's scholarship secured an interest less significant than employment and one that did not rise to the level of a constitutional property interest.  But similar to Roth's contract, plaintiff's athletic scholarship was offered for a fixed term, without the promise of renewal.  Under the terms of the contract, the University had no obligation to renew plaintiff's scholarship for the subsequent academic year.  Plaintiff's "unilateral expectation" that his scholarship would be renewed did not create an entitlement to a scholarship renewal.  Consequently, as a matter of law, plaintiff had no constitutionally protected interest in the renewal of his athletic scholarship.[4]

Additionally, plaintiff's "unilateral expectation" of receiving an athletic scholarship from another Division I school did not create a constitutional entitlement.  Plaintiff pleads no facts that could give rise to an inference that he was entitled to receive a scholarship

---

[4]  Plaintiff appears to claim that he was automatically entitled to a new athletic scholarship. (Second Am. Compl. ¶ 17.)  But that is not true.  In accordance with the NCAA scholarship rules cited in plaintiff's scholarship offer, plaintiff's scholarship could have been nonrenewed for any number of reasons not based on his athletic ability, from being academically ineligible to being late for practice. *See* 2013-14 NCAA Manual, NCAA Bylaw 15.3.5.

Page 13 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

elsewhere (in fact, the Complaint's only reference to another Division I school is that plaintiff was suspended from the Providence College basketball team prior to matriculating to the University).  (Second Am. Compl. ¶¶ 11-12.)  He also fails to assert factual allegations that the Individual Defendants interfered with him receiving an athletic scholarship at another school, which would be necessary to hold them liable.  *Roth*, 408 US at 573-74.  Plaintiff's claimed property interest, therefore, fails as matter of law.

                    d.      <u>Plaintiff did not have a property interest in "a future contract with an NBA team"</u>

        Plaintiff also alleges that he had a property interest in "a future contract with an NBA team."  (Second Am. Compl. ¶ 46.)  But one cannot plausibly infer from plaintiff's pleading that he was entitled to an NBA contract.  Plaintiff merely had a "unilateral expectation of" an NBA contract, which is insufficient to create a constitutionally protected property interest.  *Roth*, 408 US at 577.  As with his alleged property interest in receiving an athletic scholarship from another school, plaintiff fails to allege that any NBA team even so much as contacted him one time (and plaintiff would need to assert a far more developed relationship with an NBA team to allege a property interest in a future NBA contract).  Without any contact from the NBA—let alone facts indicating that a future NBA contract was "securely and durably" his property— plaintiff cannot, as a matter of law, establish an entitlement to a future contractual relationship with the NBA.  *Hussey v. Milwaukee Cnty.*, 740 F3d 1139, 1142 (7th Cir 2014).

                    e.      <u>Oregon's Administrative Procedures Act did not confer a constitutionally protected interest on plaintiff</u>

        Plaintiff pleads that the Individual Defendants conducted his administrative hearing in a manner that violated the Oregon Administrative Procedures Act (the "APA"), and in doing so violated his federal due process rights.  (Second Am. Compl. ¶ 104.)  Plaintiff alleges violations of ORS 351.088, ORS 183.413-.497, and ORS 183.502.  These statutes, however, do not confer a property or liberty interest on plaintiff (instead they grant the University rulemaking

Page 14 -    Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

authority and describe procedures applicable to contested hearings), which is a prerequisite for establishing a due process violation.  *See Shanks*, 540 F3d at 1090-91.

In addition, the University was not bound to the administrative procedures provided by ORS 183.413-.497 because ORS 351.088 grants the University the authority to "establish [its own] adjudicative procedures."  In accordance with this authority, the University established procedures for administrative conferences, OAR 571-021-0205, and panel hearings, OAR 571-021-0210, as the exclusive procedures for adjudicating alleged violations of its Student Conduct Code.  In consequence, plaintiff's complaint alleges violations of administrative procedures (those applicable in contested hearings) that, as a matter of law, were not applicable to plaintiff and that he was therefore not entitled to receive.  Moreover, as discussed below, plaintiff voluntarily, knowingly, and intelligently agreed to the administrative procedures he received, expressly waving his right to a panel hearing or any other procedure he now alleges he was due.

Plaintiff cannot establish that his constitutional rights were violated by the alleged failure of the Individual Defendants to comply with the cited provisions of the APA because these laws conferred no rights on plaintiff and the University was not obligated to follow the hearing procedures described in ORS 183.413-.497.

2.    Defendants are entitled to qualified immunity because they did not violate a clearly established constitutional right

No clearly established constitutional rights were implicated by the alleged conduct of the Individual Defendants, and they are therefore entitled to qualified immunity and dismissal of plaintiff's due process claim.  "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 US 731, 131 S Ct 2074, 2080, 179 L Ed 2d 1149 (2011) (quoting *Harlow v. Fitzgerald*, 457 US 800, 818, 102 S Ct 2727, 73 L Ed 2d 396 (1982)).

Page 15 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 US 635, 639, 107 S Ct 3034, 97 L Ed 2d 523 (1987) (internal quotation marks and citation omitted).  Put differently, a public official's claim of qualified immunity is defeated only if "'in the light of pre-existing law' the unlawfulness of his conduct was 'apparent.'"  *Grossman v. City of Portland*, 33 F3d 1200, 1208 (9th Cir 1994) (quoting *Anderson*, 483 US at 640).

        The Ninth Circuit has explained that it is appropriate to rule on qualified immunity on a motion to dismiss.  *See e.g.*, *Dunn v. Castro*, 621 F3d 1196, 1198-99 (9th Cir 2010) (reversing district court's denial of qualified immunity at motion to dismiss stage); *Padilla v. Yoo*, 678 F3d 748, 757 (9th Cir 2012) (same); *see also Hunter v. Bryant*, 502 US 224, 227, 112 S Ct 534, 116 L Ed 2d 589 (1991) ("[B]ecause [t]he entitlement is an immunity from suit rather than a mere defense to liability, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.") (internal quotations and citations omitted).  According to the *Dunn* court, qualified immunity should be granted on a motion to dismiss if the law is not clearly established as applied to the facts, which are taken as pleaded:

> "On review of a denial of a motion to dismiss based on qualified immunity, we review de novo whether governing law was clearly established at the time of the alleged violation. * * * We find it particularly appropriate to resolve Dunn's case at this stage because the Supreme Court has repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  621 F3d at 1198-99 (internal quotation marks and citations omitted).

        Plaintiff did not have an entitlement to attend the University, play for its basketball team, have his athletic scholarship renewed or receive a scholarship from another school, enter into a contract with the NBA, or be free from the "opprobrium" of receiving a suspension for sexual misconduct.  But even if the court finds that interfering with any of these

Page 16 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

"unilateral expectation[s]," *Roth*, 408 US at 577, implicated a constitutionally protected right, such a right was not clearly established at the time of plaintiff's administrative hearing because no court in Oregon or the Ninth Circuit has ever found such a right to exist under similar circumstances.  Moreover, several Oregon district court decisions have expressly rejected a constitutional right to public higher education.  *See e.g.*, *Fernandez*, 1996 WL 453046, at *3. And, if anything, it is clearly established that there is no constitutionally protected interest in public university education, intercollegiate athletics, athletic scholarships, hypothetical NBA contracts, and attention for engaging in sexual misconduct.  In light of preexisting law, it could not have been apparent to the Individual Defendants that their alleged actions implicated plaintiff's constitutionally protected interests.  *See Grossman*, 33 F3d at 1208 (quoting *Anderson*, 483 US at 640).  In accordance with the doctrine of qualified immunity, none of the Individual Defendants should be subject to any aspect of litigation concerning plaintiff's due process claim and the claim should be dismissed.  *See Mitchell v. Forsyth*, 472 US 511, 526, 105 S Ct 2806, 86 L Ed 2d 411 (1985) (qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation").

Furthermore, plaintiff's claims against Martin, Gottfredson, and Holmes ask the court to create additional constitutional protections that have never been recognized in this jurisdiction or elsewhere.  Plaintiff pleads that Martin, the University's former Assistant Dean of Students, temporarily suspended plaintiff on an emergency basis after the University received a report accusing plaintiff of sexual misconduct.  But plaintiff cannot demonstrate that at the time it was clearly established that a university official violates the Constitution by temporarily suspending a student while the university investigates serious allegations of sexual misconduct. Plaintiff pleads that Gottfredson "in effect imposed discipline upon Mr. Austin * * * by making a public statement condemning Mr. Austin" soon after *The Oregonian* published a police report in which plaintiff was accused of rape.  (Second Am. Compl. ¶ 40.)  But at the time of these remarks, it was not clearly established that a university president violates the Constitution by

Page 17 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

making a public statement (on a topic of public interest that concerns the university) that doesn't actually impose any school-based discipline on a student. Plaintiff's allegations against Holmes, the University's Vice President of Student Life, similarly fail to overcome qualified immunity. Plaintiff pleads that Holmes "refused to respond to Mr. Austin's request for an appeal and did not return multiple phone calls from Mr. Austin's counsel, in violation of Mr. Austin's right to procedural and substantive due process."[5] (Second Am. Compl. ¶ 59.) But plaintiff had no right to an appeal under the rules for University administrative conferences, *see* OAR 571-021-0205, and he expressly waived any appeal right he may have had in his signed June 5 waiver. Consequently, Holmes' alleged conduct could not have violated any clearly established constitutional right to an appeal, because no such right existed.

Because it could not have been apparent to Martin, Gottfredson, Holmes, or Weintraub that their alleged conduct violated the Constitution, the court should grant these defendants qualified immunity and dismiss plaintiff's due process claim.

3.    <u>Plaintiff's allegations cannot support an inference that his administrative hearing was constitutionally deficient</u>

Plaintiff's due process claim should be dismissed not only because no constitutionally protected rights were implicated by the alleged conduct of the Individual Defendants, and because the Individual Defendants are entitled to qualified immunity, but also because plaintiff's administrative hearing provided all the process he was due.

a.    <u>Plaintiff agreed to participate in an administrative conference and waived his right to additional procedure</u>

Plaintiff pleads that he requested but did not receive a contested hearing, which he alleges is a violation of his due process rights. But "due process rights * * * are subject to waiver." *D. H. Overmyer Co. v. Frick Co.*, 405 US 174, 185, 92 S Ct 775, 31 L Ed 2d 124

---

[5]  The University disputes this allegation, though that dispute is not relevant to this motion.

