Michelle Barton Smigel, P.C., OSB No. 045530
michelle.smigel@millernash.com
Michael Porter, P.C., OSB No. 003560
mike.porter@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Facsimile: 503.224.0155

Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

BRANDON AUSTIN,

            Plaintiff,

    v.

UNIVERSITY OF OREGON; SANDY
WEINTRAUB; CHICORA MARTIN;
ROBIN HOLMES; and MICHAEL R.
GOTTFREDSON, all in their individual
capacities only,

            Defendants.

Case No. 6:15-cv-02257-MC

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS

70088905.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   ARGUMENT ........................................................................................................ 2

    A.   Plaintiff Fails To Rebut The Individual Defendants' Entitlement To Qualified Immunity .................................................................................. 2

        1.   Plaintiff has not demonstrated a clearly established property right .......... 2

            a.   Plaintiff's reliance on Goss does not establish a property right to higher education ................................................ 3

            b.   Plaintiff's reliance on cases that "assume without deciding" whether a property right exists is misguided ................................ 4

            c.   Plaintiff's reliance on two out-of-district cases does not clearly establish a property right to higher education in Oregon ................................................................................. 5

        2.   Plaintiff has not demonstrated a clearly established liberty interest .......... 6

            a.   Contrary to plaintiff's contention, two out-of-district cases do not clearly establish plaintiff's liberty interest to remain a student in good standing at the University ................................ 7

            b.   Plaintiff offers no support for his assertion that the Constitution protects him from alleged stigma purported to be the result of his suspension from the University ...................... 8

        3.   Defendants Weintraub and Holmes are Entitled to Qualified Immunity Because Plaintiff Agreed to His Administrative Conference and Waived His Right to an Appeal ...................................... 9

        4.   Plaintiff fails to rebut Defendants' argument that the Oregon Administrative Procedures Act does not confer any property or liberty interests ..................................................................................... 11

        5.   Plaintiff fails to demonstrate that his substantive due process claim should survive despite not alleging a violation of his fundamental rights ....................................................................................... 11

    B.   Plaintiff Fails To Establish That the Individual Defendant's Alleged Conduct Implicated Any Constitutionally Protected Property Rights Or Liberty Interests .................................................................................. 12

    C.   Plaintiff Was Afforded Adequate Process ........................................................ 14

    D.   Plaintiff Has Asserted No Factual Allegations That Support His Claim Of Discrimination Based On Gender Or Sex ........................................................ 16

Page ii -    Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# TABLE OF CONTENTS
## (continued)

Page

E.    Plaintiff's Response To Defendants' Tort Claims Arguments Confirms
      That Plaintiff Cannot Plausibly Assert That Defendants Are Liable In Tort ...... 19

      1.    Kavanagh v. Trustees of Boston University does not establish that
            plaintiff had a special relationship with the University .......................... 19

      2.    Plaintiff does not dispute that he cannot recover for negligence
            unless he had a special relationship with the University and, in any
            event, plaintiff fails as a matter of law to show that Defendants'
            alleged conduct was unreasonable ......................................................... 20

      3.    Plaintiff fails to plead any factual allegations that Defendants
            intended to inflict severe emotional distress or that Defendants'
            alleged conduct transgressed the bounds of socially tolerable
            behavior.................................................................................................. 21

      4.    Plaintiff offers no support for his contention that he can recover for
            tortious interference without showing an actual or contemplated
            business relationship with an NBA team................................................ 23

F.    Plaintiff Fails To Rebut Defendants' Argument That The University
      Fulfilled The Express Terms Of Plaintiff's Scholarship Agreement .................. 24

G.    Plaintiff's Response To Defendants' Preclusion Arguments
      Mischaracterizes Defendants' Position ............................................................. 25

H.    Plaintiff Does Not Deny That Defendants' Alleged Conduct Constituted
      Discretionary Decisions Made Within The Scope Of Their Employment
      With The University ........................................................................................... 26

III.    CONCLUSION.......................................................................................................... 28

70088905.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

**Cases**

*Albright v. Oliver*,
  510 US 266, 114 S Ct 807, 127 L Ed 2d 114 (1994)............................................12

*Ashcroft v. al-Kidd*,
  563 US 731, 131 S Ct 2074, 179 L Ed 2d 1149 (2011)....................................2, 7

*Ashcroft v. Iqbal*,
  556 US 662 (2009)...............................................................................16, 17, 18

*Bd. of Curators of Univ. of Mo. v. Horowitz*,
  435 US 78, 98 S Ct 948, 55 L Ed 2d 124 (1978)......................................4, 5, 7, 13

*Bd. of Regents of State Colls. v. Roth*,
  408 US 564, 92 S Ct 2701, 33 L Ed 2d 548 (1972).........................................3, 13

*Bell Atl. Corp. v. Twombly*,
  550 US 544, 127 S Ct 1955, 167 L Ed 2d 929 (2007)......................................16, 18

*Bell v. PERB*,
  239 Or App 239, 247 P3d 319 (2010).............................................................19

*Black Coalition v. Portland Sch. Dist. No. 1*,
  484 F2d 1040 (9th Cir 1973) .......................................................................3

*Blanton v. State Univ. of New York*,
  489 F 2d 377 (2nd Cir 1973).........................................................................4

*Bowers v. Nat'l Collegiate Athletic Ass'n*,
  118 F Supp 2d 494 (DNJ 2000), *opinion amended on reargument*,
  130 F Supp 2d 610 (2001) ...........................................................................25

*Brands v. Sheldon Cmty. Sch.*,
  671 F Supp 627 (ND Iowa 1987)....................................................................13

*Colo. Seminary (Univ. of Denver) v. NCAA*,
  417 F Supp 885 (D Colo 1976), *aff'd*, 570 F2d 320 (10th Cir 1978).......................13

*Davies v. Grossmont Union High Sch. Dist.*,
  930 F2d 1390 (9th Cir), *cert denied*, 501 US 1252 (1991).....................................10

*Dixon v. Alabama State Bd. of Ed.*,
  294 F2d 150 (5th Cir 1961), *cert. denied,* 368 US 930 (1961)................................3, 7, 14, 15

70088905.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Doe v. Brown Univ.*,
  CA No. 15-144S, 2016 WL 715794 (DRI Feb. 22, 2016)..................................16, 17

*Doe v. Woodford*,
  508 F3d 563 (9th Cir 2007) ...................................................................................10

*Doyle v. Oregon Bank*,
  94 Or App 230, 764 P2d 1379 (1988).....................................................................24

*Fernandez v. Rosenzwieg*,
  No. CIV. 95-241-FR, 1996 WL 453046 (D Or Aug. 8, 1996) .............................6, 7

*Goss v. Lopez*,
  419 US 565, 95 S Ct 729, 42 L Ed 2d 725 (1975).....................................................3

*Hall v. Univ. of Minn.*,
  530 F Supp 104 (D Minn 1982).............................................................................5, 6

*Harrell v. S. Or. Univ.*,
  No. CV 08-3037-CL, 2010 WL 2326576 (D Or Mar. 24, 2010)...........................6, 7

*Hart v. Ferris State College*,
  557 F Supp 1379 (SD Mich 1983).........................................................................5, 8

*Hysaw v. Washburn*,
  690 F Supp 940 (D Kan 1987)................................................................................13

*Johnson v. U.S.*,
  539 F2d 1241 (9th Cir 1976) ..................................................................................10

*Justice v. Nat'l Collegiate Athletic Ass'n*,
  577 F Supp 356 (D Ariz 1983) ...............................................................................13

*Kavanagh v. Trustees of Boston University*,
  440 Mass 195, 795 NE2d 1170 (Mass 2003)..............................................1, 19, 20

*Lewin v. Medical College of Hampton Roads*,
  910 F Supp 1161 (ED Va 1996) ...............................................................................4

*Marin v. Univ. of Puerto Rico*,
  377 F Supp 613 (DPR 1974)..................................................................................3, 7

*McAdoo v. Univ. of N.C. at Chapel Hill*,
  225 NC App 50, 736 SE2d 811 (NC Ct App 2013)................................................25

Page v -     Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*McGanty v. Staudenraus*,
  321 Or 532, 901 P2d 841 (1995) ...................................................22

*Orr v. City of Eugene*,
  151 Or App 541, 950 P2d 397 (1997).............................................24

