**Michelle Barton Smigel, P.C.**, OSB No. 045530
michelle.smigel@millernash.com
**Michael Porter, P.C.**, OSB No. 003560
mike.porter@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Telephone: 503.224.5858
Fax: 503.224.0155

      Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **BRANDON AUSTIN**,<br><br>      Plaintiff,<br><br>  v.<br><br>**UNIVERSITY OF OREGON**; **SANDY WEINTRAUB**; **CHICORA MARTIN**; **ROBIN HOLMES**; and **MICHAEL R. GOTTFREDSON**, all in their individual capacities only,<br><br>      Defendants. | Case No.: 6:15-cv-02257-MC (Lead Case)<br>Case No.: 6:16-cv-00647-MC (Member Case)<br><br>DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT<br>(Under Fed R Civ P 12(b)(6))<br><br>**REQUEST FOR ORAL ARGUMENT** |
| **DOMINIC ARTIS** and **DAMYEAN DOTSON**,<br><br>      Plaintiffs,<br><br>  v.<br><br>**UNIVERSITY OF OREGON**; **SANDY WEINTRAUB**; **CHICORA MARTIN**; **ROBIN HOLMES**; and **MICHAEL R. GOTTFREDSON**,<br><br>      Defendants. | |

Defendants' Motion to Dismiss Third Amended Complaint and Memorandum in Support

4826-8765-5740.4

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION.................................................................................................. 1

II.  FACTUAL ALLEGATIONS FOR PURPOSES OF THIS MOTION ...................... 2

III. ARGUMENT ...................................................................................................... 5

A. Plaintiffs' Title IX Claims Should Be Dismissed Because the Factual Allegations of the Complaint Do Not Plausibly Suggest That the University Is Biased Against Males ............................................................ 7

    1. The University Did Not Selectively Enforce Its Student Conduct Code by Investigating Allegations of Rape.......................................... 8

    2. No Factual Allegations Plausibly Suggest That the University's Title IX Investigation or Plaintiffs' Hearing Were Flawed or Influenced By Bias Against Males ............................................... 10

    3. The University Did Not Selectively Enforce Its Student Conduct Code by Suspending Plaintiffs for Engaging in Sexual Misconduct .................................. 18

    4. The Factual Allegations Do Not Plausibly Suggest That the University Was Deliberately Indifferent to Plaintiffs' Rights................................. 19

B. Artis and Dotson's Equal Protection Claim Should Be Dismissed Because the Factual Allegations of the Complaint Do Not Plausibly Suggest That the Conduct of the Individual Defendants Was Discriminatory..................................... 20

    1. No Factual Allegations Plausibly Suggest That Any of the Individual Defendants Acted in a Discriminatory Manner or With Discriminatory Intent ............................................................ 20

    2. The Individual Defendants Are Nevertheless Entitled to Qualified Immunity From Artis and Dotson's Equal Protection Claims ........................... 22

C. Plaintiffs' Negligence Claim Should Be Dismissed Because the Parties Were Not in a Special Relationship and, as a Matter of Law, Defendants' Conduct Did Not Create a Foreseeable or Unreasonable Risk of Harm to Plaintiffs. ............. 24

    1. Plaintiffs Did Not Have a Special Relationship With Any of the Defendants and Therefore Have Not Alleged a Cognizable Negligence Claim................................................................ 25

    2. As a Matter of Law, Defendants' Alleged Conduct Did Not Create a Foreseeable and Unreasonable Risk of Harm to Plaintiffs ................................. 28

D. Plaintiffs' Breach-of-Contract Claim Should Be Dismissed Because the University Fulfilled All Its Contractual Obligations to Plaintiffs............................. 30

IV. CONCLUSION ............................................................................................... 32

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. al-Kidd,*
    563 US 731, 131 S Ct 2074, 179 L Ed 2d 1149 (2011)..........................................................22

*Ashcroft v. Iqbal,*
    556 US 662, 129 S Ct 1937, 173 L Ed 2d 868 (2009)...........................................5, 11, 20, 32

*Auer v. Robbins,*
    529 US 452, 117 S Ct 905, 137 L Ed 2d 79 (1997)...................................................................9

*Bell Atl. Corp. v. Twombly,*
    550 US 544, 127 S Ct 1955, 167 L Ed 2d 929 (2007)...................................................5, 11, 20

*Bradshaw v. Rawlings,*
    612 F 2d 135 (3d Cir 1979)......................................................................................................27

*Chapman v. Mayfield,*
    358 Or 196, 361 P3d 566 (2015) ......................................................................................28, 29

*Chevron, U.S.A. v. Natural Resources Defense Council, Inc.,*
    467 US 837, 104 S Ct 2778, 81 L Ed 2d 694 (1984)................................................................9

*Conway v. Pacific University,*
    324 Or 231, 924 P2d 818 (1996) ............................................................................................25

*Coto Settlement v. Eisenberg,*
    593 F3d 1031 (9th Cir 2010) .....................................................................................................2

*Dauven v. George Fox Univ.,*
    No. CV. 09-305-PK, 2010 WL 6089077 (D Or Dec. 3, 2010)...............................................29

*Doe v. Columbia Univ.,*
    831 F3d 46 (2d Cir 2016)........................................................................................................10

*Doe v. Regents of Univ. of Cal.,*
    No. 2:15-cv-02478-SVW-JEM, 2016 WL 5515711 ..............................................................11

*Doe v. Univ. of the South,*
    687 F Supp 2d 744 (ED Tenn 2009).....................................................................8, 10, 18, 19

*Freeman v. Busch,*
    349 F3d 582 (8th Cir 2003) .....................................................................................................27

4826-8765-5740.4

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Guest v. Hansen*,
No. 06-cv-0500, 2007 WL 4561104 (NDNY Dec. 18, 2007), *aff'd*, 603 F3d 15
(2d Cir 2010)..................................................................................................27

*House v. Hicks*,
218 Or App 348, 179 P 3d 730 (2008)..................................................................26

*Nelson v. Emerald People's Utility Dist.*,
318 Or 99, 862 P2d 1293 (1993) ........................................................................24

*North Unit Potato Co. v. Spada Dist.*,
260 Or 468, 490 P2d 995 (1971) ........................................................................32

*Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*,
336 Or 329, 83 P3d 322 (2004) .........................................................................25

*Orr v. Brigham Young Univ.*,
960 F Supp 1522 (D Utah 1994), *aff'd without published opinion*, 108 F3d
1388 (10th Cir 1997)........................................................................................27

*Orr v. City of Eugene*,
151 Or App 541, 950 P2d 397 (1997)..................................................................24

*Painter v. Doe*,
No. 3:15-cv-00369-MOC-DCK, 2016 WL 4644495 (WDNC Sept. 6, 2016).........................16

*Patterson v. Hudson Area Sch.*,
551 F3d 438 (6th Cir 2009) ..............................................................................19

*Reese v. Jefferson Sch. Dist. No. 14J*,
208 F3d 736 (9th Cir 2000) ..............................................................................20

*Skidmore v. Swift & Co.*,
323 US 134, 65 S Ct 161, 89 L Ed 124 (1944)........................................................9

*Taylor v. Barkes*,
___ US ___, 135 S Ct 2042, 192 L Ed 2d 78 (2015)................................................23

*Yogman v. Parrott*,
325 Or 358, 937 P2d 1019 (1997) ......................................................................31

*Yusuf v. Vassar Coll.*,
35 F3d 709 (2d Cir 1994), *and* (b) ...................................................................10

4826-8765-5740.4

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

TABLE OF AUTHORITIES
(continued)

**Statutes**

20 USC § 1681 Title IX ................................................................................................6

42 USC § 1983 ...............................................................................................................6

ORS 30.265(6)(c) and (f) .............................................................................................24

ORS 30.275 et seq. .......................................................................................................24

ORS 124.100(g) ............................................................................................................26

ORS 183.482 .................................................................................................................24

ORS 183.484 .................................................................................................................24

ORS 659.860 ...................................................................................................................7

ORS 659A.875 .................................................................................................................7

**Other Authorities**

72 Fed Reg 3432 (Jan. 25, 2007) ..................................................................................9

Fed R Civ P 12(b)(6) ..................................................................................................1, 5

Local Rule 7-1 ................................................................................................................1

Local Rule 7-2 ................................................................................................................1

OAR 571-003-0125 .........................................................................................................5

OAR 571-021-0105(30)(b)(A) .......................................................................................4

OAR 571-021-0120 ....................................................................................................4, 19

OAR 571-021-0130 ....................................................................................................4, 19

OAR 571-021-0205 .........................................................................................................4

OAR 571-021-0210 .........................................................................................................4

OAR 571-021-0230 .......................................................................................................23

OAR 571-021-0240(1) ..................................................................................................18

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

**TABLE OF AUTHORITIES**
(continued)

OAR 571-021-0250 ......................................................................................................... 4

Restatement (Second) of Contracts § 235 cmt a (1981) ............................................... 30

4826-8765-5740.4

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## LR 7-1 CERTIFICATE

Counsel for defendants, University of Oregon (the "University"), Sandy Weintraub, Chicora Martin, Robin Holmes, and Michael R. Gottfredson (collectively, the "Individual Defendants" and, together with the University, "Defendants"), conferred with counsel for plaintiffs about the dispute through telephone conferences, but the parties have been unable to resolve the dispute.

