OregonLive.com

# Lane County District Attorney details why Oregon basketball players were not charged in rape accusations

Updated on May 06, 2014 at 05:22 PM PDT



MILWAUKEE, WISCONSIN, - Mar 19, 2014 - Damyean Dotson answers questions before open practice at the BMO Harris Bradley Center, Wed, Mar 19, 2014, in Milwaukee, Wis.



By Andrew Greif | The Oregonian/OregonLive  *i*

EUGENE -- Lane County District Attorney Alex Gardner just released this statement as to why Oregon basketball players Brandon Austin, Dominic Artis and Damyean Dotson were not charged despite accusations of rape from an incident on March 8. This story will be updated, but here is the statement in its entirety:

> The DAs office no-filed charges in a sexual assault case in which several University of Oregon basketball players allegedly forced a female University of Oregon student to have sex. The no-file decision is based entirely upon analysis of the available evidence and its insufficiency to prove the allegations beyond a reasonable doubt.
>
> A no file decision is not a statement about who we believe or dont believe. It is simply an analysis of the available evidence and its sufficiency to meet the States burden of proof. From time to time, additional evidence becomes available after an initial no-file. When that happens, the evidence is reviewed and, if sufficient, a case may be revived and prosecuted.
>
> Recent investigation of sexual assault involving UO basketball players: All three suspects report having consensual sex with the alleged victim. The alleged victim, claims that some or all of the sexual contact was involuntary. In such cases our analysis centers on any evidence of force, the absence of consent, or victim inability to consent. In this case, its important to note that the alleged victim and the alleged assailants describe substantially similar sexual activity, timing and order of events. The principal differences between the versions of events told by the alleged victim and the alleged assailants centers on the apparent level of victim intoxication and whether and at what point the victim expressed a desire to either not have sex, or stop having sex. For purposes of this investigation, we are equally concerned with evidence that the

*victim was forcibly compelled, or unable to consent by reason of intoxication.*

*The alleged sexual assaults took place at different locations over a period of many hours. According to the victim, the first sexual assault took place at the hands of two of the three suspects in the bathroom of a house where a party involving about thirty people was taking place. She reports the assault being comparatively brief and interrupted when she asked to get a drink of water. The assault allegedly ended after which the victim reports resting on a couch with a drink of water, mingling briefly with other partygoers, and then returning to the bathroom with the same two assailants and a third individual who, she reports, all resumed a sexual assault similar to the assault the first two assailants had initiated earlier.*

*During the second sexual assault episode, the victim reports getting a text from a friend telling her that it was time to go. This assault reportedly ended promptly when the victim told her assailants I need to go. At that point, all four people reportedly left the bathroom and the victim went outside where one of her friends was waiting with her ride home. The friend reports waiting for the victim, repeatedly warning her that the man/men just want you for sex, and encouraging the victim to leave the party with her. According to the alleged victim, this is the point at which one of the assailants grabbed her and pulled her back towards the house. (At this point the victims friend and others describe a playful, flirtatious interaction between the victim and her alleged assailants, with no element of force, no indication of victim fear or apprehension, and no indication that the alleged victim was physically or mentally impaired by alcohol.) The alleged victim then went back towards the party-house and, shortly thereafter, got into a taxi with the same men who had allegedly assaulted her (now twice). The taxi took the group back to a residence shared by two of the alleged assailants. Shortly thereafter, the victim and the three men from the second bathroom assault went into one of the bedrooms and resumed various sex acts similar to those that had taken place in the bathroom at the party house. A fourth man was allegedly present and watching the sex acts, but did not participate.*

*According to the alleged victim, she started crying during the third sexual assault and the assault promptly stopped. She then spent the rest of the night sleeping with one of the three men who had reportedly assaulted her, but she reports no further sex between them. (This is an area of material disagreement concerning the sex acts themselves. The man who slept with the alleged victim reports having consensual vaginal sex one more time in the morning. When reminded of this, the alleged victim confirms that they had oral sex the following day, but cant remember whether they also had intercourse.)*

*The following day the alleged victim reports being tired and upset. When she goes to visit friends she finds two of her alleged assailants in the residence playing video games, so she withdraws outside.*

*While waiting there another friends walks up, consoles her, and they end up having sexual intercourse. There are multiple sources of information in this case. Since consent is the issue, not whether the sex acts took place, DNA is of little value. The focus was on evidence of consent or the inability to consent. In making the initial determination we evaluated the presumption of innocence and the States burden of proof in light of the following:*

*1) Several interviews with the alleged victim,*

*2) Interviews with victims friends and associates who saw her before and after various critical*

*points during the time in question*

*3) Surreptitious recorded phone calls with the alleged suspects*

*4) Police interviews with the suspects and others.*

*A) Although the alleged victim reports being impaired by alcohol prior to any sexual contact, there is no evidence, from her or from others, that suggests she had enough to drink to become substantially impaired prior to the first two sexual encounters in the bathroom. There is also no independent behavioral evidence that the victim appeared significantly impaired: nobody reports her*

*having slurred speech, difficulty walking or any other symptom of impairment from intoxication at any point in the evening.*

*B) Friends and associates of the alleged victim describe her as friendly and flirtations, both before and after the first and second alleged assaults in the party-house bathroom. Moreover, all witnesses agree the alleged victim had the opportunity to leave the party, or at least ask for help, after the first series of sexual assaults. Friends and others report her walking and talking fine both before and after both sex-in-the-bathroom events.*

*C) The alleged victim recalls extensive detail about all aspects of the evening, including the timing, order of events even the exact amount of the cab fare and her decision to have another drink of alcohol during the ride to the alleged assailants residents, and most of the detail is consistent with the events reported by others (so she does not appear to have been affected to the point of perception or memory impairment. Similarly, theres no evidence she was ever unconscious during the sex acts, nor is there any evidence she was ever impaired to the point where it adversely effected her balance or stability.)*

*D) The alleged assailants stopped the sex acts several times first when the alleged victim asked for a drink of water, next when the alleged victim said she had to go and, finally, at the second residence, when the alleged victim started crying (the first point at which suspects claim they realized she wasnt in to it).*

*E) Victim returned to isolated locations with her alleged assailants repeatedly, although she had friends nearby and she was in a crowded party.*

*F) Telephone calls between the alleged victim and alleged assailants were recorded surreptitiously. The contents of those conversations are consistent with suspects version of consensual sex, or at least their belief it was consensual sex.)*

*G) Friends of the alleged victim say she did not appear to be impaired by alcohol at any time during the evening.*

*H) Alleged victim had consensual sex with one of the suspects the morning after the alleged assaults and, later the same day, she had sex with another friend.*

*I) The crimes are reported by victims father days after the alleged assaults took place and alleged victim is angered by the reporting (because of timing).*

*J) Alleged victim indicated a desire to only have her assailants wrists slapped, not ruin their lives.*

*K) Assailant interviews with police are consistent with recording made without their knowledge and the statements of other witnesses None of the above would be individually inexplicable, but collectively, and in the absence of additional evidence, they provide an insurmountable barrier to prosecution.*

*-- Alex Gardner*

-- Andrew Greif

## Comments

Registration on or use of this site constitutes acceptance of our **User Agreement** and **Privacy Policy**

© 2016 Oregon Live LLC. All rights reserved (**About Us**).

The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of Oregon Live LLC.

**Community Rules** apply to all content you upload or otherwise submit to this site. **Contact interactivity management.**

Ad Choices