# MARIANNE DUGAN
### Attorney at Law

email mdugan@mdugan.com     259 E. 5th Ave., Ste 200-D     Telephone 541-338-7072
website www.mdugan.com     Eugene OR 97401-2677     Facsimile 866-650-5213

*NOTICE: This and any transmitted documents are intended only for the use of the individual or entity to whom this is addressed and may contain information that is privileged, confidential, or work product and exempt from disclosure under applicable law. If you are not the intended recipient or agent thereof, any use, dissemination, distribution, or copying of this communication is strictly prohibited, and you are hereby requested to telephone the sender immediately of the error and to return by mail to the sender the transmitted documents. Thank you.*

If there is a problem with transmission or if all pages are not received, please call 541-338-7072 for retransmission.

DATE: October 7, 2014



**TO:**     Director, Oregon Dept of Admin. Services
State Services Division
Risk Management
To fax no. 1-503-373-7337

Douglas YS Park
University of Oregon
To fax no. 541-346-6110

**FROM:**     Marianne Dugan

**RE:**     Austin v. University of Oregon

Number of pages including this cover page:     5

**Comments:**

# MARIANNE DUGAN
### Attorney at Law

email mdugan@mdugan.com　　259 E. 5th Ave., Ste 200-D　　Telephone 541-338-7072
website www.mdugan.com　　　Eugene OR 97401-2677　　　　Facsimile 866-650-5213

October 7, 2014

Director, Oregon Dept of Admin. Services
State Services Division
Risk Management
Executive Building
155 Cottage St. NE, U20
Salem, OR 97301
　　　and via fax to 1-503-373-7337
　　　and via email to risk.management@state.or.us

Douglas YS Park, Assistant General Counsel
University of Oregon
219 Johnson Hall
1226 University of Oregon
Eugene, OR 97403
　　　and via fax to 541-346-6110
　　　and via email to dougpark@uoregon.edu

RE:　Notice of Claim of Brandon Austin

Dear ODAS and Mr. Park:

I have been reviewing potential civil claims on behalf of Brandon Austin. In compliance with ORS 30.275, formal notice is hereby given that claims for damages on his behalf will be made against University of Oregon and its departments, officers, employees, and/or agents, resulting from the University's April 10, 2014, "emergency" suspension of Mr. Austin; April 30, 2014, second "emergency" suspension upon reading the police reports; and June 17, 2014, final University hearing and issuance of suspension for up to ten years.

The state law claims against the University and its departments, officers, employees, and/or agents, arise out of negligence, negligent hiring, negligent supervision, breach of contract, defamation, intentional infliction of emotional distress, racial discrimination, and vicarious liability for those wrongs.

The federal law claims against University and its departments, officers, employees, and/or agents, arise out of the violation of my client's civil rights under 42 U.S.C. 1981 and 1983, the First, Fifth, and Fourteenth Amendments to the U.S. Constitution, and Monell v. Dept. of Social Services and Adickes v. Kress, due to deprivation of due process, deprivation of the right to freedom of association, deprivation of the right to freedom of speech, deprivation of the right to refuse to testify against oneself, racial discrimination, deliberate indifference to my clients' rights; and policies, customs, or practices that allowed such violations to occur.

Doug Park and ODAS
October 7, 2014
Page 2

So far as is known to the claimant, the time, place, and circumstances giving rise to the claim are as follows.

On March 9, 2014, Brandon Austin was at a basketball player party with his friends and teammates [Redacted] and [Redacted]. [Redacted] approached Brandon Austin and [Redacted], "twerked" for them, and followed them into a bathroom where they had sexual contact. They left the bathroom and rejoined the party. She returned a second time to the bathroom with all three of the men and more sexual contact ensued.

They left the bathroom and shortly after that the party broke up. Outside on the street there was mingling of guests as folks figured out who was riding home with whom. [Redacted] wanted to leave with the boys. Her friends told her not to go with them, stating "you know how you get" and "they only want to use you for sex." She insisted on going with them. At their apartment she changed into some of their clothes and they had group sex. At one point, she teared up and the boys immediately quit. [Redacted] comforted her, she fell asleep in his lap on the couch and then spent the night in his bed with him. She had sex with him the next morning, went home and texted him "thanks for getting me home" (he had called her a cab).

