**Michelle Barton Smigel, P.C.**, OSB No. 045530
michelle.smigel@millernash.com
**Michael Porter, P.C.**, OSB No. 003560
mike.porter@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Telephone:  503.224.5858
Facsimile:  503.224.0155

  Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **BRANDON AUSTIN**,<br><br>   Plaintiff,<br><br> v.<br><br>**UNIVERSITY OF OREGON**; **SANDY WEINTRAUB**; **CHICORA MARTIN**; **ROBIN HOLMES**; and **MICHAEL R. GOTTFREDSON**, all in their individual capacities only,<br><br>   Defendants. | Case No.:  6:15-cv-02257-MC (Lead Case)<br>Case No.:  6:16-cv-00647-MC (Member Case)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>(Under Fed R Civ P 12(b)(6)) |

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

**DOMINIC ARTIS** and **DAMYEAN DOTSON**,

                    Plaintiff,

        v.

**UNIVERSITY OF OREGON**; **SANDY WEINTRAUB**; **CHICORA MARTIN**; **ROBIN HOLMES**; and **MICHAEL R. GOTTFREDSON**,

                    Defendants.

Defendants' Reply in Support of Their Motion to Dismiss Third Amended Complaint

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  ARGUMENT .................................................................................................... 2

    A.  The Factual Allegations of the Complaint Do Not Plausibly Suggest
    Gender Or Sex Discrimination Against Plaintiffs ................................. 2

        1.  The Court should not adopt the "minimal inference" framework,
        but nevertheless the factual allegations of the Complaint do not
        establish a "minimal inference" of gender bias ......................................... 3

        2.  The additional allegations included in plaintiffs' Third Amended
        Complaint do not create a plausible inference of gender bias .................. 7

        3.  Conclusory and speculative statements in declarations are not
        entitled to an assumption of truth .............................................................. 9

    B.  Plaintiffs Fail to Rebut the Individual Defendants' Entitlement to Qualified
    Immunity for Artis and Dotson's Equal Protection Claim ................................... 11

    C.  Plaintiffs Did Not Have a Special Relationship With the University and
    Therefore Cannot Prevail On Their Negligence Claim. ...................................... 13

    D.  Plaintiffs Again Fail to Rebut That the University Fulfilled the Terms Of
    Plaintiffs' Scholarship Agreements, Which Expressly Did Not Require the
    University to Renew Plaintiffs' Scholarships For The 2014-2015
    Academic Year ................................................................................................... 14

III.  CONCLUSION ................................................................................................ 16

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. al-Kidd,*
    563 US 731, 131 S Ct 2074, 179 L Ed 2d 1149 (2011)........................................................11

*Ashcroft v. Iqbal,*
    556 US 662, 129 S Ct 1937, 173 L Ed 2d 868 (2009)..................................................2, 3, 8, 9

*Bell Atl. Corp. v. Twombly,*
    550 US 544, 127 S Ct 1955, 167 L Ed 2d 929 (2007).........................................................2, 3

*Davidson v. Univ. of N.C.,*
    543 SE 2d 920 (NC Ct App 2001) ......................................................................................13, 14

*Doe v. Brandeis Univ.,*
    177 F Supp 3d 561 (D Mass 2016) ...........................................................................................15

*Doe v. Columbia,*
    831 F3d 46 (2d Cir 2016).........................................................................................2, 3, 4, 6

*Doe v. Cummins,*
    662 Fed Appx 437 (6th Cir 2016) .............................................................................................3

*Doe v. Univ. of the South,*
    687 F Supp 2d 744 (ED Tenn 2009) .........................................................................................5

*Doe v. Wooster,*
    No. 5:16-cv-979, 2017 WL 1038982 (ND Ohio March 17, 2017) ...........................................3

*Emeldi v. Univ. of Or.,*
    673 F3d 1218 (9th Cir 2012) ...........................................................................................2, 6, 7

*Kleinknecht v. Gettysburg Coll.,*
    989 F2d 1360 (3d Cir 1993)...............................................................................................13, 14

*Kolstad v. American Dental Assn.,*
    527 US 526, 119 S Ct 2118, 144 L Ed 2d 494 (1999)...............................................................4

*North Unit Potato Co. v. Spada Dist.,*
    260 Or 468, 490 P2d 995 (1971) .............................................................................................15

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*,
  336 Or 329, 83 P3d 322 (2004) ................................................13

*Reese v. Jefferson Sch. Dist. No. 14J*,
  208 F3d 736 (9th Cir 2000) ........................................................11

*Yogman v. Parrott*,
  325 Or 358, 937 P2d 1019 (1997) .........................................15

*Yusuf v. Vassar College*,
  35 F3d 709 (2d Cir 1994)...................................................3, 5

