IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| BRANDON AUSTIN,<br><br>    Plaintiff,<br><br>v.<br><br>UNIVERSITY OF OREGON; SANDY WEINTRAUB; CHICORA MARTIN; ROBIN HOLMES; and MICHAEL R. GOTTFREDSON, all in their individual capacities only,<br><br>    Defendants. | Case No. 6:15-cv-02257-MC (Lead Case)<br>Case No. 6:16-cv-00647-MC (Member Case)<br><br>OPINION AND ORDER |
| DOMINIC ARTIS and DAMYEAN DOTSON,<br><br>    Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF OREGON; SANDY WEINTRAUB; CHICORA MARTIN; ROBIN HOLMES; and MICHAEL R. GOTTFREDSON,<br><br>    Defendants. | |

MCSHANE, Judge:

The initial complaints filed by the Plaintiffs in this case were dismissed by the court on Defendant's motion.[1] The court gave Plaintiff's leave to file an amended complaint and Plaintiffs

---

[1] Unless stated otherwise, citations to the docket refer to the lead case, D. Or. 6:15-cv-2257-MC.

1 – OPINION AND ORDER

have done so in an effort to cure the earlier deficiencies (D. Or. 15-cv-2257, ECF No. 35 & D. Or. 16-cv-647, ECF No. 39). Defendants now move to dismiss Plaintiffs' Third Amended Complaints (ECF No. 41). Because the Third Amended Complaints do not contain sufficient facts to state claims for relief that are plausible on their face, the Complaints are dismissed with prejudice.

## BACKGROUND

On September 8, 2016, the court dismissed this action on Defendants' Rule 12(b)(6) Motion to Dismiss. Opinion & Order, ECF No. 34. The dismissed claims alleged that (1) the individually named Defendants violated Plaintiffs due process rights under the 14th Amendment and are liable under 42 U.S.C. § 1983; (2) the University of Oregon violated Title IX of the Education Amendments of 1972, 20 U.S.C., *et seq.* (Title IX) by discriminating against Plaintiffs on the basis of their gender; (3) the Defendants committed various state law torts against Plaintiffs; including negligence, intentional infliction of emotional distress, and intentional interference with economic relations; and (4) breach of contract.

**Court's Prior Opinion & Order**

In its prior opinion, the Court found that the individual Defendants were entitled to qualified immunity with regard to the constitutional claims because the Plaintiffs failed to allege that a "clearly established" right that had been violated. Opinion & Order 7-10, ECF No. 34. Specifically, the Plaintiffs did not establish that their interest in education and athletic scholarships were clearly established property rights protected by the constitution. *Id*. at 9. There is no case law or statutory authority in Oregon to establish college education as a constitutionally protected property right for purposes of a qualified immunity analysis. *Id*. at 9-10.

With regards to the Title IX and Equal Protection Claims, the court found that the Plaintiffs failed to plead factual allegations supporting any plausible theory under each of the three types of Title IX sex discrimination cases: "selective enforcement," "erroneous outcome," and "deliberate indifference." *Id*. at 11.

Under a theory of "selective enforcement," the court found that Plaintiff was unable to allege that female students facing similar circumstances to male students were treated more favorably by the University.

It is important to properly characterize the circumstances that the male Plaintiffs were facing in the disciplinary hearing conducted by the University. The term "sexual assault" has been loosely used to characterize the allegations made against the Plaintiffs by a female student. True, a female did allege that the Plaintiffs raped her. This allegation was rejected by the local prosecution and it was not the basis on which the University disciplined the Plaintiffs. Rather, the University alleged only that the Plaintiffs violated the student conduct code by "engaging in penetration without explicit consent."

Plaintiffs failed to allege that the University treated female students in similar circumstances more favorably. The fact that a particular rule has greater impact on one gender than the other does not attest to a pattern of gender bias.

Plaintiff's second Title IX theory was that Defendants' allegedly flawed proceeding led to an erroneous outcome. Plaintiffs asserted that Defendants were presumed guilty because public pressure resulted in a biased investigation and hearing that deprived Plaintiffs of their educational opportunities based on their gender. Pl. Artis' Compl., ¶ 58-62, ECF No. 1-1. Plaintiffs argued that this court should have adopted the Second Circuit's *McDonnell-Douglas* burden-shifting framework, requiring only a minimal plausible inference of discrimination to

3 – OPINION AND ORDER

survive a motion to dismiss. *Doe v. Columbia Univ.*, Civ. No. 15-cv-1536, 2016 WL 4056034, *7 (2d. Cir. July 29, 2016). I declined. Opinion & Order 17, ECF No. 34. I found that even if there was an atmosphere of public scrutiny, there was no plausible inference that a university's aggressive response to allegations of sexual misconduct is evidence of gender discrimination. *Id*.