Page 18 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

(1972).  "The Supreme Court has recognized that constitutional rights may ordinarily be waived if it can be established by clear and convincing evidence that the waiver is voluntary, knowing and intelligent."  *Davies v. Grossmont Union High Sch. Dist.*, 930 F2d 1390, 1394-95 (9th Cir), *cert denied*, 501 US 1252 (1991) (citing *Overmyer*, 405 US at 185).

       As plaintiff's Complaint makes clear, he agreed that his hearing would be conducted as an administrative conference, in accordance with OAR 571-021-0205.  (Second Am. Compl. ¶ 54.)  This agreement was reached after negotiations by Laura Fine Moro, who was plaintiff's attorney during the administrative hearing process, and Douglas Park, the University's general counsel.[6]  On or about June 5, 2014, plaintiff confirmed in writing his agreement to participate in an administrative conference (Decl. of Lisa Thornton Exhibit D.)  As part of this agreement, plaintiff waived his rights (a) to a panel hearing, (b) to have his accuser present at his administrative conference, and (c) to an appeal.  Plaintiff's waiver attests that Moro was present when plaintiff signed his agreement.

       Plaintiff's agreement to the administrative conference and waiver of additional procedure was made while he was represented by counsel.  Plaintiff does not plead that he was not fully informed of the procedures for an administrative conference or the consequences of waiving his right to a panel hearing, including waiving his right to appeal the outcome of the hearing.  Thus, as a matter of law, he cannot establish that his agreement and waiver were anything other than voluntary, knowing, and intelligent.  His procedural rights, under Oregon law, were therefore limited to those rights included in OAR 571-021-0205.

---

[6]  The University also agreed that plaintiff would not be expelled from the University, if the allegations against him were substantiated.  One of the reasons the University agreed to reduce the possible sanction plaintiff faced was because, by agreeing to an administrative conference, plaintiff agreed to forgo aspects of a panel hearing that can be grueling for an alleged victim, such as subjecting the alleged victim to cross-examination.

Page 19 -    Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

b.  <u>Plaintiff failed to plead factual allegations that support an inference that his administrative conference was deficient and waived the procedures that he now claims not to have received</u>

In relevant part, OAR 571-021-0205(1) requires the following procedures for University administrative conferences:

"(a)  Reasonable access to the case file prior to and during the conference, except to the extent access to such material is prohibited by law.  The case file may contain materials that are considered 'education records' pursuant to the Family Education Rights and Privacy Act (FERPA) of 1974, as amended and personal notes of University staff members and complainants.  Access to these materials may be prohibited by law.  Otherwise, to the extent allowed by law, copies of the case file will be provided upon request.

"(b)  An opportunity to respond to all information provided and to ask the Director or designee hearing the case to contact relevant and necessary witnesses.

"(c)  The right to be accompanied and assisted by an adviser."

Plaintiff alleges that he (a) was not allowed to subpoena witnesses, (b) was not provided with unredacted reports, and (c) was not permitted to cross-examine witnesses. (Second Am. Compl. ¶ 114.)  But plaintiff had no legal right to any of these procedures because he agreed to proceed by administrative conference.  The rules for administrative conferences did not give plaintiff the right to subpoena witnesses, receive unredacted reports, or cross-examine witnesses.  *See* OAR 571-021-0205.  His procedural rights, under Oregon law, were limited to those rights spelled out in OAR 571-021-0205.  As explained above, plaintiff failed adequately to plead that the Individual Defendants denied him any procedures he was due.

Plaintiff's also alleges that he did not have the "basic opportunity to properly respond to all information provided, [or] to contact or call all relevant and necessary witnesses." (Second Am. Compl. ¶ 55.)  But the Complaint fails to include any factual allegations concerning these assertions.  Instead, plaintiff merely recites of the first clause of OAR 571-021-0205(1)(b) and misconstrues the second clause of the provision.  Plaintiff claims that he was not allowed to contact or call relevant witnesses, however OAR 571-021-0205(1)(b) provides that

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

plaintiff be permitted to ask Weintraub to contact relevant witnesses on plaintiff's behalf. Plaintiff fails to allege that he asked Weintraub to contact any witnesses or that Weintraub refused to do so.  Because plaintiff does not allege factual allegations that support his claim, plaintiff's claim should be dismissed.  *Iqbal*, 556 US at 678-79.

Plaintiff's due process claim should be dismissed because plaintiff cannot plausibly allege that the University's investigation or his administrative hearing were deficient, in light of the process he was due after waving his right to a panel hearing.

      c.    <u>Plaintiff received notice and had an opportunity to be heard before his suspension from the University</u>

Setting aside plaintiff's waiver and the shortcomings of his pleadings, plaintiff's Fourteenth Amendment rights were not violated because he received constitutionally sufficient due process.  Plaintiff does not allege that the University failed to provide him notice of his hearing or an opportunity to be heard *before* any alleged deprivation of supposed constitutional rights.  "Notice and a meaningful opportunity to be heard are the hallmarks of procedural due process."  *Ludwig v. Astrue*, 681 F3d 1047, 1053 (9th Cir 2012) (internal punctuation and citation omitted).  Regardless of whether plaintiff had a right to due process, he received it and therefore his claim fails.

Additionally, the court should dismiss plaintiff's procedural due process claim with respect to Martin, Holmes, and Gottfredson for the separate reason that plaintiff does not assert that these defendants participated in the University's investigation or his hearing.

      4.    <u>Plaintiff was not deprived of any substantive due process rights</u>

In addition to plaintiff's claim that the Individual Defendants violated his procedural due process rights, plaintiff alleges violations of his substantive due process rights. But those rights were not implicated by the Individual Defendants' alleged conduct because their alleged conduct did not deprive plaintiff of a fundamental right or "shock[] the conscience." *Nunez*, 147 F3d at 871 (internal quotation marks and citation omitted).

Page 21 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

"[T]he due process clause includes a substantive component which guards against arbitrary and capricious government action," *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F2d 1398, 1407 (9th Cir 1989), but this substantive component generally affords protection only to fundamental rights, *see Albright v. Oliver*, 510 US 266, 272, 114 S Ct 807, 127 L Ed 2d 114 (1994) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.").  Substantive due process guards against governmental "interference with property rights [that is] irrational or arbitrary," *Bateson v. Geisse*, 857 F2d 1300, 1303 (9th Cir 1988), and conduct that "shocks the conscience or interferes with rights implicit in the concept of ordered liberty," *Nunez*, 147 F3d at 871 (internal quotation marks and citation omitted).  It "is not 'a guarantee against incorrect or ill-advised' decisions."  *Lumbreras v. Roberts*, 319 F Supp 2d 1191, 1211 (D Or 2004) (quoting *Collins v. City of Harker Heights*, 503 US 115, 129, 112 S Ct 1061, 117 L Ed 2d 261 (1992)).  And for claims not affecting a fundamental right, the court "merely look[s] to see whether the government *could* have had a legitimate reason for acting as it did."  *Halverson v. Skagit Cty.*, 42 F3d 1257, 1262 (9th Cir 1994) (internal quotation marks and citation omitted).

As a threshold issue, plaintiff was not deprived of a fundamental right and therefore cannot raise a substantive due process claim.  *See L.W. v. Grubbs*, 974 F2d 119, 120 (9th Cir 1992).  Plaintiff nevertheless also fails to plead factual allegations establishing that the conduct of the Individual Defendants was plausibly "irrational or arbitrary," *Bateson*, 857 F2d at 1303, or "shock[ed] the conscience or interfere[d] with rights implicit in the concept of ordered liberty," *Nunez*, 147 F3d at 871 (internal quotation marks and citation omitted).  Furthermore, plaintiff's claim does not implicate a fundamental right, such as the right to bodily integrity.  The court, therefore, must dismiss this claim if it finds that the Individual Defendants *could* have had a legitimate reason for their alleged actions.  *Halverson*, 42 F3d at 1262.

Plaintiff alleges that Weintraub violated plaintiff's substantive due process rights through the manner in which he conducted plaintiff's administrative hearing.  But it cannot be

Page 22 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

considered irrational or arbitrary for Weintraub to follow procedures that plaintiff agreed to, and plaintiff has not plead that Weintraub failed to provide the procedure plaintiff was due under the law.

As previously discussed, Holmes' purported refusal to respond to plaintiff's alleged request for an appeal did not shock the conscience. Plaintiff had no right to appeal the outcome of this administrative hearing to the University (his appeal rights were exclusively through ORS 183.484 or 183.482, as discussed below in Section C). Thus, as a matter of law, it cannot shock the conscience that a University official "refused to respond to Mr. Austin's request for an appeal" and did not "return multiple phone calls from Mr. Austin's counsel" (Second Am. Compl. ¶ 59.) when (a) plaintiff had no appeal right and (b) plaintiff's counsel was in direct communication with the University's general counsel concerning the other aspects of plaintiff's administrative hearing.

Martin's and Gottfredson's alleged conduct (issuing a suspension and making a public statement, respectively) did not shock the conscience, either. It cannot shock the conscience that a University official temporarily suspended a student while the University investigated a report that the student committed sexual misconduct, a serious violation of the Student Conduct Code. *See* OAR 571-021-0130. It also cannot shock the conscience that the University President issued a statement discussing public safety in light of the conduct depicted in the police report, which had been made publically available by *The Oregonian*.

Plaintiff's substantive due process claim should accordingly be dismissed for failure to state a claim.

**B.    Plaintiff's Title IX Claim Should Be Dismissed Because He Cannot Plausibly Allege That Defendants' Conduct Was Motivated By Plaintiff's Gender or Sex**

Plaintiff's Title IX claim against the Individual Defendants fails as a matter of law. "Courts have consistently held that Title IX does not subject school officials to liability in their individual capacities." *G.C. v. North Clackamas School Dist.*, 654 F Supp 2d 1226, 1237

70081103.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

(D Or 2009) (internal quotation marks and citation omitted); *see also Williams v. Bd. of Regents of Univ. Sys. Of Georgia*, 477 F3d 1282 (11th Cir 2007) ("Title IX does not allow claims against individual school officials; only funding recipients can be held liable for Title IX violations."); *Rowinsky v. Bryan Indep. Sch. Dist.*, 80 F3d 1006, 1012 (5th Cir), *cert. denied*, 519 US 861, 117 S Ct 165, 136 L Ed 2d 108 (1996) ("The fact that [T]itle IX was enacted pursuant to Congress's spending power is evidence that it prohibits discriminatory acts only by grant recipients."); *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 US 629, 641, 119 S Ct 1661, 143 L Ed 2d 839 (1999) ("The Government's enforcement power may only be exercised against the funding recipient, see § 1682, and we have not extended damages liability under Title IX to parties outside the scope of this power.").  Plaintiff's claim asserts liability against the Individual Defendants, in their individual capacities.  It should be dismissed as to the Individual Defendants.