*Paul v. Davis*,
  424 US 693, 96 S Ct 1155, 47 L Ed 2d 405 (1976).........................8, 9, 14

*Regents of Univ. of Michigan v. Ewing*,
  474 US 214, 106 S Ct 507, 88 L Ed 2d 523 (1985).........................4, 5

*Ryan v. Harlan*,
  No. CV-10-626-ST, 2011 WL 711110 (D Or Feb. 22, 2011) ...................5

*Shanks v. Dressel*,
  540 F3d 1082 (9th Cir 2008) .........................................................13

*Solberg v. Johnson*,
  306 Or 484, 760 P2d 867 (1988) ................................................20, 21

*Tenold v. Weyerhaeuser Co.*,
  127 Or App 511, 873 P2d 413 (1994), *rev. denied*, 321 Or 561.............22

*Tigrett v. Rector and Visitors of Univ. of Virginia*,
  290 F3d 620 (4th Cir 2002) ...........................................................4

*Winnick v. Manning*,
  460 F2d 545 (2nd Cir 1972)...........................................................15

*Wisconsin v. Constantineau*,
  400 US 433, 91 S Ct 507, 27 L Ed 2d 515 (1971) ...............................14

**Statutes**

Oregon Administrative Procedures Act ...............................................11

Oregon Tort Claims Act...................................................................23

ORS 30.260(6) ...............................................................................23

ORS. 30.265(6) .................................................................26, 27, 28

ORS 183.480(2) .............................................................................26

ORS 183.482...................................................................................26

70088905.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

**Other Authorities**

*The Oregonian* ................................................................................................................8

OAR 571-021-0105(30)(b)(A)...........................................................................................22

OAR 571-021-0205(1)(a) ..................................................................................................15

OAR 571-021-0210(7)........................................................................................................15

Page vii -    Defendants' Reply in Support of Motion to Dismiss

70088905.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## I.    INTRODUCTION

Plaintiff's response to Defendants' motion to dismiss confirms that plaintiff has failed to plead any viable claims. His response does little more than reassert his pleadings and claim that they are adequate to overcome Defendants' motion. Plaintiff fails to overcome the Individual Defendants' entitlement to qualified immunity for plaintiff's due process claim. In fact, the cases cited by plaintiff confirm that the Individual Defendants are entitled to qualified immunity. Similarly, plaintiff's reliance on *Doe v. Brown University* in support of his Title IX arguments in reality undermines those arguments and demonstrates the deficiency in his pleadings. Plaintiff completely fails to rebut Defendants' state law arguments. Plaintiff merely cites to one non-binding Massachusetts state court case, *Kavanagh v. Trustees of Boston University*, which he then inaccurately summarizes in a failed attempt to establish a special relationship between plaintiff and the University under Oregon negligence law. The absence of a special relationship forecloses plaintiff from pursuing claims of negligence and intentional infliction of emotional distress ("IIED"), and plaintiff fails to offer any legal support for his position that he can assert a tortious inference claim without having an actual or contemplated business relationship with any National Basketball Association ("NBA") team. Plaintiff also makes no arguments in support of his position that the express terms of his two-quarter athletic scholarship guaranteed him a subsequent scholarship. Finally, plaintiff misapprehends the application of Defendants' issue preclusion arguments and merely states, but provides no meaningful analysis of why, Defendants' entitlement to discretionary immunity should be denied.

The Second Amended Complaint (the "Complaint"), does not state any viable claims; it should be dismissed, and judgment should be entered for Defendants.

Page 1 -    Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## II.    ARGUMENT

### A.    Plaintiff Fails To Rebut The Individual Defendants' Entitlement To Qualified Immunity

The Individual Defendants are entitled to qualified immunity and dismissal of plaintiff's due process claim because plaintiff fails to show that their alleged conduct violated a clearly established constitutional right (or a constitutional right at all).  An official violates a clearly established right only when "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'  * * * [E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 US 731, 131 S Ct 2074, 2083, 179 L Ed 2d 1149 (2011) (quoting *Anderson v. Creighton*, 483 US 635, 640, 107 S Ct 3034, 97 L Ed 2d 523 (1987).  To overcome the Individual Defendants' entitlement to qualified immunity for plaintiff's procedural due process claim, plaintiff must show that he had a clearly established property right or liberty interest *and* that it was "beyond debate" that a reasonable University official would have understood that plaintiff's written agreement to the process he received was invalid (which it was not).  Plaintiff's response fails to do this.  The Individual Defendants are also entitled to qualified immunity for plaintiff's substantive due process claim because plaintiff does not show that it was "beyond debate" that a reasonable University official would have understood that the Individual Defendants' alleged conduct shocked the conscience (particularly, when it did not).

#### 1.    Plaintiff has not demonstrated a clearly established property right

Plaintiff argues that he had a well-recognized property right to his college education, his position on the University's basketball team, his athletic scholarship, a future scholarship at another school, and a future NBA contract.  (Plaintiff Brandon Austin's Memorandum in Opposition to the Defendants' Motion to Dismiss ("Pl.'s Response") at 10-11.)  But none of these alleged property rights have been recognized by the Supreme Court, the Ninth

Page 2 -    Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Circuit, or the District of Oregon.  Plaintiff cites to the Supreme Court's holding in *Goss v. Lopez*, 419 US 565, 95 S Ct 729, 42 L Ed 2d 725 (1975), and two federal district court cases from other jurisdictions, in purported support of a constitutionally protected property right.[1] However, these cases do not establish plaintiff's alleged property rights.

> a.    <u>Plaintiff's reliance on *Goss* does not establish a property right to higher education</u>

Plaintiff does not deny that constitutionally protected property rights are "created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law."  *Bd. of Regents of State Colls. v. Roth*, 408 US 564, 577, 92 S Ct 2701, 33 L Ed 2d 548 (1972).  In fact, plaintiff underscores this point by quoting the holding in *Goss* that "*on the basis of [Ohio] state law*, appellees plainly had legitimate claims of entitlement to a public education."  419 US at 573 (emphasis added); (Pl.'s Response at 12, n.27).  Yet plaintiff fails to identify any Oregon law that conferred to him a property interest in his education or his position on the University's basketball team.  Plaintiff also fails to, and cannot, explain how *Goss* applies to post-secondary education, under any circumstance.[2]  The state laws that gave rise to the property right recognized in *Goss* (laws that provided free K-12 education and mandated attendance) do not apply to public higher education.  And without analogous Oregon laws applicable to higher education, the property right recognized in *Goss* is inapposite to students who attend Oregon's public universities.

---

[1]  Plaintiff also attempts to demonstrate a property right in education based on the Fifth Circuit's decision in *Dixon v. Alabama State Bd. of Ed.*, 294 F2d 150 (5th Cir 1961), *cert. denied,* 368 US 930 (1961), and the District of Puerto Rico's decision in *Marin v. Univ. of Puerto Rico*, 377 F Supp 613 (DPR 1974).  Both of these cases, however, are most appropriately analyzed as liberty interest cases and are addressed in the liberty interest subsection of this argument.

[2]  In an attempt to substantiate a property right in education, plaintiff footnotes *Goss's* citation to *Black Coalition v. Portland Sch. Dist. No. 1*, 484 F2d 1040 (9th Cir 1973), in which the Ninth Circuit ruled that high school students must be afforded a hearing prior to receiving a long-term suspension.  Like *Goss*, *Black Coalition* does not recognize any constitutional right applicable to University students and thus does not support plaintiff's position.

Page 3 -    Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

b.    Plaintiff's reliance on cases that "assume without deciding"
whether a property right exists is misguided

Plaintiff attempts to demonstrate a clearly established property right in education

through case law that "assumes without deciding" whether a constitutionally protected right

exists.  It is a basic principle of law that such cases neither recognize the existence of a property

right, nor clearly establish it.  Plaintiff's citations to the following cases do not therefore undercut

the Individual Defendants' entitlement to qualified immunity:  *Bd. of Curators of Univ. of Mo. v.*

*Horowitz*, 435 US 78, 84, 98 S Ct 948, 55 L Ed 2d 124 (1978) ("We need not decide, however,

whether respondent's dismissal deprived her of a liberty interest in pursuing a medical career.