## LOCAL RULE 7-2 CERTIFICATION

This memorandum complies with the applicable page limitation under LR 7-2(b) because it does not exceed 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

## MOTION

In accordance with Fed R Civ P 12(b)(6), Defendants move to dismiss the third amended complaint because it fails to state a claim on which relief can be granted.

## MEMORANDUM

## I.      INTRODUCTION

Plaintiffs' Third Amended Complaint (the "Complaint") fails to remedy the shortcomings of the Second Amended Complaint, which this court dismissed for failing to state any plausible claims. As before, plaintiffs continue to assert that Defendants are liable for investigating a report that plaintiffs had raped a fellow undergraduate student and for finding, after an administrative hearing at which each plaintiff was represented by counsel, that plaintiffs had violated the University's Student Conduct Code by engaging in "sexual misconduct" as defined in that code.

Yet plaintiffs set forth no new factual allegations that support their theories of liability or plausibly suggest (1) that the University's Title IX investigation or plaintiffs' hearing was procedurally flawed, (2) that the University erred in reaching its findings, or (3) that the

4826-8765-5740.4

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

University or any of the Individual Defendants were biased against plaintiffs or treated them differently because they are males.  Plaintiffs' and their attorneys' personal beliefs that Defendants were biased against plaintiffs and speculation as to why Defendants found that plaintiffs had violated the Student Conduct Code are not factual allegations and are insufficient to overcome Defendants' motion to dismiss.  Because plaintiffs fail to state any claim that is plausible on its face, Defendants cannot be liable for allegedly "diminished chances" that plaintiffs have of playing in the National Basketball Association, and the Complaint should be dismissed.

## II.    FACTUAL ALLEGATIONS FOR PURPOSES OF THIS MOTION

For purposes of this motion, Defendants move against the allegations of the Complaint.  As before, Defendants submit a number of documents that were incorporated by reference into the Complaint.  *See Coto Settlement v. Eisenberg*, 593 F3d 1031, 1038 (9th Cir 2010) (the court may consider materials incorporated into the Complaint or matters of public record).  These documents are:  (1) plaintiffs' 2013-2014 athletic scholarships, (2) the redacted police report published by *The Oregonian*, (3) Gottfredson's public statement, (4) documentation of plaintiffs' waivers of a panel hearing, (5) the University's decision letters finding that plaintiffs "engaged in sexual acts with a fellow student without obtaining explicit consent," and (6) plaintiffs' Tort Claims Notices to the University.  Defendants also submit the following documents, which were incorporated into plaintiffs' new allegations:  (1) a statement from the Lane County District Attorney's office published by *The Oregonian* and (2) a statement of a University undergraduate (the "complainant") published by the *Daily Emerald*.  (All documents are attached as exhibits to the declarations of Michelle Barton Smigel ("Smigel Decl.") and Lisa Thornton ("Thornton Decl.").)  Plaintiffs cannot in good faith dispute the contents of these documents, and therefore their inclusion does not create any factual dispute.

4826-8765-5740.4

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Plaintiffs are former students of the University and scholarship athletes for the University's men's basketball team. (Compl. ¶ 4.) Plaintiffs' scholarships did not guarantee plaintiffs a starting position on the basketball team, playing time, or even a spot on the team at all—rather, the scholarships merely provided them room and board for one academic year. (Plaintiffs' scholarships for the 2013-2014 academic year are attached as Exhibit A to Thornton Decl., ¶ 4.)

On March 13, 2014, the complainant filed a report with the Eugene Police Department, accusing plaintiffs of raping her. (Compl. ¶ 31.) Around this time, the University also received a report accusing plaintiffs of rape. The University responded by conducting a Title IX investigation of the accusations. During its Title IX investigation, it suspended plaintiffs from school on an emergency and temporary basis, as provided under then-OAR 571-021-0230. (Compl. ¶ 32.) On May 2, 2014, plaintiffs were dismissed from the University's basketball team, though they continued to receive their scholarships through the end of the 2013-2014 academic year.

On May 5, 2014, *The Oregonian* published the March 13 police report, which referenced plaintiffs by name. (Police report attached as Exhibit A to Smigel Decl., ¶ 2.) (Compl. ¶ 35.) The next day, *The Oregonian* published a statement from the Lane County District Attorney's office, in which the District Attorney's office explained that its decision not to file criminal charges against plaintiffs was based on whether the District Attorney's office thought that it could "prove the allegations beyond a reasonable doubt." (Police report attached as Exhibit A to Smigel Decl., ¶ 2.) (Compl. ¶ 36.) The Complaint alleges that following the public release of the police report and the District Attorney's statement, University students engaged in on-campus demonstrations, which were covered by the local and national news media. (Compl. ¶¶ 40, 42.)

Several days later, on May 9, 2014, President Gottfredson held a press conference to address public concerns regarding the police report and sexual violence in the community.

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

(Compl. ¶ 47.)  His statement did not reference plaintiffs by name.  (Gottfredson's statement attached as Exhibit B to Thornton Decl., ¶ 5.)  Approximately one month later, on June 5, the *Daily Emerald* published a letter written by the complainant expressing her feelings toward the University's athletic department and her dissatisfaction "with the answers they have provided." (letter attached as Exhibit C to Smigel Decl., ¶ 4.)  (Compl. ¶ 57.)

In accordance with the University's Student Conduct Code, the University began the process of scheduling plaintiffs' administrative hearings.  As the hearings approached, plaintiffs agreed for their hearing to be conducted according to the administrative conference procedures defined by OAR 571-021-0205, rather than a more robust panel hearing.[1]  In do agreeing, plaintiffs waived any opportunity to subpoena witnesses, cross examine the complainant, or appeal the decision to the University.  In return, the University agreed that "suspension" from school would be the maximum sanction that plaintiffs faced.  (Plaintiffs' waivers are attached as Exhibits C and D to Thornton Decl., ¶¶ 6-7.)

Plaintiffs' hearing was conducted by Sandy Weintraub, Director of Student Conduct & Community Standards at the University (Compl. ¶ 69), on June 17, 2014.  Plaintiffs were represented by counsel at their hearing.  Based on the University's Title IX investigation report, the police report, and other evidence presented at the hearing, Weintraub determined that plaintiffs had violated the University's Student Conduct Code by engaging in sexual misconduct, specifically, penetration without "first obtain[ing] Explicit Consent."  OAR 571-021-0105(30)(b)(A).  Plaintiffs were suspended from the University in accordance with University

---

[1]With advice of their attorneys, all three plaintiffs waived a panel hearing.  Under OAR 571-021-0210, if plaintiffs had elected a panel hearing (i) the chair of the hearing could have issued subpoenas requiring relevant witnesses to attend plaintiffs' hearing, OAR 571-021-0210(8); (ii) plaintiffs would have been entitled to ask relevant questions of witnesses, OAR 571-021-0210(13); and (iii) plaintiffs could have appealed the outcome of their hearings panel, OAR 571-021-0250, among other procedures.

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

regulations.  OAR 571-021-0120; OAR 571-021-0130.  (The University's administrative hearing decision final letters are attached as Exhibit D to Thornton Decl., ¶ 8.)

The University also elected not to renew plaintiffs' scholarships for the 2014-2015 academic year.  Plaintiffs did not appeal the nonrenewal of their scholarships, which was their right under OAR 571-003-0125.  Neither did plaintiffs appeal their suspensions from the University to state court, which was their right under ORS Chapter 183.  Instead, plaintiffs informed the University of their intent to file suit.  (Plaintiffs' Tort Claims Notices are attached as Exhibit E to Thornton Decl., ¶ 9.)  (Compl. ¶ 89.)

## III.    ARGUMENT

The court must grant a motion to dismiss under Fed R Civ P 12(b)(6) unless the plaintiff has alleged sufficient factual allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 US 662, 663, 129 S Ct 1937, 173 L Ed 2d 868 (2009) (internal quotation marks and citation omitted).  When evaluating whether a plaintiff has stated a claim that is plausible on its face, the court is instructed to follow a two-step analysis for assessing the sufficiency of each claim. *Iqbal*, 556 US at 680-81.  First, the court must distinguish between factual allegations and "mere conclusory statements." *Iqbal*, 556 US at 678-79.  Second, the court disregards all allegations that are merely conclusory or speculative and then "consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 556 US at 681.  If the factual allegations of the complaint "have not nudged [the plaintiff's] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 US 544, 570, 127 S Ct 1955, 167 L Ed 2d 929 (2007).

4826-8765-5740.4

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Plaintiffs have repleaded four claims, each of which should be dismissed for the following reasons, as well as the additional reasons raised in this memorandum and the reasons asserted in Defendants' motion to dismiss plaintiffs' Second Amended Complaint:[2]

- Plaintiffs' 20 USC § 1681 Title IX claim:  Plaintiffs' claim should be dismissed because the factual allegations of the Complaint do not plausibly suggest:  (1) that the University initiated its Title IX investigation for discriminatory reasons, (2) that the Title IX investigation or plaintiffs' hearing was procedurally flawed, (3) that the University erred in finding that plaintiffs had engaged in sexual misconduct, as defined by the Student Conduct Code, or that this purported error was due to bias against males, (4) that plaintiffs were suspended because they are male or that their sex or gender influenced the length of their suspension, or (5) that the University was deliberately indifferent to plaintiffs' sex- and gender-based rights.