She reported her conduct to her roommate, who was aghast at the story. At that point, [Redacted] [Redacted] realized her conduct wasn't universally admired.

Suddenly her story changed to rape -- she stated was dragged into the bathroom twice and assaulted, she was wrestled into the car and forced to drink alcohol; taken to the player's home and repeatedly raped. Later, she reluctantly admitted to police that she had slept over and had sex the next morning.

Police investigated. The prosecutor (Patty Perlow) declined to prosecute, due to inconsistencies in [Redacted] story. Police reports reveal interviews with [Redacted] own friends and witnesses at the party stating that she went with the boys voluntarily and never expressed any concern or emotional upset at the party. She was seen dancing suggestively with them by her roommate. She was not drinking and did not appear drunk.

The University began investigating, but immediately made public statements against the boys, and issued emergency suspensions on April 10. The University then reinstated the boys; but then did a second emergency suspension April 30 after reading the police report.

The University eventually reinstated [Redacted] and [Redacted] but not Brandon Austin.

The University denied Mr. Austin's requests (through his lawyer) for:

    a.    contested case hearing

    b.    issuance of subpoenas

Doug Park and ODAS
October 7, 2014
Page 3

 c. names and contact info of witnesses the UO interviewed and relied upon

 d. copies of the Title IX investigator's report - (his attorneys were told they could view the document blacked out but could not have a copy nor review an un-redacted copy).

|  |  |
|---|---|
|  |  |
|  |  |
|  |  |

June 17, 2014, the University had the final hearing and issued a suspension of Mr. Austin for up to ten years.

**Legal Issues**

1. **Denial of due process in UO administrative hearing**

 a. Panel hearing option (which Mr. Austin requested):

  i. UO refused to issue subpoenas, and indicates that it never allows subpoenas for these hearings

  ii. UO refused to allow depositions

  iii. UO refused to reveal names/contact information of its witnesses

  iv. The Title IX report was blacked out and Mr. Austin's attorneys were not allowed to take it from the room with them

  v. Mr. Austin was required to conduct his own cross-examination. His attorney was not allowed to ask questions, and the questions had to be pre-approved by the University

 b. Administrative hearing option

  i. No subpoenas

  ii. No names/contact of witnesses

  iii. Title IX report blacked out in places and not given a copy.

Doug Park and ODAS
October 7, 2014
Page 4

    c.    Denial of request for Contested Case hearing

The options provided by the University do not comport with the OAPA.

2. **Denial of the presumption of innocence**

    a.    The University president gave a speech to the media condemning the conduct of the three players, despite the fact the investigation was still underway, and no charges had been filed (nor were they ever filed).

    b.    The University (via Professor Freyd) led marches demanding the expulsion of the students prior to adjudication.

3. **Punishment for exercising civil rights**

When the University read the police reports and saw that Mr. Austin had asserted his Miranda rights through his counsel, they immediately placed him on emergency suspension for that reason. Sources indicate that this is the routine practice of the University.

The other two, who had not asserted their Miranda rights, were allowed to remain at the University. Mr. Austin's criminal attorney was told by Sandy Weintraub that Mr. Austin was treated differently "because he refused to talk."

4. **Misconduct by the Title IX investigator**

The Title IX investigator issued findings of fact upholding the allegations, which completely ignored the eyewitnesses (Redacted friends and the cab driver) who contradicted the complainant.

Brandon Austin has been damaged by these actions. Correspondence concerning this claim may be sent to me.