**Statutes**

ORS 183.482.................................................................................13

ORS 183.484.................................................................................13

**Other Authorities**

OAR 571-021-0105(13)..................................................................7

OAR 571-021-0105(30)(b) .............................................................7

OAR 571-021-0205 .......................................................................12

OAR 571-021-0230 .......................................................................12

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

## I.  INTRODUCTION

Plaintiffs' response to Defendants' motion to dismiss confirms that Defendants are entitled to dismissal of all of plaintiffs' remaining claims, with prejudice.  Plaintiffs have failed to demonstrate that the allegations of the Complaint plausibly suggest any reasonable inference of gender bias by the University of any of the Individual Defendants, and therefore have failed to remedy the deficiency that led to the earlier dismissal of their Title IX and equal protection claims.  Rather than pleading any factual allegations that could plausibly suggest that any pertinent University official discriminated against plaintiffs, plaintiffs have bulked up the Third Amended Complaint with allegations about student protestors, the news media, and one University professor.  Indisputably, none of these people had any role in the University's Title IX investigation or plaintiffs' administrative hearing.  Plaintiffs essentially acknowledge that their factual allegations again fall short of the relevant pleading standard and instead ask the Court to afford "great deference" to the legal conclusions and opinions espoused by four attorneys (only one of whom has not represented plaintiffs in this lawsuit or the underlying administrative hearing) in declarations attached to the Complaint.  But, like the rest of the Complaint, the conclusory assertions of these declarations fail to plausibly suggest gender bias against plaintiffs.  Plaintiffs have had multiple opportunities to demonstrate that they can state a claim for relief that is plausible on its face under Title IX and the Equal Protection Clause of the United States Constitution.  They have not done so, and in the process shown that allowing plaintiffs to amend their Complaint again would be futile.

Plaintiffs' response also makes no meaningful attempt to rebut Defendants' state law arguments.  Plaintiffs were not in a special relationship with the University under Oregon negligence law, and their citation of two out-of-state cases, which the Court considered and rejected in its September 8, 2016, Opinion and Order, fail to support plaintiffs' argument.  Without a special relationship, plaintiffs' negligence claim fails as a matter of law.  And plaintiffs' breach of contract claim fails to state a claim for relief because yet again plaintiffs

Page 1 -     Defendants' Reply in Support of Their Motion to Dismiss Third Amended Complaint

4842-5380-7430.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

have not shown any contractual basis to support their assertion that the University guaranteed renewal of their fixed-term athletic scholarships.  Plaintiffs' complaint fails to state any viable claims and should be dismissed with prejudice, and judgment should be entered for Defendants.

## II.  ARGUMENT

### A.    The Factual Allegations of the Complaint Do Not Plausibly Suggest Gender Or Sex Discrimination Against Plaintiffs.

Plaintiffs' response confirms that their Title IX claim fails as a matter of law. Plaintiffs, relying on the Second Circuit's decision in *Doe v. Columbia*, 831 F3d 46 (2d Cir 2016) and the Ninth Circuit's decision in *Emeldi v. Univ. of Or.*, 673 F3d 1218 (9th Cir 2012), assert that they have alleged a "minimal inference" of gender bias by the University.  But the Complaint does not set forth *any* factual allegations plausibly suggesting gender bias against plaintiffs, which it must to overcome Defendants' motion to dismiss.  *See Ashcroft v. Iqbal*, 556 US 662, 678, 129 S Ct 1937, 173 L Ed 2d 868 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 US 544, 570, 127 S Ct 1955, 167 L Ed 2d 929 (2007); *see also* Pls.' Opp. at 28 ("Under the pleading standard articulated in *Twombly* and clarified in *Iqbal*, a plaintiff must allege enough facts to state a claim to relief that is plausible on its face.") (internal quotation marked omitted).

Despite plaintiffs' additional allegations, the Complaint is still "short on facts plausibly alleging sex discrimination" by the University in general, Order at 11, or that plausibly suggest gender bias in the University's Title IX investigation or at plaintiffs' administrative hearing—the relevant contexts.  *See* Order at 17 (explaining that even if plaintiffs allege "an atmosphere of internal and public scrutiny of the University's treatment of sexual misconduct * * * there remains no plausible inference that a university's aggressive response to allegations of sexual misconduct is evidence of gender bias").

4842-5380-7430.1                    MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1. <u>The Court should not adopt the "minimal inference" framework, but nevertheless the factual allegations of the Complaint do not establish a "minimal inference" of gender bias.</u>

For good reason, courts have not universally adopted *Doe v. Columbia*'s "minimal inference" framework for evaluating the sufficiency of a Title IX claim.  *See e.g.*, *Doe v. Cummins*, 662 Fed Appx 437 (6th Cir 2016) (distinguishing *Doe v. Columbia* and applying the framework set forth by the Second Circuit in *Yusuf v. Vassar College*, 35 F3d 709 (2d Cir 1994)); *Doe v. Wooster*, No. 5:16-cv-979, 2017 WL 1038982, at *4-5 (ND Ohio March 17, 2017) (dismissing with prejudice a Title IX claim that included allegations that "there was substantial criticism of the College, both in the student body and in the public media, * * * of not taking seriously complaints of female students alleging sexual assault by male students," "articles in the university's newspaper highlighting the need for awareness of a 'rape culture' on campus," and "an article written by a Wooster professor who revealed she is unnerved 'when tensions flare on campus regarding issues of sexual assault and violence'" because these allegations do not "suggest a basis for discrimination against male students").