Plaintiffs' claims regarding "deliberate indifference" were dismissed for similar reasons as the "selective enforcement" claim. The standard of proof required for a university investigation and suspension based on its code of conduct is entirely different from the District Attorney's standard to prosecute a criminal case. *Id*. at 18.

With regards to the negligence claims, this Court found that because there was no "special relationship" between Plaintiffs and Defendants, Plaintiffs did not have a cognizable claim under Oregon law to seek economic damages purely in the form of lost future income. *Id*. 21-23 ("There exists no precedent in Oregon or the Ninth Circuit recognizing a special relationship between college students or student athletes and the universities they attend.").

With respect to the breach of contract claim, this Court found that there was no contractual basis to support an expectation of renewal of Plaintiffs' annually renewable scholarships. *Id.* at 27-28.

**Plaintiffs' Third Amended Complaints**

In dismissing the complaint, Plaintiffs were given leave to file amended complaints curing the deficiencies of their claims. The amended complaints allege four claims: (1) violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq, against the University; (2) violation of the 14th Amendment's guaranty of equal protection against all individual defendants; (3) negligence against all defendants; and (4) breach of contract against the University. TAC 22, 30, 31, & 33, ECF No. 41.

The amended complaints re-allege the original facts as well as new factual allegations to be taken as true for purposes of a motion to dismiss. The new factual allegations include four declarations incorporated by the complaint. Plaintiffs also incorporated a statement from the Lane County District Attorney's office published by *The Oregonian* and a statement of a University student (the "complainant") published by the *Daily Emerald*. On a motion to dismiss the Court may consider, in addition to the complaint, materials incorporated into the complaint or matters of public record. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). The Court summarizes the submitted declarations as follows.

**Declaration of Greg Veralrud[2]**

Mr. Veralrud recalls his review of the University's Title IX investigation report regarding the allegations that led to the disciplinary proceeding underlying this case. The report stemmed from the claim of non-consensual sexual contact made against his then client, Dominic Artis, as well as the claims made against Damyean Dotson and Brandon Austin. Mr. Veralrud was Mr. Artis attorney through the administrative hearing.

Mr. Veralrud "do[es] not contend that [his] current recollection of the contents of the report is complete or totally accurate." There was some overlap between the Title IX investigation, the Eugene Police Department investigation, and the investigation conducted on behalf of the male students by their respective counsels. Mr. Veralrud "acknowledge[s] that attribution of a particular fact to the Title IX report could be in error." Nonetheless, he recalls the evidence supporting the claim of non-consensual contact was based solely upon the statement of the complaining female student involved in the encounter with the male students. He also recalls the report referencing interviews with other student witnesses who provided statements indicating the accuser was not intoxicated and willingly left in the taxi with the three male

---
[2] TAC Ex. 1, ECF No. 39.

students. He recalls a reference to text message conservations between the complainant and the Plaintiffs with no reference to unwanted sexual contact.

Mr. Veralrud nonetheless had concerns that the University would be under "significant pressure" to make its own student conduct findings. He was also concerned about the University's lack of interest in exercising subpoena power in conjunction with the panel hearing to bring forth witnesses who may contradict the complainant and corroborate Artis.

**Declaration of Laura Fine Moro**

Ms. Moro is an attorney who represented Brandon Austin at all times during the University's action against him. TAC Ex. 2, ECF No. 39. Ms. Moro was allowed to read a redacted copy of the Title IX report of the incident, but was not allowed to keep a copy. She describes reading a report in which the complainant's sexual assault claims were contradicted by witnesses and by the complainant's own statements regarding the her level of intoxication and her willingness to engage with the Plaintiffs.. Decl. Moro ¶ 11-12, ECF No. 39.

Ms. Moro has also represented hundreds of University of Oregon students under various circumstances, including alleged violations of University Student Conduct Code. She is not aware of a case in which an allegation of sexual misconduct made by a female against a male has been unfounded by the University. "[T]he female accuser is always believed and the male accused is never believed."

Ms. Moro recalls that every client she has represented in a "sexual misconduct" allegation at the University was male with one exception. Her one female client was alleged to have had a verbal fight with her boyfriend in her apartment; refused to let him leave; exerted physical force that resulted in scratches and skin abrasions; and, when the male finally left the apartment, her client grabbed a large kitchen knife and ran after him. Police became involved

and her client ultimately pled guilty to *Reckless Endangerment* (Class A Misdemeanor) and *Harassment* (Class B Misdemeanor). She was placed on probation, given a jail sentence, and ordered to complete a mental health evaluation and follow through with any required treatment. The University underwent a Title IX investigation and was informed about the outcome of her criminal case. Ms. Moro is unaware of any further action taken by the University beyond the investigation.