        Plaintiff's allegations against the University also fail as a matter of law because plaintiff's Complaint does not include any factual allegations that suggest that the University's conduct was motivated by Plaintiff's gender or sex.[7]  Plaintiff offers three theories of

---

[7]  Defendants assert that plaintiff's Title IX claim is precluded by the applicable statute of limitations.  While "Title IX does not expressly provide any statute of limitations * * * [it] 'borrow[s] the most appropriate state statute of limitations.'"  *Stanley v. Trustees of California State Univ.*, 433 F3d 1129, 1134 (9th Cir 2006) (quoting *Cholla Ready Mix, Inc. v. Civish*, 382 F3d 969, 974 (9th Cir 2004), *cert. denied sub nom.*, *Cholla Ready Mix, Inc. v. Mendez*, 544 US 974, 125 S Ct 1828, 161 L Ed 2d 724 (2005)(citing *Wilson v. Garcia*, 471 US 261, 268, 105 S Ct 1938, 85 L Ed 2d 254 (1985)).  The most appropriate state statute of limitations is the statute "most analogous" to Title IX.  *See Wilson*, 471 US at 271.  In *Wilson*, the Supreme Court considered which statute of limitations to apply to claims brought under 42 USC § 1983, which lacks a statute of limitations.  The court concluded that a state's personal injury statute of limitations is the most analogous to claims under Section 1983.  Neither the District of Oregon nor the Ninth Circuit has determined what Oregon law is most analogous, hence most appropriate to apply, to Title IX.

        In *Stanley*, the Ninth Circuit analogized Title IX claims to Section 1983 claims and, citing to *Wilson* and related cases, determined that the California personal injury statute applied to Title IX claims, reasoning that "every circuit to consider the issue has held that Title IX * * * borrows the relevant state's statute of limitations for personal injury" and "[t]he close similarity

---

Page 24 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

discrimination: selective enforcement, erroneous outcome, and deliberate indifference. Each of these theories fails to connect the University's conduct to gender or sex bias.

1. <u>Plaintiff did not allege facts from which one could plausibly infer that the University selectively enforced its Student Conduct Code or sanctioned plaintiff because of his gender or sex</u>

Plaintiff's first theory is that the University selectively enforced its Student Conduct Code because of his gender or sex. For a "selective enforcement" claim to survive a motion to dismiss, the plaintiff must plead facts that suggest that the defendant initiated proceedings or imposed a sanction based on the plaintiff's gender or sex. *See e.g.*, *Doe v. Univ. of the South*, 687 F Supp 2d 744, 756 (ED Tenn 2009) (""To support a claim of selective enforcement, [a male plaintiff] must demonstrate that a female was in circumstances sufficiently similar to [the plaintiff] and was treated more favorably by the University."") (quoting *Mallory v. Ohio Univ.*, 75 Fed Appx 634, 641 (6th Cir 2003); *Doe v. Columbia Univ.*, 101 F Supp 3d 356, 374 (SDNY April 21, 2015) (plaintiff must "allege particular circumstances suggesting a

---

between Title VI and Title IX also supports applying the statute of limitations for personal injury." *Stanley*, 433 F3d at 1134--1136.

However, *Wilson's* rationale is specific to 1983 claims and the diversity of claims that may be asserted under Section 1983, the tort nature of many of those claims, the historical context, and the "unique" nature of 1983 as a federal remedy. *Wilson*, 471 US at 271-72, quoting *Mitchum v. Foster*, 407 US 225, 239, 92 S Ct 2151, 2160, 32 L Ed 2d 705 (1972). Section 1983 is qualitatively different than Title IX (and Title VI). For example, Section 1983 claims may be brought against a government official who inflicted personal injury on a plaintiff (e.g., excessive force by a police officer), but Title IX claims may be brought only against institutions, not individuals, and Title IX's charge is preventing recipients of federal funding from discriminating in educational programs. 20 USC § 1681(a).

At the time Title IX was enacted in 1972, Oregon already had a state law prohibiting discrimination in employment on the basis of sex. ORS 659A was originally enacted in 1949 (as ORS 659) and amended in 1969 to prohibit discrimination on the basis of sex. Therefore, at the time Congress passed Title IX, the most analogous state law in Oregon was its prohibition on discrimination, which has a one year statute of limitations. ORS 659A.030. Oregon subsequently passed a state law specifically prohibiting gender discrimination in educational institutions. ORS 659.850. That statute also has a one year statute of limitations. ORS 659.860 (2). One or both of these statutory schemes is the most analogous Oregon law to Title IX and therefore a one year statute of limitations should apply to plaintiff's claim.

Page 25 -    Defendants' Motion to Dismiss and Memorandum in Support

70081103.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

meaningful inconsistency in punishment and particular circumstances suggesting that gender bias was a motivating factor behind the inconsistency") (internal quotation marks and citation omitted); *Doe v. Univ. of Mass.-Amherst*, 2015 WL 4306521, No. 14-301430MGM, at *9 (D Mass July 14, 2015) (Plaintiff fails to state a claim of selective enforcement of Title IX because he does not "cite examples of any comments that targeted him based on his gender—as opposed to his status as a student accused of sexual assault—or any conduct suggestive of gender bias.") The plaintiff must "do more than recite conclusory assertions. In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of * * * discriminatory intent." *Yusuf v. Vassar College*, 35 F3d 709, 713 (2nd Cir 1994) (internal citations omitted).

Plaintiff does not meet the pleading standard. He asserts merely the bare legal conclusion that "[r]egardless of his guilt or innocence * * *, the severity of the penalty * * *, as well as the decision to initiate the proceeding in the first place, were affected by the fact that Mr. Austin is a male, and the accuser is a female" (Second Am. Compl. ¶ 77) along with three additional statements asserting the University's gender and sex bias, which are made "on information and belief" but void of factual support (Second Am. Compl. ¶¶ 81-84). Statements based solely "on information and belief," are not factual allegations sufficient to overcome a motion to dismiss. *Doe v. Columbia Univ.*, 101 F Supp 3d at 369, 371 ("[i]n the wake of *Iqbal* and *Twombly*" statements made "[u]pon information and belief" are not factual allegations and assertions "that males * * * accused of sexual misconduct 'are invariably found guilty'" do not satisfy the pleading standard);[8] *see also Doe v. Univ. of Mass.-Amherst*, 2015 WL 4306521, at *9

---

[8] The *Doe v. Columbia Univ.* Court further explained that:

"The Second Circuit's decision in *Yusuf* does not call for a different result. To be sure, the *Yusuf* Court held that the plaintiff's allegations were sufficient to state a claim under Title IX and relied in part on an allegation * * * that males accused of sexual harassment at the school were 'invariably found guilty, regardless of the

Page 26 -   Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

(assertions that "'male respondents in sexual misconduct cases * * * are discriminated against solely on the basis of sex' and are 'invariably found guilty * * *' [which] are unsupported by even minimal data or credible anecdotal references * * * are the type of conclusory statements that *Iqbal* and *Twombly* do not allow the court to consider.").  Moreover, "[t]hat Plaintiff couches most of [his allegations] as made '[u]pon information and belief' merely underscores the glaring absence of particularized evidence supporting an inference that gender bias was causally linked to a flawed outcome." *Doe v. Columbia Univ.*, 101 F Supp 3d at 371.

        The two factual allegations Plaintiff includes do not support his claim.  First, plaintiff states that the Lane County District Attorney declined to initiate criminal proceedings.  (Second Am. Compl. ¶¶ 78-79.)  This fact, however, does not give rise to an inference of gender or sex discrimination.  The District Attorney's Office is a prosecutorial body and assesses whether, in its opinion, there is probable cause that a violation of the state's criminal code has occurred.  The University, on the other hand, is an educational entity and, in its relevant capacity here, assesses whether a "preponderance of the information" suggests that a violation of its Student Conduct Code has occurred.  *See* 571-021-0140(5)(h).  Plaintiff's own allegations that the case against him was "unprovable as a *criminal* case" and had "weaknesses [that] presented 'an insurmountable barrier *to prosecution*'" confirm that the District Attorney's decision not to prosecute plaintiff is of no bearing to the University's decisions to initiate its investigation or impose a sanction based on the University's Student Conduct Code.  (Second Am. Compl. ¶¶ 37, 39) (emphasis added.)  In addition, evidence of non-prosecution of criminal charges against

---

evidence, or lack thereof.' *Yusuf*, however, was decided in 1994—long before the Supreme Court's clarification of the pleading standards in *Twombly* and *Iqbal*.  In light of those decisions, * * * the Court is no longer required to consider as true—and, in fact, for the purposes of evaluating the Complaint's sufficiency, is compelled to disregard—Plaintiff's allegation, as it is devoid of factual support or examples of any other males at [the university] who have been found guilty[.] * * *  Notably, the Second Circuit itself has modified its approach to allegations such as those in Yusuf since *Iqbal* and *Twombly*."  101 F Supp 3d at 373.

Page 27 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

plaintiff is inadmissible in a civil trial and therefore cannot, as a matter of law, be used to satisfy the pleading standard. *See e.g., Aetna Cas. & Sur. Co. v. Gosdin*, 803 F2d 1153, 1160 (11th Cir 1986) (excluding evidence of non-prosecution because "the different standards of proof between a criminal prosecutorial decision and a civil case might mislead the jury"); *Goffstein v. State Farm Fire & Cas. Co.*, 764 F2d 522, 524 (8th Cir 1985) ("As a general rule, evidence that criminal charges were not brought is inadmissible in a civil case arising out of the same events as the criminal charges."); *Kelly's Auto Parts No. 1, Inc. v. Boughton*, 809 F2d 1247, 1253 (6th Cir 1987) ("Evidence of non-prosecution * * * is inadmissible * * * in a civil case arising out of the same event as the criminal charges."); *see also Rabon v. Great Southwest Fire Ins. Co.*, 818 F2d 306, 309 (4th Cir 1987); *Galbraith v. Hartford Fire Ins. Co.*, 464 F2d 225 (3d Cir 1972). Even if evidence of non-prosecution was admissible, plaintiff fails to allege facts that suggest that the University's conduct was motivated by discriminatory intent, a connection he must prove to succeed on his Title IX claim.