Nor need we decide whether respondent's dismissal infringed any other interest constitutionally

protected * * * ."); *Regents of Univ. of Michigan v. Ewing*, 474 US 214, 222-23, 106 S Ct 507,

88 L Ed 2d 523 (1985) ("remembering Justice Brandeis' admonition not to formulate a rule of

constitutional law broader than is required by the precise facts to which it is to be applied, * * *

[w]e therefore * * * assume the existence of a constitutionally protectable property right in

[plaintiff's] continued enrollment") (internal quotation marks and citation omitted); *Tigrett v.*

*Rector and Visitors of Univ. of Virginia*, 290 F3d 620, 627 (4th Cir 2002) (explaining that the

Supreme Court has not "actually decid[ed] that university students possess a 'constitutionally

protectable property right' in their continued enrollment in a university," and following suit);

*Blanton v. State Univ. of New York*, 489 F 2d 377, 385 (2nd Cir 1973) ("we do not find it

necessary to decide the point" whether a property right exists); and *Lewin v. Medical College of*

*Hampton Roads*, 910 F Supp 1161, 1164 (ED Va 1996) ("*For the purpose of disposing of this*

*instant motion*, the Court finds that Plaintiff had a protectible property interest in continued

enrollment * * *.") (emphasis added).[3]  In each of these cases, the respective courts assumed a

---

[3]  Plaintiff incorrectly asserts that the *Lewin* court denied the defendant's motion to dismiss, when
in fact the court granted dismissal of plaintiff's procedural and substantive due process claims.
*Lewin*, 910 F Supp at 1167, 1169; *see* Pl.'s Response at 13.

70088905.1                    MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

property right without considering the issue, only to dispose of the plaintiffs' due process claims based on a finding of sufficient process.  Moreover, the fact that *Horowitz* and *Ewing* do not affirmatively recognize a property right in higher education strongly supports Defendants' argument that such a right has not been clearly established.

          c.    <u>Plaintiff's reliance on two out-of-district cases does not clearly establish a property right to higher education in Oregon</u>

Plaintiff citations to *Hall v. Univ. of Minn.*, 530 F Supp 104 (D Minn 1982), and *Hart v. Ferris State College*, 557 F Supp 1379 (SD Mich 1983), do not clearly establish a constitutionally protected property right in public higher education in Oregon.[4]  These decisions are not binding on the District of Oregon and are of limited persuasive value because neither court discusses, in any meaningful way, why it recognized a property right in higher education.  In *Hall*, the court explained that "[p]rotected property interests are usually created and defined *by sources such as state law*."  530 F Supp at 107 (citing *Roth*, 408 US 564) (emphasis added).  Then, without analysis of any applicable state law, the court announced that "[a] student's interest in attending a university is a property right protected by due process."  530 F Supp at 107.  Similarly, in *Hart*, the court stated, without further discussion, that "the threat of suspension or expulsion implicates plaintiff's property and liberty interests in public education and reputation."  557 F Supp at 1382.  Whether or not these cases clearly establish a property right to higher education in Minnesota or Michigan, plaintiff is mistaken that they demonstrate "beyond debate" the existence of a property right to higher education in Oregon.  No Oregon court has recognized such a right.  While plaintiff attempts to discredit three unpublished District of Oregon cases, these cases, though non-binding, are at least in the same jurisdiction as this case and, at a minimum, demonstrate that plaintiff has no clearly established property right in public higher education in Oregon.  *See Ryan v. Harlan*, No. CV-10-626-ST, 2011 WL 711110 (D Or

---

[4]  Plaintiff also asserts that *Hall* demonstrates that he had a clearly established liberty interest in his education and position on the basketball team.  *Hall*, however, is not a liberty interest case.

Page 5 -    Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Feb. 22, 2011); *Harrell v. S. Or. Univ.*, No. CV 08-3037-CL, 2010 WL 2326576 (D Or Mar. 24, 2010); *Fernandez v. Rosenzwieg*, No. CIV. 95-241-FR, 1996 WL 453046 (D Or Aug. 8, 1996).

Moreover, plaintiff relies on *Hall* to establish a property right not only in his education, but also his position on the basketball team, his athletic scholarship, a future scholarship at another, unidentified school, and a future NBA contract that plaintiff has not been offered. Even in Minnesota, *Hall* cannot carry such weight.

Plaintiff's response fails to demonstrate any clearly established property rights, and thus the Individual Defendants could not have been on notice that their alleged conduct violated plaintiff's constitutional rights. In addition, plaintiff presents no support for his position that defendants Gottfredson's and Martin's alleged conduct implicated a protected property right. None of the cases that plaintiff discusses support his contention that a university president violates a student's alleged constitutional right to education or to play basketball by making a public speech. Similarly, none of the cases demonstrate that a university student's alleged constitutional rights are violated by receiving a temporary, emergency suspension. Gottfredson and Martin are therefore entitled to qualified immunity for this separate and additional reason.

    2.    <u>Plaintiff has not demonstrated a clearly established liberty interest</u>

Plaintiff's response also contends that he had a well-recognized liberty interest in remaining a student in "good standing at the University, and being free from the stigma associated with being suspended for disciplinary reasons." (Pl.'s Response at 11.)[5] Here again, plaintiff has failed to show that these interests were clearly established such that a reasonable

---

[5] Plaintiff's response appears to argue that he had a protected liberty interest in his position on the basketball team, his athletic scholarship, a future scholarship elsewhere, and a future NBA contract. *See* Pl.'s Response at 14. The Court should not permit plaintiff to assert these interests now because plaintiff did not include them in his pleadings. (Second Am. Compl. ¶ 47.) But in any event, plaintiff presents no support for these alleged liberty interests and such interests are not discussed in the case law cited by plaintiff.

Page 6 -    Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

University official would understand, beyond debate, that plaintiff's suspension implicated a constitutionally protected liberty interest. *See al-Kidd*, 131 S Ct at 2083.

   a. <u>Contrary to plaintiff's contention, two out-of-district cases do not clearly establish plaintiff's liberty interest to remain a student in good standing at the University</u>

     It is plaintiff's position that *Dixon* and *Marin* demonstrate that he had a liberty interest in remaining a University student in good standing.  But two out-of-district cases do not clearly establish plaintiff's alleged interest.  In *Dixon*, the Fifth Circuit held that "notice and some opportunity for hearing" were necessary before Alabama State College could expel student civil rights activists for allegedly participating in political demonstrations at the Montgomery County Courthouse.  294 F2d at 151.  Similarly, the District of Puerto Rico found that students' liberty interests were implicated when they received long-term suspensions from Arecibo Regional College for engaging in political demonstrations on campus.  *Marin*, 377 F Supp at 621 (citing *Dixon*, 294 F2d at 157).  As with plaintiff's alleged property right, these non-binding decisions do not clearly establish a constitutional interest, and plaintiff does not point to any Ninth Circuit or District of Oregon case law that follows *Dixon*.  Moreover, both *Dixon* and *Marin* predate the Supreme Court's decision in *Horowitz* (treating the existence of a liberty interest in continued enrollment in post-secondary education as an open question) as well as the District of Oregon's decisions in *Harrell* and *Fernandez* (declining to recognize a liberty interest in continued enrollment in post-secondary education), demonstrating that the cases plaintiff relies on cannot possibly be viewed as clearly establishing a liberty interest in continued enrollment in post-secondary education.  As a matter of law, it was not beyond debate that the Individual Defendants' alleged conduct implicated plaintiff's asserted liberty interest in his status as a student.

Page 7 - Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

b.    Plaintiff offers no support for his assertion that the Constitution protects him from alleged stigma purported to be the result of his suspension from the University

Plaintiff contends, without discussion, that he had a constitutional interest in being free from the alleged stigma associated with being suspended for misconduct.  To support his contention, plaintiff footnotes to *Hart*, which found that a Ferris State College student had a liberty interest in her reputation, though neglected to engage in any analysis of this issue.  To establish his alleged liberty interest, plaintiff would have to demonstrate that "a right or status previously recognized by state law was distinctly altered or extinguished" by the conduct of the Individual Defendants.  *Paul v. Davis*, 424 US 693, 711, 96 S Ct 1155, 47 L Ed 2d 405 (1976). Because no Oregon law recognized plaintiff's right to remain a student at the University, his suspension did not distinctly alter or extinguish a previously recognized right.  Moreover, plaintiff claims that he has been stigmatized by his suspension, but fails to plead any facts that support this assertion.  For example, plaintiff does not plead that he was denied transfer to another college or university based on the stigma of his suspension.  Without any factual allegations of this sort, the stigma which plaintiff alleges is not "a deprivation of liberty within the meaning of the Due Process Clause."  *Davis*, 424 US at 702.  In addition, according to the Complaint, *The Oregonian*—not any of the Individual Defendants—published the criminal allegations against plaintiff.  (Second Am. Compl. ¶ 38.)  And plaintiff has not alleged that the Individual Defendants notified the public of his suspension.  Consequently, the Individual Defendants cannot, as a matter of law, be liable for any purported stigma that plaintiff alleges.