- Plaintiffs' 42 USC § 1983 equal protection claim:  As with plaintiffs' Title IX claim, this claim should be dismissed because no factual allegations plausibly suggest that the Individual Defendants purposefully discriminated against plaintiffs based on their sex or gender.  In addition, the Individual Defendants are entitled to qualified immunity from this claim because no existing case law clearly established that their alleged conduct was discriminatory.

---

[2] Defendants incorporate into this motion their Motion to Dismiss Austin's Second Amended Complaint (Case No. 6:15-cv-02257-MC, 2/22/16, Dkt. 19), their Motion to Dismiss Artis and Dotson's Complaint (Case No. 6:16-cv-00647-MC, 5/02/16, Dkt. 12), and the related replies (Case No. 6:15-cv-02257-MC, 3/25/16, Dkt. 23; Case No. 6:16-cv-00647-MC, 7/05/16, Dkt. 23) applicable to plaintiffs' Title IX, equal protection, negligence, and breach-of-contract claims.

Page 6 -    Defendants' Motion to Dismiss Third Amended Complaint and Memorandum
            in Support

4826-8765-5740.4

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

- Plaintiffs' negligence claim: Plaintiffs' claim should be dismissed because they did not have a special relationship with any Defendant and therefore plaintiffs have not alleged any cognizable damages. Moreover, the allegations of the Complaint do not plausibly suggest that Defendants' alleged conduct created a foreseeable risk of harm to plaintiffs, or that any such risk of harm was unreasonable.

- Plaintiffs' breach-of-contract claim: Plaintiffs' claim should be dismissed because the allegations of the Complaint confirm that the University fulfilled all its obligations under the terms of plaintiffs' scholarships, that plaintiffs were not entitled to a renewal of their scholarships, and that the University was not even required to consider renewing plaintiffs' scholarships after they were suspended for sexual misconduct.

A.  **Plaintiffs' Title IX Claims Should Be Dismissed Because the Factual Allegations of the Complaint Do Not Plausibly Suggest That the University Is Biased Against Males.**

Plaintiffs again assert three theories of Title IX liability, all of which fail as a matter of law. The Complaint does not assert any factual allegations that plausibly suggest that the University discriminated against plaintiffs based on their sex or gender.[3] In fact, the Complaint alleges no new factual allegations concerning the conduct of the University or any University official actually involved in the Title IX investigation or plaintiffs' administrative conference.

---

[3] The University also renews its argument that plaintiffs' Title IX claim was not timely filed under the applicable statute of limitations, which in Oregon is one year from the date of the alleged injury. *See* ORS 659A.875; ORS 659.860; *see also* Defendants' Motion to Dismiss Austin's Second Amended Complaint (Case No. 6:15-cv-02257-MC, 2/22/16, Dkt. 19, at *24-25, n.7), Defendants' Motion to Dismiss Artis and Dotson's Complaint (Case No. 6:16-cv-00647-MC, 5/02/16, Dkt. 12, at *24-25, n.9).

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Instead, plaintiffs' new allegations address the actions of a group of student protesters, a professor, and the news media—none of whom participated in the disputed investigation or hearing or whose actions can be attributed to Defendants. Plaintiffs' additional allegation that the complainant "published an opinion piece in a newspaper criticizing the University for its handling of the situation" (Compl. ¶ 57) not only misrepresents the published statement, but fails to assert any factual allegations concerning the University's conduct. And plaintiffs' assertion that the foregoing "had the actual effect of pressuring the University to take punitive action against the male basketball players solely on the basis of their sex/gender" (Compl. ¶ 44) is merely conclusory—and is not supported by any factual allegations in the Complaint.

The declarations of plaintiffs' attorney, their former attorneys, and another attorney who has represented other University students similarly do not establish factual allegations sufficient to overcome Defendants' motion to dismiss. Rather, these declarations merely assert (1) these attorneys' opinions of plaintiffs' administrative conference and their opinions that the University is biased against accused male students in general, (2) that one of the attorneys is not aware whether the University took action against a female student who allegedly physically (not sexually) assaulted her boyfriend and chased him with a knife, and (3) that these attorneys have not successfully defended a male University student accused of sexual misconduct, or know of another attorney who has. None of these assertions constitute factual allegations that plausibly suggest that the University acted with bias against plaintiffs. Plaintiffs' Title IX claim should be dismissed.

1. The University Did Not Selectively Enforce Its Student Conduct Code by Investigating Allegations of Rape.

Plaintiffs' first theory is that the University selectively enforced its Student Conduct Code, in violation of Title IX, by initiating an investigation of the rape allegations brought against plaintiffs. To prevail on their selective-enforcement claim, plaintiffs must plead

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

factual allegations that plausibly suggest that the University initiated its investigation because of plaintiffs' sex or gender. *Doe v. Univ. of the South*, 687 F Supp 2d 744, 756 (ED Tenn 2009). Specifically, since plaintiffs are male, the Complaint must set forth *factual allegations* (a) "that a female was in circumstances sufficiently similar to [plaintiffs'] and was treated more favorably by the University," *id.* (internal quotation marks and citations omitted), or (b) that the University's actions were improperly influenced by plaintiffs' sex or gender.

The University, however, did not have a choice whether to initiate a Title IX investigation—it was obligated to do so by federal law. The University's obligation to investigate was triggered when it received a report accusing plaintiffs of rape. "[A] school that knows, or reasonably should know, about *possible* [sexual] harassment *must* promptly investigate to determine what occurred." Letter from Russlynn Ali, Assistant Secretary for Civil Rights, U.S. Department of Education, at 4 (Apr. 4, 2011) (emphasis added).[4] This obligation exists regardless of the sex or gender of the accused and the complainant. Particularly in light of the University's affirmative obligation to investigate allegations of rape, plaintiffs' theory—that the University should not have investigated the alleged rapes and its decision to investigate was made primarily because of plaintiffs' gender (rather than the fact that they were accused of rape)—is implausible. Moreover, plaintiffs' theory falsely presumes that efforts to respond to alleged sexual assault (such as by initiating a Title IX investigation) equates to bias against males. But this theory is implausible—and is analogous to asserting that a university's efforts to

---

[4] This letter is a "significant guidance document" under the Office of Management and Budget's Final Bulletin for Agency Good Guidance Practices, 72 Fed Reg 3432 (Jan. 25, 2007), and is properly accorded controlling weight, or at least significant deference, in setting forth the circumstances under which a university is obligated to conduct a Title IX investigation. *See Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*, 467 US 837, 104 S Ct 2778, 81 L Ed 2d 694 (1984) (deference to agency interpretation of statute); *Auer v. Robbins*, 529 US 452, 117 S Ct 905, 137 L Ed 2d 79 (1997) (deference to agency interpretation of regulation); *Skidmore v. Swift & Co.*, 323 US 134, 65 S Ct 161, 89 L Ed 124 (1944) (deference to agency interpretive rules).

4826-8765-5740.4
MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

respond to allegations of race discrimination by students of color equates to unlawful bias against white students.

Further, the Complaint does not assert that the University has failed to initiate a Title IX investigation of any similarly situated female student.  In fact, according to the Complaint, the University did conduct a Title IX investigation of the one female student that plaintiffs allege to be similarly situated to them (although, as discussed below, the allegations of the Complaint show that this student is not actually a relevant comparator).  (Compl. ¶ 78.)

The Complaint fails to set forth any factual allegations that the University was influenced by plaintiffs' sex or gender to initiate its Title IX investigation, and this claim should therefore be dismissed.

> 2. <u>No Factual Allegations Plausibly Suggest That the University's Title IX Investigation or Plaintiffs' Hearing Were Flawed or Influenced By Bias Against Males</u>.

Plaintiffs' second theory is that the University conducted its "[Title IX] 'investigation' and subsequent hearing in a manner that was biased against [plaintiffs] based on sex" and was intent on reaching a "predetermined outcome * * * to appease the University's internal and external critics."  (Compl. ¶ 122, 126.)  But plaintiffs' claim fails for want of factual allegations plausibly suggesting that the investigation or hearing proceedings were flawed or that the University discriminated against plaintiffs.

To prevail on a Title IX erroneous-outcome claim, a plaintiff must plead factual allegations that (a) are "sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding," *Yusuf v. Vassar Coll.*, 35 F3d 709, 715 (2d Cir 1994), *and* (b) "demonstrate that the conduct of the university in question was motivated by a sexual bias."  *Doe v. Univ. of the South*, 687 F Supp 2d at 756.