                              Very truly yours,

                              Marianne Dugan

cc:    client; Laura Fine Moro

**VERALRUD & FOWLER**
ATTORNEYS

Gregory E. Veralrud
Lindsay H. Fowler

975 Oak Street, Suite 625
Eugene, Oregon 97401-3156
Telephone (541) 345-3333
Fax (541) 342-1908

William F. Frye
(1929-1988)

October 8, 2014

Director, Oregon Dept. of Admin. Services
State Services Division
Risk Management
Executive Building
155 Cottage St N.E., U20
Salem, OR 97301
    and via fax to 503-373-7337
    and via e-mail to risk.management@state.or.us

Douglas YS Park, Asst. General Counsel
University of Oregon
219 Johnson Hall
1226 University of Oregon
Eugene, OR 97403
    and via fax to 541-346-6110
    and via e-mail to dougpark@uoregon.edu

Re:    Notice of Claims by Dominic Artis vs. University of Oregon and
        Various Administrative Officials

Dear ODAS and Mr. Park:

In compliance with ORS 30.275, notice is hereby given of claims for damages on behalf of Dominic Artis against the University of Oregon and its departments, officers, employees and/or agents resulting in a course of conduct on the part of the aforementioned parties beginning April 10, 2014, with the University's "emergency suspension" and ending on or about June 17, 2014, at which time the University issued a suspension following University Student Conduct Code hearing.

State law claims against the University and its departments, officers, employees and/or agents arise out of breach of contract, slander, defamation and intentional infliction of emotional distress on the part of the aforementioned and/or the University's vicarious liability for those wrongful actions.

Federal law claims against the University and its departments, officers, employees and/or agents arise out of a violation of Mr. Artis' civil rights under 42 USC §1981 and

October 8, 2014
Page 2

§1983, the First, Fifth and Fourteenth Amendments to the U.S. Constitution, including deprivation of due process, deprivation of the right to freedom of association, deliberate indifference to Mr. Artis' civil and constitutional rights and all policies, customs and practices that allowed such violations to occur.

Insofar as the claimant is aware, the time, place and circumstances giving rise to the claims are as follows:

On or about March 9, 2014, Mr. Artis attended a party with other friends and fellow Oregon Duck basketball teammates. At the party Mr. Artis engaged in consensual sexual activities with REDACTED as did other attendees at the party. Further sexual contact between Mr. Artis and REDACTED occurred later in the evening and in the early morning hours of the following day at Mr. Artis' apartment. Those acts were consensual as well.

In the days following, REDACTED characterized what had been patently consensual sexual contact as sexual assault and caused her complaint to be submitted to law enforcement and eventually to the University of Oregon, including the above-referenced officials.

A subsequent police investigation led to a conclusion by the Lane County District Attorney's office that there was insufficient evidence to prosecute the case.

The police investigation generated police reports that underscored the consensual nature of the activities. Those reports were made known to the University and its above-referenced employees and agents.

University officials, including the then University of Oregon President, made public statements both implicitly and explicitly declaiming Mr. Artis as a sexual assaulter, a rapist and a criminal, thus slandering and defaming Mr. Artis.

During the course of the investigation, although the emergency suspension of the University was lifted with respect to Mr. Artis pending a University Student Conduct Code hearing, he was (1) first suspended from the basketball team, then (2) dismissed from the basketball team, and then (3) notified that his scholarship was terminated. These actions on the part of the University and the above-referenced officials were without cause and in violation of Mr. Artis' civil and contractual rights.

The University then asserted violation of the University Student Conduct Code, claiming non-consensual sexual contact as a violation of that code.

In the run-up to the University Student Conduct Code hearing, the University denied Mr. Artis' requests for:

October 8, 2014
Page 3

    a. A contested case hearing in accordance with the Oregon Administrative Procedures Act because Mr. Artis contended that the procedures set forth in the Student Conduct Code were deficient and denied him due process of law.

    b. The issuance of subpoenas for witnesses who would provide evidence and testimony supporting Mr. Artis' contention that he had committed no violation of law or Student Conduct Code and that REDACTED 's credibility was at issue.

    c. Names and contact information of witnesses who the University of Oregon interviewed and relied upon in bringing the Student Conduct Code violation claim against Mr. Artis.

    d. Copies of the University's Title IX investigator's report (Mr. Artis' counsel was allowed to view but not have the document, with significant parts blacked out and unavailable to Mr. Artis or his counsel).