Defendants' motion to dismiss set forth some of the reasons why *Doe v. Columbia*'s application of the "minimal inference" framework is untenable in this context, including that it circumvents the *Iqbal* and *Twombly* pleading standard and allows discovery based on *speculative and conclusory allegations* concerning the hypothetical effect of actions and beliefs of third parties not involved in the adjudicatory process giving rise to the plaintiff's claims and potentially (as with the case at bar) the hypothetical effect of actions of third parties unaffiliated with the university altogether.  *See* Defs.' Motion at 10-11.  Plaintiffs' response, however, does not address—much less refute—any of these arguments.

Page 3 -     Defendants' Reply in Support of Their Motion to Dismiss Third Amended Complaint

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

There are at least four other reasons that this court should decline to follow the Second Circuit's application of the minimal inference framework.[1]  First, the Second Circuit's reasoning erroneously assumes that a university's interest in preventing sexual violence toward females plausibly infers bias against males.  Efforts to prevent sexual violence protect the safety of all members of a university community—whether a university undertakes these efforts of its own initiative or in response to public safety concerns.  Without specific *factual* allegations that a university has discriminated against males in its efforts to keep its community free of sexual violence, a general allegation that efforts to prevent sexual violence are discriminatory is both conclusory and too speculative to meet the federal pleading standard.  Moreover, this logic is insufficient in the Title VII context:  for example, an employer's efforts to prevent discrimination against racial and ethnic minorities do not give rise to an inference of discrimination against White employees.  *See e.g.*, *Kolstad v. American Dental Assn.*, 527 US 526, 545, 119 S Ct 2118, 144 L Ed 2d 494 (1999) ("Dissuading employers from implementing programs or policies to prevent discrimination in the workplace is directly contrary to the purposes underlying Title VII.")

Second, for similar reasons, it is equally unreasonable to conclude that an institution's efforts to comply with Title IX are plausibly suggestive of the intent to discriminate against accused males.  Compliance with Title IX is mandatory for funding recipients; general allegations that a university has attempted to comply with Title IX (whether of its own initiative or in response to an Office for Civil Rights investigation) cannot reasonably support an inference that the university has attempted to defy this very law.

---

[1] *Doe v. Columbia* is distinguishable at a fundamental level as well.  There, the alleged facts before the court contained no independent support for the finding made by Columbia in that case ("coercion") and therefore, the court found the plaintiff's claim that the decision maker was influenced by bias were plausible.  *Id*. at 23-24.  Here, the police report relied on by the University and which is before this court contains admissions by the plaintiffs demonstrating the plausibility of the University's finding that plaintiffs failed to obtain explicit consent as required by the University's conduct code.  *See* Declaration of Michelle Barton Smigel in Support of Defendants' Motion to Dismiss ¶ 2, Ex. A.

Page 4 -    Defendants' Reply in Support of Their Motion to Dismiss Third Amended Complaint

4842-5380-7430.1                    MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Third, the broad sweep of the Second Circuit's decision would entitle male plaintiffs to discovery simply because the plaintiff attended a college or university that was under Title IX investigation from the Office for Civil Rights *or* that has received public criticism relating to its handling of Title IX investigations (whether such criticism is reasonably founded or not, and which as a practical matter, includes nearly every college and university in the country). This obviates a plaintiff's obligation to plead factual allegations specific to the plaintiff's claims.

Finally, and perhaps most significantly, under the Second Circuit's decision, in many circumstances, male plaintiffs will prevail against a motion to dismiss, while persons of other sexes and/or genders will receive discovery only by pleading specific factual allegations that a university or relevant university officials discriminated against the plaintiff. Congress enacted Title IX to eliminate sex and gender discrimination in education, not to create a cause of action that is available to males yet elusive to people of other sexes and genders.

The Court should again "decline to extend the Second Circuit's reasoning" to the facts alleged in the Complaint. Order at 17. To overcome Defendants' motion to dismiss, plaintiffs must plead factual allegations that plausibly suggest that Defendants acted with gender bias against plaintiffs. *Doe v. Univ. of the South*, 687 F Supp 2d 744, 756 (ED Tenn 2009) ("a plaintiff must demonstrate that the conduct of the university in question was motivated by a sexual bias. * * * To support a claim of selective enforcement, [Plaintiffs] must demonstrate that a female was in circumstances sufficiently similar to [John Doe's] and was treated more favorably by the University") (internal quotation marks and citations omitted); *Yusuf v. Vassar Coll.*, 35 F3d 709, 715 (2d Cir 1994) ("allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss").