Despite Ms. Moro characterizing this event as an allegation of "sexual misconduct," it is clear from her declaration that this event is quite different from the allegations at bar and is better characterized as a domestic violence event or a physical assault. This example has nothing to do with an allegation of failing to obtain explicit consent prior to penetration.

**Declaration of Lissa Casey**

Lissa Casey is an attorney who has represented students that are charged with sexual misconduct offenses by the University of Oregon and is familiar with University's disciplinary process. TAC Ex. 3, ECF No. 39. All of her clients who have been accused of sexual misconduct have been male and in her experience the University has always found the female students' accusations of sexual misconduct credible. Ms. Casey expresses a professional opinion that there is a sex/gender bias within the University's disciplinary system.

**Declaration of Brian Michaels**

Brian Michaels is local counsel to Plaintiffs in these consolidated cases. He declares to have represented another individual in a restraining order case filed through the University of Oregon. TAC Ex. 4, ECF No. 39. Depositions were taken of three University of Oregon employees in that case under a Protective Order. Mr. Michaels declares that two of these depositions are "extremely relevant and helpful to establishing Plaintiff's claims," but is

prohibited from revealing any further information about those depositions because of the protective order.

**Additional background**

At some point during their criminal investigation, the Lane County District Attorney's office determined that charges would not be pressed against the Plaintiffs. After the District Attorney's decision, *The Oregonian* newspaper published the police report made by the female student who had accused the Plaintiffs of rape. TAC ¶ 34-35, ECF No. 39. The next evening, in response to the *The Oregonian* publication, the District Attorney's office issued a lengthy document outlining its conclusions and reasons for its decision not to press charges against Plaintiffs. *Id*. ¶ 36-37. In response to these statements and the newspaper article, widespread protests occurred on the University's campus. *Id*. ¶ 40. The protests were aimed at pressuring the University to take action against the Plaintiffs. *Id*. Protesters held signs condemning the "rape culture" on campus. *Id*. ¶ 41, 43. The protest received local and national press coverage casting the University in a negative light. *Id*. ¶ 42.

Additionally, there is a 2013 published study by University of Oregon psychology professor Jennifer J. Freyd, Ph.D. TAC ¶ 45, ECF No. 39. The study found that women can experience "institutional betrayal" when an institution fails to prevent sexual assault or respond supportively. Dr. Freyd repeatedly spoke out against the University's handling of the situation involving the Plaintiffs. *Id.* ¶ 46. She either led and/or publicly supported a protest on May 8, 2014. The next day, President Gottfredson condemned Plaintiffs' actions at a press conference. *Id.* ¶ 47. In his press conference, President Gottfredson called the female accuser a "survivor" and also asserted that "as a father, [he] was appalled." *Id.* ¶s 48-49. President Gottfredson was not involved in the disciplinary process at issue in this case.

## STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

While considering a motion to dismiss, the Court must accept all allegations of material fact as true and construe them in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). If the complaint is dismissed, leave to amend should be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (citations and internal quotation marks omitted).

## DISCUSSION

The factual allegations in Plaintiffs' amended complaints are essentially similar to the factual allegations in their prior complaint the court previously dismissed. ECF No. 34. The facts added to the new complaints seek to develop a theory of gender discrimination on the basis that (1) the University was under public pressure to take action against the accused male students, and (2) *accusers* who are female students are treated different than *accused* students who are male.

I find that these new factual allegations fail to cure the deficiencies identified in my prior Opinion & Order. For brevity, I incorporate by reference the full analysis in my prior Opinion (ECF No. 34).

Plaintiffs were suspended by the University because they failed to obtain *explicit* consent before engaging in sexual penetration. This is a violation of the University's Student Conduct Code. A state's criminal code and the decision by the District Attorney's office regarding criminal prosecution have little relevance to the University's student conduct code and its enforcement. While the state criminal code criminalizes non-consensual sexual acts between adults, the University's code prohibits some forms of non-criminal sexual contact; specifically, sexual penetration that is not preceded by *explicit* consent. In other words, the University expects its students to communicate prior to engaging in certain forms of sex in order to assure each other that both participants intend to engage in act and they consent to it. This expectation may be viewed as unnecessary, archaic, or unfair, but in fact many universities have stricter student conduct codes than the one at issue. For example, some universities prohibit students from living with someone of a different gender or sex, outside the exception of marriage, and others prohibit their students from all sexual contact outside a marital relationship.