Second, plaintiff pleads that "Dr. Gottfredson's pronouncement * * * included the conclusion that the female accuser was a 'survivor,' and the statement that 'as a father, I was appalled at what I read [in the police report].'" (Second Am. Compl. ¶ 80.) These facts are similarly unrelated to evidence of gender or sex bias. As an initial matter, Gottfredson's statement addressed sexual conduct *as it was depicted in the police report*. His statement expressed no opinion as to whether plaintiff had in fact engaged in the alleged conduct. Moreover, neither the term "survivor" nor the sentiment that a parent was "appalled" by the sexual conduct depicted in the police report at issue here are suggestive of discrimination *based on gender or sex*. To the contrary, both males and females (as well as people who do not identify as either male or female) can be survivors of sexual assault, and the sexual behavior described in the police report is quite likely appalling to any parent, regardless of the alleged aggressor's gender or sex. Even if plaintiff's allegations could infer bias by the University in favor of alleged victims, "[d]emonstrating that a university official is biased in favor of the

Page 28 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students." *Sahm v. Miami Univ.*, 110 F Supp 3d 774 (SD Ohio 2015). In any event, plaintiff's own allegations concede that Gottfredson was not involved in conducting plaintiff's administrative hearing or imposing plaintiff's sanction. As pleaded, Weintraub was the sole decision maker at plaintiff's administrative hearing. (Second Am. Compl. ¶ 57.) As a consequence, even if Gottfredson's statements suggest a bias against males or against alleged aggressors of sexual violence (which, again, is not a plausible interpretation of Gottfredson's statements), plaintiff has not pleaded that there was a connection between Gottfredson's May 9, 2014, statement and plaintiff's suspension from the University.

In addition, the court is not required to accept as true plaintiff's allegations that the University selectively enforced its Student Conduct Code *because* plaintiff is a male—even for purposes of a motion to dismiss—because plaintiff offers no factual support for this claim and because there is an "obvious alternative explanation" for the University's actions: the University undertook an investigation of (and based on the evidence it gathered, eventually adjudicated) a report of sexual misconduct—*as it was obligated to do under Title IX*. *Iqbal*, 556 US at 682 (citing *Twombly*, 550 US at 567) ("As between [an] 'obvious alternative explanation' for the arrests, and the purposeful, invidious discrimination respondent asks use to infer, discrimination is not a plausible conclusion."); *see also* Letter from Russlynn Ali, Assistant Secretary for Civil Rights, U.S. Department of Education, at 4 (Apr. 4, 2011) ("Regardless of whether a harassed student * * * files a complaint under the school's grievance procedures * * * a school that knows, or reasonably should know, about possible harassment must promptly investigate to determine what occurred and then take appropriate steps to resolve the situation.")

    2.    <u>Plaintiff's allegations do not offer factual support for his erroneous outcome theory</u>

Plaintiff's second theory of discrimination is that his suspension from the University "was an erroneous outcome from a flawed proceeding." (Second Am. Compl. ¶ 84.)

Page 29 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

To survive a motion to dismiss, "[p]laintiffs who claim that an erroneous outcome was reached must allege particular facts sufficient to cause some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Yusuf*, 53 F3d at 715.  But "allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Id.*  The plaintiff must also allege particularized facts showing "a causal connection between the flawed outcome and gender bias." *Id.*; *see also Doe v. Univ. of the South*, 687 F Supp 2d at 756 ("a plaintiff must demonstrate that the conduct of the university in question was motivated by a sexual bias.").  A causal connection is typically established by alleging discriminatory "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Yusuf*, 53 F3d at 715.

Plaintiff's claim fails at both elements.  The factual allegations asserted in the Complaint fail to suggest that plaintiff's administrative hearing was flawed and do not show a causal connection between the procedures plaintiff received and his gender or sex.  Plaintiff pleads the conclusory allegations that the University's investigation and his administrative hearing were flawed.  (Second Am. Compl. ¶¶ 84-88, 92).  Plaintiff alleges (a) that he did not have a meaningful "opportunity to present relevant witnesses, to present evidence * * *, and to present evidence about the accuser's motives to present false accusations," (Second Am. Compl. ¶ 90), and (b) that the University "granted the female accuser the presumption of truth" by accepting her statements "at face value," (Second Am. Compl. ¶ 89).  But, as discussed in Section A, plaintiff voluntarily agreed to the administrative procedures he received, (Second Am. Compl. ¶ 54), and therefore cannot plausibly allege that these procedures were either inadequate or led to an incorrect outcome.

Even if plaintiff can establish that the investigation and administrative hearing were flawed (which he cannot), he has not pleaded any factual allegations that the "flaws" in

Page 30 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

these proceedings were motivated by gender or sex. *See Doe v. Univ. of Mass.-Amherst*, 2015 WL 4306521, at *8 (explaining that allegations of "difficulties getting information, deficiencies in the investigation, limits placed on [plaintiff's] ability to cross-examine witnesses, the exclusion of some documentary evidence [that plaintiff] wished to introduce, and the misuse of witness testimony by the hearing board" as well as allegations of an impartial tribunal were sufficient to cast doubt on the accuracy of the outcome of the hearing, but insufficient to suggest that plaintiff's treatment was because of gender or sex). Plaintiff's numerous references to his and his accuser's gender establish only that plaintiff is a male and his accuser is a female, but are insufficient to assert the University's motives. *See e.g.*, Second Am. Compl. ¶¶ 85-89; *see also Doe v. Columbia Univ.*, 101 F Supp 3d at 371 ("the mere fact that Plaintiff is male and Jane Doe is female does not suggest that the disparate treatment was because of Plaintiff's sex"). And plaintiff's conclusory allegation that the University "granted the female accuser the presumption of truth because she is a female" offers no factual support for the proposition it puts forth (for example, plaintiff does not even allege that he offered contradictory evidence *during his administrative hearing*—an allegation necessary to support his claim that Weintraub's decision was flawed). (Second Am. Compl. ¶ 89.) Similarly, plaintiff's assertion that "[t]he University responded to the accuser's accusations with a series of * * * gender-based actions" fails to provide even one example of conduct connected to plaintiff's gender or sex. (Second Am. Compl. ¶ 92.)

   3.   Plaintiff's factual allegations do not suggest that the University was deliberately indifferent to his rights under Title IX

   Plaintiff's third theory alleges that the University "demonstrated a deliberate and systematic indifference to the rights of Mr. Austin, due to his sex." (Second Am. Compl. ¶ 93.) "Under the 'deliberate indifference' standard, a plaintiff must 'demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct.'" *Doe v. Univ. of the South*, 687 F Supp 2d at 756

Page 31 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

(quoting *Mallory*, 75 Fed Appx at 638). In addition, the defendant's action must be "clearly unreasonable in light of the known circumstances." *Patterson v. Hudson Area Sch.*, 551 F3d 438, 446 (6th Cir 2009) (internal quotation marks and citation omitted).

Plaintiff offers only one factual allegation in an attempt to support his theory of deliberate indifference: the University proceeded with its investigation and hearing despite the District Attorney's decision not to prosecute plaintiff. (Second Am. Compl. ¶ 94.) As an initial matter, plaintiff has not sufficiently pleaded that the University engaged in misconduct, which must be established to prevail under a deliberate indifference theory. Nevertheless, as discussed earlier in this section, the District Attorney's decision not to prosecute plaintiff is neither admissible evidence nor does it suggest that the University was deliberately indifferent to plaintiff's rights. Plaintiff, therefore, has failed to plead factual allegations that support his claim, and it should be dismissed.

## C.   Plaintiff Is Precluded From Re-litigating the Validity of His Administrative Order And From Asserting His State Law Claims

1.   Plaintiff is precluded from re-litigating the validity of his administrative order under the doctrine of issue preclusion

Plaintiff's suspension from the University was a final administrative order, the validity of which cannot be re-litigated by this court. *See* ORS 183.310(6)(b) ("Final order means final agency action expressed in writing."). The full faith and credit statute, 28 USC § 1738, "requires that [federal courts] give the same preclusive effect to state court judgements as they would be given in the state in which they were rendered." *Miller v. County of Santa Cruz*, 39 F3d 1030, 1032-33 (9th Cir 1994) (citing *Marrese v. American Acad. of Orthopedic Surgeons*, 470 US 373, 380, 105 S Ct 1327, 84 L Ed 2d 274 (1985)). And the Ninth Circuit has explained that "the federal common law rules of preclusion * * * extend to state administrative adjudications of legal as well as factual issues, *even if unreviewed*." *Miller*, 39 F3d 1030 (emphasis added) (internal quotation marks and citation omitted); *see also Chavez v. Boise*

Page 32 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

*Cascade Corp.*, 307 Or 632, 634, 772 P2d 409 (1989) (finding that issue preclusion applies to issues litigated in administrative determinations).  Accordingly, if Oregon law would preclude plaintiff from re-litigating an issue in Oregon state courts, plaintiff is also precluded here.

Under Oregon law, issue preclusion "arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination in a prior proceeding." *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103, 862 P2d 1293 (1993).  "If a claim is litigated to final judgment, the decision on a particular issue or determinative fact is conclusive in a later or different action between the same parties if the determination was essential to the judgment." *Drews v. EBI Companies*, 310 Or 134, 139-40, 795 P2d 531 (1990) (internal quotation marks and citations omitted).  Issue preclusion applies if five criteria are satisfied: (a) the issue litigated in the two proceedings is identical, (b) the issue was essential to the final decision in the prior proceeding, (c) the party against whom preclusion is sought had a full and fair opportunity to be heard on the issue, (d) the party against whom preclusion is sought was a party in the prior proceeding, and (e) the prior proceeding was the type of proceeding to which the state court gives preclusive effect. *Nelson*, 318 Or at 104 (internal citations omitted).