As with plaintiff's property rights arguments, plaintiff fails to demonstrate any clearly established liberty interest.  In addition, plaintiff fails to show that Gottfredson's statement or the temporary suspension issued by Martin implicated plaintiff's liberty interests. Plaintiff contends that Gottfredson "in effect imposed discipline upon" plaintiff during his May 9, 2014, public statement, but plaintiff does not assert what discipline Gottfredson imposed,

70088905.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

and cannot because Gottfredson's statement did not impose any discipline.  Under the Supreme

Court's jurisprudence, condemnation of behavior by a public official, without more, is not a

constitutional violation.  *See Davis*, 424 US at 702.  Plaintiff also fails to offer any legal

authority that suggests that a short term, emergency suspension of a university student infringes

the student's protected liberty interests.  Accordingly, Gottfredson and Martin are entitled to

qualified immunity for this separate and additional reason.

3.      Defendants Weintraub and Holmes are Entitled to Qualified Immunity
        Because Plaintiff Agreed to His Administrative Conference and Waived
        His Right to an Appeal[6]

As Defendants have argued, there is no clearly established property right or

liberty interest in public higher education in Oregon, playing collegiate basketball, receiving an

athletic scholarship from the University or elsewhere, receiving a future NBA contract, or being

free from any stigma resulting from a suspension from the University.  But even if the court finds

(for the first time in this jurisdiction) that any of the foregoing rises to the level of a clearly

established constitutional right or interest, defendants Weintraub and Holmes are entitled to

qualified immunity for the additional reason that plaintiff agreed to the process he received and

waived additional procedural safeguards.

Plaintiff does not refute that plaintiff himself agreed to the procedures he received

and signed a waiver of the additional procedure that he might have otherwise been afforded by

the University.  (Defendants' Motion to Dismiss and Memorandum in Support ("Defs.' Mot.

Dismiss") at 19; *see also* Declaration of Lisa Thornton in Support of Defendants' Motion to

Dismiss ("Thornton Decl.") Ex. C.)  Instead, plaintiff attempts to retroactively discredit his

attorney's agreement to the administrative conference and waiver of plaintiff's procedural rights,

---

[6]  Plaintiff's does not plead that Gottfredson or Martin took part in plaintiff's administrative
hearing or were in any way connected to his alleged attempt to appeal the outcome of his
hearing.  Consequently, Gottfredson and Martin are entitled to qualified immunity regardless of
whether the conduct that allegedly took place at plaintiff's hearing or in connection with his
appeal violated plaintiff's clearly established constitutional rights.

Page 9 -    Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

arguing that his attorney did not agree in writing to this procedure. *Compare* Pl.'s Response at 18 ("Mr. Austin's counsel was not asked to sign, and did not sign, a waiver of Mr. Austin's due process rights, and would never have signed such a waiver") *with* Second Am. Compl. ¶ 54 ("Mr. Austin's counsel accepted the 'administrative conference' option.").  But it is not necessary for a waiver to be in writing.  A waiver of procedural rights is enforceable if it is made voluntarily, knowingly, and intelligently. *Davies v. Grossmont Union High Sch. Dist.*, 930 F2d 1390, 1394-95 (9th Cir), *cert denied*, 501 US 1252 (1991).  Plaintiff fails to argue why his waiver or his attorney's was not voluntary, knowing, or intelligent.  Plaintiff's argument, instead, is that his counsel's waiver was not enforceable because plaintiff did not like either of the hearing options that the University offered.  (Pl.'s Response at 17-18.)  This argument, however, neither addresses the constitutional standard for a waiver of procedural rights, nor does it address why plaintiff's signed waiver is unenforceable.  The fact the plaintiff had to make a potentially difficult choice between proceeding with a panel hearing where he faced a possible sanction of expulsion or proceeding with an administrative conference where he faced the more limited sanction of suspension does not render his decision unenforceable.  *See e.g.*, *Doe v. Woodford*, 508 F3d 563, 572 (9th Cir 2007) ("We have no doubt that the decision to plead guilty is a difficult one for many defendants, but the fact that one struggles with the decision, and might later come to regret it, does not render it coerced."); *Johnson v. U.S.*, 539 F2d 1241, 1243 (9th Cir 1976).

By the express terms of plaintiff agreement, he elected to, among other things, proceed with an administrative conference, waive his right to a panel hearing, and waive his right to appeal the outcome of his hearing to the University.  (Thornton Decl. Ex. C.)  Based on plaintiff's agreement to the process that was followed, as well as plaintiff's counsel's agreement to this procedure, Weintraub and Holmes could not have reasonably believed that their alleged conduct violated plaintiff's purported due process rights.

Page 10 -    Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Even if the court ultimately determines that both plaintiff's signed agreement and his attorney's agreement are unenforceable, Weintraub and Holmes are entitled to qualified immunity because it was reasonable for them to believe that plaintiff had agreed to an administrative conference and waived his right to an appeal.  Plaintiff has not pleaded any facts that could plausibly suggest that Weintraub and Holmes knew, or should reasonably have known, that plaintiff's agreement and waiver were invalid.  Weintraub is therefore entitled to qualified immunity because he could not have reasonably understood that conducting an administrative conference violated plaintiff's constitutional rights when plaintiff agreed in writing to an administrative conference.  Similarly, Holmes is entitled to qualified immunity because she could not have reasonably understood that not granting plaintiff an appeal to the University violated plaintiff's constitutional rights when plaintiff agreed in writing that he had no right to appeal.

4.      Plaintiff fails to rebut Defendants' argument that the Oregon Administrative Procedures Act does not confer any property or liberty interests

Despite plaintiff's conclusory allegations in his complaint, plaintiff makes no attempt to rebut, and thus implicitly concedes, Defendants' argument that the Oregon Administrative Procedures Act ("APA") does not confer a property or liberty interest to plaintiff.  Because plaintiff cannot show that he had a clearly established property or liberty interest based on another source of law, it is immaterial whether the Individual Defendants complied with the APA.

5.      Plaintiff fails to demonstrate that his substantive due process claim should survive despite not alleging a violation of his fundamental rights

The Individual Defendants are also entitled to qualified immunity with respect to plaintiff's substantive due process claim.  Their alleged conduct did not violate a clearly established property or liberty interest (as discussed in the preceding subsections) or implicate a

Page 11 -    Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

fundamental right.  In addition, a reasonable University official would not have understood that the Individual Defendants' alleged conduct shocked the conscience (nor did it).

Plaintiff's response recites the elements of a substantive due process claim, but offers no legal support for his assertion that the Individual Defendants violated the constitution. In *Albright v. Oliver*, 510 US 266, 271-72, 114 S Ct 807, 127 L Ed 2d 114 (1994), the Supreme Court explained that it "has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended."  Plaintiff's unsupported allegations are just that, an attempt to expand the concept of substantive due process into uncharted territory.

Plaintiff presents no support to show that a reasonable University official would have understood that it violated the Constitution (a) for a university president, father, or any other person, to publically deplore the "type of behavior in the police report,"[7] (b) to issue a temporary, emergency suspension while the University investigated allegations of serious misconduct, (c) to conduct an administrative hearing in accordance with the procedures agreed to by both parties to the hearing, or (d) not to grant an appeal to a student who agreed he had no appeal.  For these separate and additional reasons, the Individual Defendants are entitled to qualified immunity for plaintiff's substantive due process claim.