This court has rightly declined to adopt the Second Circuit's recently adopted minimal pleading standard, which is neither binding in this jurisdiction nor persuasive in its

4826-8765-5740.4
MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

reasoning. (Order at 17.) *Doe v. Columbia Univ.*, 831 F3d 46, 56 (2d Cir 2016). Under the Second Circuit's rationale, a plaintiff is entitled to discovery (including the deposition of a sexual assault victim) simply by alleging that "there was substantial criticism of the University['s] * * * not taking seriously complaints of female students alleging sexual assault by male students." *Doe v. Columbia Univ.*, 831 F3d at 57. This untenable pleading standard would expose almost every university nationwide to discovery based on the beliefs and actions of third parties not involved in the university's investigatory or adjudicatory processes and potentially unaffiliated with the university altogether. It also subverts the *Iqbal* pleading standard by allowing claims to proceed based on speculative and conclusory allegations that events external to a university's investigatory and adjudicatory processes influenced these processes. Other courts have identified this flaw in the Second Circuit's reasoning and declined to adopt similar rationale. *See Doe v. Regents of Univ. of Cal.*, No. 2:15-cv-02478-SVW-JEM, 2016 WL 5515711, at *5 ("[T]he Court is constrained by the Supreme Court's holding in *Iqbal* and *Twombly*. Difficult as it may be to allege sufficient *factual* matter permitting a plausible inference of gender bias, conclusory legal allegations will not suffice."). And as a practical matter, it also (a) allows Title IX claims by male plaintiffs to proceed to discovery while the same claims asserted by female or transgender plaintiffs would be dismissed and (b) "put[s] universities in [the] double bind" of "com[ing] under public fire [and risking liability under Title IX] for not responding to allegations of sexual assault aggressively enough or * * * open[ing] themselves to Title IX claims simply by enforcing rules against alleged perpetrators." (Order at 18.)

Here, plaintiffs offer no factual allegations that plausibly show that the Title IX investigation or hearing proceedings were flawed[5] or that any University official involved in the

---

[5] In fact, at plaintiffs' hearing, Weintraub was presented with evidence from the police report that, among other things, (a) plaintiffs attested that the complainant started crying during sex, (b) one of the plaintiffs "regretted the situation, and could understand why she felt like she was taken advantage of," (c) one of the plaintiffs admitted that he did something wrong, and (d) one of the plaintiffs "said what he did was very inappropriate, and * * * mentioned he would not want anyone to do that to his mom or sister." (Smigel Decl., Exhibit A.) (Order at 4-5.)

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

investigation or hearing was biased against males. Instead, plaintiffs conclude that there was an "atmosphere of scrutiny" on campus, which "demand[ed]" that plaintiffs "be punished * * * on the basis of their sex/gender." (Compl. ¶ 119.) Plaintiffs also claim that opinions contained in the declarations of several attorneys—including plaintiffs' current attorney and former attorneys—establish that the University's hearing procedures were flawed and are biased against males. In addition, plaintiffs continue to assert that two words spoken by President Gottfredson in his May 9, 2014, public statement, and the University's decision to proceed with plaintiffs' hearing (and ultimately find that plaintiffs violated the Student Conduct Code) despite the Lane County District Attorney's decision not to prosecute, suggest sex or gender bias. And finally, plaintiffs replead allegations based on "all evidence presently available"—which were pleaded "on information and belief" in the Second Amended Complaint—in an attempt to show that the University treats males differently from females. These allegations, however, individually and collectively, do not create a plausible inference that the proceedings of the Title IX investigation or plaintiffs' hearing were flawed or that the University is biased against males—both of which are necessary to survive Defendants' motion to dismiss.

      a.    <u>No Factual Allegations Connect the Alleged "Atmosphere of Scrutiny" With the Conduct of Any University Official Involved in the Investigation or Plaintiffs' Hearing</u>.

This court previously held that pleading "an atmosphere of scrutiny" does not, without more, create a "plausible inference that a university's * * * response to allegations of sexual misconduct is evidence of gender discrimination." (Order at 17.) Yet this—and nothing more—is exactly what plaintiffs assert. The Complaint alleges that "the actions of the University and the Individual Defendants were all taken in response to internal and external complaints and protests that the University was not taking strong enough actions against males in cases involving alleged sexual misconduct." (Compl. ¶ 111.) The alleged internal complaints consist of a professor's "repeatedly [speaking] out against the University's handling of the situation" and her academic research (Compl. ¶¶ 105-06) and a statement by the complainant that was

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

published in the *Daily Emerald*.  (Compl. ¶ 57.)  The alleged "external complaints and protests" consist of student protests on campus and media coverage of these protests and the rape allegations against plaintiffs.  (Compl. ¶¶ 101-04.)

But allegations (1) that a professor *who was not part of the Title IX investigation or plaintiffs' hearing* believed that the University improperly handled the Title IX investigation, (2) that some of the more than 20,000 students that attend the University believed "that the University had declined to punish the male students accused of rape, solely on the basis of their sex/gender,"[6] and (3) that the local and national news media covered this story are not allegations about the conduct of the University or any University official who actually participated in the Title IX investigation or plaintiffs' hearing.  Neither is the allegation that plaintiffs' accuser "critiz[ed] the University for its handling of the situation," which in any event is a mischaracterization of the published statement.[7]  And plaintiffs' allegation that the "atmosphere" influenced the University's decision-making is speculative and conclusory and "fail[s] to show how the University's enforcement of its student conduct code * * * equates to sex discrimination."  (Order at 18.)  Plaintiffs do not plead any factual allegations that support their assertion that student protests, media coverage, and the personal beliefs of a professor *actually* influenced the University's decision-making, much less influenced it based on plaintiffs' sex or gender.

---

[6] In this allegation, plaintiffs appear to speculate as to the beliefs of a group of students based on signs that some students were holding, the majority of which do not reflect gender-based concepts.

[7] The statement of plaintiffs' accuser expresses that she "cannot fathom how [the University's] basketball coach recruited someone who was in the middle of a suspension for another sexual assault," but does not mention anything about the University's handling of the Title IX investigation, nor does it (1) make any reference to plaintiffs' (or her own) sex or gender or (2) express any sex- or gender-related sentiment whatsoever.

4826-8765-5740.4

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

b.    The Declarations of Michaels and Veralrud Do Not Set Forth New Factual Allegations of Bias Against Males.

The declarations of plaintiffs' attorneys Michaels and Veralrud also fail to create a plausible inference that the University is biased against males.  Michaels's declaration provides no basis for finding the University liable under Title IX or any law.  His declaration, in fact, merely asks the court to take his word that two depositions he is aware of from a previous case involving the University "are extremely relevant and helpful to establishing Plaintiffs' claims under both Due Process and Title IX."  (Compl. ¶ 82.)  This is not a factual allegation and does not meet the pleading standard.

And Veralrud's declaration does little more than express his opinion that "there would be significant pressure on the University administration" to find that plaintiffs violated the Student Conduct Code and repeat plaintiffs' allegations that they did not receive due process because (1) the University redacted the names of witnesses from the Title IX investigation report that Veralrud reviewed, (2) in Veralrud's opinion, information in the investigation report was inconsistent with the complainant's allegations, and (3) Veralrud was "concerned" that the University would not "exercise its subpoena power in conjunction with the panel hearing" that plaintiffs declined.  (Compl. ¶ 77.)  Veralrud's declaration does not add new factual allegations concerning the investigation or plaintiffs' hearing, and does not suggest that the University is biased against males.  And in any event, by Veralrud's own admission, his memory of the report may not be "complete or totally accurate."  Moreover, contrary to plaintiffs' claim that the investigation was procedurally flawed, what Veralrud does purportedly remember suggests that the University's investigation was thorough and unbiased because it included statements from witnesses that plaintiffs assert were essential to their case.  Like Michaels's declaration, Veralrud's does not add substantively to plaintiffs' claims.

4826-8765-5740.4

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

c.     <u>Gottfredson's Public Statement Does Not Suggest Bias Against Males</u>.

Plaintiffs again take issue with Gottfredson's May 2014 public statement, claiming that his words "were grounded in sexism and/or gender bias" because the phrase "as a father" and the term "survivor" are, apparently, "loaded word[s] invoking sex/gender."  (Compl. ¶ 109-10).  Plaintiffs further opine that these statements "directly influenced the actions of all other individuals who acted on behalf of the University in taking action against Plaintiffs." (Compl. ¶ 110.)

As Defendants have previously argued, Gottfredson's words do not plausibly suggest sex or gender bias against plaintiffs.  Gottfredson is a father; identifying as such in no way suggests that he acts with bias against male students.  Similarly, using the term "survivor" to describe a student who claims to have been a rape victim does not implicate the sex or gender of the accused, much less suggest sex or gender bias.  Furthermore, using this term one time in a public statement does not plausibly suggest that Gottfredson or the University had predetermined the outcome of plaintiffs' hearing.  According to the Complaint, even the Lane County District Attorney's office—which, as the Complaint mentions several times, declined to prosecute plaintiffs—identified the complainant as a "victim" and plaintiffs as "assailants" *multiple times in a public statement on its investigation of the case*.  (Compl. ¶ 37.)  And in any event, plaintiffs' assertion that Gottfredson's words influenced the outcome of the Title IX investigation and plaintiffs' hearing is speculation that is not supported by any factual allegations and is insufficient to state a Title IX claim without factual allegations suggesting gender or sex bias.

d.     <u>The District Attorney's Decision Not to Prosecute Does Not Suggest That the University Was Motivated by Bias or Even That Plaintiffs Did Not Violate the Student Conduct Code</u>.

Plaintiffs also reallege that the Lane County District Attorney's decision not to prosecute them suggests that the University's actions were motivated by gender bias.  As this court explained, however, "[t]he state's failure to indict Plaintiffs with a crime has no bearing on

4826-8765-5740.4

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

the Defendants' decision to investigate a Student Conduct Code violation * * *. There is no logical nexus that connects the failure to criminally prosecute with gender bias on the part of Defendants." (Order at 13.) The District Attorney's decision is therefore not a factual allegation that suggests error or bias on behalf of the University.

   e. <u>Plaintiffs' Speculations Based on "All Evidence Presently Available" Are Not Factual Allegations and Do Not Suggest Bias Against Males, in Any Event</u>.