Student Condct Code Hearing

The University Student Conduct Code hearings process at the time offered Mr. Artis a choice of hearing by a panel (the panel consisting of University of Oregon personnel, student representatives and administrators chosen by the University) or an administrative hearing in front of the Dean of Student Conduct who would be the sole decider. The University coerced Mr. Artis into waiving his panel hearing by threatening expulsion as a remedy if he sought the panel hearing and promising to remove expulsion as an option if he had his case decided by the Dean of Student Conduct, a hearing which did not allow for cross-examination of witnesses or determination by an arguably less partial fact finder.

The administrative process that the University set up for Student Conduct Code violation hearings was constitutionally deficient and denied Mr. Artis due process. The University ignored its own rules with respect to its ability to issue subpoenas (Mr. Artis had no power to issue said subpoenas as the Student Conduct Code then read), and the University intentionally or recklessly frustrated Mr. Artis' ability to present evidence and to defend against the fallacious allegations.

On June 17, 2014, the University conducted the final administrative hearing with all the deficiencies, violations and deprivations of rights set forth above and issued a suspension to Mr. Artis for up to ten years, effectively and for all intents and purposes expelling him from the University anyway.

The Dean of Student Conduct, aided by University counsel, were either explicitly or implicitly directed by superiors within the University to make a finding that Mr. Artis had

October 8, 2014
Page 4

violated the Student Conduct Code or, in the alternative, were so influenced by the statements and comments of their superiors, including the President of the University, that a fair and impartial decision-making process could never have occurred and did not.

Substantial and compelling evidence of the consensual nature of Mr. Artis' sexual contact with REDACTED was willfully ignored.

A similar contention that evidence was ignored in the arrival of the finding of culpability on Mr. Artis' part was also evident in the Title IX investigative report issuing findings of fact upholding the allegation which completely ignored substantial contradictory evidence that supported the consensual nature of Mr. Artis' sexual contact with Ms. REDACTED and contained ample evidence questioning her credibility and contradicting her subsequent assertions that the encounter had not been consensual.

Mr. Artis has been severely damaged by the University's conduct as referenced above. Prior to his suspension from the University of Oregon basketball team and subsequent removal and withdrawal of scholarship, Mr. Artis had been, in all respects, compliant with his agreement with the University regarding his efforts as a basketball player to support the scholarship. He was subjected to ridicule and hostility as a result of the University's slanderous and defamatory remarks as referenced above. His educational plans and ability to continue his career as a collegiate basketball player have been all but terminated. He has suffered financial loss, as well as great humiliation, embarrassment and vilification in the public eye. The damage to his reputation as a result of the University's outrageous actions is immeasurable.

Correspondence concerning this claim may be sent care of this office.

                Sincerely,

                /s/ Greg Veralrud

                Greg Veralrud
                Attorney for Dominic Artis
                975 Oak, Suite 625
                Eugene, OR 97401
                541-345-3333
                Fax 541-342-1908
                E-mail: veralrud@oregonattorney.com

GV:tlk

# McCREA, P.C.
Attorneys at Law
1147 High Street
Eugene, OR 97401

Robert J. McCrea
Shaun S. McCrea

TELEPHONE
(541) 485-1182
FAX
(541) 485-6847

## FACSIMILE TRANSMITTAL

DATE: October 9, 2014

NUMBER OF PAGES: 6
(Including Transmittal page)

TO:
Douglas YS Park, Asst. General Counsel
University of Oregon
219 Johnson Hall
1226 University of Oregon
Eugene, OR 97403
    and via fax to 541-346-6110
    and via e-mail to dougpark@uoregon.edu

**Attention: Douglas YS Park, Asst. General Counsel**

Facsimile No. (541) 346-6110

PERSON TO CONTACT IN CASE OF SENDING/RECIVING PROBLEMS:

NAME: Shaun S. McCrea

MESSAGE: Notice of Tort Claim by Damyean Dotson vs. University of Oregon

and Various Administrative Officials

Thanks

Shaun S. McCrea

PERSON TO CONTACT IN CASE OF RECEIVING PROBLEMS: Shaun or Kelsie

CONFIDENTIALITY NOTICE: The documents accompanying this facsimile transmission contain information that is confidential, proprietary, and legally privileged. Such information is intended only for the use of individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, or distribution, or the taking of any action in reliance on facsimile transmission is strictly prohibited. If you have received this facsimile transmission in error, please notify us immediately by telephone to arrange for return of the original documents to us. Thank you.