Moreover, the Complaint fails to plausibly connect the purported "atmosphere of scrutiny," Compl. ¶ 119, to gender bias in general or with respect to the University's Title IX

Page 5 -    Defendants' Reply in Support of Their Motion to Dismiss Third Amended Complaint

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

investigation and plaintiffs' administrative hearing, thus distinguishing plaintiffs' allegations from those asserted in *Doe v. Columbia*.  There, the plaintiff alleged that Columbia University's "*Title IX investigator*[] was motivated by pro-female sex bias, attributable in part to a desire to refute criticisms of herself and of the University."  *Doe v. Columbia*, 831 F3d at 53 (emphasis added); Pls.' Opp. at 30.  Although such speculative and conclusory allegations of bias should not be sufficient to state a viable Title IX claim, plaintiffs here have not similarly alleged that any official involved in the University's investigation (the University's Title IX investigator) or plaintiffs' administrative hearing (Weintraub, the hearings officer) was subject to public scrutiny. In addition, the plaintiff in *Doe v. Columbia* alleged that in response to criticism of the university for "not taking seriously complaints of female students alleging sexual assault by male students," the President "called a University-wide open meeting with the Dean to discuss the issue."  *Doe v. Columbia*, 831 F3d at 57.  And while a university should not be subjected to an inference of discriminatory bias in subsequent legal proceedings because it chooses to discuss concerns raised by its student body or the public, here again plaintiffs have not pleaded analogous allegations. Instead, plaintiffs have pleaded only the President Gottfredson made a public statement opposing sexual misconduct in response to *The Oregonian* releasing the April 28, 2014, police report. Compl. ¶ 35.  Accordingly, even under the "minimal inference" framework, plaintiffs have not set forth any plausible connection between their "atmosphere" allegations and gender bias at the University—much less gender bias by a University official pertinent to the case at bar.

Similarly, plaintiffs' citation of *Emeldi* is unavailing of their opposition to Defendants' motion.  Not only was *Emeldi* a Title IX retaliation case, which is not at issue here, but the allegations in *Emeldi* that persuaded the Ninth Circuit to reverse the District Court's grant of summary judgment included *specific examples* of alleged retaliatory conduct and gender-based discrimination by the University actor allegedly at issue.  For example, Emeldi alleged that (a) shortly after she met with university administrators and raised concerns of gender discrimination by her doctoral advisor, he resigned as chair of her dissertation committee,

Page 6 -    Defendants' Reply in Support of Their Motion to Dismiss Third Amended Complaint

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

673 F3d at 1222, (b) "she was not on the agenda, or no substantial or meaningful work of hers was discussed" when her dissertation chair met with his doctoral advisees and discussed their research, 673 F3d at 1221, and (c) male students were provided with "more office space and better technology for collecting data than similar female students." 673 F3d at 1227. Here, plaintiffs do not assert even one specific *factual* allegation that plausibly suggests that they were discriminated against due to their gender by any of the University officials involved in the University's investigation or in plaintiffs' administrative hearing. Plaintiffs, therefore, have not rectified their deficient pleadings and again have "failed to show how the University's enforcement of its student conduct code * * * equates to sex discrimination." Order at 18.

    2.    The additional allegations included in plaintiffs' Third Amended Complaint do not create a plausible inference of gender bias.

        Plaintiffs response argues that their "Complaint is replete with facts that provide at least a minimal inference" that the University's alleged conduct was "motivated by the sex/gender of the [plaintiffs]."[2] Pls.' Opp. at 35. Specifically, the Complaint reasserts that the District Attorney's decision not to prosecute plaintiffs and President Gottfredson's statement that he is a father and reference to the complainant as a survivor (which plaintiffs characterize as "loaded statements and code words") are evidence of gender bias against plaintiffs.[3] Pls.' Opp. at 35. But this Court has already explained that "[t]he state's failure to indict Plaintiffs with a crime has no bearing on the Defendants' decision to investigate a Student Conduct Code

---

[2] Plaintiffs' response fails, however, to explain why the District Attorney's multiple references to the complainant as a "victim" and plaintiffs as "assailants" are not also "loaded statements and code words." *See* Def. Motion at 15; Compl. ¶ 37.