Plaintiffs spend much of their focus on the criminal investigation that preceded the disciplinary hearing. They are correct in asserting that the record is replete with evidence contradicting the complainant's accusation of a crime; namely, the crime of rape. It is clear that the complainant's actions and statements severely damaged her credibility and foreclosed criminal prosecution. But the focus of the disciplinary hearing was not the credibility of the criminal accusation, rather it was whether the three Plaintiffs had made any effort to gain explicit consent from the complainant before the three of them decided to engage in penetration during a

group sex encounter in a bathroom. On this issue, it does not appear from the record that a credibility finding was necessary. This was not a "he said/ she said" mystery that required a female to be believed over a male. The complaint and record incorporated into this motion (including the statements of the Plaintiffs to police that describe in detail what occurred) indicates one conclusion; nobody involved in the sexual encounter, male or female, gave or received explicit consent. Assuming consent is not the same as explicitly receiving it.

I find that Plaintiffs' allegations fail to plausibly allege facts that support the notion the Defendants acted in a discriminatory manner or with the requisite intent to discriminate on the basis of sex or gender. The four declarations incorporated into the amended complaint do not add facts sufficient to change my analysis in my original Opinion & Order. The declarations express the viewpoints from four attorneys that the "female *accuser* is always believed and the male *accused* is never believed." This observation has little relevance. Factually, this is not a case where a woman was believed over a man. And for purpose of a Title IX discrimination claim, an accuser is not in a similar circumstance as an accused.

The amended complaint fails to provide any circumstance where a female student was accused of sexual misconduct by failing to obtain *explicit* consent and was treated differently or more favorably by the University. With one exception, the four attorneys have only represented male students who were accused of sexual misconduct. In the one incident referenced in the declarations that involved a female student accused of misconduct, the allegations involved physical assault and not sexual misconduct. This case is not comparable to the Plaintiff's situation. The woman in that case was criminally prosecuted, jailed, and placed on probation. The Plaintiffs here were not criminally prosecuted. They are accused of a non-criminal violation of the student code that required them to ask for explicit consent from a sexual partner.

Violations of the student conduct code do not give rise to sex or gender discrimination simply because males are far more likely to be accused of sexual misconduct than females. Many rules and statutes have a disproportionate effect on one gender. This unremarkable observation alone does not rise to the plausible level of prohibited discriminatory intent. Because Plaintiffs' amended complaints do not cure the deficiencies previously identified, the amended complaints are dismissed with prejudice.

**Qualified Immunity**

While the amended complaints re-package the Plaintiffs' 14th Amendment claim from one of due process to one of equal protection, this does not cure the fact that Plaintiffs still fail to identify a clearly established constitutional right that has been violated by the University. As previously found, the individual Defendants are entitled to qualified immunity because Plaintiffs did not present a "clearly established" right that had been violated. Opinion & Order 7-10, ECF No. 34. Because no federal or state law establishes that a college education is a constitutionally protected property right in Oregon for purposes of qualified immunity analysis, the Plaintiffs cannot assert such a violation. *Id*. at 9-10. Plaintiffs reference cases that suggest the courts may make a determination that there exists a constitutionally protected right to higher education in certain contexts, but qualified immunity does not require individual government actors to predict how future courts might decide the issue. The existence of the right must be beyond debate.

**Negligence and Breach of Contract**

For the same reasons outlined in my prior Opinion & Order, Plaintiffs failed to sufficiently plead cognizable damage necessary for a negligence claim. Because no special relationship exists between the parties, Plaintiff's negligence claims are dismissed. The cases cited by Plaintiffs' are unpersuasive. The Student Conduct Code applies equally to all university

students irrespective of whether they are student athletes or not, or whether they are receiving a student scholarship or not. Students are not allowed to engage in sexual conduct without explicit consent. Plaintiffs may complain that the University provided them with a "kangaroo court" hearing (TAC ¶ 150), but the administrative process they received came from an agreement between the parties and, during that time, Plaintiffs were well-represented by their attorneys.

For the same reasons outlined in my prior Opinion & Order, the claim for breach of contract is dismissed. Whatever subjective expectations Plaintiffs may have had, the scholarships were renewable on an annual basis, but not mandated to be renewed. There is no contractual language that guaranteed renewal of their scholarship, especially in light of a violation of the University's Student Conduct Code.

## **CONCLUSION**

Because the Amended Complaints do not contain sufficient factual matter to state a claim or claims to relief that are plausible on their face, the Complaints are dismissed. Because I find that further attempts to amend would be futile, the dismissal is with prejudice. Defendants' Motions to Dismiss (*Austin v. Uni. of Oregon*, D. Or. 16-cv-2257-MC, ECF No. 41 and *Artis v. Uni. of Oregon*, D. Or. 16-cv-647-MC, ECF No. 51) are GRANTED.

IT IS SO ORDERED.

DATED this 7th day of June, 2017

                                            s/ Michael J. McShane
                                                    Michael McShane
                                       United States District Judge