Plaintiff's administrative conference meets the criteria for issue preclusion under Oregon law.  The facts and issues litigated in his administrative hearing (which concerned whether plaintiff violated the University's Student Conduct Code) are identical to facts and issues that plaintiff will have to raise in this action and were essential to the final decision in his hearing, which satisfy the first and second issue preclusion criteria.  As explained previously, plaintiff does not plead factual allegations that suggest that he was denied the process due in accordance with the regulations for administrative conferences, which was the process he was entitled to receive.  Plaintiff, therefore, has not adequately pleaded that he was denied a full and fair opportunity to be heard.  Finally, there can be no dispute that the fourth and fifth issue preclusion criteria are met in this case: this lawsuit involves the same parties as the prior

Page 33 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

proceeding and plaintiff's administrative hearing is a type of proceeding to which Oregon law gives preclusive effect. *See Chavez*, 307 Or at 634.

The doctrine of issue preclusion prevents plaintiff from re-litigating his hearing. Plaintiff raises a due process challenge to his hearing, but the underlying contention of all of his claims is that the outcome of his hearing was incorrect. Plaintiff's Title IX claim—in particular, his erroneous outcome theory—makes this evident. Based on the doctrine of issue preclusion, plaintiff should be precluded from asserting any claim or seeking any remedy that is contingent on finding that the outcome of his administrative hearing was flawed. This court is obligated to accept the University's administrative hearing decision as correct.

2.  Plaintiff is precluded from asserting his state law claims because he did not challenge his suspension through a direct appeal, as is required under Oregon law

As previously explained, plaintiff's suspension was an administrative order. ORS 183.310(6)(b). In Oregon, the validity of an administrative order cannot be challenged unless the plaintiff appeals the decision through ORS 183.482 or 183.484. Plaintiff's state law claims are an impermissible attempt to circumvent Oregon statutory law and should be dismissed. In accordance with both ORS 183.482 (jurisdiction for review of contested cases) and ORS 183.484 (jurisdiction for review of orders other than contested cases), a petition for review of an agency order "shall be filed within 60 days only following the date the order" is served. This is the exclusive means for raising a judicial challenge to an administrative order. *See* ORS 183.480(2) ("Judicial review of final orders of agencies shall be solely as provided by ORS 183.482 [and] 183.484 * * *."); *Lake County v. State of Oregon*, 142 Or App 162, 165, 920 P2d 1115 (1996) (collecting cases and explaining that "ORS 183.480(2) and numerous decisions of this court make clear that judicial review of final agency orders shall be solely as provided in the APA"). Here, plaintiff asserts state law violations based on Defendants' alleged conduct in connection with an adverse administrative order—his suspension—that plaintiff did not appeal to state court. He is foreclosed from raising his state law claims.

70081103.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

**D.    Defendants Are Entitled To Discretionary Immunity From Plaintiff's Tort Claims Under ORS 30.265**

Defendants are immune from plaintiff's tort claims under ORS 30.265(6)(c) and (f); these claims should be dismissed.  ORS 30.265(6)(c) protects public bodies and their employees from liability for "[a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."  Under this provision, "discretionary immunity" applies when an official's conduct was "the result of a choice, that is, the exercise of judgment; that choice [] involve[d] public policy, as opposed to the routine day-to-day activities of public officials; and the public policy *choice* [was] exercised by a * * * person that has * * * the responsibility or authority to make it."  *Ramirez v. Hawaii T & S Enterprises, Inc.*, 179 Or App 416, 419, 39 P3d 931 (2002).  Immunity also extends to claims "arising out of an act done or omitted under the apparent authority of law, * * * rule or regulation that is unconstitutional, invalid or inapplicable[,] * * * unless such act was done or omitted in bad faith or with malice."  ORS 30.265(6)(f).  Therefore, in Oregon, a public defendant (whether a public body or employee) cannot be liable in tort for a decision made under the actual or apparent authority of law, unless that decision was made in bad faith or with malice.

The University is a public body and all Individual Defendants were, at the time of their alleged actions, employees of the University.  Any decision or action of Defendants made under the apparent authority of law was therefore immune from tort liability.  ORS 30.265(6)(f).  Plaintiff pleads (in each of his tort claims) that, at all relevant times, all Individual Defendants were "acting within the scope of their agency and employment" (Second Am. Compl. ¶¶ 114, 119, 126.)  Put differently, their decisions and actions were made under the apparent authority of law, and were consequently immune from liability.  Plaintiff's conclusory and repeated allegation that "[t]he Defendants' actions were in bad faith, and/or taken with malice," (Second Am. Compl. ¶¶ 115, 122, 127), fails to meet the pleading standard set forth in *Iqbal*, and therefore does not satisfy the "bad faith or with malice" exception to ORS 30.265(6)(f).  *Iqbal*, 556 US at 681.

70081103.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Even if the Individual Defendants are not immune from tort liability under ORS 30.265(6)(f), public employees who implement public policy are immune under ORS 30.265(6)(c).  *See Westfall v. State ex rel. Oregon Dept. of Corrections*, 355 Or 144, 161, 324 P3d 440 (2014) ("Once a discretionary choice has been made, the immunity follows the choice.  It protects not only the officials who made the decision, but also the employees or agents who effectuate or implement that choice in particular cases.").  According to plaintiff's pleadings, Defendants, acting within the course and scope of their employment, (a) investigated a complaint that plaintiff violated the University's Student Conduct Code, (b) conducted plaintiff's administrative hearing, and (c) suspended him from school.  Defendants are therefore immune from liability because their decisions involved public policy and were made under the apparent authority of law.  *See* ORS 30.265(6)(c) and (f).

**E.    Plaintiff's Negligence Claim Should Be Dismissed Because He Does Not Allege Physical Injury or Property Damage And, as a Matter of Law, Defendants' Alleged Conduct Did Not Create a Foreseeable Risk of Harm to Plaintiff**

Plaintiff rewraps his procedural due process claims in tort, pleading that Defendants negligently investigated the report of sexual misconduct and negligently conducted plaintiff's administrative hearing.  However, plaintiff cannot state a claim for negligence because he alleges no cognizable damages.  And, in any event, plaintiff's Complaint does not plausibly allege that defendant's conduct caused a foreseeable risk of harm.  In addition, the court should dismiss plaintiff's claim with respect to Martin, Holmes, and Gottfredson because plaintiff does not assert that they participated in the allegedly negligent investigation or plaintiff's hearing.

1.    Plaintiff failed to allege damages cognizable in negligence where no special relationship exists

Plaintiff's alleged damages for "economic damages in the form of lost income" are not cognizable.  (Second Am. Compl. ¶¶ 116-17.)  Damages for purely economic loss, including alleged loss of income, cannot be recovered under Oregon negligence law.  *Paul v. Providence Health Sys.-Oregon*, 351 Or 587, 593, 273 P3d 106 (2012).  Without alleged physical injury or

Page 36 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

property damage, plaintiff's negligence claim is effectively a claim for negligent infliction of emotional distress, which is not cognizable unless a special relationship exists between the parties. *See Hammond v. Central Lane Communications Center*, 312 Or 17, 22-24, 816 P2d 593 (1991); *Paul*, 351 Or at 597 ("This court consistently has rejected claims for emotional distress damages caused by a defendant's negligence, in the absence of any physical injury[ except] * * * (1) where the defendant intended to inflict severe emotional distress, (2) where the defendant intended to do the painful act with knowledge that it will cause grave distress, *when the defendant's position in relation to the plaintiff involves some responsibility aside from the tort itself*, and (3) where the defendant's conduct infringed on some legally protected interest apart from causing the claimed distress.") (emphasis added) (internal quotation marks and citations omitted).

A special relationship exists when:

"(1) One party relinquishes control over matters, usually financial, and entrusts them to the other party; (2) [t]he party with control is authorized to exercise independent judgment; (3) in order to further the other party's interests; and (4) [t]he relationship either is, or resembles, other relationships in which the law imposes a duty on parties to conduct themselves reasonably, so as to protect the other parties to the relationship." *Bell v. PERB*, 239 Or App 239, 249-50, 247 P3d 319 (2010) (internal quotation marks and citations omitted).

No special relationship exists between a university and its students. *See Freeman v. Busch*, 349 F3d 582, 587 (8th Cir 2003) (collecting cases and explaining that "since the late 1970s, the general rule is that no special relationship exists between a college and its own students because a college is not an insurer of the safety of its students") (emphasis omitted). Examples of special relationships include "that of physician-patient, counselor-client, or common carrier-passenger," *Rosenthal v. Erven*, 172 Or App 20, 23, 17 P3d 558 (2001), insurer-insured, *Georgetown Realty v. The Home Ins. Co.*, 313 Or 97, 831 P2d 7 (1992), and employer-employee, *McManus v. Auchincloss*, 271 Or App 765, 781, 353 P3d 17 (2015) (citing *Babick v. Oregon Arena Corp.*, 333 Or 401, 413-14, 40 P3d 1059 (2002)). The relationship between a

Page 37 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

university and its students does not resemble these relationships, and should not be recognized as a special relationship because a university is not authorized by its students to exercise independent judgment on their behalf.  *See Bell*, 239 Or App at 249-50; *Shin v. Sunriver Preparatory School, Inc.*, 199 Or App 352, 367, 111 P3d 762 (2005) (A special relationship exists if a """party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests. In doing so, the party who is owed the duty is placed in a position of reliance upon the party who owes the duty * * *.""") (quoting *Curtis v. MRI Imaging Services II*, 148 Or App 607, 619, 941 P2d 602 (1997) (quoting *Conway v. Pacific University*, 324 Or 231, 240, 924 P2d 818 (1996))).  Plaintiff therefore did not have a special relationship with the University or any Individual Defendants, all of whom were University employees.  Because plaintiff cannot plausibly assert a special relationship with Defendants, his negligence claim fails to state a claim.

In addition, plaintiff does not allege that Defendants infringed on a legally protected interest.  As explained in Section A, plaintiff's Complaint alleges that he was deprived of specific procedures that, as a matter of law, he lacked any protected interest in receiving.