## B.    Plaintiff Fails To Establish That the Individual Defendant's Alleged Conduct Implicated Any Constitutionally Protected Property Rights Or Liberty Interests

Although the Individual Defendants are entitled to qualified immunity and thus not subject to liability for plaintiff's due process claim, it is appropriate for the court to dismiss this claim for the separate and additional reasons that plaintiff fails to "establish the existence of

---

[7]  Notably, plaintiff does not claim that Gottfredson stated that plaintiff had in fact engaged in the behavior depicted in the police report, but instead that Gottfredson stated that the *type of behavior* depicted in the police report was unacceptable and would not be tolerated by the University.  The type of behavior in the police report included, for example, underage drinking and what plaintiff has described as "'group' sexual activity."  *See e.g.*, Second Am. Compl. ¶ 26.

Page 12 -    Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

* * * a liberty or property interest."  *Shanks v. Dressel*, 540 F3d 1082, 1090 (9th Cir 2008) (internal quotation marks and citation omitted).  Plaintiff fails to establish a constitutionally protected property right because he cannot show that he had a legitimate claim of entitlement to attend the University, play for its basketball team, have his scholarship renewed, or sign an NBA contract.  Plaintiff's response identifies no Oregon law, or any other "existing rule[] or understanding[]" that supports an entitlement to these "unilateral expectation[s]."  *Roth*, 408 US at 577.  The Supreme Court has explained that university students may claim an entitlement to their education only if state law confers this entitlement.  *See Horowitz*, 435 US at 82.  Plaintiff identifies no Oregon law that confers such an entitlement on University students.  Similarly, plaintiff fails to identify any Oregon law that entitled him to a spot on the University's basketball team.  As Defendants explained in their motion to dismiss, the majority of courts that have addressed this question have found that "participation in intercollegiate athletics is not a constitutionally protected interest."  *Justice v. Nat'l Collegiate Athletic Ass'n*, 577 F Supp 356, 366 (D Ariz 1983); *see e.g.*, *Hysaw v. Washburn*, 690 F Supp 940, 944 (D Kan 1987) (athletic scholarship does not establish property right in athletic participation); *Brands v. Sheldon Cmty. Sch.*, 671 F Supp 627, 631 (ND Iowa 1987) ("A clear majority of courts addressing this question * * * has found that athletes have no legitimate entitlement to participate."); *Colo. Seminary (Univ. of Denver) v. NCAA*, 417 F Supp 885, 896 (D Colo 1976), *aff'd*, 570 F2d 320 (10th Cir 1978) (finding "no constitutionally protected property or liberty interest in participation in intercollegiate athletics.").  Finally, plaintiff points to no Oregon law that guaranteed that his scholarship would be renewed beyond its fixed term or that guaranteed that he would receive an NBA contract.

Plaintiff's response also fails to demonstrate that he had a constitutionally protected liberty interest in remaining a University student in good standing or in avoiding the purported stigma associated with being suspended for engaging in sexual misconduct.  As discussed previously, plaintiff's assertion of these liberty interests is based on the Fifth Circuit's

Page 13 -   Defendants' Reply in Support of Motion to Dismiss

70088905.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

ruling in *Dixon* and two out-of-jurisdiction district court cases.  But these cases do not establish that plaintiff's liberty interests were implicated by the alleged conduct of the Individual Defendants.  Consistent with the Supreme Court's ruling in *Wisconsin v. Constantineau*, 400 US 433, 91 S Ct 507, 27 L Ed 2d 515 (1971), the *Dixon* court found that Alabama State College impinged the plaintiffs' liberty interests when the school expelled the plaintiffs *without providing them notice or any opportunity for a hearing*.  294 F2d at 154.  Here, in contrast, plaintiff received both notice and an opportunity to be heard before he was suspended (not expelled) from the University.  Furthermore, plaintiff's suspension did not alter any cognizable rights to education or athletic participation, which precludes a finding that his liberty interests were impinged.  *See Davis*, 424 US at 711 (explaining that defamation by a government official does not impinge on constitutionally protected liberty interests unless "a right or status previously recognized by state law was distinctly altered or extinguished.").

Because plaintiff cannot demonstrate the existence of any constitutionally protected property rights or liberty interests, his due process claim should be dismissed for failure to state a claim.

C.    **Plaintiff Was Afforded Adequate Process**

Defendants are entitled to dismissal of plaintiff's due process claim for the separate and additional reason that plaintiff's administrative hearing provided constitutionally adequate process.  Plaintiff argues that the Individual Defendants violated his due process rights because he was not allowed to subpoena or cross-examine witnesses and was not provided unredacted reports from the University's case file.  (Second Am. Compl. ¶ 114.)  The Due Process Clause, however, does not require these procedures when a university student is suspended from school for violating the student conduct code.

In *Dixon*, a case relied on heavily by plaintiff, the court explained that its "holding that due process requires notice and some opportunity for hearing before a student at a tax-

Page 14 -    Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

supported college is expelled for misconduct" does "not [] imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required."  294 F2d at 158, 159; *see also Winnick v. Manning*, 460 F2d 545, 549 (2nd Cir 1972) ("The right to cross-examine witnesses generally has not been considered an essential requirement of due process in school disciplinary hearings.").  Instead, the Fifth Circuit speculated that "the requirements of due process of law will have been fulfilled" if a student receives (a) "notice * * * of the specific charges and grounds which, if proven, would justify expulsion," (b) the "the names of witnesses against him and an oral or written report on the facts to which each witness testifies," and (c) "the opportunity to present to the Board * * * his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf."  294 F2d at 158-59.

              In light of these standards outlined in the case that plaintiff himself contends should govern, plaintiff fails to state a procedural due process claim, and his assertion that he would not be "provided requisite due process" through a panel hearing (which he waived) or an administrative conference (which he elected) is without merit.  (Second Am. Compl. ¶ 54.) Plaintiff has not alleged that the University's notice was deficient and plaintiff had no constitutional right to cross-examine witnesses.  *See Dixon*, 294 F2d at 159, *Winnick*, 460 F2d at 549.  And his remaining allegations (that he was not allowed to subpoena witnesses and received redacted reports) are not required under *Dixon*.  As explained above, *Dixon* suggests that accused students be notified of the names of adverse witnesses and the facts to which each adverse witness has testified.  294 F2d at 158, 159.  Under both hearing options that the University offered, plaintiff was afforded "reasonable access to the case file, *but [] not [] access to material the disclosure of which is prohibited by law*."  OAR 571-021-0210(7) (panel hearing) (emphasis added); OAR 571-021-0205(1)(a) (administrative conference) (emphasis added).  This court should find that, as a matter of law, reasonable access to a case file provides an accused student with adequate notice of inculpatory evidence and that the University did not violate plaintiff's due process rights by redacting information that the University was prohibited by law from

Page 15 -   Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

disclosing.  Consequently, plaintiff's due process claim should be dismissed for this additional basis.

### D.    Plaintiff Has Asserted No Factual Allegations That Support His Claim Of Discrimination Based On Gender Or Sex

Plaintiff's Title IX claim should be dismissed because he did not plead factual allegations that plausibly suggest that the University's alleged conduct was motivated by plaintiff's gender or sex.[8]  Plaintiff's response rehashes his deficient pleadings and argues that a recent non-binding decision from the District of Rhode Island, *Doe v. Brown Univ.*, CA No. 15-144S, 2016 WL 715794 (DRI Feb. 22, 2016), supports his position that he has "plausibly plead" a Title IX claim.  Pl.'s Response at 2.  As an initial matter, *Doe v. Brown University* does not control the pleading standard to which plaintiff must comport.  The relevant standard is set forth in *Ashcroft v. Iqbal*, 556 US 662, 680-81 (2009), in which the Supreme Court explained that a claim survives a motion to dismiss only if, after the court disregards allegations that are "mere conclusory statements" or legal conclusions, plaintiff's factual allegations "plausibly suggest an entitlement to relief."  556 US at 681.  But furthermore, contrary to plaintiff's arguments, even though the District of Rhode Island denied Brown University's motion to dismiss a Title IX erroneous outcome claim, the court's decision demonstrates the deficiency in plaintiff's pleadings.