   In an effort to create the impression that the University's investigation and plaintiffs' hearing were procedurally flawed, plaintiffs recast three allegations of their Second Amended Complaint—which had been pleaded "on information and belief"—as allegations based on "all evidence presently available to the undersigned, in the absence of further discovery." (Compl. ¶ 115-17.) This new introductory phrase, however, does nothing to affect the substance of these pleadings, which this court has ruled does not plausibly suggest sex or gender bias in the University's investigation or its adjudication of plaintiffs. (Order at 15-16.)

   Specifically, plaintiffs again allege that "the University has never taken action against a female student (including the accuser in this case) for engaging in the type of conduct that Plaintiffs allegedly engaged in."[8] (Compl. ¶ 115.) But plaintiffs have not pleaded that any female student has ever been accused of engaging in this type of conduct. And furthermore, as this court explained, "[i]t is a simple fact that the majority of accusers of sexual assault are female and the majority of the accused are male," which "does not mean that [the University's enforcement of Title IX] is selectively" biased against males. (Order at 15.)

   Plaintiffs also reallege that "the University has never taken action against a female student for making a false allegation" (Compl. ¶ 116), which this court explained neither is

---

[8] Notably, "the accuser in this case" was not accused of sexual misconduct. *See also Painter v. Doe*, No. 3:15-cv-00369-MOC-DCK, 2016 WL 4644495 (WDNC Sept. 6, 2016) ("plaintiff must be able to allege that the University Defendants treated persons accused of misconduct differently based on gender, not that they treated the accuser differently during this process").

4826-8765-5740.4

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

evidence of sex or gender bias nor has any bearing on plaintiffs' case. "The punishment for making a false accusation should necessarily be less severe than the punishment for engaging in sexual misconduct itself." (Order at 16.)

Finally, plaintiffs revise their allegation that "accused males invariably are presumed guilty" by now alleging that "males invariably lose when charged with sexual misconduct * * * [because] the University invariably 'believes' the female's version of events, no matter how implausible * * * and 'rejects' the male's version of events, no matter how credible." (Compl. ¶ 117.) Plaintiffs attempt to support this speculative and conclusory allegation with the declaration of Austin's former attorney, Laura Fine Moro. In her declaration, Fine Moro states that "in [her] experience and in the experience of [her] peers as reported to [her], the female accuser is always believed and the male accused is never believed." (Compl. ¶ 79.) Fine Moro's statement, however, merely reflects (1) the opinion of one attorney who has represented students—including one of the plaintiffs—in University hearings and (2) a statement of hearsay concerning the purported experiences of other attorneys. It does not constitute factual allegations of bias. Lissa Casey's declaration, likewise, is simply her "professional opinion [that] bias exists at the University of Oregon to find female students' accusations of sexual misconduct credible." (Compl. ¶ 81.) Critically, plaintiffs fail to allege any facts that plausibly indicate bias by the decision-maker at plaintiffs' hearing: Weintraub. A "University" can neither "believe" nor express "bias"; only individuals can. And plaintiffs have failed to allege any facts to demonstrate that any of the Individual Defendants were motivated by unlawful bias. Plaintiffs' hyperbolic and conclusory assertions are not accompanied by any actual factual allegations relevant to the credibility determinations in this case and therefore do not create a plausible inference of bias.

Taken together, the allegations of the Complaint do not create a plausible inference (1) that the Title IX investigation or plaintiffs' hearing was procedurally flawed or predetermined or (2) that any University official involved in, or with influence over, the investigation or plaintiffs' hearing acted with sex or gender bias—both of which are necessary to

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

overcome Defendants' motion to dismiss.  Accordingly, plaintiffs' erroneous-outcome claim should be dismissed.

3.    <u>The University Did Not Selectively Enforce Its Student Conduct Code by Suspending Plaintiffs for Engaging in Sexual Misconduct</u>.

Plaintiffs' second selective-enforcement theory is that the University selectively enforced the sanctioning provisions of its Student Conduct Code, alleging that "the severity" of plaintiffs' sanction was "affected by the fact that [plaintiffs] are male, and the accuser is female." (Compl. ¶ 97.)  To prevail on this claim, plaintiffs must plead factual allegations that plausibly suggest that the University imposed a sanction based on plaintiffs' sex or gender.  *Doe v. Univ. of the South*, 687 F Supp 2d at 756.

Plaintiffs' claim is purely conclusory and not supported by any factual allegations. As previously discussed, the Complaint does not present any allegations concerning similarly situated female students.  The female student whom plaintiffs allege to be similarly situated to them is not a relevant comparator.  According to the Complaint, that student "had a loud verbal fight with her boyfriend," then "refused to let him leave her apartment by exerting physical force," and ultimately "grabbed a large kitchen knife and ran after him * * * [while holding] the knife above her head in an aggressive manner."  (Compl. ¶ 78.)  These actions do not resemble the allegations against plaintiffs and therefore provide no basis for inferring that plaintiffs' sanction was influenced by their sex or gender.  And no factual allegations suggest that the University sanctions males who have engaged in sexual misconduct more severely than females who have engaged in similar conduct.

Moreover, plaintiffs' suspensions were consistent with the University's then-governing regulations—which again demonstrates the implausibility of plaintiffs' assertion that their suspensions were motivated by bias.  Under the then-governing regulations, "[a] University Official * * * that determines that an Accused Student violated the Student Conduct Code may impose sanctions authorized by this Code unless otherwise expressly limited."  OAR 571-021-

4826-8765-5740.4

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

0240(1).  Violations of the Student Conduct Code that "affect[] the health, safety and well-being of the community are deemed the most severe and may result, *upon the first violation*, in * * * suspension, or expulsion."  OAR 571-021-0130 (emphasis added).  Sexual misconduct is a violation that affects the health, safety, and well-being of the community because it "threatens the welfare of the University community as a whole."  OAR 571-021-0120(3), (3)(h).  Consistent with these regulations, plaintiffs were suspended after a finding that they had engaged in sexual misconduct, as defined by the Student Conduct Code.

Because the Complaint fails to plausibly suggest that the sanction that plaintiffs received was influenced by their sex or gender, plaintiffs' selective-enforcement claim should be dismissed.

    4.    <u>The Factual Allegations Do Not Plausibly Suggest That the University Was Deliberately Indifferent to Plaintiffs' Rights</u>.

Plaintiffs' final Title IX claim asserts that the University "demonstrated a deliberate and systematic indifference to the rights of Plaintiffs, due to their sex."  (Compl. ¶ 127.)  This claim requires plaintiffs to plead factual allegations that plausibly suggest "'that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct.'"  *Doe v. Univ. of the South*, 687 F Supp 2d at 756 (quoting *Mallory v. Ohio Univ.*, 76 F App'x 634, 638 (6th Cir 2003).  Further, the official's conduct must be "clearly unreasonable in light of the known circumstances."  *Patterson v. Hudson Area Sch.*, 551 F3d 438, 446 (6th Cir 2009) (internal quotation marks and citations omitted).

Plaintiffs' claim repeats, with insignificant revisions, the allegations of their Second Amended Complaint, which this court found had "failed to show how the University exhibited deliberate indifference to Plaintiffs' rights based upon their gender or sex."  (Order at 19.)  As before, plaintiffs' claim rests solely on their allegation that "[t]he University's action, and inactions, were unreasonable in light of * * * the District Attorney's office declining to

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

prosecute." (Compl. ¶ 128.) But as this court explained, "the elements of sexual misconduct, as defined by the Student Conduct Code, are quite different than the elements that a state prosecutor would have to prove" and "the standard of proof required for a University investigation and suspension based on its code of conduct is entirely different from the DA's standard to prosecute a criminal case." (Order at 13, 18.) Plaintiffs' allegations therefore fail, as a matter of law, to plausibly suggest that the University was deliberately indifferent to their rights, and plaintiffs' claim should be dismissed.

> **B.     Artis and Dotson's Equal Protection Claim Should Be Dismissed Because the Factual Allegations of the Complaint Do Not Plausibly Suggest That the Conduct of the Individual Defendants Was Discriminatory.**

Artis and Dotson repeat, verbatim, their previously dismissed allegations that the Individual Defendants violated plaintiffs' rights under the Equal Protection Clause of the United States Constitution. To overcome Defendants' motion to dismiss, plaintiffs must present factual allegations that create a plausible inference that "the defendants acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F3d 736, 740 (9th Cir 2000) (citing *Fed. Deposit Ins. Corp. v. Henderson*, 940 F2d 465, 471 (9th Cir 1991)). Plaintiffs' allegations again "fall short of satisfying the relevant pleading standards set forth by *Twombly* and *Iqbal*." (Order at 19.)

> 1.     <u>No Factual Allegations Plausibly Suggest That Any of the Individual Defendants Acted in a Discriminatory Manner or With Discriminatory Intent</u>.