# McCREA, P.C.
Attorneys at Law
1147 High Street
Eugene, OR 97401-3270

Robert J. McCrea
Shaun S. McCrea

TELEPHONE
(541) 485-1182
FAX
(541) 485-6847

October 9, 2014

Director, Oregon Dept. of Admin. Services
State Services Division
Risk Management
Executive Building
155 Cottage St. N.E., U20
Salem, OR 97301
    and via fax to 503-373-7337
    and via e-mail to risk.management@state.or.us

Douglas YS Park, Asst. General Counsel
University of Oregon
219 Johnson Hall
1226 University of Oregon
Eugene, OR 97403
    and via fax to 541-346-6110
    and via e-mail to dougpark@uoregon.edu

Re:   Notice of Tort Claim by Damyean Dotson vs. University of Oregon and
      Various Administrative Officials

Dear ODAS and Mr. Park,

In compliance with ORS 30.275, notice is hereby given of claims for damages on behalf of Damyean Dotson against the University of Oregon and its departments, officers, employees and/or agents resulting in a course of conduct on the part of the aforementioned parties beginning April 10, 2014, with the University's "emergency suspension" and ending on or about June 17, 2014, at which time the University issued a suspension following University Student Conduct Code hearing.

State law claims against the University and its departments, officers, employees and/or agents arise out of breach of contract, slander, defamation and intentional infliction of

Notice of Tort Claim
October 9, 2014
Page 1

emotional distress on the part of he aforementioned and/or the University's vicarious liability for those wrongful actions.

Federal law claims against the University and its departments, officers, employees and/or agents arise out of a violation of Mr. Dotson' civil rights under 42 USC § 1981 and § 1983, the First, Fifth and Fourteenth Amendments to the U.S. Constitution, including deprivation of due process, deprivation of the right to freedom of association, deliberate indifference to Mr. Dotson' civil and constitutional rights and all policies, customs and practices that allowed such violations to occur.

Insofar as the claimant is aware, the time, place and circumstances giving rise to the claims are as follows:

On or about March 9, 2014 Mr. Dotson attended a party with other friends and fellow Oregon Duck basketball teammates. At the party Mr. Dotson engaged in consensual sexual activities with [REDACTED] as did other attendees at the party. Further consensual contact between another teammate and [REDACTED] occurred later in the evening and in the early morning hours of the following day at that teammate's apartment. Those acts were consensual as well.

In the days following, [REDACTED] characterized what had been patently consensual sexual contact as sexual assault and caused her complaint to be submitted to law enforcement and eventually to the University of Oregon, including the above-referenced officials.

A subsequent police investigation led to a conclusion by the Lane County District Attorney's office that there was insufficient evidence to prosecute the case.

The police investigation generated police reports that underscored the consensual nature of the activities. Those reports were made know to the University and its above-referenced employees and agents.

University officials, including the then University of Oregon President, made public statements both implicitly and explicitly declaiming Mr. Dotson as a sexual assaulter, a rapist and a criminal, thus slandering and defaming Mr. Dotson.

During the course of the investigation, although the emergency suspension of the University was lifted with respect to Mr. Dotson pending a University Student Conduct Code hearing, he was (1) first suspended from the basketball team, then (2) dismissed from the basketball team, and then (3) notified that his scholarship was terminated. These actions on the part of the University and the above-referenced officials were without cause and in violation of Mr. Dotson's civil and contractual rights.

Notice of Tort Claim
October 9, 2014
Page 2

The University then asserted violation of the University Student Conduct Code, claiming non-consensual sexual contact as a violation of that code.