[3] Plaintiffs also mischaracterize the findings of their administrative hearing. Plaintiffs' response describes the "type of conduct the Plaintiffs allegedly engaged in" as "sex with only implicit consent." Pls.' Opp. at 36. The University, however, did not find that plaintiffs had implicit consent to engage in the conduct for which they were suspended. Rather, plaintiffs were suspended because they were found by a preponderance of the evidence to have "engaged in sexual acts with a fellow student without obtaining explicit consent. *See* Declaration of Lisa Thornton in Support of Defendants' Motion to Dismiss ¶ 8, Ex. E at 2, 4, 7 (administrative hearing decision letter). This was a violation of the University's Student Conduct Code, which required "explicit consent" to engage in sexual activity. OAR 571-021-0105(30)(b) (defining sexual misconduct as penetration without "first obtain[ing] Explicit Consent"); OAR 571-021-0105(13) (defining explicit consent).

Page 7 -    Defendants' Reply in Support of Their Motion to Dismiss Third Amended Complaint

4842-5380-7430.1
MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

violation." Order at 13. The addition to the Complaint of a public statement issued by the District Attorney's office does not, therefore, plausibly establish any "logical nexus that connects the failure to criminally prosecute with gender bias on the part of Defendants." *Id.*

This Court has also already ruled that the allegations concerning President Gottfredson—which have not changed in substance from plaintiffs' previous complaint—"have not established that [President Gottfredson's statements] were grounded in sexism or gender bias or that they had any substantive bearing on the review process." Order at 15. Plaintiffs have not remedied their deficient pleadings by supplementing them with a conclusory assertion—unsupported by any factual allegations—that "Dr. Gottfredson had significant influence, and likely even determinative influence, over the University's decision and actions." Compl. ¶ 110.

Plaintiffs' response also does not refute that none of the "atmosphere" allegations added to the Complaint plausibly suggest gender bias by any University official involved in the University's investigation or plaintiffs' administrative hearing. Instead, plaintiffs' response just recounts their allegations concerning a group of student protestors, "negative media coverage," and one University professor—who indisputably had no role in the investigation or plaintiffs' hearing. Pls.' Opp. at 35. Like plaintiffs' allegations concerning President Gottfredson, because none of these allegations relate to any of the individuals responsible for conducting the University's investigation or plaintiffs' administrative hearing, they do not plausibly suggest gender bias against plaintiffs or cure plaintiffs' deficient pleadings.

And the new allegation concerning Martin's conduct at a different University proceeding also fails to support plaintiffs' claim. Compl. ¶ 90; Pls.' Opp. at 37. Plaintiffs' allege no factual allegations concerning this other proceeding except to explain that it involved an off-campus sexual assault. Plaintiffs' conclusory description of the proceeding as "demonstra[ing] patent bias on the part of Ms. Martin and the University" is not entitled to the assumption of truth, *Iqbal*, 556 US at 681, and therefore as a matter of law, cannot help overcome Defendants' motion. Moreover, the allegation raised against Martin with respect to plaintiffs is that Martin

Page 8 -    Defendants' Reply in Support of Their Motion to Dismiss Third Amended Complaint

4842-5380-7430.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

issued an emergency temporary suspension after the University received a report that plaintiffs had raped a University student.  Compl. ¶¶ 32-33, 54-55.  Plaintiffs fail to make any connection between their new allegation concerning Martin's conduct at a proceeding for another student and their emergency suspensions.  This new allegation is unavailing for this additional reason.

       3.      <u>Conclusory and speculative statements in declarations are not entitled to an assumption of truth</u>.

      Finally, plaintiffs' response argues, without citation of any authority, that the assertions made by four attorney declarants should be afforded "great deference at the motion-to-dismiss stage."  Pls.' Opp. at 36.  But at the motion to dismiss stage, only factual allegations are taken as true and evaluated "to determine if they plausibly suggest an entitlement to relief."[4] *Iqbal*, 556 US at 681.  Conclusory and speculative allegations—whether alleged in a complaint or asserted by a declarant—"are not entitled to the assumption of truth."  *Iqbal*, 556 US at 679.  Assertions by plaintiffs' former attorneys regarding the sufficiency of the evidence in the record and whether the University's conduct was discriminatory are legal conclusions not entitled to the assumption of truth.  Similarly, assertions by another attorney regarding the credibility of evidence that she has presented in other University hearings and whether the University is bias against males are also legal conclusions.  And an assertion by Artis and Dotson's current attorney that plaintiffs could uncover evidence "extremely relevant and helpful to establishing Plaintiffs' claims" in discovery is not only speculative, it has no bearing on whether the allegations set forth in the Complaint entitle plaintiffs to discovery.  The assertions of Greg Velarud's, Lissa Casey's, and Brian Michael's declarations are accordingly insufficient to overcome Defendants' motion to dismiss.

      Plaintiffs' response homes in on the assertions of Laura Fine Moro's declaration.  *See* Pls.' Opp. at 36-37 ("Even if this Court finds the evidence to be *too speculative*, * * * the

---

[4] While it is not dispositive for defendants' motion to dismiss, the University estimates that all four attorneys combined have handled ten or fewer sexual misconduct cases with the University.