Plaintiff's negligence claims should be dismissed because Oregon law does not recognize negligence claims based on alleged negligent infliction of emotional distress absent special circumstances not present here.  *See Paul*, 351 Or at 597.

2.    <u>As a matter of law, Defendants' alleged conduct did not create a foreseeable risk of harm to plaintiff</u>

Even if the court considers plaintiff's negligence claim despite the lack of the requisite physical injury or property damage, plaintiff's negligence claim fails for the separate and additional reason that, as a matter of law, Defendants' alleged conduct did not create a foreseeable risk that plaintiff's administrative hearing would be negligently conducted or erroneously decided.  In the absence of a foreseeable risk of harm, Defendants cannot be found

Page 38 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

negligent.  *Chapman v. Mayfield*, 358 Or 196, 361 P3d 566 (2015).  To prove negligence where, as here, there is no special relationship, a plaintiff must establish five elements:

> "(1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent."  *Solberg v. Johnson*, 306 Or 484, 490-91, 760 P2d 867 (1988) (citing *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987)).

A defendant is not liable for negligence if the defendant's conduct did not "'unreasonably create[] a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff.'"  *Dauven v. George Fox Univ.*, No. CV. 09-305-PK, 2010 WL 6089077, at *22 (D Or Dec. 3, 2010) (quoting *Fazzolari*, 303 Or at 17).  A foreseeable risk "'is one which could have been anticipated because there was a reasonable likelihood that it could happen.'"  *Chapman*, 358 Or at 206 (quoting *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 609, 469 P2d 783 (1970)).  "[T]he question is whether a reasonable person considering the potential harms that might result from his or her conduct would 'have reasonably expected the injury to occur.'"  *Id.*  The potential harm must be of the type "that the defendant knew or should have known" about; the plaintiff's allegations cannot "describ[e] the type of harm at risk too generally."  *Chapman*, 358 Or at 211.

Plaintiff fails to plead facts sufficient to show that Defendants' alleged conduct created a foreseeable risk that his administrative hearing would be negligently conducted or that such a risk, if foreseeable, was unreasonable given the circumstances.  Plaintiff brings his negligence claim against all Defendants, but, as explained previously, pleads that only Weintraub participated in his administrative hearing.  Consequently, for plaintiff to establish the first element of his claim, he would need to plead facts that suggest that Weintraub knew or should have known that the hearing procedures were likely to result in an erroneous decision.

Page 39 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

As explained in Section A, plaintiff agreed to the procedures he received in his hearing.  (Second Am. Compl. ¶ 54.)  It is inconsistent for plaintiff to voluntarily agree to a set of procedures and now complain that these procedures created an unreasonable and foreseeable risk of harm.  It is also not plausible to conclude that Weintraub acted unreasonably in conducting the hearing in the manner consistent with the procedures that plaintiff elected to receive.  Plaintiff's claim of negligent conduct during his administrative hearing should be dismissed because he fails to, and cannot plausibly, plead that Defendants' conduct created a foreseeable risk of harm.

Plaintiff also asserts that Defendants had a "duty to Mr. Austin to conduct a campus investigation in a competent manner and in accordance with societal standards." (Second Am. Compl. ¶ 113.)  Plaintiff, however, does not plead factual allegations concerning the investigation, other than mentioning that a University student (who, according to plaintiff, was not present for all the events in question) allegedly gave an investigator information that contradicted parts of the police report.  (Second Am. Compl. ¶ 45.)  Plaintiff has therefore failed to plead facts sufficient to support his claim that the University's investigation was negligently conducted.  Plaintiff's claim should be dismissed.

**F.    Plaintiff's IIED Claim Should Be Dismissed Because, as a Matter of Law, Defendants' Alleged Conduct Did Not Transgress the Bounds of Socially Tolerable Conduct**

The court should dismiss plaintiff's IIED claim for essentially the same reason that plaintiff's substantive due process claim fails.  Defendants' alleged conduct did not, as a matter of law, transgress the bounds of socially tolerable behavior, and plaintiff did not have a special relationship with Defendants, which is typically necessary to find liability for IIED.  *See McGanty v. Staudenraus*, 321 Or 532, 543, 901 P2d 841 (1995) (elements of IIED); *Delaney v. Clifton*, 180 Or App 119, 130, 41 P3d 1099 (2002) (necessity of special relationship).

To prove IIED, a plaintiff must establish that "'(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the

Page 40 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.'" *McGanty*, 321 Or at 543 (quoting *Sheets v. Knight*, 308 Or 220, 236, 779 P2d 1000 (1989)).

Whether the defendant's alleged conduct "amounts to an actionable outrageous transgression of social norms is a fact-specific, case-by-case determination," *McManus*, 271 Or App at 781 (citing *Lathrope-Olson v. Dept. of Transportation*, 128 Or App 405, 408, 876 P2d 345 (1994), that is "based on the totality of the circumstances," *House v. Hicks*, 218 Or App 348, 358, 179 P3d 730 (2008). But "[i]t is a question of law whether[] * * * defendants' conduct constitutes 'extraordinary conduct which a reasonable jury could find beyond the farthest reaches of socially tolerable behavior.'" *Tenold v. Weyerhaeuser Co.*, 127 Or App 511, 517, 873 P2d 413 (1994), *rev. dismissed*, 321 Or 561 (quoting *Hall v. The May Dep't Stores*, 292 Or 131, 137, 637 P2d 126 (1981)), *overruled on other grounds by Patrick v. State of Oregon*, 178 Or App 97 (2001). Only conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community'" establishes a sufficiently outrageous transgression. *House*, 218 Or App at 358 (quoting Restatement (Second) of Torts § 46 cmt d (1965)).

In analyzing whether the allegedly distressing conduct is sufficiently outrageous, "the most important [factor] is whether the parties are in a special relationship." *Marquez v. Harper Sch. Dist. No. 66*, No. CV-09-1254-SU, 2011 WL 2462035 at *19 (D Or Mar. 24, 2011) (citing *McGanty*, 321 Or at 547-48). "In fact, the lack of such a relationship generally defeats a conclusion that the conduct is actionable through an IIED claim." *Delaney*, 180 Or App at 130.

In light of these standards, the court can evaluate Defendants' alleged conduct as a matter of law. *Tenold*, 127 Or App at 517 (quoting *Hall*, 292 Or at 137). As pleaded, Defendants' actions did not constitute an extraordinary transgression of the bounds of socially

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

tolerable conduct, exceed the farthest reaches of socially tolerable behavior, or go beyond all possible bounds of decency.

Plaintiff alleges that Weintraub is liable for conducting plaintiff's administrative hearing according to the mutually agreed-upon process. As previously discussed, plaintiff provided his consent to an administrative conference (and waived all rights he had to other procedures). (Second Am. Compl. ¶ 54.) Thus, it was not "an extraordinary transgression of the bounds of socially tolerable conduct" for Weintraub to conduct plaintiff's hearing in accordance with the administrative conference procedures provided at OAR 571-021-0205. And plaintiff has not pleaded sufficiently that Weintraub failed to follow any of these procedures.

Plaintiff's claims against Martin, Gottfredson, and Holmes should also be dismissed because it did not exceed the farthest reaches of socially tolerable behavior (a) for Martin to place plaintiff on an emergency suspension while the University conducted an investigation into plaintiff's then-alleged misconduct, (b) for Gottfredson to comment publicly in response to public safety concerns and serious (and already public) allegations of criminal misconduct involving several University students, or (c) for Holmes allegedly not to respond to plaintiff's request for an appeal, when plaintiff had no right to an appeal.

Defendants' conduct was not offensive by any objectively reasonable measure. Moreover, as explained Section E, plaintiff did not have a special relationship with Defendants. *See Delaney*, 180 Or App at 130. Accordingly, plaintiff's claim should be dismissed with regard to all Defendants.

**G.    Plaintiff Cannot State a Claim for Tortious Interference With Prospective Economic Advantage Because He Fails to Allege a Relationship With the NBA and Failed to Provide the Required Notice of This Claim to the University**

Plaintiff's fifth claim is for "intentional interference with economic relations/tortious interference with prospective economic relations." But Oregon courts do not recognize a tort for interfering with "prospective economic relations." Oregon courts do,

Page 42 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

however, recognize a tort for interfering with "prospective economic advantage." *Allen v. Hall*, 328 Or 276, 281, 974 P2d 199 (1999). This distinction is not semantic. It is a substantive distinction affecting what types of relationships are protected from third party interference. Accordingly, a plaintiff may recover for economic losses stemming from interference with an existing business relationship, but not from speculative economic losses stemming from interference with a nonexistent business relationship, as plaintiff seeks to do here.

Plaintiff alleges that Defendants "intentionally, recklessly, and tortiously interfered with Mr. Austin's prospective relationship with NBA teams" through "improper means" and with an "improper purpose." (Second Am. Compl. ¶ 126.) To prevail on this claim, plaintiff must prove six elements:

> "(1) the existence of a professional or business relationship (which could include, *e.g.*, a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages." *McGanty*, 321 Or at 535.

Plaintiff's claim should be dismissed because plaintiff cannot plausibly establish any element of the tort. Also, this claim should be dismissed for the separate and additional ground that he failed to provide adequate notice of his claim to the University, as required by the OTCA.

1.   <u>Plaintiff does not allege an existing business relationship with an NBA team, which is necessary to recover for the intentional interference with a prospective economic advantage</u>

Plaintiff fails to allege facts that plausibly meet the substantive elements of this claim. To satisfy the first element, plaintiff must show the existence of "a *voluntary relationship* with another party that would have very likely resulted in a pecuniary benefit for the plaintiff but for the defendant's interference." *Cron v. Zimmer*, 255 Or App 114, 127, 296 P3d 567 (2013) (emphasis added). This is because the tort "protects the expectation [that a] relationship will produce the desired benefit, not '"the more speculative expectation that a potentially beneficial

Page 43 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

relationship will arise."'" *Sole Energy Co. v. Petrominerals Corp.*, 26 Cal Rptr 3d 798, 821 (Ct App 2005) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P3d 937, 957 (Cal 2003)(quoting *Westside Ctr. Assocs. V. Safeway Stores 23, Inc.*, 49 Cal Rptr 2d 793, 804 (Ct App 1996))).  A plaintiff must also allege that the defendant had knowledge of the plaintiff's claimed business relationship.  *See Erlandson v. Pullen*, 45 Or App 467, 472, 608 P2d 1169 (1980) ("plaintiff's complaint states the necessary elements" because he pleads that defendant "had knowledge of []his developing relationship").