In *Doe v. Brown University*, the court found that the plaintiff satisfied the pleading standard set forth in *Iqbal* and *Bell Atl. Corp. v. Twombly*, 550 US 544, 127 S Ct 1955, 167 L Ed 2d 929 (2007), by (a) alleging multiple references to specific comments by three

---

[8] Though the Complaint asserts numerous times that University officials were biased against plaintiff because of his gender or sex, none of these assertions include any factual allegations suggestive of discriminatory intent.  *See e.g.*, Second Am. Compl. ¶¶ 84-88, 92.  Instead, plaintiff merely tacks on descriptive statements (e.g., "an accused male student" or "as a male student") and conclusory opinions (e.g., "based on sex," "because of her sex," or "gender-based actions") to his allegations that his procedural rights were violated and the outcome of his administrative hearing was wrong.

70088905.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Brown University employees that the university was biased against males and (b) identifying at least two previous cases of alleged sexual misconduct at Brown University that purportedly demonstrated the university's gender bias.[9] *Doe v. Brown Univ.*, 2016 WL 715794, at * 8-9. Here, in contrast, plaintiff's pleadings fail to allege even one (a) statement by a university official suggestive of gender or sex bias or (b) previous case of alleged sexual misconduct at the University that corroborates plaintiff's claim of bias. Plaintiff purports that his three allegations of disparate treatment by the University against male students, which are made "[o]n information and belief," satisfy the pleading standard because "[t]he undersigned believes these [allegations] to be true." (Pl.'s Response at 28.) But the beliefs of a party's attorney cannot reasonably be compared to alleged statements of university employees not made in the context of litigation. Accordingly, plaintiff's pleadings do not satisfy the pleading standard applied in *Doe v. Brown University* (which, in any event, does not satisfy the pleading standard under *Iqbal* because it

---

[9] Specifically, the plaintiff pleaded the following:

"Upon information and belief, one former Brown employee stated that Brown treats male students as 'guilty, until proven innocent,' that Brown has 'loaded the dice against the boys' and that the fact-finding process in cases of sexual misconduct at Brown operates under the assumption that it's always the 'boy's fault.'

"Upon information and belief, one Brown professor stated that 'there is gender bias that is overwhelming at Brown' when referencing sexual misconduct cases at Brown.

"Upon information and belief, in December 2014, a Brown professor held a debate to discuss rape issues on campus. During the debate, one female debater remarked that males are 'bad' and females are 'victims' when it comes to sexual misconduct. The Brown professor stated that these remarks are consonant with the culture of thinking on Brown's campus.

"Upon information and belief, Brown's handing [sic] of John Doe's case fits within a pattern of showing gender bias toward female students in cases of sexual misconduct, including its conduct in: (i) McCormick v. Dresdale, supra; (ii) a sexual misconduct case against former Brown student Adam Lack (Class of 1997); and (iii) other instances documented in the Brown Daily Herald (April 29, 2010) and the Brown Spectator (May 26, 2012)." *Doe v. Brown Univ.*, 2016 WL 715794, at *8-9 (internal citations omitted).

Page 17 -   Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

relies primarily on the alleged opinions of university employees, not factual allegations of discriminatory conduct).

Plaintiff's unfounded interpretation of Gottfredson's public statement does not overcome the deficiency of plaintiff's pleadings. According to plaintiff, Gottfredson's use of the term "survivor" is evidence of gender bias. (Pl.'s Response at 27.) So too, plaintiff asserts, was Gottfredson's statement that "as a father" he was appalled at the behavior depicted in the police report. *Id.* Yet plaintiff makes no argument why these terms are "gender-based, loaded" words. *Id.* As Defendants articulated in their motion to dismiss, it is self-evident that individuals of any gender may be and are survivors of sexual misconduct. (Defs.' Mot. to Dismiss at 28.) Plaintiff fails to address this argument. Similarly, Gottfredson's statement that he is a father fails to demonstrate gender bias because (a) it lacks any connection to the actual or perceived gender of either plaintiff or his accuser and (b) parents of all genders can be appalled by reported sexual misconduct, regardless of the accused's or the accuser's gender. Plaintiff also fails to address this argument. Plaintiff's concocted interpretation of Gottfredson's statement is demonstrative of the dearth of factual allegations included in plaintiff's pleadings that suggest gender- or sex-based bias on behalf of the University.

Because plaintiff has not pleaded any factual allegations that give rise to a plausible inference that the University acted with discriminatory animus based on plaintiff's gender or sex, it is irrelevant whether his pleadings have cast plausible doubt on the outcome of his administrative hearing. Plaintiff has failed to state all elements of a Title IX claim under a theory of erroneous outcome. Likewise, plaintiff's selective enforcement theory fails because it is based on plaintiff's misconstrual of Gottfredson's public statement and three allegations made "[o]n information and belief," which do not comport with the pleading standards articulated in *Iqbal*, *Twombly*, or *Doe v. Brown University*. Finally, plaintiff fails to argue any reason why his deliberate indifference theory should survive Defendants' motion to dismiss (Pl.'s Response at 28) and fails to rebut the University's argument that the District Attorney's decision not to

Page 18 -    Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

prosecute plaintiff does not suggest that the University was deliberately indifferent to plaintiff's rights under the University's Student Conduct Code.[10]  Plaintiff's Title IX claim should be dismissed for failure to state a claim.

**E.    Plaintiff's Response To Defendants' Tort Claims Arguments Confirms That Plaintiff Cannot Plausibly Assert That Defendants Are Liable In Tort**

1.    *Kavanagh v. Trustees of Boston University* does not establish that plaintiff had a special relationship with the University

The University did not have a special relationship with plaintiff.  Plaintiff attempts to rebut Defendants' argument by asserting that in *Kavanagh v. Trustees of Boston University*, 440 Mass 195, 795 NE2d 1170 (Mass 2003), the Massachusetts Supreme Court held that student-athletes (though not college students generally) have a special relationship with the colleges they attended.  Plaintiff's argument fails for two reasons.  First, the case does not bear on Oregon's unique negligence law and plaintiff makes no argument as to why he had a special relationship with the University under Oregon law.  In Oregon, a special relationship exists only if (a) plaintiff relinquished control over important matters to the University, (b) plaintiff authorized the University to exercise independent judgment on his behalf for the purpose of furthering plaintiff's interests, and (c) the relationship between plaintiff and the University resembles other special relationships recognized by law.  *See Bell v. PERB*, 239 Or App 239, 249-50, 247 P3d 319 (2010).  None of these factors apply to the relationship between plaintiff and the University.  Moreover, the *Kavanagh* court explained that under Massachusetts law, "[a] special relationship, when derived from common law, is predicated on a plaintiff's reasonable expectations and reliance that a defendant will anticipate harmful acts of third persons and take appropriate measures to protect the plaintiff from harm." 440 Mass at 201 (internal quotation marks and citation omitted).  But plaintiff makes no argument as to why it was

---

[10]  Additionally, plaintiff overstates the significance of the District Attorney's initial decision not to prosecute plaintiff, which does not prevent the District Attorney from deciding to prosecute plaintiff at any future point within the statute of limitations.

Page 19 -    Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

reasonable for him to expect and rely on the University to protect him from harm because he was a student-athlete.

Nor did the *Kavanagh* court find that "numerous courts have held that student-athletes" have special relationships with the schools they attend, as plaintiff asserts. (Pl.'s Response at 32.) Instead, the *Kavanagh* court explained that "[i]n recent years, courts and commentators have taken differing views as to what duties schools have to the scholarship athletes that they have recruited." 440 Mass at 201. The court goes on to explain that "[s]ome" courts (citing only the Third Circuit and a North Carolina appellate court) have found that schools have a special relationship with their student-athletes, while "[o]thers have rejected that theory on the ground that there is nothing different about a student athlete's relationship with a university which would justify the conclusion that a student athlete is a custodial ward of the university while the non-athlete is an emancipated adult." 440 Mass at 201-02. *Kavanagh*, however, does not weigh in. 440 Mass at 202 ("[f]or purposes of this case, we need not enter that debate").

Plaintiff's response fails to establish that he had a special relationship with the University.

2.    <u>Plaintiff does not dispute that he cannot recover for negligence unless he had a special relationship with the University and, in any event, plaintiff fails as a matter of law to show that Defendants' alleged conduct was unreasonable</u>

Plaintiff does not rebut the argument that Defendants cannot be liable for the purely economic damages alleged by plaintiff unless plaintiff had a special relationship with the University.[11] Accordingly, because plaintiff cannot establish that he had a special relationship

---

[11] On page 32, plaintiff restates his allegation that Defendants "had a duty to Mr. Austin." (Pl.'s Response at 32.) In the absence of a special relationship, however, duty not is an element of Oregon negligence law. *See Solberg v. Johnson*, 306 Or 484, 490-91, 760 P2d 867 (1988).