As an initial matter, the equal protection claims against Holmes and Martin should be dismissed because plaintiffs have not alleged that Holmes or Martin acted in a discriminatory manner or with discriminatory intent. Plaintiffs allege that Holmes "was charged with the responsibility of hearing an appeal" but "refused to respond to Plaintiffs' request for an appeal * * * in violation of their right to * * * due process." (Compl. ¶ 70-71.) Plaintiffs do not, however, plead that Holmes "refused to respond to Plaintiffs' request" because of plaintiffs' sex

4826-8765-5740.4
MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

or gender.  Nor would such an allegation be plausible in light of the undisputed fact that plaintiffs affirmatively waived any right to an appeal.  The allegations against Martin likewise do not assert discriminatory conduct or intent.  Plaintiffs allege that Martin "suspended Plaintiffs on an 'emergency' basis," but do not assert that Martin's conduct was influenced by plaintiffs' sex or gender.  (Compl. ¶ 32-33, 54-55.)  Though plaintiffs have pleaded the conclusory allegation that Martin "demonstrate[d] patent bias" against another male University student, they have not pleaded that she acted in a discriminatory manner in this case.  (Compl. ¶ 90.)  The equal protection claims against Holmes and Martin lack an essential element of the claim and should accordingly be dismissed.  And even if the Complaint is read as alleging that Holmes and Martin acted with discriminatory conduct or intent, no *factual allegations* support this conclusory assertion—the claim therefore does not satisfy the pleading standard.

The equal protection claim against Gottfredson should also be dismissed because plaintiffs have not pleaded factual allegations that Gottfredson acted in a discriminatory manner or with the requisite intent.  Plaintiffs allege that Gottfredson used two "loaded word[s] invoking sex/gender" in his May 2014 public statement and that his statement "had significant influence, and likely even determinative influence, over the University's decisions and actions."  (Compl. ¶ 109-10.)  For the reasons set forth in the previous section, Gottfredson's May 2014 statement does not suggest that he is biased against males.  And the allegation that Gottfredson's statement influenced the investigation and plaintiffs' hearing is purely speculative and, in any event, is not evidence of discrimination because his underlying statement cannot be reasonably interpreted as biased against males.  Furthermore, whether or not Gottfredson's statement affected the decisions and actions of other University officials cannot be the basis for establishing that Gottfredson violated the Equal Protection Clause.  The claim against Gottfredson should therefore be dismissed.

Finally, the Complaint also lacks factual allegations that plausibly suggest that Weintraub, who presided over plaintiffs' hearing, discriminated against plaintiffs.  The

4826-8765-5740.4

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Complaint alleges that Weintraub (a) "refused to provide due process to Plaintiffs" at their hearing, (b) concluded that plaintiffs had violated the Student Conduct Code when, according to plaintiffs, they "are innocent," and (c) suspended plaintiffs for four to ten years because "they are male, and the accuser is a female." (Compl. ¶ 69, 97.) These allegations do not, however, state a claim under the Equal Protection Clause because they depend on speculative and conclusory assertions of bias. Plaintiffs allege that they did not receive due process, but do not allege—nor could they—that Weintraub deviated from the hearing procedures that plaintiffs and the University agreed to follow. Plaintiffs allege that Weintraub erroneously concluded that they had engaged in sexual misconduct because he found the complainant to be credible despite the weight of the evidence, but do not plead any factual allegations that plausibly suggest that Weintraub failed to consider all the evidence in the record or that Weintraub's decision was influenced by plaintiffs' sex or gender. Last, plaintiffs allege that the length of their suspension was discriminatory, but do not plead any factual allegations suggesting that the length of their suspension was not authorized by the then-governing regulations or that Weintraub has issued lighter sanctions to similarly situated female students. Because the allegations addressing Weintraub's conduct fail to plausibly suggest that he acted in a discriminatory manner or with discriminatory intent, the equal protection claim against Weintraub should be dismissed.

2. The Individual Defendants Are Nevertheless Entitled to Qualified Immunity From Artis and Dotson's Equal Protection Claims.

All the Individual Defendants are entitled to qualified immunity from plaintiffs' equal protection claims. A public official is entitled to qualified immunity unless the official has violated a statutory or constitutional right that was "'clearly established' at the time of the [official's alleged] conduct." *Ashcroft v. al-Kidd*, 563 US 731, 735, 131 S Ct 2074, 179 L Ed 2d 1149 (2011) (quoting *Harlow v. Fitzgerald*, 457 US 800, 818, 102 S Ct 2727, 73 L Ed 2d 396 (1982)). A right is clearly established only when "the contours of [that] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that

4826-8765-5740.4

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

right." *al-Kidd*, 563 US at 741 (internal punctuation and citation omitted). "When properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Taylor v. Barkes*, ___ US ___, 135 S Ct 2042, 2044, 192 L Ed 2d 78 (2015) (internal punctuation and citations omitted).

The allegations of the Complaint do not plausibly suggest that the Individual Defendants are "plainly incompetent." Nor do the allegations plausibly suggest that the Individual Defendants "knowingly violate[d] the law." And at the time of the Individual Defendants' alleged actions, no case law in this jurisdiction (or elsewhere) clearly established that their actions were discriminatory.

Plaintiffs' equal protection claim fails at both prongs of the qualified immunity analysis. As explained in the preceding section, the factual allegations of the Complaint do not plausibly suggest that the Individual Defendants discriminated against plaintiffs based on their sex or gender. And as of June 2014, no case law in this jurisdiction had clearly established that any of the following actions constituted sex- or gender-based discrimination:

- "[R]efusing to respond to" a request for an administrative appeal by students who had contractually waived their right to an administrative appeal;

- Suspending university students accused of rape on an emergency basis and in accordance with the emergency action provisions of the university's student code of conduct, *see* OAR 571-021-0230 (Emergency Action);

- Describing oneself as a "father" and the alleged victim of a rape as a "survivor," or announcing that student athletes who have been removed from the university's basketball team will no longer play for the team; or

- "[R]efus[ing] to provide" procedures during an administrative hearing that were waived by the complaining party or determining that the

4826-8765-5740.4

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

preponderance of the evidence in an administrative record shows that a group of university students violated the university's student conduct code.

Because no case law clearly established that any of these actions were discriminatory, the Individual Defendants could not have reasonably understood that their actions violated the Equal Protection Clause (which their actions did not). The Individual Defendants are therefore immune from plaintiffs' equal protection claim in accordance with the doctrine of qualified immunity, and plaintiffs' claims should be dismissed.

**C.** **Plaintiffs' Negligence Claim Should Be Dismissed Because the Parties Were Not in a Special Relationship and, as a Matter of Law, Defendants' Conduct Did Not Create a Foreseeable or Unreasonable Risk of Harm to Plaintiffs.[9]**

Plaintiffs next claim that Defendants negligently conducted the Title IX investigation[10] and plaintiffs' hearing. Plaintiffs allege that Defendants failed to conduct the

---

[9] Defendants also reassert that they are entitled to immunity from plaintiffs' negligence claim under ORS 30.265(6)(c) and (f) based on plaintiffs' allegations that (i) the decisions to initiate a Title IX investigation and impose sanction on plaintiffs were discretionary and (ii) Defendants acted under the apparent authority of law. *See* Defendants' Motion to Dismiss Austin's Second Amended Complaint (Case No. 6:15-cv-02257-MC, 2/22/16, Dkt. 19, at *32-36), Defendants' Motion to Dismiss Artis and Dotson's Complaint (Case No. 6:16-cv-00647-MC, 5/02/16, Dkt. 12, at *37-40). ORS 30.265(6)(c) provides immunity to public entities and public employees for "[a]ny claim based upon the performance of or the failure to exercise or perform a discretionary function or duty." And ORS 30.265(6)(f) provides immunity from claims "arising out of an act done or omitted under the apparent authority of law."

Additionally, Defendants reassert that plaintiffs are precluded from challenging the outcome of their administrative hearing by the doctrine of issue preclusion and because plaintiffs did not appeal their suspensions in accordance with ORS 183.482 or ORS 183.484. *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103, 862 P2d 1293 (1993); *see also* Defendants' Motion to Dismiss Austin's Second Amended Complaint (Case No. 6:15-cv-02257-MC, 2/22/16, Dkt. 19, at *32-36), Defendants' Motion to Dismiss Artis and Dotson's Complaint (Case No. 6:16-cv-00647-MC, 5/02/16, Dkt. 12, at *37-40).

[10] Plaintiffs did not comply with the Oregon Tort Claims Act (the "OTCA") with regard to their negligent-investigation claim, and so this claim should be dismissed on this additional basis. ORS 30.275 et seq. The OTCA requires that plaintiffs provide public entities with "actual notice" of the time, place, and circumstances giving rise to their claim. *Id.* Plaintiffs' Tort Claims Notices of October 8 and 9, 2014, did not address the time, place, and circumstances giving rise to their negligent-investigation claim, and therefore did not provide "actual notice" of

---

Page 24 -   Defendants' Motion to Dismiss Third Amended Complaint and Memorandum
            in Support

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

investigation and hearing "in a competent manner and in accordance with societal standards and norms" (Compl. ¶ 146) and found "that Plaintiffs committed a sexual assault * * * solely to appease protestors and internal, local, and national critics of the University." (Compl. ¶ 150.) Plaintiffs further assert that "the harm suffered by Plaintiffs" was a foreseeable consequence of Defendants' conduct (*id*.) and seek economic damages based on their alleged loss of future income.[11]

      1.      <u>Plaintiffs Did Not Have a Special Relationship With Any of the Defendants and Therefore Have Not Alleged a Cognizable Negligence Claim.</u>

In Oregon, negligence claims for loss of future income without bodily injury are not cognizable unless the parties have a special relationship. *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 341, 83 P3d 322 (2004) (A plaintiff "seek[ing] damages for purely economic losses * * * is required to allege some source of a duty outside the common law of negligence.") (internal quotation marks and citation omitted). A special relationship does not exist unless, at a minimum:

> "(1) One party relinquishes control over matters, usually financial, and entrusts them to the other party; (2) [t]he party with control is authorized to exercise independent judgment; (3) in order to further the other party's interests; and (4) [t]he relationship either is, or resembles, other relationships in which the law imposes a duty on parties to conduct themselves reasonably, so as to protect the other parties to the relationship." *Bell v. PERB*, 239 Or App 239, 249-50, 247 P3d 319 (2010) (internal quotation marks and citations omitted).