In the run-up the University Student Conduct Code hearing, the University denied Mr. Dotson's requests for:

a) a contested case hearing in accordance with the Oregon Administrative Procedures Act because Mr. Dotson contended that the procedures set fourth in the Student Conduct Code were deficient and denied him due process of law.

b) The issuance of subpoenas for witnesses who would provide evidence and testimony supporting Mr. Dotson' contention that he had committed no violation of law or Student Conduct Code and that [REDACTED]'s credibility was at issue.

c) Names and contact information of witnesses who the University of Oregon interviewed and relied upon in bringing the Student Conduct Code violation claim against Mr. Dotson.

d) Copies of the University's Title IX investigator's report (Mr. Dotson' counsel was allowed to view but not have the document, with significant parts blacked out and unavailable to Mr. Dotson or his counsel).

### Student Conduct Code Hearing

The University Student Conduct Code hearings process at the time offered Mr. Dotson a choice of hearing by a panel (the panel consisting of University of Oregon personnel, student representatives and administrators chosen by the University) or and administrative hearing in front of the Dean of Student Conduct who would be the sole decider. The University coerced Mr. Dotson to waive his panel hearing by threatening expulsion as a remedy if he sought the panel hearing and promising to remove expulsion as an option if he had his case decided by the Dean of Student Conduct, a hearing which did not allow for cross-examination of witnesses or determination by an arguably less partial fact finder.

The administrative process that the University set up for the Student Conduct Code violation hearings was constitutionally deficient and denied Mr. Dotson due process. The University ignored its own rules with respect to its ability to issue subpoenas (Mr. Dotson had no power to issue said subpoenas as the Student Conduct Code then read), and the University intentionally or recklessly frustrated Mr. Dotson' ability to present evidence and to defend against the fallacious allegations.

On June 17, 2014, the University conducted the final administrative hearing with all the deficiencies, violations and deprivations of rights set forth above and issued a

Notice of Tort Claim
October 9, 2014
Page 3

sustention of Mr. Dotson for up to ten years, effectively and for all intents and purposes expelling him from the University anyway.

The Dean of Student Conduct, aided by University counsel, were either explicitly or implicitly directed by superiors within the University to make a finding that Mr. Dotson had violated the Student Conduct Code or, in the alternative, were so influenced by the statements and comments of their superiors, including the President of the University, that a fair and impartial decision-making process could never have occurred and did not.

Substantial and compelling evidence of the consensual nature of Mr. Dotson' sexual contact with    REDACTED    was willfully ignored.

A similar contention that evidence was ignored in the arrival of the finding of culpability on Mr. Dotson' part was also evident in the Title XI investigative report issuing findings of fact upholding the allegation which completely ignored substantial contradictory evidence that supported the consensual nature of Mr. Dotson' sexual contact with Ms. REDACTED and contained ample evidence questioning her credibility and contradicting her subsequent assertions that eh encounter had not been consensual.

Mr. Dotson has been severely damaged by the University's conduct as referenced above. Prior to his suspension from the University of Oregon basketball team and subsequent removal and withdrawal of scholarship, Mr. Dotson had been, in all respects, compliant with his agreement with the University regarding his efforts as a basketball player to support the scholarship. He was subjected to ridicule and hostility as a result of the University's slanderous and defamatory remarks as referenced above. His educational plans and ability to continue his career as a collegiate basketball player have been all but terminated. He has suffered financial loss, as well as great humiliation, embarrassment and vilification in the public eye. The damage to his reputation as a result of the University's outrageous actions is immeasurable.

Notice of Tort Claim
October 9, 2014
Page 4

Correspondence concerning this claim may be sent care of this office.

Sincerely,

McCREA, P.C.

*Shaun S McCrea*

Shaun S. McCrea
Attorney for Damyean Dotson
1147 High Street
Eugene, OR 97401
541-485-1182
Fax 541-485-6847
E-mail: shaun@mccreapc.com

SMc/kg

Notice of Tort Claim
October 9, 2014
Page 5