4842-5380-7430.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

declaration by Ms. Fine Moro standing alone provides an actual basis to allow the Plaintiffs to proceed.") (emphasis added).  To the extent that Fine Moro (Austin's attorney through his administrative hearing) makes legal conclusions (including assertions regarding the sufficiency of the evidence at plaintiffs' hearing, the credibility of evidence that she has presented at other University hearings, her opinion whether the University discriminates against males, and her analysis of the investigative and adjudicative standards applied by the University), her declaration does not set forth factual allegations, which are necessary to state a claim for relief that is plausible on its face.  And the only nonconclusory pertinent factual allegations set forth in Fine Moro's declaration concern a female University student who, according to the declaration, physically assaulted her boyfriend and chased him with a knife.[5]  Plaintiffs' response does not explain how this allegation is relevant to the charge brought against plaintiffs or how it plausibly suggests that the University was biased against them.

The Third Amended Complaint fails to add any factual allegations that plausibly indicate even a "minimal inference" of bias by the decision-maker at plaintiffs' hearing (Weintraub), the other individually-named defendants, or the University.  Accordingly, the additional allegations asserted in the Complaint are unavailing of plausible gender bias against plaintiffs.  Because plaintiffs cannot prevail on their Title IX claims without showing that they were discriminated against due to their gender, the Court should dismiss plaintiffs' Title IX claims with prejudice.

---

[5] Nor does Moro's declaration allege any pertinent facts related to this female student because it does not assert that Moro actually has knowledge that the University did not pursue any conduct charges.  All that Moro's declaration establishes is that she, a non-University employee, lacks such knowledge ("[N]o further action was taken by the UO that I am aware of." Moro Declaration paragraph 8.c.).  Moro's "unawareness" of what conduct charges the University may have pursued on this matter is not a factual allegation.  Moreover, the University was not and is not at liberty to disclose to Moro what it pursued against the female student because such information is protected by the Family Educational Rights and Privacy Act.

Page 10 -    Defendants' Reply in Support of Their Motion to Dismiss Third Amended Complaint

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

B.    **Plaintiffs Fail to Rebut the Individual Defendants' Entitlement to Qualified Immunity for Artis and Dotson's Equal Protection Claim.**

Artis and Dotson's equal protection claim fails as a matter of law because, as discussed in Section A, plaintiffs have failed to plausibly allege that they were subject to discriminatory treatment. *See Reese v. Jefferson Sch. Dist. No. 14J*, 208 F3d 736, 740 (9th Cir 2000) (To prevail in their equal protection claim, plaintiffs must demonstrate that the defendants acted in a discriminatory manner and that the discrimination was intentional.") (internal quotation marks omitted).  Moreover, Defendants' motion set forth specific reasons that Artis and Dotson failed to state a plausible equal protection claim against any of the Individual Defendants.  Yet plaintiffs' response does not refute—or even address—any of these arguments. Further, plaintiffs misconstrue Defendants' qualified immunity arguments and fail to show that the alleged conduct of any of the Individual Defendants constituted a constitutional violation— much less a clearly established constitutional violation.  In fact, the only argument made in plaintiffs' response is that the alleged "history and patterns" of student conduct hearings at the University show bias against males.  On its face, this is not an allegation concerning plaintiffs' administrative hearing or the conduct of any of the Individual Defendants.  This argument therefore fails to plausibly suggest an equal protection violation by any of the Individual Defendants.

The Individual Defendants are entitled to qualified immunity unless plaintiffs can show that existing case law clearly established that the alleged conduct of the Individual Defendants violated the Constitution such that "every reasonable official would have understood that" the conduct amounted to a constitutional violation.  *Ashcroft v. al-Kidd*, 563 US 731, 735, 131 S Ct 2074, 179 L Ed 2d 1149 (2011) (internal quotation marks omitted).  Accordingly, the Individual Defendants are entitled to qualified immunity and dismissal of Artis and Dotson's equal protection claim because, at the time of their alleged conduct (and even now), it was not clearly established that the following actions constituted gender discrimination:

Page 11 -    Defendants' Reply in Support of Their Motion to Dismiss Third Amended Complaint

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

- Holmes' alleged refusal to grant plaintiffs an appeal of their administrative hearing, which plaintiffs' affirmatively waived and was not a right afforded under the regulations then-governing University administrative conferences, OAR 571-021-0205;

- Martin's emergency temporary suspension of plaintiffs; in accordance with the University's then-governing regulations, OAR 571-021-0230, after they were accused of raping a University student; Gottfredson's public comments of May 9, 2014, which the Court has already ruled were not plausibly "grounded in sexism or gender bias," Order at 15; and

- Weintraub's alleged refusal to provide certain procedures during plaintiffs' administrative hearing, which plaintiffs' affirmatively waived and were not provided under the regulations then-governing University administrative conferences, OAR 571-021-0205.