Oregon courts do not permit tort recovery for alleged interference with a hypothetical business relationship.  Though a plaintiff need not have a contractual relationship with a third party to recover for tortious interference, the plaintiff and the third party must—at the least— have a preexisting relationship in which the third party has more than an abstract intention to provide the plaintiff with a pecuniary benefit.  In *McGanty*, the Oregon Supreme Court explained that the tort of intentional interference with economic relations "serves as a means of protecting contracting parties against interference with their contracts from outside parties."  321 Or at 536 (emphasis omitted).  For example, in *Cron*, the plaintiffs and the defendant were siblings.  Their mother died intestate, and her widower inherited her mineral rights to a piece of real property.  The widower then sold this land to the defendant for one dollar, allegedly with the intent that the defendant would create a family trust to distribute proceeds from the mineral rights to all the siblings.  The defendant failed to do this, and her siblings sued.  Relying on evidence of the plaintiffs and widower's prior discussions (which confirmed the widower's intent to distribute the proceeds to the plaintiffs), the court concluded that the plaintiffs and the widower had established a "voluntary relationship" that "would have very likely resulted in pecuniary benefit for the plaintiff but for the defendant's interference," thereby meeting the requirement of the "existence of an economic relationship."  255 Or App at 127; *see also, Straube v. Larson*, 287 Or 357, 360, 600 P2d 371 (1979) (finding that a preexisting

70081103.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

relationship between a hospital and physicians who contract with the hospital is a business relationship within the scope of intentional interference with economic relations).

In contrast to the plaintiffs in *Cron*, *McGanty*, and *Straube*, plaintiff here does not allege and cannot allege the existence of a voluntary, preexisting relationship with an NBA team. Plaintiff's pleadings allege his desire to play in the NBA and his potential to do so, but plaintiff does not assert that he had a business relationship with any NBA team at the time of his alleged injury[9] or that, even if he did, Defendants were aware of this relationship, as he is required to allege.  Plaintiff's claim for intentional interference with economic relations should be dismissed because he has failed to plead that he had a business relationship with the NBA or that Defendants had knowledge of such a relationship.[10]

> 2.   Plaintiff does not allege a sufficiently likely prospective business relationship with any NBA team to recover in tort

Even if the court rules that plaintiff may assert his claim based on his contention that he was going to play professional basketball (without requiring plaintiff to allege an existing business relationship or that Defendants knew of this relationship), plaintiff cannot recover because he cannot plausibly allege that it was "very likely" that he would receive an NBA contract.  *See Cron*, 255 Or App at 127 (the pecuniary advantage must be "very likely"); *see also Klein v. Grynberg*, 44 F3d 1497, 1506 (10th Cir 1995) ("a protected relationship exists only if there is a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope").

---

[9]  Plaintiff's allegation is akin to a highly academically successful high school senior alleging that Harvard has interfered with her business relationship with Yale Law School (or a specific law firm) by denying her admission as an undergraduate.

[10]  Plaintiff's allegation that "the Defendants were aware of the * * * fact[]" that plaintiff was "widely projected by experts in basketball and the NBA Draft to be selected in the first round of the NBA Draft" neither indicates that plaintiff had a preexisting relationship with the NBA or any specific team, nor gives rise to a plausible inference that the Defendants were aware that plaintiff had a business relationship with the NBA (a claim plaintiff cannot plausibly assert). (Second Am. Compl. ¶¶ 67, 68.)

Page 45 -   Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Plaintiff cannot establish that his prospect of entering a business relationship with an NBA team is "very likely" to occur merely by asserting his hope of playing professional basketball or by concluding that he was "widely projected to be selected in the first round of the NBA draft." (Second Am. Compl. ¶ 67.) As a matter of law, plaintiff's claim that he will have a career as an NBA player is "far too speculative" to establish a prospective business relationship. *Parish v. NCAA*, 506 F2d 1028, 1034 n.17 (5th Cir 1975); *see also Hawkins v. NCAA*, 652 F Supp 602, 611 (CD Ill 1987) ("future professional [sports] careers are mere expectations"); *McAdoo v. Univ. of N.C. at Chapel Hill*, 736 SE2d 811, 822 (NC Ct App 2013) (rejecting plaintiff's claims of damages for diminished "subsequent earnings as an NFL football player" and explaining that "when disappointed student-athletes have presented similar arguments to courts, both in this state and elsewhere, these claims for damages have been rejected as speculative"). Plaintiff's claimed relationship with NBA teams is purely speculative at this point and does not rise to the level of factual plausibility.

3. <u>Plaintiff's allegations fail to support his conclusory statements that Defendants acted intentionally and with an improper purpose or by improper means</u>

Plaintiff cannot plausibly allege that defendants intentionally caused injury to plaintiff, or that Defendants acted with improper means or for an improper purpose. "The burden of proof rests with a plaintiff to show both that a defendant intentionally interfered with the plaintiff's economic relationship and that the defendant had no privilege to do so." *Northwest Natural Gas Co. v. Chase Gardens* (citing *North Pacific v. Moore*, 275 Or 359, 369, 551 P2d 431 (1976); *see also Straube*, 287 Or at 361 ("[P]laintiff must not only prove that defendant intentionally interfered with his business relationship but also that defendant * * * interfered for an improper purpose rather than for a legitimate one, or that defendant used improper means which resulted in injury * * *."). "[I]f liability in tort is to be based on an actor's purpose, then the purpose must be to inflict injury on the plaintiff as such. And, if liability in tort is based on

Page 46 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

an actor's means, then the means must violate some objective, identifiable standard * * *." *Northwest Natural*, 328 Or 487 at 498 (internal quotation marks and citation omitted).

Plaintiff pleads that Defendants "intentionally" interfered with his alleged relationship with NBA teams. (Second Am. Compl. ¶ 126.) Yet plaintiff does not plead any facts that make such a conclusion plausible. And no such facts exist. Plaintiff does not contend that Defendants were even aware of plaintiff's alleged business relationship with the NBA and it would is impossible for Defendants to intentionally interfere with a relationship they did not know existed. *See Erlandson*, 45 Or App at 472. Further, the facts alleged confirm that the only plausible interpretation of Defendants' actions is that they were motivated by the intention (a) to determine whether plaintiff violated the University's Student Conduct Code and (b) if the allegations against plaintiff were substantiated, to determine an appropriate and lawful educational sanction.

Plaintiff also pleads that Defendants "engineer[ed] an unconstitutional 'kangaroo court' hearing with the purpose of finding that Mr. Austin committed sexual assault." (Second Am. Compl. ¶ 114; *see also* Second Am. Compl. ¶ 55.) But plaintiff's labeling his administrative hearing a "kangaroo court" does not allege that Defendants acted with improper means. Again, following the agreed-upon procedures, Weintraub evaluated the evidence presented at plaintiff's hearing and determined that plaintiff had violated the Student Conduct Code. Weintraub cannot be said to have acted with "improper means" by conducting a hearing according to the agreed-upon procedures just because he reached a decision that was adverse to plaintiff (a decision this court is precluded from reviewing). *See Straube,* 287 Or at 361 ("[A] case is made out which entitles plaintiff to go to a jury only 'when interference resulting in injury to another is wrongful by some measure beyond the fact of the [alleged] interference itself'.") (quoting *Top Service Body Shop v. Allstate Ins. Co.*, 283 Or 201, 209, 582 P2d 1365 (1978)).

Page 47 -    Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

4.    Plaintiff failed to provide adequate notice of his claim, as required under the OTCA

Because the University is a public body and the Individual Defendants were public employees, the OTCA requires that plaintiff provide notice of his claim within 180 days of his alleged injury.  ORS 30.260(6).  Specifically, plaintiff must allege that, within 180 days after his alleged injury, he placed the University on "actual notice" of the time, place, and circumstances giving rise to that claim.  ORS 30.275.  While the plaintiff need not identify the precise legal claim (e.g. tortious interference) that the plaintiff intends to assert, the plaintiff must provide notice of the factual basis (time, place, circumstances) that gives rise to the ultimate claim asserted.  *Flug v. Univ. of Oregon*, 335 Or 540, 554, 73 P3d 971 (2003).  The notice required by ORS 30.275 is a substantive condition precedent to recovery in tort against a public body.  *Orr v. City of Eugene*, 151 Or App 541, 543, 950 P2d 397 (1997).

On October 7, 2014, the University received a Tort Claims Notice from plaintiff's attorney.  (Thornton Decl., Exhibit E.)  (Second Am. Compl. ¶ 70.)  The Tort Claims Notice did not allege the time, place, and circumstances that give rise to his claim for tortious interference with prospective economic advantage.  Plaintiff cannot prevail on this claim unless he can establish the existence of a professional or business relationship with the NBA, but plaintiff's notice did not mention this alleged business relationship let alone the time and place of its creation, duration, or the circumstances of the relationship.  Consequently, plaintiff failed to notify the University of the factual basis giving rise to his claim.  Nothing in plaintiff's October 2014 letter put the University on notice that it should have collected evidence relevant to its defense of plaintiff's claimed relationship with the NBA.  One of the purposes of the OTCA's notice requirement is to provide public bodies with the opportunity to promptly collect relevant evidence.  *See e.g.*, *Robinson v. Shipley*, 64 Or App 794, 798, 669 P2d 1169 (1983).  Plaintiff's claim should be dismissed because plaintiff did not provide actual notice of his intent to assert this claim, as is required under ORS 30.275.

Page 48 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Plaintiff's claim for intentional interference with prospective economic advantage should be dismissed. Plaintiff failed to plead facts that could plausibly establish that (a) he had an existing relationship with an NBA team, (b) Defendants were aware of his alleged relationship with the NBA and acted with the intent of causing injury to this relationship and by an improper means or motive, and (c) he give adequate notice of his claim under the OTCA. Furthermore, plaintiff cannot plausibly allege that Defendants' conduct was the "but for" cause of plaintiff's claimed injuries or that he has sustained any monetary damages, which are both required to prove his claim.