Page 20 -    Defendants' Reply in Support of Motion to Dismiss

70088905.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

with the University under Oregon law, he cannot assert a negligence claim, and his claim should be dismissed.

Plaintiff, however, attempts to overcome Defendants' negligence arguments by claiming that because he was a top amateur athlete, it was foreseeable that Defendants' alleged conduct would have "stigmatize[d] him." (Pl.'s Response 33.) But as just explained, this argument is irrelevant because the Complaint alleges only economic damages. Yet even if the court consider plaintiff's negligence claim despite plaintiff's failure to plead any physical injury or property damage, plaintiff's foreseeability argument fails. In the absence of a special relationship, for Defendants' conduct to be tortious, it must have both created a foreseeable risk of harm *and* been unreasonable. *See Solberg*, 306 Or at 490-91. Regardless of plaintiff's athletic potential, as a matter of law, it was not foreseeable that plaintiff's administrative hearing would unreasonably place him at risk of being stigmatized. Plaintiff agreed to participate in an administrative conference. It was not, therefore, unreasonable for Weintraub to conduct plaintiff's administrative hearing in accordance with the University's regulations for administrative conferences. To find otherwise would allow plaintiff to agree to one set of procedures and then recover if those procedures do not result in a favorable outcome. And, in any event, plaintiff's negligence claim fails because he did not have a special relationship with the University.

3.   <u>Plaintiff fails to plead any factual allegations that Defendants intended to inflict severe emotional distress or that Defendants' alleged conduct transgressed the bounds of socially tolerable behavior</u>

The lack of a special relationship between plaintiff and the University further prevents plaintiff's recovery for IIED. Nonetheless, plaintiff also fails to plead factual allegations that can plausibly establish any of the elements of IIED. To overcome Defendants' motion, plaintiff must plead factual allegations that plausibly suggest that (a) Defendants intended to inflict severe emotional distress on plaintiff, (b) Defendants' alleged conduct caused

Page 21 -   Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

plaintiff severe emotional distress, and (c) Defendants' alleged conduct transgressed the bounds of socially tolerable behavior. *See McGanty v. Staudenraus*, 321 Or 532, 543, 901 P2d 841 (1995).

Plaintiff pleads no factual allegations that plausibly suggest that Defendants intended to inflict emotional distress on plaintiff. Instead, the Complaint includes only the conclusory and unsupported allegation that Defendants "intended to inflict * * * severe emotional distress" and acted "in bad faith" and "with malice." (Second Am. Compl. ¶¶ 119, 122.) Plaintiff's response reasserts that Defendants acted in bad faith, but again fails to substantiate that assertion with any factual allegations. Without such allegations, plaintiff fails to adequately plead the first element of IIED.

Plaintiff also fails to plead factual allegations that plausibly suggest that Defendants' alleged conduct constituted an extraordinary transgression of the bounds of socially tolerable conduct. The court may evaluate Defendants' alleged conduct as a matter of law. *Tenold v. Weyerhaeuser Co.*, 127 Or App 511, 517, 873 P2d 413 (1994), *rev. denied*, 321 Or 561. Accordingly, as a matter of law, it was not an extraordinary transgression for Gottfredson to make a public statement opposing sexual misconduct, for Martin to temporarily suspend plaintiff while the University investigated the serious allegations against him, for Weintraub to conduct an administrative hearing in accordance with the procedures agreed to by both parties to the hearing, or for Holmes not to offer plaintiff an appeal when plaintiff had waived his right to an appeal. Furthermore, the University did not suspend plaintiff for sexual assault. (Thornton Decl. Ex. B.) As Defendants' explained in their motion to dismiss, plaintiff was suspended for sexual misconduct, defined in relevant part by the University's Student Conduct Code as penetration without "first obtain[ing] Explicit Consent." OAR 571-021-0105(30)(b)(A). Plaintiff's repeated exaggerations underscore the deficiency of his pleadings, which cannot plausibly give rise to a claim for IIED.

Page 22 -   Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

4.    <u>Plaintiff offers no support for his contention that he can recover for tortious interference without showing an actual or contemplated business relationship with an NBA team</u>

Plaintiff's claim for tortious interference with prospective economic relations should be dismissed. Plaintiff's response fails to address the key legal arguments that Defendants assert in their motion to dismiss. First, plaintiff admits that he did not have a business relationship with any NBA team at the time of his alleged injury, yet argues—without citation to any case law—that he can nevertheless recover for tortious interference. (Pl.'s Response at 34.) No Oregon court has allowed recovery for tortious interference where a plaintiff has failed to demonstrate the existence of an actual or contemplated business relationship with a third party. Whether third parties may have speculated that plaintiff may at some point in the future have a business relationship with an NBA team, and whether it is discernable what NBA players earn, does nothing to assist plaintiff in alleging that he *had* a relationship with the NBA, particularly where he concedes that he did not. Plaintiff's response also appears to imply that because NCAA regulations prohibited him from establishing a business relationship with the NBA, he should be excused from this essential element of the tort. (Pl.'s Response at 34.) Plaintiff, however, fails to cite any precedent to support his argument, which contravenes Oregon law.

Second, plaintiff argues that he complied with the notice requirements of the Oregon Tort Claims Act ("OTCA") by asserting that "he was damaged by [the alleged] actions" of the Defendants. (Pl.'s Response at 34.) But plaintiff is wrong when he argues that mere notice of the intent to seek "damages" complies with the OTCA's notice requirement and that "[n]o law says that more was required." (Pl.'s Response at 34.) ORS 30.260(6) says that more is required. Specifically, ORS 30.260(6) requires "actual notice" of the "time, place, and circumstances" giving rise to the tortious interference claim. Plaintiff's arguments essentially concede that he did not comply with the OTCA. And his argument that Defendants make "no showing as to what evidence" would have been collected if his notice had complied with OTCA's

Page 23 -    Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

notice requirement fails to resurrect his claim. (Pl.'s Response at 34.) It is not Defendants burden to show what evidence it would have attempted to preserve if plaintiff had given proper notice (although there are many types of discovery that Defendants could have attempted to collect closer in time to the events in question, including witness interviews and correspondence). Oregon law is clear that it is plaintiff's burden to show that he has given notice of the time, place, and circumstances of his tortious interference claim and that such notice is a substantive condition precedent to pursuing the claim. *See Orr v. City of Eugene*, 151 Or App 541, 543, 950 P2d 397 (1997). Plaintiff failed to do so and his claim should be dismissed.

F.    **Plaintiff Fails To Rebut Defendants' Argument That The University Fulfilled The Express Terms Of Plaintiff's Scholarship Agreement**

The University fulfilled its contractual obligations to plaintiff, and is entitled to dismissal of plaintiff's contract claim. In his response, plaintiff reasserts that the express terms of his scholarship agreement entitled him to a scholarship renewal, but fails to explain why. Nowhere in plaintiff's scholarship does it promise renewal for the 2014-15 school year. (Thornton Decl. Ex. A.) Plaintiff also reasserts that the University's scholarship offer induced him to transfer to the University without explaining why this supports his breach of contract claim. The University indisputably fulfilled its contractual obligations by providing plaintiff with all of the benefits guaranteed under his two-quarter scholarship.

Furthermore, plaintiff has not pleaded any damages that (a) were contemplated by the parties when they entered into the contract, (b) were foreseeable to the University when it agreed to offer plaintiff a two-quarter scholarship, or (c) plaintiff is reasonably likely to sustain.[12] *See Doyle v. Oregon Bank*, 94 Or App 230, 234, 764 P2d 1379 (1988) (affirming dismissal of breach of contract claim because consequential damages were not reasonably foreseeable).

---

[12] Plaintiff now asserts for the first time that he wants the University to be liable for hypothetical multi-million dollar product endorsement contracts stemming from his hypothetical performance during his hypothetical professional basketball career, further highlighting that the damages he seeks were not reasonably foreseeable. (Pl.'s Response at 35.)