In addition, the court examines the nature of the parties' relationship with respect to the context giving rise to the dispute between them. *See Conway v. Pacific University*, 324 Or 231, 244, 924

---

their claim. (Thornton Decl., Exhibit E.) (Compl. ¶ 89.) Because "actual notice" of the claim is a substantive condition precedent to recovery in tort, plaintiffs' negligent-investigation claim should be dismissed. *See Orr v. City of Eugene*, 151 Or App 541, 543, 950 P2d 397 (1997).

[11] Plaintiffs also claim to have suffered "property damage," but seek damages based purely on lost future income and from "suffer[ing] personal and professional harm," neither of which is recognized as property damage under Oregon law. (Compl. ¶ 152.)

4826-8765-5740.4

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

P2d 818 (1996) ("Conway and the university each were pursuing their own interests *at the time*

that the dean made the misrepresentations [that gave rise to plaintiff's negligence claim].

Consequently, the parties were not in a special relationship that gave rise to a duty of care on the

university's part to avoid making negligent misrepresentations to Conway.") (emphasis added)

(footnote omitted).

Plaintiffs assert that they had a special relationship with *all* Defendants (the

University *and* the Individual Defendants) based on plaintiffs' status as scholarship athletes.

Plaintiffs assert that because they were scholarship athletes, Defendants "exercised independent

judgment on [plaintiffs'] behalf * * * to advance the individual interest[s] of [plaintiffs], by

recruiting [them] and then managing virtually every aspect of their time."[12]  (Compl. ¶ 147.)

Plaintiffs also assert that the University "exercised independent control over Plaintiffs * * *

[through] Plaintiffs' scholarship[s], and the conditions imposed by the University on its athletes,

including * * * the University's scheduling of and control over athletes' time and suspending

athletes * * * for disciplinary reasons."  (Compl. ¶ 149.)  In addition, plaintiffs allege that they

"were particularly vulnerable and [were] dependent upon the University and the individual

Defendants."  (Compl. ¶ 148 (internal punctuation and citation omitted).)[13]

These assertions, however, do not establish a special relationship between the

parties—whether based on plaintiffs' status as student-athletes or simply as University students.

---

[12] Other allegations in the Complaint, however, demonstrate the implausibility of these
allegations.  For example, Defendants were not "managing" plaintiffs' time when plaintiffs
decided to attend the March 8 party, nor did Defendants "control" plaintiffs' travels or actions
that night.

[13] Plaintiffs do not allege facts to plausibly support that they are "particularly vulnerable"
persons, as that term is defined by Oregon law.  *See House v. Hicks*, 218 Or App 348, 365, 179 P
3d 730 (2008) (holding that the plaintiff was not "particularly vulnerable" because he was neither
disabled nor physically ill); *see also* ORS 124.100(g) (defining vulnerable person as "(A) An
elderly person; (B) A financially incapable person; (C) An incapacitated person; or (D) A person
with a disability who is susceptible to force, threat, duress, coercion, pursuant, or physical or
emotional injury because of the persons physical or mental impairment").

4826-8765-5740.4
                              MILLER NASH GRAHAM & DUNN LLP
                                        ATTORNEYS AT LAW
                                    TELEPHONE: 503.224.5858
                                   3400 U.S. BANCORP TOWER
                                     111 S.W. FIFTH AVENUE
                                   PORTLAND, OREGON  97204

"[N]o precedent in Oregon or the Ninth Circuit recognize[s] a special relationship between college students or student athletes and the universities they attend." (Order at 22.) *See also Freeman v. Busch*, 349 F3d 582, 587 (8th Cir 2003) (collecting cases and explaining that "since the late 1970s, the general rule is that no special relationship exists between a college and its own students *because a college is not an insurer of the safety of its students*") (original emphasis omitted; additional emphasis added); *Guest v. Hansen*, No. 06-cv-0500 (GLS/DRH), 2007 WL 4561104, at *3-7 (NDNY Dec. 18, 2007), *aff'd*, 603 F3d 15 (2d Cir 2010) (finding that status as a student did not create a special relationship with the university); *Orr v. Brigham Young Univ.*, 960 F Supp 1522, 1526-28 (D Utah 1994) (finding no special relationship between a university and its student), *aff'd without published opinion*, 108 F3d 1388 (10th Cir 1997); *Bradshaw v. Rawlings*, 612 F 2d 135, 138-40 (3d Cir 1979) (because colleges do not assume "a role [of] loco parentis," no special "custodial duty" exists between a college and its students). Additionally, here, plaintiffs have not pleaded that they relinquished control over financial (or similar) matters to any of the Defendants; thus, plaintiffs' assertion of a special relationship fails at the first element. Nor does plaintiffs' relationship with the University resemble any special relationship previously recognized by our courts, thus also failing at to plausible establish a special relationship at the final element.[14]

But more importantly, whether plaintiffs could have established a special relationship between the parties when plaintiffs were participating in activities required of them as student athletes (which they could not), it had no bearing on the parties' relationship in the

---

[14] Plaintiffs' assertion of a special relationship with the Individual Defendants is even more precarious, essentially asking the court to recognize a special relationship between all scholarship athletes and every administrator at the universities they attend. Plaintiffs have not pleaded facts that support this proposition. Nor do the allegations of the Complaint plausibly suggest that plaintiffs authorized Holmes, Martin, Gottfredson, or Weintraub to exercise independent judgment in order to further plaintiffs' interests. For this reason, plaintiffs do not have a special relationship with the Individual Defendants, and plaintiffs' negligence claims against the Individual Defendants should be dismissed.

4826-8765-5740.4

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

context of the Title IX investigation and plaintiffs' hearing.  In this context—the relevant context—the parties' relationship "can be characterized as little more than an arm's-length relationship intent on securing divergent rather than joint interests."  (Order at 23.)  Specifically, plaintiffs' interest was proving that they had not violated the Student Conduct Code, whereas Defendants were tasked with adjudicating the allegations against plaintiffs.  Additionally, the conduct procedures of the Student Conduct Code apply to all University students and are unrelated to plaintiffs' status as student athletes.  Because plaintiffs cannot plausibly allege that they "relinquishe[d] control" to Defendants when they were each represented by counsel, or that Defendants had an obligation to act in furtherance of plaintiffs' interests during the investigation and hearing, plaintiffs cannot establish a special relationship with Defendants.  Plaintiffs' negligence claims should therefore be dismissed.

       2.    <u>As a Matter of Law, Defendants' Alleged Conduct Did Not Create a Foreseeable and Unreasonable Risk of Harm to Plaintiffs</u>.

Plaintiffs' negligence claim also fails for the separate and additional reason that, as a matter of law, Defendants' alleged conduct did not create a foreseeable risk of harm to plaintiffs.  To prove negligence when, as here, there is no special relationship between the parties, a plaintiff must establish five elements:

> "(1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent."  *Solberg v. Johnson*, 306 Or 484, 490-91, 760 P2d 867 (1988) (citing *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987)).[15]

---

[15] Accordingly, plaintiffs allegations that the Title IX investigation and their hearing were not conducted "in a competent manner and in accordance with societal standards and norms" does not apply to any element of Oregon negligence law.

4826-8765-5740.4

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

For a risk to be foreseeable, it must be "'one which could have been anticipated because there was a reasonable likelihood that it could happen.'" *Chapman v. Mayfield*, 358 Or 196, 206, 361 P3d 566 (2015) (quoting *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 609, 469 P2d 783 (1970)). "[T]he question is whether a reasonable person considering the potential harms that might result from his or her conduct would 'have reasonably expected the injury to occur.'" *Id.*

To establish liability, however, it is not enough for a defendant's conduct to create a foreseeable risk of harm. Instead, the defendant's conduct must "'unreasonably create[] a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff.'" *Dauven v. George Fox Univ.*, No. CV. 09-305-PK, 2010 WL 6089077, at *22 (D Or Dec. 3, 2010) (quoting *Fazzolari*, 303 Or at 17).

Plaintiffs fail to plead facts sufficient to show that the alleged conduct of any of the Defendants created a foreseeable risk that plaintiffs' administrative hearing would be negligently conducted. Moreover, the Complaint does not plausibly suggest that any risk of harm to plaintiffs was unreasonable given the circumstances.