Because no case law clearly established that any of these actions were discriminatory, and plaintiffs' response fails demonstrate how any of the Individual Defendants could plausibly have known that their alleged conduct violated the Constitution (because it did not), the Individual Defendants are entitled to qualified immunity from Artis and Dotson's equal protection claim. The Court should therefore dismiss this claim with prejudice.

Page 12 -    Defendants' Reply in Support of Their Motion to Dismiss Third Amended Complaint

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

**C.** **Plaintiffs Did Not Have a Special Relationship With the University and Therefore Cannot Prevail On Their Negligence Claim.**[6]

Defendants moved to dismiss plaintiffs' negligence claim on the grounds that, in Oregon, negligence claims for purely economic damages are not cognizable unless the parties have a special relationship, *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 341, 83 P3d 322 (2004), and because Defendants' alleged conduct did not create a foreseeable risk of harm to plaintiffs. *See* Def. Motion at 25, 28. Plaintiffs cite *Davidson v. Univ. of N.C.*, 543 SE 2d 920 (NC Ct App 2001), and *Kleinknecht v. Gettysburg Coll.*, 989 F2d 1360 (3d Cir 1993), and argue that they did have a special relationship with the University because the University allegedly "exercised independent judgment on [plaintiffs'] behalf to advance the individual interests of [plaintiffs], by recruiting [them] and then managing virtually every aspect of their time at Oregon." Pls.' Opp. at 39, 41. Plaintiffs also argue that it was foreseeable that suspending plaintiffs would "stigmatize them and cause the harm claimed." Pls.' Opp. at 42.

This Court has explained that "[w]hether Plaintiffs' negligence claim should be dismissed at this stage of litigation hinges on whether * * * a [special] relationship existed between Plaintiffs and the University." Order at 22. The Court went on to explain that "no precedent in Oregon or in the Ninth Circuit recognizes a special relationship between college students or student athletes and the universities they attend." *Id.* And courts in other jurisdictions that have found a special relationship between a student athlete and a university "have done so when the incident giving rise to the negligence claim occurred during a supervised school practice or other event and arose out of an injury related thereto." Order at 22-23. The

_____

[6] Defendants, mindful that the Court previously rejected Defendants' preclusion argument with respect to plaintiffs' federal claims (though did not address this argument with respect to plaintiffs' state law claims) and Defendants' discretionary immunity arguments, reasserted these defenses to plaintiffs' negligence claim. Plaintiffs do not substantively respond to these defenses and erroneously assert that the finding of plaintiffs' hearing is not subject to issue preclusion because another attorney alleges that her client (not plaintiffs) was "threatened with additional student conduct allegations" when she "attempted to investigate [the] accusations" against that client. Pls.' Opp. at 39, 42. Accordingly, plaintiffs' response does not refute that Defendants are entitled to discretionary immunity or that plaintiffs cannot relitigate the outcome of their administrative hearing based on the issue preclusion doctrine and because plaintiffs did not appeal their suspensions in accordance with ORS 183.482 or ORS 183.484.

Page 13 -   Defendants' Reply in Support of Their Motion to Dismiss Third Amended Complaint

4842-5380-7430.1

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

Court cites *Davidson* and *Kleinknecht*—the two cases on which plaintiffs now rely—as examples of courts that have found a "special relationship between student athletes and universities *in the contexts of sports related injuries.*" Order at 22 (emphasis added). In *Davidson*, a student athlete "suffered permanent brain damage and serious bodily injury as a result of [a] fall" during a cheerleading practice. *Davidson*, 142 SE 2d at 546. Similarly, the student athlete in *Kleinknecht* "died of cardiac arrest * * * during a practice session of [his] intercollegiate team." *Kleinknecht*, 989 F2d at 1362.

In contrast to the student athletes in *Davidson* and *Kleinknecht*, plaintiffs have not alleged an injury sustained during a basketball game, practice, or any team-related activity or event. Their alleged injuries arose from the University "rendering [an] academic code of conduct decision[]." Order at 23. In this context, the relationship between the parties is the same as it is between any student and the University and  "can be characterized as little more than an arm's length relationship intent on securing divergent rather than joint interests"—not a special relationship. *Id.* The Court has already considered and rejected the arguments presented in plaintiffs' response—including the two cases that plaintiffs assert demonstrate the existence of a special relationship. Accordingly, the Court should again rule that no special relationship existed between the parties for the purpose of plaintiffs' administrative hearing, and dismiss plaintiffs' negligence claims with prejudice.