## H. Plaintiff's Claims for Economic Damages in Tort Should Be Dismissed Because, as a Matter of Law, His Allegations Are Too Speculative to State a Claim

With respect to plaintiff's tort claims (negligence, IIED, and tortious interference), plaintiff has not yet incurred any of the economic damages he asserts, and he will not plausibly be able to prove that he is likely to sustain these damages as a result of Defendants' alleged conduct. Oregon law permits economic damages for the impairment of future income, but only when a plaintiff has sustained "objectively verifiable monetary losses." ORS 31.710(2)(a). Oregon courts have interpreted the term "objectively verifiable losses" to mean losses that are "capable of confirmation by reference to empirical facts." *Kahn v. Pony Express Courier Corp.*, 173 Or App 127, 160, 20 P3d 837 (2001) (emphasis omitted) (internal quotation marks and citation omitted). A plaintiff need not prove with mathematical precision the amount of economic damages sustained, *see Brown v. Zimbrick Logging*, 273 Or 463, 468, 541 P2d 1388 (1975), but a plaintiff must prove that damages were in fact sustained or are reasonably certain to be sustained, *see Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F3d 353, 366 (9th Cir 2005) ([U]ncertainty which prevents a recovery is uncertainty as to the fact of damage and not as to its amount.") (emphasis omitted) (internal quotation marks and citation omitted); *see also McAdoo*, 736 SE2d at 822 (alleged damages to student-athletes' prospective professional sports careers are not recoverable because they are not reasonably certain).

Page 49 -    Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Plaintiff pleads, in each of his tort claims, that he "is likely to sustain economic damages in the form of lost income." (Second Am. Compl. ¶¶ 117, 124, 129.) These claimed damages arise out of plaintiff's assertion that as a result of Defendants' allegedly wrongful actions, he has "diminished chances of playing in the NBA." (Second Am. Compl. ¶ 69.) His claims do not, therefore, rise to the level of "objectively verifiable losses" that are "capable of confirmation by reference to empirical facts." *Kahn*, 173 Or App at 160 (emphasis omitted) (internal quotation marks and citation omitted). As an initial matter, plaintiff does not plead facts supporting his conclusory statement that his chances of an NBA career have been diminished. More fundamentally, however, the concept of "diminished chances" of a prospective professional sports career is not amenable to tort liability. The facts of plaintiff's case prove the point. At the time of his Complaint, plaintiff was only 21 years old. (Second Am. Compl. ¶ 4.) He does not claim that Defendants' allegedly wrongful conduct made him ineligible to enter the NBA draft or to sign with an NBA team as a free agent. If plaintiff is selected in a future NBA draft or otherwise earns a spot on an NBA roster, he will not suffer any economic damages as the result of his allegedly diminished chance of playing professional basketball. If plaintiff is permitted to recover economic damages based on his "diminished chances" of an NBA career and later becomes an NBA player, he will in essence be paid twice.

To prove his damages, plaintiff would also have to show that he would have had an NBA career but for Defendants' conduct. The court should refrain from making this evaluation, as other jurisdictions have done. *See McAdoo*, 736 SE2d at 822. Again, the facts of plaintiff's case prove the point. Plaintiff alleges that he was highly recruited out of high school (Second Am. Compl. ¶ 11.), but because of his suspension from Providence College (Second Am. Compl. ¶ 12.) and his transfer to the University, at the time of his alleged injury plaintiff had yet to play in a regular-season college basketball game. A court of law cannot, with any reasonable degree of certainty, evaluate plaintiff's prospects of having a professional basketball career, under these circumstances. Nor could it evaluate whether Defendants' actions—not other

Page 50 -    Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

relevant factors, for example, the national news media's coverage of the police report filed against plaintiff—may hypothetically keep plaintiff out of the NBA?

Plaintiff has not yet suffered economic damages, and he cannot plausibly allege that he is reasonably certain to sustain them as a result of Defendants' allegedly wrongful conduct.  His claims for economic damages in tort should be dismissed.

I.     **Plaintiff Fails to State a Claim for Breach of Contract and Plaintiff Alleges No Cognizable Damages**

Plaintiff alleges that the University breached the express terms of its contract with plaintiff and the implied covenant of good faith and fair dealing by not renewing plaintiff's athletic scholarship beyond spring quarter 2014.  But the University fulfilled its obligations under plaintiff's scholarship and had no additional contractual obligations to him.  The express terms of a contract detail "the specific obligations that each party owes the other." *Conway*, 324 Or at 237.  In addition to these terms, "[t]he law imposes a duty of good faith and fair dealing to facilitate performance and enforcement of the contract where it is consistent with and in furtherance of the agreed-upon terms of the contract or where it effectuates the reasonable contractual expectations of the parties." *U.S. National Bank v. Boge*, 311 Or 550, 567, 814 P2d 1082 (1991) (internal quotation marks and citations omitted).  This duty, however, "does not vary the substantive terms of the bargain * * *, nor does it provide a remedy for an unpleasantly motivated act that is expressly permitted by contract or statute." *Id.*

Plaintiff claims that he "had the objectively reasonable expectation, based upon the express terms of the contractual relationship governing the athletic scholarship, that the University of Oregon would renew his scholarship."  (Second Am. Compl. ¶ 132.)  But this contradicts the terms of the agreement.  The express terms of plaintiff's contract provide that plaintiff would receive his scholarship for two academic quarters.  Nowhere in plaintiff's scholarship did it provide for renewal of the scholarship when it expired, of its own terms, in June 2014.  In fact, the only references to renewal of plaintiff's scholarship were that

Page 51 -   Defendants' Motion to Dismiss and Memorandum in Support

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

(1) plaintiff's scholarship "assistance [would] be considered for renewal as long as" he met specified eligibility requirements and (2) under NCAA Bylaw 15.3.5, plaintiff's scholarship could be nonrenewed if plaintiff was "promptly notif[ied]" that his scholarship was not being renewed.

   The University fulfilled its contractual obligations by providing plaintiff with all contractual benefits due through the expiration of his fixed-term scholarship.  Plaintiff does not plead that the University revoked his scholarship or failed to provide him with any benefit due during the six-month duration of his scholarship.  He pleads only the conclusory statement that the University breached its contract, but does not plead any facts identifying how the University allegedly breached this agreement, and his claim should therefore be dismissed.  *See Ross v. Creighton Univ.*, 957 F2d 410, 416-17 (7th Cir 1992) (explaining that for a student-athlete to allege a breach of contract based on a scholarship, the plaintiff "must point to an identifiable contractual promise that the defendant failed to honor").

   Even if plaintiff demonstrates a breach of contract (which he cannot), his complaint overstates what damages are available to him.  Damages for breach of contract are limited to plaintiff's "expectation interest."  *Zehr v. Haugen*, 318 Or 647, 658, 871 P2d 1006 (1994) (citing *Nelson Equip. Co. v. Harner*, 191 Or 359, 369, 230 P2d 188 (1951)).  Here, plaintiff's expectation interest is, at most, the value of his athletic scholarship, not a hypothetical NBA contract.  Plaintiff, however, alleges damages for losses he "expects to sustain," but has yet to incur.  (Second Am. Compl. ¶ 135.)  But loss of future income based on a breach of contract is recoverable only if the alleged future income "'ordinarily follows the breach of such a contract in the usual course of events, or [if] reasonable men in the position of the parties would have foreseen [the future loss] as a probable result of breach.'"  *Cont. Plants v. Measured Mkt. Services, Inc.*, 274 Or 621, 626, 547 P2d 1368 (1976) (quoting 5 Corbin on Contracts 79, s 1010 (1964)).  As discussed previously in Sections G and H, plaintiff's hypothetical NBA contract

Page 52 -   Defendants' Motion to Dismiss and Memorandum in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

(and thus his alleged future loss of income) is speculative, not probable. Furthermore, plaintiff must allege that his claimed losses were in fact foreseeable. *Doyle v. Oregon Bank*, 94 Or App 230, 234, 764 P2d 1379 (1988). Plaintiff did not, and cannot plausibly, allege that his losses were foreseeable. His claim should therefore be dismissed for this additional reason.

## IV.    CONCLUSION

Whether or not plaintiff's chances of playing professional basketball were diminished by his suspension, the University and its employees are not liable for suspending plaintiff after he was found to have violated the Student Conduct Code by committing an act of sexual misconduct. Plaintiff's claims seek remedy in constitutional law for an alleged injury to constitutional rights that do not exist, review of an administrative order that is precluded from judicial review, remedy in federal statutory law for gender and sex discrimination without alleging any facts that show such bias, remedy in tort for an alleged relationship that did not exist, remedy in contract law for a scholarship agreement that was not breached, and his claims are premised on damages that have not been incurred. In addition, Defendants are entitled to discretionary immunity. Defendants ask the court to dismiss the Complaint.

DATED this 22nd day of February, 2016.

MILLER NASH GRAHAM & DUNN LLP

*s/ Michelle Barton Smigel*

Michelle Barton Smigel, P.C., OSB No. 045530
michelle.smigel@millernash.com
Michael Porter, P.C., OSB No. 003560
mike.porter@millernash.com
Telephone: 503.224.5858
Fax: 503.224.0155

*Attorneys for Defendants*

70081103.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

I hereby certify that I served the foregoing Defendants' Motion to Dismiss and

Memorandum in Support on:

Ms. Marianne Dugan                    Mr. Alan C. Milstein
259 East 5th Avenue, Suite 200-D      Sherman Silverstein Kohl Rose & Podolsky
Eugene, Oregon 97401                  308 Harper Drive, Suite 200
Fax: (866) 650-5213                   Moorestown, New Jersey 08057
E-mail: mdugan@mdugan.com             Fax: (856) 488-4744
                                      E-mail: amilstein@shermansilverstein.com

*Attorneys for Plaintiff Brandon Austin*

                                      *Attorneys for Plaintiff Brandon Austin*


by the following indicated method or methods on the date set forth below:

☒    **CM/ECF system transmission.**

☐    **E-mail.** (Courtesy copy.)

☐    **Facsimile communication device.**

☐    **First-class mail, postage prepaid.**

☐    **Hand-delivery.**

☐    **Overnight courier, delivery prepaid.**

DATED this 22nd day of February, 2016.


*s/ Michelle Barton Smigel*
Michelle Barton Smigel, OSB No. 045530

*Of Attorneys for Defendants*


Page 1 -    Certificate of Service

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204-3699