Page 24 -    Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Plaintiff's alleged damages to his hypothetical proccessional basketball career are outside the scope of his contract with the University and are too speculative, as a matter of law.  *See e.g.*, *McAdoo v. Univ. of N.C. at Chapel Hill*, 225 NC App 50, 65, 736 SE2d 811 (NC Ct App 2013) (affirming dismissal of student-athlete's breach of contract claim because, among other reasons, alleged damage to a future professional sports career is "too hypothetical and speculative to provide [plaintiff] with standing"); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 118 F Supp 2d 494, 509 (DNJ 2000), *opinion amended on reargument*, 130 F Supp 2d 610 (2001) ("[D]amages for the loss of a potential future professional athletic career are speculative because the possibility that such damages would ever occur is too conjectural for determination.  Many contingencies must occur before [plaintiff] could enjoy a professional athletic career.  Those contingencies include, but are not limited to, whether [plaintiff] would escape injury, whether [plaintiff] would excel at college football and whether any professional team would show an interest in [plaintiff].  In short, the road to a professional football career is long and circuitous, and [plaintiff] has not gone down that road far enough to submit such a fanciful damage claim to a fact finder.").  But in any event, plaintiff has not disputed that the University provided him all of the benefits of his scholarship during its fixed-term.  He cannot recover damages for an alleged breach of a contract that was provided in full.  Plaintiff's claim should therefore be dismissed.

### G.    Plaintiff's Response To Defendants' Preclusion Arguments Mischaracterizes Defendants' Position

Plaintiff is precluded by Oregon law from re-litigating his administrative conference.  Defendants have not argued that plaintiff's administrative hearing precludes him from asserting his due process claim and his Title IX claim.  (Defs.' Mot. to Dismiss at 34.)  Though plaintiff's due process and Title IX claims should be dismissed for failure to state a claim, if plaintiff is permitted to litigate these claims, he should nevertheless be precluded from litigating the merits of his administrative order.  Put differently, plaintiff is precluded from introducing evidence for the purpose of showing that he did not engage in sexual misconduct, as

Page 25 -    Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

defined by the Student Conduct Code.  As a consequence, plaintiff cannot prevail on his due process or Title IX claims to the extent that doing so relies on the court finding that his administrative hearing was wrongly decided.  Otherwise, this court would be improperly allowing a challenge to a final state order.

Plaintiff also mischaracterizes Defendants' second preclusion argument. Defendants argued in their motion to dismiss that ORS 183.480(2) prevents plaintiff from asserting his state law claims—not his federal claims, as plaintiff mistakenly asserts.  (Pl.'s Response at 29-30; Defs.' Mot. to Dismiss at 34.)  This preclusion argument is not contingent upon whether plaintiff exhausted available administrative remedies.  In fact, no administrative remedy was available to plaintiff because he waived his right to an administrative appeal. Defendants' argument is that, under Oregon statutory law, plaintiff's only remedy was judicial review of his suspension in accordance with either ORS 183.482 or 183.484, both of which require that an appeal be filed within 60 days of the issuing of the administrative order.  Plaintiff made no appeal under ORS 183.482 or 183.484, and thus he is now precluded from asserting his state law claims.

### H.    Plaintiff Does Not Deny That Defendants' Alleged Conduct Constituted Discretionary Decisions Made Within The Scope Of Their Employment With The University

Defendants are entitled to discretionary immunity under both ORS 30.265(6)(c) and 30.265(6)(f).  Plaintiff's lawsuit is premised on the underlying assertion that Defendants' alleged conduct, including the decision to suspend plaintiff from the University, was discretionary.  Plaintiff asserts that "Defendants' only argument that they are immune from liability under O.R.S. 30.265(6)(c) is 'because their decisions involved public policy and were made under the apparent authority of law.'"  (Pl.'s Response at 31.)  Plaintiff goes on to claim that this "argument is utterly at odds with the plain language of [] O.R.S. 30.265(6)(c)," though

Page 26 -    Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

plaintiff offers no explanation for why he claims that Defendants' argument fails, other than stating that the statute "provides no immunity in the circumstances presented." *Id.*

ORS 30.265(6)(c) states that:

"[e]very public body and its officers, employees and agents acting within the scope of their employment or duties, * * * are immune from liability for: * * * [a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." ORS 30.265(6)(c).

Based on the plain language of this statute, public institutions and employees are immune from liability for exercising discretion within the scope of their employment. This is precisely what Defendants asserted in their motion to dismiss and it is consistent with the pleadings of the Complaint. (Defs.' Mot. Dismiss at 35-36; Second Am. Compl. ¶¶ 115, 122, 127). Consequently, ORS 30.265(6)(c) protects Defendants from the alleged tort liability.

Alternatively, Defendants are immune from liability in accordance with ORS 30.265(6)(f), which provides immunity for public institutions and employees, acting within the scope of their employment, for "[a]ny claim arising out of an act done or omitted under apparent authority of a law, resolution, rule or regulation that is unconstitutional, invalid or inapplicable." ORS 30.265(6)(f). Plaintiff asserts that Defendants have "fail[ed] to cite what 'law, resolution, rule or regulation' they seek shelter under." (Pl.'s Response at 31.) But Defendants asserted that plaintiff's administrative hearing was conducted in accordance with the University's regulations governing administrative conferences (Defs.' Mot. Dismiss at 3), and plaintiff's complaint alleges that his administrative conference did not provide constitutionally adequate process and thus was unconstitutional. (Second Am. Compl. ¶¶ 49, 54.) Accordingly, if the court agrees with plaintiff that his administrative conference was constitutionally inadequate, ORS 30.265(6)(f) protects Defendants from tort liability.

However, the University provided plaintiff with constitutionally adequate process (even though it was not required to) and the court need not determine whether plaintiff

Page 27 -    Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

sufficiently pleaded his tort claims because Defendants are immune from tort liability under ORS 30.265(6)(c).

**III.     CONCLUSION**

 The court should grant Defendants' motion to dismiss in full.  Plaintiff (a) does not have a clearly established property right or liberty interest in his education or standing at the University, his reputation, his position on the basketball team, receiving an athletic scholarship, or a hypothetical professional basketball career, (b) has failed to plead any factual allegations which indicate that Defendants acted with discriminatory intent based on plaintiff's sex or gender, (c) did not have a special relationship with the University and thus cannot assert a negligence or IIED claim, (d) did not have an actual or contemplated business relationship with the NBA, and (e) received all of the benefits due to him under the terms of his scholarship agreement.  In addition, plaintiff is precluded from re-litigating the merits of his administrative hearing, he is precluded from raising his state law claims by Oregon statutory law, and Defendants are entitled to discretionary immunity with regard to plaintiff's state law claims. Accordingly, the Complaint should be dismissed and judgment entered in favor of defendants for these multiple reasons.

 DATED this 25th day of March, 2016.

 MILLER NASH GRAHAM & DUNN LLP


 s/  Michelle Barton Smigel
 Michelle Barton Smigel, P.C., OSB No. 045530
 michelle.smigel@millernash.com
 Michael Porter, P.C., OSB No. 003560
 mike.porter@millernash.com
 Phone: 503.224.5858
 Fax: 503.224.0155

 *Attorneys for Defendants*


Page 28 -    Defendants' Reply in Support of Motion to Dismiss

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

I hereby certify that I served the foregoing Defendants' Reply in Support of

Motion to Dismiss on:

Ms. Marianne Dugan
259 East 5th Avenue, Suite 200-D
Eugene, Oregon  97401
Fax:  (866) 650-5213
E-mail:  mdugan@mdugan.com

*Attorneys for Plaintiff Brandon Austin*

Mr. Alan C. Milstein
Sherman Silverstein Kohl Rose & Podolsky
308 Harper Drive, Suite 200
Moorestown, New Jersey  08057
Fax:  (856) 488-4744
E-mail:  amilstein@shermansilverstein.com

*Attorneys for Plaintiff Brandon Austin*

by the following indicated method or methods on the date set forth below:

☒   **CM/ECF system transmission.**

☐   **E-mail.**  (Courtesy copy.)

☐   **Facsimile communication device.**

☐   **First-class mail, postage prepaid.**

☐   **Hand-delivery.**

☐   **Overnight courier, delivery prepaid.**

DATED this 25th day of March, 2016.

s/  Michelle Barton Smigel
Michelle Barton Smigel, OSB No. 045530

*Of Attorneys for Defendants*

Page 1 -    Certificate of Service

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: (503) 224-5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204-3699