Plaintiffs' principal factual allegations concern the process they were afforded at their hearing. Specifically, plaintiffs assert that Defendants were negligent for allegedly not providing plaintiffs with due process. But plaintiffs, with the advice of counsel, voluntarily agreed to the procedures of their hearing. (Compl. ¶ 66; Thornton Decl., Exhibits C, D.) And they have not pleaded that Defendants withheld any of these procedures. Because plaintiffs voluntarily agreed to the procedures they received, they cannot now assert that these procedures created a foreseeable and unreasonable risk of harm, and plaintiffs' negligence claim should be dismissed.

The allegations of the Complaint do not plausibly suggest that plaintiffs had a special relationship with any of the Defendants—especially for purposes of the Title IX investigation and plaintiffs' hearing. Further, as a matter of law, Defendants' conduct did not

4826-8765-5740.4

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

create a foreseeable risk of harm to plaintiffs.  Nor was it unreasonable for Defendants to

conduct plaintiffs' hearing in accordance with the procedures to which the parties had agreed.

For these reasons, plaintiffs' negligence claims should be dismissed.[16]

### D. Plaintiffs' Breach-of-Contract Claim Should Be Dismissed Because the University Fulfilled All Its Contractual Obligations to Plaintiffs.

Plaintiffs' final claim is that the University breached its contractual obligations by

not renewing plaintiffs' scholarships for the 2014-2015 school year.  Plaintiffs allege that they

"had the objectively reasonable expectation, based upon the express terms of the contractual

relationship governing the athletic scholarship, that the University would renew their

scholarship[s]."  (Compl. ¶ 159.)  Specifically, plaintiffs claim that the University was required

to consider renewing their scholarships as long as they remained in good standing with the

University, maintained normal progress toward graduation, and complied with the NCAA's

eligibility requirements.  (Compl. ¶ 156.)  Plaintiffs also assert that the express terms of their

scholarships did not "state much less suggest that the University could decline to renew

Plaintiffs' scholarship[s]" after they were suspended for sexual misconduct and further that it is

customary for universities to renew "the scholarships of athletes recruited to play at [the]

university."  (Compl. ¶ 157-58.)

Plaintiffs' breach-of-contract claim fails as a matter of law because "the

University fulfilled its obligations" to plaintiffs.  (Order at 27.)  *See* Restatement (Second) of

---

[16] Additionally, although not necessary to resolve at this stage of litigation, plaintiffs have repeatedly asserted that they "will suffer * * * personal harm in the future, including loss of income" because they purportedly "no longer play at a Division I school."  (Compl. ¶ 88.)  But two of the plaintiffs currently play basketball at Division I schools—thus undermining the basis of plaintiffs' purported damages.  *See* http://www.utepathletics.com/sports/m-baskbl/mtt/dominic_artis_977894.html (Dominic Artis); http://www.uhcougars.com/sports/m-baskbl/mtt/damyean_dotson_971425.html (Damyean Dotson).  Moreover, only 1.1% of the NCAA's "draft eligible" men's basketball players make it to the NBA.  *See* http://www.ncaa.org/about/resources/research/estimated-probability-competing-professional-athletics.

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Contracts § 235 cmt a (1981) (a contractual duty "is discharged when it is fully performed").

Plaintiffs each received a scholarship, which by its own terms expired at the end of the 2013-2014 school year. (Thornton Decl., Exhibit A.) Plaintiffs have not pleaded that the University terminated their scholarships or failed to provide them with any benefit due during the 2013-2014 school year. In fact, there is no "dispute that Plaintiffs received the full durational benefits of their scholarship[s]." (Order at 27.)

Further, the allegations of the Complaint demonstrate that plaintiffs had no guarantee that their scholarships would be renewed for the 2014-2015 school year. The express terms of plaintiffs' scholarships provided that the scholarship assistance would "be *considered* for renewal." (Thornton Decl., Exhibit A (emphasis added).) This provision is not ambiguous, and it does not guarantee that plaintiffs' scholarships *would* be renewed for the 2014-2015 school year. *See Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997) ("If the [disputed] provision is clear, the analysis ends."). The University therefore had no obligation to renew plaintiffs' scholarships.

Moreover, plaintiffs' new allegation that their scholarships did not "state much less suggest that the University could decline to renew Plaintiffs' scholarship[s] in the circumstances presented" is not accurate. Plaintiffs' scholarships specifically contemplated that the University would not even be required to consider renewing the scholarships if plaintiffs were not "student[s] in good standing" or failed to meet other eligibility requirements. (Thornton Decl., Exhibit A.) In addition, their scholarship assistance could have been terminated immediately for "fail[ing] to adhere to University of Oregon * * * rules." *Id.* In June 2014, plaintiffs were suspended for engaging in sexual misconduct—a serious violation of University rules. (Compl. ¶ 69.) As a result, they were not eligible to return to the University for at least four years. At that point, based on the written terms of plaintiffs' scholarships, not only could the

4826-8765-5740.4
MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

University have immediately terminated their 2013-2014 scholarships, but the University had no obligation to consider renewing plaintiffs' scholarships for the 2014-2015 school year.[17]

The Complaint fails to allege "an actual breach" of contract, that the University made a "promise regarding renewal," or that there was a "contractual basis for their alleged expectation of renewal." (Order at 28.) Plaintiffs' breach of contract claim should therefore be dismissed.

## IV.     CONCLUSION

The Complaint fails to state any "claim to relief that is plausible on its face." *Iqbal*, 556 US at 663 (internal quotation marks and citation omitted). Plaintiffs' Title IX and equal protection claims are again devoid of any factual allegations that plausibly suggest that the University, or any University official involved in the Title IX investigation or plaintiffs' hearing, discriminated against plaintiffs. Instead, plaintiffs' claims rely exclusively on conclusory allegations that they were suspended because of their sex or gender and speculation that they were suspended to appease critics of the University. Plaintiffs' negligence claim again fails to plausibly suggest that the parties had a special relationship, which precludes recovery of the purely economic damages that plaintiffs have asserted. And in any event, the allegations do not plausibly suggest that plaintiffs' claimed injury was foreseeable as a matter of law or that Defendants' alleged conduct was unreasonable, especially in light of plaintiffs' voluntary agreement to participate in an administrative conference. Finally, plaintiffs' breach-of-contract

---

[17] Because plaintiffs' scholarships unambiguously stated that they would be considered for renewal *only if* plaintiffs were in good standing with the University, plaintiffs' contrary allegations based on industry custom are immaterial. *See North Unit Potato Co. v. Spada Dist.*, 260 Or 468, 475, 490 P2d 995 (1971) ("evidence of a custom inconsistent with the terms of a written agreement is not admissible to contradict the terms of an unambiguous contract and * * * evidence of custom is also inadmissible to add to the terms of such a contract"). It is also, as a practical matter, absurd for plaintiffs to claim that they were entitled to scholarships for the 2014-2015 school year when they were suspended from the University, and therefore did not attend the University, for the 2014-2015 school year.

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

claim also again fails to state a claim because the Complaint does not allege an actual breach, whether material or de minimis, of the agreements contained in plaintiffs' scholarships.

The Complaint does not remedy the shortcomings of plaintiffs' Second Amended Complaint and demonstrates that further amendment would be futile. Defendants respectfully ask the court to dismiss each of plaintiffs' remaining claims with prejudice.

DATED this 2nd day of December, 2016.

MILLER NASH GRAHAM & DUNN LLP

s/Michelle Barton Smigel
Michelle Barton Smigel, P.C., OSB No. 045530
michelle.smigel@millernash.com
Michael Porter, P.C., OSB No. 003560
mike.porter@millernash.com
Telephone: 503.224.5858
Fax: 503.224.0155

*Attorneys for Defendants*

4826-8765-5740.4
MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the foregoing defendants' motion to dismiss third amended complaint and memorandum in support on:

Ms. Marianne Dugan
259 East Fifth Avenue, Suite 200-D
Eugene, Oregon  97401
Telephone:  541.338.7072
E-mail:  mdugan@mdugan.com

*Attorney for Plaintiff Brandon Austin*

Mr. Brian Michaels
259 East Fifth Avenue, Suite 300-D
Eugene, Oregon  97401
Telephone:  541.687.0578
E-mail:  brian@brianmichaelslaw.com

*Attorney for Plaintiffs Dominic Artis and
Damyean Dotson*

Mr. Alan C. Milstein
Sherman Silverstein Kohl Rose & Podolsky
308 Harper Drive, Suite 200
Moorestown, New Jersey  08057
Telephone:  856.662.0700
E-mail:  amilstein@shermansilverstein.com

*Attorney for Plaintiff Brandon Austin*

Mr. Alex Spiro
Brafman & Associates
767 Third Avenue
New York, New York  10017
Telephone:  212.750.7800
E-mail:  aspiro@braflaw.com

*Attorney for Plaintiffs Dominic Artis and
Damyean Dotson*

by the following indicated method or methods on the date set forth below:

☒ **CM/ECF system transmission.**

☐ **E-mail.**  (Courtesy copy.)

☐ **Facsimile communication device.**

☐ **First-class mail, postage prepaid.**

☐ **Hand-delivery.**

☐ **Overnight courier, delivery prepaid.**

DATED this 2nd day of December, 2016.

s/Michelle Barton Smigel
Michelle Barton Smigel, OSB No. 045530
*Of Attorneys for Defendants*

Page 1 -    Certificate of Service

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

4826-8765-5740.4