**D.    Plaintiffs Again Fail to Rebut That the University Fulfilled the Terms Of Plaintiffs' Scholarship Agreements, Which Expressly Did Not Require the University to Renew Plaintiffs' Scholarships For The 2014-2015 Academic Year.**

Plaintiffs' breach of contract claim again fails as a matter of law. Plaintiffs' continue to insist that the express terms of their scholarship agreements guaranteed renewal. Pls.' Opp. at 43 (reasserting that plaintiffs "had the objectively reasonable expectation, based upon the express terms of the contractual relationship * * * that the University would renew their scholarship[s]"). But as this Court previously found, the express terms of plaintiffs' scholarships did not guarantee renewal—rather, "the renewal terms in the contract described that it would be

Page 14 -    Defendants' Reply in Support of Their Motion to Dismiss Third Amended Complaint

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*considered* for renewal" under certain conditions.  Order at 28.  Plaintiffs have not set forth (nor could they) any additional allegations that plausibly alter the meaning of the renewal provision of plaintiffs' scholarship agreements.  Plaintiffs, therefore, have effectively conceded that the University did not breach the express terms of these agreements by not renewing plaintiffs' scholarships for the 2014-2015 academic year.

Nevertheless, plaintiffs argue that the University breached its contractual obligations because (1) the University offered scholarships to plaintiffs to "[e]ntice Plaintiffs to attend Oregon," Compl. ¶ 14, and (2) the "industry custom and 'usage of trade' makes it implicit in the contractual relationship * * * that * * * universities [will] renew the scholarships of athletes recruited to play at the university."  Compl. ¶ 34.  This Court has already described plaintiffs' allegation that the University induced them with scholarship offers as a "skeletal pleading [that] fall[s] well short of stating a claim for which relief can be granted."  Order at 28.  And plaintiffs' additional allegation regarding industry custom is similarly unavailing.  The plain meaning of an unambiguous contractual term (such as the renewability provision of plaintiffs' scholarship agreements) governs the interpretation of that provision regardless of the alleged industry custom.  *See North Unit Potato Co. v. Spada Dist.*, 260 Or 468, 475, 490 P2d 995 (1971); *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997) ("If the [disputed] provision is clear, the analysis ends.").

Plaintiffs' quick comparison of the nonrenewal of their scholarship agreements to the termination of an at-will employment relationship also does not plausibly establish a breach of contract.  Among the reasons that this comparison is fraught and unavailing of plaintiffs' claim, plaintiffs received fix-term scholarships that expired at the end of the 2013-2014 academic year.  And plaintiffs' citation of *Doe v. Brandeis Univ.*, 177 F Supp 3d 561 (D Mass 2016), also fails to remedy their deficient pleadings.  Not only is *Doe v. Brandeis Univ.* inapplicable on the facts because it did not concern the nonrenewal of a scholarship, its legal analysis does not bear on plaintiffs' claims because according to the district court, "[t]he nature of the university-student

Page 15 -  Defendants' Reply in Support of Their Motion to Dismiss Third Amended Complaint

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

relationship under Massachusetts law appears to be somewhat unique and not necessarily tied to the ordinary principles of contract law." 177 F Supp 3d at 612.

Because "plaintiffs have asserted no contractual basis for their alleged expectation of renewal," their breach of contract claim fails as a matter of law and should be dismissed with prejudice.

## III.   CONCLUSION

The court should grant Defendants' motion to dismiss in full.  The additional allegations of plaintiffs' Third Amended Complaint do not cure the deficiencies that led to the dismissal of their previous complaint.  Plaintiffs still have failed to plead any factual allegations that plausibly suggest gender bias against plaintiffs by the Individual Defendants or the University.  Plaintiffs therefore cannot prevail on their Title IX or equal protection claims.  Plaintiffs also have not pleaded any additional facts showing that they had a special relationship with the University and thus cannot assert a negligence claim.  And plaintiffs again fail to identify any contractual basis for stating a breach of contract claim based on the nonrenewal of their athletic scholarships.  Accordingly, the Complaint should be dismissed with prejudice and judgment entered in favor of Defendants.

DATED this _____ day of April, 2017.

MILLER NASH GRAHAM & DUNN LLP


/s/ Michelle Barton Smigel
Michelle Barton Smigel, P.C.
OSB No. 045530
michelle.smigel@millernash.com
Michael Porter, P.C.
OSB No. 003560
mike.porter@millernash.com
Phone: 503.224.5858
Fax: 503.224.0155


Page 16 -   Defendants' Reply in Support of Their Motion to Dismiss Third Amended Complaint

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

CERTIFICATE OF SERVICE

I hereby certify that on April ___, 2017, I electronically filed the foregoing

Defendants' Reply in Support of Motion to Dismiss Third Amended Complaint with the Clerk of

the Court using the CM/ECF system and that by doing so I served the foregoing on all parties of

record in the subject case via CM/ECF system transmission.

DATED this ____ day of April, 2017.

/s/ Michelle Barton Smigel
Michelle Barton Smigel, OSB No. 045530
*Of Attorneys for Defendants*

4842-5380-7430.1

**MILLER NASH GRAHAM & DUNN LLP**
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204